# EXHIBIT B

⚠️ Caution
As of: December 22, 2025 4:56 PM Z

# [Oliver v. Funai Corp.](#)

United States District Court for the District of New Jersey

December 21, 2015, Decided; December 21, 2015, Filed

Civil Action No. 14-cv-04532

**Reporter**
2015 U.S. Dist. LEXIS 169998 *

NORMA OLIVER and MATT TOMS, individually and on behalf of all others similarly situated et al, Plaintiffs, v. FUNAI CORPORATION, INC., et al, Defendants.

**Notice:** NOT FOR PUBLICATION

**Prior History:** [Toms v. Funai Corp., 2015 U.S. Dist. LEXIS 83413 (D.N.J., June 25, 2015)](#)

**Counsel: [*1]** For NORMA OLIVER, MATT TOMS, individually and on behalf of all others similarly situated, Plaintiffs: STEFAN LOUIS COLEMAN, LEAD ATTORNEY, Lakewood, NJ.

For FUNAI CORPORATION, INC., a New Jersey corporation, FUNAI ELECTRIC CO., LTD., Defendants: JOHN P. LAVELLE, JR., LEAD ATTORNEY, MORGAN LEWIS & BOCKIUS LLP, PRINCETON, NJ.

**Judges:** JOSE L. LINARES, UNITED STATES DISTRICT JUDGE.

**Opinion by:** JOSE L. LINARES

## Opinion

**LINARES**, District Judge.

This matter comes before the Court upon motions by Defendant Funai Corporation, Inc. (hereinafter "Funai Corp.") (ECF No. 79, "Corp. Mov. Br.") and by Defendant Funai Electric Co., LTD. (hereinafter "Funai Electric") (ECF No. 80, "Electric Mov. Br."), seeking dismissal Plaintiffs' Second Amended Complaint (ECF No. 73, "SAC"). Funai Corp. seeks dismissal of Plaintiffs' fraudulent concealment and civil conspiracy claims (Counts I and III, respectively) under [Federal Rule of Civil Procedure 12(b)(6)](#). (Corp. Mov. Br. at i-ii; ECF No. 79-3, "Corp. Proposed Order"). Funai Electric adopts the arguments made by Funai Corp. for dismissal, but also seeks dismissal of all claims against it for lack of personal jurisdiction pursuant to [Federal Rule of Civil Procedure 12(b)(2)](#). (Electric Mov. Br. at i). Plaintiffs have filed an omnibus opposition to these motions (ECF No. **[*2]** 91, "Pls.' Opp. Br.") and Defendants have filed separate replies. (ECF Nos. 96, "Corp. Reply Br." and 97, "Electric Reply Br."). Pursuant to [Rule 78 of the Federal Rules of Civil Procedure](#), the Court decides this matter on the papers. Upon consideration of the Parties' submissions, and for the reasons stated below, Defendants' Motions to Dismiss are granted.

## I. BACKGROUND

### A. Parties

Plaintiff, Norma Oliver is a citizen of the State of Massachusetts, and Plaintiff Matt Toms is a citizen of the State of Arizona. (SAC ¶¶ 1-2). Defendant Funai Electric is the parent company of Defendant Funai Corp. (Id. ¶ 3). While Funai Corp. is incorporated and exists under the laws of the State of New Jersey, with its principal place of business in New Jersey, Funai Electric is a Japanese company with headquarters in Japan. (Id. ¶¶ 3-4). Plaintiffs allege that "Funai Electric is a global and leading manufacturer of liquid crystal display ("LCD") televisions," and that "Funai Electric participates in, engages in, and avails itself of the United States market and United States consumers through its subsidiary, Funai Corp. and agreements between the two entities." (Id. ¶¶ 4, 13). According to Plaintiffs, Funai Electric manufactures Funai, Emerson, and **[*3]** Magnavox brand televisions and distributes these televisions through Funai. Corp (Id. ¶ 13), while Funai Corp. distributes and markets those televisions in the United States. (Id. ¶¶ 14-15).[1]

---

[1] The Court notes several inconsistencies in the different roles

### B. Pertinent Facts

This is a putative class action related to the manufacturing, marketing, and sale of allegedly defective televisions. Plaintiffs claim that the televisions at issue were marketed and sold with "faulty components," namely, a defective power supply board (PSB). (Id. ¶ 7). According to Plaintiffs, the "PSB regulates and routes electricity for the LCD panel. . . . Without a functioning PSB, the LCD screen and panel cannot operate and the televisions will stop displaying a picture and sound (without which a television is obviously rendered useless)." (Id. ¶ 27). Thus, Plaintiffs allege that the televisions in question often fail [*4] outside of the stated one-year warranty period and ninety-day warranty period for labor, leaving consumers with little reprieve. (Id. ¶¶ 29).

Plaintiffs allege that this defect was known to Defendants, who nevertheless continued to manufacture, market and sell the televisions with faulty components to increase their profit margins. (Id. ¶¶ 25, 28). Plaintiffs also claim that Defendants "actively conceal the defect from consumers," and attempt to assuage any consumer concerns by representing in their service and owners' manuals that the LCD panel and screen will "provide many years of useful life." (Id. ¶¶ 30-31).

In May of 2012, Plaintiff Norma Oliver ("Oliver") purchased an Emerson LCD television from a Wal-Mart in Florida, paying $299.00. (Id. ¶ 42). According to Oliver, the Emerson LCD television failed in October 2013, not long after the one-year warranty period, despite the fact that she had used her television for approximately 390 hours. Plaintiffs allege that when Oliver called Funai's customer support line to seek a replacement, the employees acknowledged that the cause of the failure was likely a faulty PSB, but nevertheless failed to replace the television free of charge. [*5] (Id. ¶ 43). Oliver claims that she expended more than $85.57 to rectify the problem herself. (Id. ¶ 45).

Plaintiff Toms ("Toms") claims to have had a similar experience. Specifically, Toms states that he purchased his Magnavox LCD television from a Target in Arizona in September of 2012, and that the same television failed in January 2014, after only 190 hours of usage. (Id. ¶¶ 47-48). After researching the issue, Toms believed the problem was a faulty PSB. Toms then installed a replacement PSB, which fixed the problem with the television. (Id. ¶ 49). Toms alleges ascertainable losses totaling $72.00. (Id. ¶ 51).

### C. Procedural History

Plaintiffs initiated this action on July 17, 2014, and subsequently filed an amended complaint on October 20, 2014. (ECF Nos. 1, 14). Thereafter, both Defendants filed motions to dismiss the Amended Complaint, which motions this court granted in part and denied in part. (ECF No. 63, "MTD Op.").

As the lead Plaintiffs sought to certify a nation-wide class, this Court first conducted a choice of law analysis to determine which States' laws should apply to Plaintiffs' claims. The Court determined that Arizona and Florida law would apply to Plaintiffs' consumer [*6] fraud claims, and that New Jersey law applies to claims of fraudulent concealment claims, civil conspiracy, and breach of warranty claims. (MTD Op. at 70-21). The Court then considered the arguments raised by each Defendant in support of their respective motions to dismiss.

At the outset, the Court addressed Funai Electric's 12(b)(2) argument of lack of jurisdiction, deferring a ruling on same until a determination as to the necessity of jurisdictional discovery on the issue. However, the Court agreed with Funai Electric that "Plaintiffs' substantive allegations against Funai Electric [were] largely indistinguishable from those asserted against Funai Corp" and that, "[p]articularly with reference to fraud claims, Plaintiffs have failed to separately plead the fraudulent acts of each defendant to satisfy *Rule 9(b)*." (MTD Op. at 26). The Court therefore dismissed the fraud claims against Funai Electric without prejudice because Funai Electric was not placed on adequate notice regarding these claims. (Id.). As to the non-fraud based claims, the Court deferred analysis until Plaintiffs filed a second amended complaint shedding light on Funai Electric's particular involvement in the allegations. (Id. at 27).

The Court also [*7] considered the 12(b)(6) arguments of Funai Corp. The Court upheld the sufficiency of Plaintiffs' breach of warranty claims (Counts IV and V) and violation of the ACFA based upon concealment

---

that the entities are alleged to play in the manufacturing of the suspect televisions. For example, while Plaintiffs allege, on the one hand, that Funai Electric manufactures the televisions, SAC ¶ 13, in the next paragraph, they allege that both "Defendants" manufacture the televisions (Id. ¶ 14).

(Count II). However, the undersigned held that Plaintiffs failed to sufficiently plead a claim of fraudulent concealment (Count I), which Plaintiffs now reassert in the Second Amended Complaint. Specifically, the Court held that Plaintiffs "fail[ed] to plead knowledge or belief by the defendant of the defect [prior to the time of Plaintiffs' purchase] as well as an intention that the other person rely on it." (MTD Op. at 16). Because the Court granted Plaintiffs leave to amend their fraudulent concealment claims, the Court deferred ruling on their related civil conspiracy claims. (MTD Op. at 26).

On July 22, 2015, Plaintiffs filed the operative Second Amended Complaint, attempting to cure the deficiencies identified by this Court in its earlier Opinion. (SAC). Plaintiffs now allege claims based upon fraudulent concealment (Count I), violation of the Arizona Consumer Fraud Act (Count II), civil conspiracy to commit fraud (Count III), breach of express warranty (Count IV), and violation of the *Magnusson-Moss Warranty Act* **[*8]** (Count IV). (SAC at 21-28). Both Defendants now move to dismiss the Second Amended Complaint. Plaintiffs have filed an omnibus opposition to the motions, and Defendants have filed separate replies.

## II. LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (citing *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))*. In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)*. Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994)*.

Regarding Plaintiffs' fraud claims, *Federal Rule of Civil Procedure 9(b)* requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Fed. R. Civ. P. 9(b)*. "Plaintiffs may satisfy this requirement by **pleading** the 'date, place or time' of the **fraud**, or through 'alternative means of injecting precision and some **[*9]** measure of substantiation into their allegations of **fraud**.'" *Lum v. Bank of America, 361 F.3d 217, 224 (3d Cir. 2004)*, *abrogation on other grounds recognized by In re Insurance Brokerage Litig., 618 F.3d 300, 323 n.22 (3d Cir. 2010)*. "Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Id.*

The Court will first address the 12(b)(6) arguments made for dismissal offered by Funai Corp. Next, the Court will consider Funai Electric's request for dismissal based on lack of personal jurisdiction under *Rule 12(b)(2)*.

## III. FUNAI CORP'S MOTION TO DISMISS

### A. Common Law Fraudulent Concealment Claims

As already settled, New Jersey law applies to Plaintiffs' fraudulent concealment claim. (MTD Op. at 8). The elements of fraudulent concealment must also be plead under the heightened standards of *Federal Rule of Civil Procedure 9(b)*. *Byrnes v. DeBolt Transfer, Inc., 741 F.2d 620, 626 (3d Cir. 1984)*. The Third Circuit has set forth the following requirements for pleading fraud:

> In order to satisfy *Rule 9(b)*, plaintiffs must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir.1984)*. Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative **[*10]** means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.*

*Lum, 361 F.3d at 223-24*. With this in mind, the Court turns to New Jersey law.

In order to plead fraudulent concealment in New Jersey, a plaintiff must allege: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) a reasonable reliance thereon by the other person; and (5) resulting

damages." *Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610, 691 A.2d 350 (1997)*.

Funai Corp. contends that Plaintiffs cannot meet the elements of a fraudulent concealment claim because, *inter alia*, they still fail to plead that Funai Corp. knew of the defect prior to Plaintiffs' purchases.[2] (Corp. Mov. Br. at 15, 17-24). In response, Plaintiffs direct the Court to the additional "numerous consumer complaints that 'date back to 2011 and beyond" included in the Second Amended Complaint. (Pls.' Opp. Br. at 13). The Court has reviewed these consumer complaints, and finds that the complaints fail to adequate show Defendants' knowledge of the defect.

First, the complaints appear on the websites of third-parties such as Amazon and Wal-Mart, and Plaintiffs have provided no indication that Defendants viewed or would have viewed those websites. Secondly, many of the postings, written by unknown bloggers (*i.e.*, "oliveubabe" and "2ofakind0"), do not specifically reference a defect with the PSB; rather, they allege general problems with the televisions' functionality or quality. (See SAC ¶ 37 ("I had one of the sensors on the tv break within 2 weeks of installation, poor quality manufacturing. . . "); ¶ 39 (complaining that the television "died after six months"); ¶ 40 (complaining that the television "won't turn on.")). Finally, several of these postings post-date May and September of 2012, when Plaintiffs Oliver and Toms, respectively, purchased their televisions. (See ¶ 37 (posted April 25, 2013); ¶ 38 (posted May 14, 2013); ¶ 40 (posted October 30, 2012)). For all of these reasons, this Court is not persuaded that knowledge of the alleged defect could be imputed to Defendants **[*12]** based upon anonymous internet complaints on third-party websites. Nor is the Court persuaded that knowledge can be imputed to Defendants based upon the representations made in the anonymous internet complaints that the consumers contacted Defendant via phone to voice their concerns. (Pls.' Opp. Br. at 17).

Indeed, this Court has previously explained that imputing knowledge of a defect to a manufacturer based upon an internet posting would mean "that virtually every consumer product company would be subject to fraud claims and extensive discovery. All any plaintiff would be required to show is that a product broke once and that someone had complained about it on the internet." *Rait v. Sears, Roebuck and Co., No. 08-2461, 2009 U.S. Dist. LEXIS 70217, 2009 WL 2488155, at *4 (D.NJ. Aug. 11, 2009)* (Linares, J.). Plaintiffs have not directed this Court to any case law from the Third Circuit or elsewhere suggesting that a plaintiff can plead knowledge of a defect based upon anonymous internet postings. (See Pls.' Opp. Br. at 13-14). And, in the district court cases relied upon by Plaintiff, courts found the knowledge element satisfied based upon a variety of allegations in the pleadings, which happened to include internet complaints. See *In re Philips/Magnavox Television Litig., No. 09-cv-3072, 2010 U.S. Dist. LEXIS 91343, 2010 WL 3522787 (D.NJ. Sept. 1, 2010)* (identifying **[*13]** "five reasons" why defendant knew of the defect, including postings on consumer review websites); *Robinson v. Kia Motors America, Inc., 2015 U.S. Dist. LEXIS 121755, 2015 WL 5334739 (D.NJ. Sept. 11, 2015)* ("*In addition to the allegations of knowledge described above*, [p]laintiffs further assert that [defendant] was aware of the defect based upon (1) online consumer complaints about the alleged problem, and (2) a technical service bulletin issued by [d]efendants.").

Plaintiffs here contend that even if the Court rejects the internet complaints as a basis for pleading knowledge, there are "additional" allegations sufficient to plead Defendants' knowledge. However, these allegations of knowledge based upon "pre-release testing and [the associated] testing data," "testing conducted in response to consumer complaints," and from "aggregate data" (Pls.' Opp. Br. at 18) are the same allegations presented in the Plaintiffs' Amended Complaint, which have already been deemed insufficient by this Court. (MTD Op. at 4). Accordingly, the Court finds that Plaintiff has failed to correct the pleading deficiencies identified by this Court in its first opinion on Defendants' motion to dismiss, and therefore dismisses Count I of Plaintiffs' Second Amended Complaint with prejudice.

## B. Civil Conspiracy to Commit Fraud

Funai Corp. seeks **[*14]** dismissal of Plaintiffs' civil conspiracy claim on the grounds that Plaintiffs fail to sufficiently plead their claim of fraudulent concealment, a prerequisite to a claim based on civil conspiracy to commit fraud.[3] (Corp. Mov. Br. at 24-26). This Court

---

[2] Because the Court agrees that Plaintiffs have failed to plead the requisite knowledge element, the Court will not address Funai Corp.'s **[*11]** additional claims of deficiency — namely, the alleged failure to plead reliance or to plead the claim with the requisite particularity. (Corp. Mov. Br. at 15).

[3] Alternatively, Funai Corp. argues that the intracorporate conspiracy doctrine precludes this claim. (Corp. Mov. Br. at

previously declined to dismiss Plaintiffs civil conspiracy claims in light of Plaintiffs' opportunity to amend their fraud-based claims. Having amended their fraudulent concealment claim which Plaintiffs "underlies their conspiracy claim," Plaintiffs state that the conspiracy claim is now sufficiently plead.

In New Jersey, civil conspiracy claims are derivative of the underlying fraud claim. *Banco Popular North America v. Gandi, 184 N.J. 161, 177-78, 876 A.2d 253 (2005)* ("[T]he gist of the claim is not the unlawful agreement, but the underlying wrong which, absent the conspiracy, would give a right of action."); *see also Warren v. Fisher, Civ. 105343, 2011 U.S. Dist. LEXIS 103456, 2011 WL 4073753, at \*3 (D.N.J. Sept. 12, 2011)*. Here, because the Court dismisses Plaintiffs' claim of common law fraudulent concealment for the reasons stated **[\*15]** in Part III.B. above, so too must the Court dismiss Plaintiffs' derivative claim of civil conspiracy to commit fraud.

The Court now considers Funai Electric's Motion to Dismiss for lack of personal jurisdiction.

**IV. FUNAI ELECTRIC'S MOTION TO DISMISS**

In addition to adopting Funai Corp.'s 12(b)(6) arguments, Funai Electric reasserts its jurisdictional arguments that this Court stayed pending Judge Dickson's determination as to whether jurisdictional discovery was necessary. (Electric's Mov. Br. at 10-15; MTD Op at 27 (administratively terminating Funai Electric's motion as it pertains to personal jurisdiction). In response, Plaintiffs ask the Court to forego ruling on Funai Electric's personal jurisdiction arguments and to instead permit the parties to engage in jurisdictional discovery. (Pls.' Opp. Br. at 33-38). Alternatively, Plaintiffs argue that even without the benefit of jurisdictional discovery, they have sufficiently pled that this Court has personal jurisdiction over Funai Electric. (Id. at 38-52). Before determining whether jurisdictional discovery is appropriate, the Court will first consider whether Plaintiffs have adequately pled the jurisdictional requirements.

**A. Legal Standard**

Once a defendant **[\*16]** files a motion to dismiss for lack of personal jurisdiction pursuant to *Federal Rule of Civil Procedure 12(b)(2)*, the "plaintiff must prove by affidavits or other competent evidence that jurisdiction is proper." *Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330, 51 V.I. 1219 (3d Cir. 2009)* (internal citations omitted). Where, as here, the district court does not hold an evidentiary hearing, a plaintiff need only establish a "prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004)*. Additionally, "[i]f the contents of the plaintiff's complaint conflict with the defendant's affidavits, the district court must construe all reasonable inferences that can be drawn from the papers in the plaintiff's favor." *Haffen v. Butler Specialties, Inc., 2011 U.S. Dist. LEXIS 21581, 2011 WL 831933 at \*2 (D.N.J. Mar. 3, 2011)* (quoting 4 Wright & Miller, Federal Practice and Procedure: Civil 3d 1067.6 (3d ed. 2002)). The plaintiff, however, retains "the burden of demonstrating that the defendants' contacts with the forum state are sufficient to give the court in personam jurisdiction." *Mesalic v. Fiberfloat Corp., 897 F.2d 696, 699 (3d Cir. 1990)*. "These contacts must be shown 'with reasonable particularity.'" *Wellness Publ'g v. Barefoot, 128 Fed. App'x 266, 268 (3d Cir. 2005)* (unpublished) (quoting *Mellon Bank v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992))*.

A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc., 384 F.3d at 96 (3d Cir. 2004)*. "New Jersey's long-arm statute provides **[\*17]** for jurisdiction coextensive with the due process requirements of the United States Constitution." *Id*. (citing *N.J. Ct. R. 4:4-4(c)*). A district court sitting in New Jersey may therefore exercise personal jurisdiction over a non-resident defendant if the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice.'" *Henry Heide, Inc. v. WRH Prods. Co., Inc., 766 F.2d 105, 108 (3d Cir. 1985)* (quoting *Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945))*.

Minimum contacts can be analyzed in the context of general jurisdiction or specific jurisdiction." *Metcalfe, 566 F.3d at 334*. "General jurisdiction results from, among other things, systematic and continuous' contact between a non-resident defendant and the forum state. *Spuglio v. Cabaret Lounge, 344 F. App'x 724, 725 (3d Cir. 2009)* (unpublished) (quoting *International Shoe, 326 U.S. at 320*. "Specific jurisdiction over a defendant exists when that defendant has 'purposefully directed

---

30). In light this Court's dismissal of the civil conspiracy claim on other grounds, this Court need to address the applicability of the intracorporate conspiracy doctrine.

his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Miller Yacht Sales, 384 F.3d at 96* (quoting *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985))*.

**A. General Jurisdiction**

"'[G]eneral jurisdiction exists when a defendant has maintained systematic and continuous contacts with the forum state.' This is a fact-specific inquiry, and the 'nonresident's contacts to the forum must be continuous and substantial' to support the **[*18]** exercise of general jurisdiction." *Arpaio v. Dupre, 527 F. App'x 108, 113 (3d Cir. 2013)* (internal citations omitted). In recent years, the United States Supreme Court has offered guidance on the level of "continuous and substantial" contacts that might justify the exercise of general or "all purpose" jurisdiction.

In *Goodyear Dunlop Tires Operations v. Brown* the Court addressed a situation in which the foreign subsidiaries of an American corporation challenged a North Carolina court's exercise of personal jurisdiction over them. *564 U.S. 915, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)*. A unanimous Court discussed the parameters of general jurisdiction, writing that "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id. at 2853-54*. The Court reiterated the principal that "[a] corporation's 'continuous activity of some sorts within a state' . . . 'is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" *Id. at 2856* (quoting *Int'l Shoe Co., 326 U.S. at 318*). The Court further noted that neither regular purchases of goods from a state nor the sales of goods to a state were sufficient, in themselves, to subject an entity to general jurisdiction **[*19]** on claims unrelated to the sales/purchases. *Id. at 2856-57* (citing *Helicopteros Nacionales De Colombia v. Hall, 466 U.S. 408, 418, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984))*. As the Defendant subsidiaries in Goodyear had only "attenuated" contacts with the state (*i.e.*, their products were sold into the state via intermediaries)[4] and were "in no sense at home in North Carolina," the Court found that the subsidiaries were not subject to general jurisdiction in North Carolina's courts. *Id. at 2857*.

The Supreme Court confirmed the narrow applicability of the general jurisdiction doctrine in *Daimler AG v. Bauman, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014)*. In *Daimler*, the Court rejected a formulation of the doctrine that would "approve the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business,'" characterizing that broad definition as "unacceptably grasping." *Id. at 761* (internal citation omitted). The Court observed that "the inquiry under Goodyear **[*20]** is not whether a foreign corporation s in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State.'" *Id. at 761* (quoting *Goodyear, 131 S. Ct. at 2851*). The Court also clarified that "the general jurisdiction inquiry does not 'focus solely on the magnitude of the defendant's in-state contacts.' General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." *Id. at 762, n. 20*. The Court ultimately found that there was "no basis to subject Daimler to general jurisdiction in California, for Daimler's slim contacts with the State hardly render it at home there." *Id. at 760, 761-62*.

**B. Specific Jurisdiction**

"Specific jurisdiction is established when a non-resident defendant has 'purposefully directed his activities at a resident of the forum and the injury arises from or is related to those activities." *Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001)* (quoting **[*21]** *Burger King, 471 U.S. at 472*). In other words, specific jurisdiction exists where the "cause of action arises out of [t]he defendant's forum-related activities, such that the defendant should reasonably anticipate being haled into court in that forum." *Abel v. Kirbaran, 267 F. App'x 106, 108 (3d Cir. 2008)* (internal citations and quotations

---

[4] The *Goodyear* Court also specified that while the "[f]low of a manufacturer's products into a forum . . . may bolster an affiliation germane to *specific* jurisdiction . . . ties serving to bolster the exercise of specific jurisdiction do not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant." *Id at 2855* (emphases in original)."

omitted).

Three elements must be met to establish specific jurisdiction. *HS Real Co., LLC et al. v. Sher, 526 F. App'x 203, 206 (3d Cir. 2013)*. First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum. *Id*. Second, "plaintiffs' claims must arise out of or relate to at least one of the contacts with the forum." *Id*. (internal citations and quotations omitted). Third, the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice. *O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007)*.

Because the existence of specific jurisdiction depends on a link between the defendant's activity and the resulting harm, a specific jurisdiction analysis is necessarily claim specific. *Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001)* ("Such a determination is claim specific because a conclusion that the District Court has personal jurisdiction over one of the defendants as to a particular claim asserted by [plaintiff] does not necessarily mean that it has personal jurisdiction over that same defendant as to [plaintiff]'s **[*22]** other claims.").

**C. Discussion**

Funai Electric argues that the Court lacks general and specific jurisdiction over it because Funai Electric lacks sufficient minimum contacts to satisfy the requirements of due process. With respect to general jurisdiction, Funai Electric contends that the Supreme Court's recent decision in *Daimler AG v. Bauman* compels a finding that the Court lacks general jurisdiction over Plaintiffs' claims relating to the United States subsidiary. (Electric's Mov. Br. at 1-2, 12-15). Specifically, Funai Electric notes that the Supreme Court in *Bauman* "held that mere ownership by a foreign corporate parent of a subsidiary in the jurisdiction, without more, does not confer general jurisdiction over the foreign parent." (Id. at 13).

As for specific jurisdiction, Funai Electric states that "[n]one of Plaintiffs' purported causes of action derive from contacts of Funai Electric with New Jersey." (Id. at 15). Indeed, Funai Electric points out that Plaintiffs' claims, brought by non-New Jersey residents, are based on televisions purchased outside the State of New Jersey and relate to an alleged statement of warranty contained in the owners' manual of those televisions published by Funai Corp. (Id. at 16). **[*23]** Moreover, Defendant notes that "[n]either Plaintiff . . . viewed any representation about the televisions in New Jersey." (Id. at 18). In sum, Defendant maintains that "there is no evidence suggesting that Funai Electric's minimal contacts with New Jersey have any relation to Plaintiff's claims." (Id.).

In opposition, Plaintiffs contend that this Court may appropriately exercise general jurisdiction over Funai Electric. Plaintiffs distinguish *Bauman*, noting that unlike in *Bauman* where the Supreme Court found no general jurisdiction over the parent company where the sole basis for that jurisdiction related to the actions of its subsidiary, here, it is the parent corporation's activity, rather than the activity of its subsidiary, which is the basis for this Court's general jurisdiction. (Pls.' Opp. Br. at 42-43). Specifically, Plaintiff contends that this Court has general jurisdiction over Funai Electric because they "funnel[] each and every one of [their] televisions through Funai Corp., and established its subsidiary in New Jersey for the sole purpose of doing so. (Pls.' Opp. Br. at 40). Plaintiffs also cite to the twenty-five year relationship between the entities, and the fact that Funai Electric **[*24]** has three employees in New Jersey and that the two companies share at least one corporate officer. (Id. at 41). Moreover, Plaintiff points to the fact, as alleged in the Second Amended Complaint, that Funai Electric "routinely utilizes licenses and trademarks to sell its products in New Jersey through this state." (Id.). All of these allegations, according to Plaintiff, demonstrate that Funai Electric's contacts with New Jersey are so continuous and systematic such that it is "at home" in the State. (Id. at 43).

Plaintiffs also dispute Funai Electric's position that this Court lacks specific jurisdiction over it. (Id. at 44-51). Plaintiffs state that Defendant has only seriously disputed the second and fourth prongs of the specific jurisdiction analysis—namely, whether Funai Electric "purposefully directed" its activities in New Jersey and whether Plaintiffs' claims "arise out of" its activities in this jurisdiction. (Id. at 45). As to whether Funai Electric "purposefully directed" its activities in New Jersey, Plaintiffs point to the Second Amended Complaint's allegations that Funai Electric:

> (i) maintained a wholly owned subsidiary in the forum for almost 25 years, (ii) funnels all of its United States television marketing **[*25]** and distribution efforts through this forum, (iii) contributes to developing marketing materials and strategies in this forum, and (iv) directs the marketing of its products towards consumers in this

forum. (Id. at 45). Plaintiff also asks the Court to infer, based on the Defendants' relationships with one another, and based upon the fact that the Declaration of Seiji Ishizu, the General Manager of Funai Electric, does not state otherwise, that Funai Electric attended meetings and communicated with Funai Corp. in New Jersey. (Id. at 46). Plaintiff further alleges that the fourth prong of the specific jurisdiction analysis is met here where their "claims inarguably 'arise from' and 'relate to' Funai Electric's contacts with New Jersey inasmuch as Funai Electric marketed and distributed every single television it sold in North America through its contacts with New Jersey and Plaintiffs were injured as a result." (Id. at 47).

**i. This Court lacks General Jurisdiction over Funai Electric**

First, the Court finds that Plaintiffs have failed to establish general jurisdiction over Funai Electric. The inquiry for general jurisdiction is "not whether a foreign corporation's in-forum contacts can be said to be in some sense **[*26]** 'continuous and systematic,' it is whether that corporation s 'affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State.'" *Bauman, 134 S. Ct. at 761* (quoting *Goodyear, 131 S. Ct. at 2851*). Indeed, as the Supreme Court explained in *Bauman*, absent exceptional circumstances not present in this case, general jurisdiction over a parent corporation will not stand even where the corporation "engages in a substantial, continuous, and systematic course of business in that state. *Id. at 760, 761 n. 19*. To that end, the paradigmatic, although not exclusive, forums in which a corporate defendant can be said to be "at home" are "the place of incorporation and principle place of business." *Bauman, 134 S. Ct. at 760*.

By Plaintiffs own account, Funai Electric is a Japanese company with its headquarters in Japan. (SAC ¶ 4). Thus, Plaintiffs cannot show general jurisdiction under the paradigmatic examples noted in *Bauman*. Therefore, in order to show general jurisdiction, Plaintiffs must show that Funai Electric's "affiliations with the state are so continuous and systematic as to render it essential at home" in New Jersey. *Goodyear, 131 S. Ct. at 2851*. Plaintiffs have not made this showing. In support of their general jurisdiction argument, Plaintiffs chiefly rely **[*27]** upon the fact that Funai Electric allegedly funnels its televisions through the State of New Jersey. (Pls.' Opp. Br. at 40). As the Supreme Court has made clear, although "[f]low of a manufacturer's products into a forum . . . may bolster an affiliation germane to *specific* jurisdiction. . . ties serving to bolster the exercise of specific jurisdiction do not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant." *Goodyear, 131 S. Ct. at 2855* (emphases in original). Similarly, the Court is not convinced that the presence of three Funai Electric employees in New Jersey and the fact that the companies share a corporate officer renders Funai Electric "at home in this State. According to Funai Electric's website, as of March of 2015, not long after the Second Amended Complaint was filed, the company had 861 employees.[5] If a large corporation could be haled to court in every jurisdiction in which a handful of its employees work, the long line of cases developing the general jurisdiction doctrine as applied to corporations would be rendered meaningless. Accordingly, because Funai Electric cannot be said to be at home in this jurisdiction, this Court cannot constitutionally assert **[*28]** general personal jurisdiction over it.

**ii. This Court Also Lacks Specific Jurisdiction Over Funai Electric**

Next, the Court finds that Plaintiffs have failed to establish specific jurisdiction as to Funai Electric. To assert specific jurisdiction over a defendant, a court must make three affirmative findings. First, "the defendant must have 'purposefully avail[ed] itself of the privilege of conducting activities within the forum state.'" *Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)* (internal citations omitted). Secondly, the plaintiff must show that the litigation 'arises out of or relate[s] to those contacts." *O'Connor v. Sandy Lane Hotel, 496 F.3d 312, 317 (3d Cir. 2007)*. Lastly, it these first two requirements are met, specific jurisdiction must nevertheless "comport with traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007)*.

Here, the parties most seriously dispute whether the instant litigation can be said to "arise out of or relate to Funai Electric's contacts with New Jersey. The Supreme Court has not identified the "scope of this requirement."

---

[5] Funai, *About Funai: Company Profile*, http:/funai.jp/en/company/profile.html (last visited Dec. 11, 2012).

*Sandy Lane Hotel, 496 F.3d at 318*; *see also Helicopteros, 466 U.S. at 415 n. 10* ("We do not address ... whether the terms 'arising out of and related to' describe different connections.... Nor do we reach the question **[*29]** whether, if the two types of relationship differ, a forum's exercise of personal jurisdiction in a situation where the cause of action relates to,' but does not 'arise out of,' the defendant's contacts with the forum should be analyzed as an assertion of specific jurisdiction."). Accordingly, circuit and district courts have attempted to circumscribe the type of claims that can be said to "arise out of or relate to" a defendant's contacts with the forum.

In *O'Connor v. Sandy Lane Hotel Co., Ltd.*, the Third Circuit recognized the lack of consistency in which the Circuits and district courts have applied the "arise out of or relate to" requirement, and explained the three most common approaches. *496 F.3d 312, 318 (3d Cir. 2007)* First, the Court discussed the "proximate cause" standard, in which "the defendant's contacts must be the "legal cause of the plaintiff's injury." *Id. at 319* (citing to First Circuit case law). The Court also discussed the lesser restrictive standard of the "but-for" causation test. *Id. at 319*. Courts that apply this test ask whether the claims would have arisen without defendant's contacts. *Id*. Finally, the Circuit considered what it referred to as the "substantial connection" or "sliding scale" approach to specific **[*30]** jurisdiction. *Id. at 312*. This approach turns on "whether the tie between the defendant's contacts and the plaintiff's claim is close enough to make jurisdiction fair and reasonable." *Id*.

After considering each of these approaches, the Third Circuit declined to adopt any of the three; however, it expressly rejected the third, "sliding scale" test. *Id. at 321*. A serious weakness with the "sliding scale approach is that it results in a breakdown of the distinction between the genet al and specific jurisdiction analyses" such that the distinctions "merge, and the result is a freewheeling totality-of-the-circumstances test." *Id. at 320*. That is so because "[t]he degree of relatedness required in a given case is inversely proportional to the overall intensity of the defendant's forum contacts." *Id*. (internal quotations and citations omitted). The Court noted that the two varieties of jurisdiction are distinct, and that Third Circuit case law "recognize[s] the importance of separate analysis." *Id. at 321*.

Plaintiffs allege that their claims "'arise from' and 'relate to' Funai Electric's contacts with New Jersey inasmuch as Funai Electric marketed and distributed every single television it sold in North America through its contacts with New Jersey **[*31]** and Plaintiffs were injured as a result." (Pls.' Opp. Br. at 47). Had the Third Circuit adopted a strict "but-for" test of relatedness, then this connection would suffice because absent Funai Electric allegedly tunneling defective televisions into New Jersey, Plaintiffs across the United States would presumably not have been injured. However, the Third Circuit warned against this test as the "sole measure of relatedness" where it "literally embraces every event that hindsight can logically identify in the causative chain." *Sandy Lane, 496 F.3d at 322* (internal quotations omitted).

In fact, in light of the weakness of the "but-for" test, the Court directed district courts to pay respect to the reciprocal benefits and obligations of a defendant's contacts with the forum state, providing the following guidance:

> [S]pecific jurisdiction requires a closer and more direct causal connection than that provided by the but-for test. As we stated in *Miller Yacht*, there is no "specific rule" susceptible to mechanical application in every case. But in the course of this necessarily tact-intensive inquiry, the analysis should hew closely to the reciprocity principle upon which specific jurisdiction rests. With each purposeful contact **[*32]** by an out-of-state resident, the forum state's laws will extend certain benefits and impose certain obligations. Specific jurisdiction is the cost of enjoying the benefits. The relatedness requirement's function is to maintain balance in this reciprocal exchange. In order to do so, it must keep the jurisdictional exposure that results from a contact closely tailored to that contact's accompanying substantive obligations. *The causal connection can be somewhat looser than the tort concept of proximate causation, but it must nonetheless be intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable*.

*Id. at 323* (internal citations and quotations omitted) (emphasis added).

In referencing the "reciprocity principles upon which specific jurisdiction rests," the Third Circuit cited to the Supreme Court's discussion in *Burger King Corp. v. Rudzewicz*. *Id. at 323* (citing *Burger King, 471 U.S. at 475-476*). In that case, the High Court identified two situations where a defendant can be said to have "manifestly availed himself of the privilege of conducting

business" in a jurisdiction such that "his activities are shielded by 'the benefits and protections' of the forum's laws [and] it is presumptively not unreasonable to require him to submit [*33] to the burdens of litigation in that forum as well." *Burger King, 471 U.S. at 475-476*. The first condition occurs "where the defendant 'deliberately' has engaged in significant activities within a State." *Id*. This condition sounds in general jurisdiction, which, as discussed above, is nonexistent in this case. Alternatively, the reciprocal principle may be implicated where the defendant "has created 'continuing obligations' between himself and *residents of the forum*." *Id. at 476* (emphasis added). Thus, the reciprocal benefits and obligations of conducting business in a state is typically discussed in the context of a give-and-take between the defendant and the residents of the State in which the defendant has directed his contacts. *Burger King, 471 U.S. at 476* ("So long as a commercial actor's efforts are 'purposefully directed' *toward residents of another State*, we have consistently rejected the notion that an absence of physical contacts can defeat jurisdiction there.") (emphasis added).

In this case, although this action was filed in New Jersey, Plaintiffs here are not New Jersey residents. (SAC ¶¶ 1-2). They did not purchase their televisions in New Jersey, nor is there any allegation that they received any information about their televisions from [*34] the State of New Jersey, or for that matter, that they have ever visited this District. (SAC ¶¶ 42-51). Thus, the Court finds the connection between Funai Electric's allegedly manufacturing televisions for distribution to its New Jersey subsidiary and the injury sustained by Arizona and Florida residents using their televisions across the Country is not "intimate enough to keep the quid pro quo proportional." *Sandy Lane, 496 F.3d at 323*.

Furthermore, the Court agrees with Funai Electric that a finding of specific jurisdiction based upon the tenuous connection asserted by Plaintiffs "would effectively obliterate the distinction between general and specific jurisdiction, making Funai Electric susceptible to personal jurisdiction in New Jersey no matter how tangential Plaintiffs' causes of action are to the relationship between Funai electric and its subsidiary." (Electric Reply Br. at 6). Such a conflation of general and specific jurisdiction would run directly against the Third Circuit's rejection of the sliding scale" approach to specific jurisdiction and insistence that the two analyses be contemplated separately. *Sandy Lane, 496 F.3d at 321* ("These categories constitute 'two distinct theories and our cases recognize the importance of [*35] separate analysis.").

For these reasons, the Court finds that Plaintiffs have not sufficiently plead specific jurisdiction where their claims cannot be said to "arise out of or relate to" Funai Electric's connections to New Jersey.

## D. Jurisdictional Discovery is Neither Necessary Nor Appropriate

The Third Circuit has stated that unless a plaintiff's claim of personal jurisdiction is 'clearly frivolous," courts "are to assist the plaintiff by allowing jurisdictional discovery prior to granting a motion to dismiss on lack of personal jurisdiction grounds. *Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003)*. "If a plaintiff presents factual allegations that suggest with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state," the plaintiff's right to jurisdictional discovery should be sustained. *Id*.

Here, Plaintiffs request jurisdictional discovery to obtain information about Funai Electric's:

> (i) corporate structure, (ii) distribution of the TVs to Funai Corp. in New Jersey, (ni) Purportedly 'indirect' sales to consumers in and through New Jersey, (iv) communications to its employees located in New Jersey and those employed by Funai Corp. about the design, manufacturing, [*36] distributing, marketing, and sales of the TVs, and (v) financial records—including the amount of revenue generated—related to all transactions from which Funai Electric benefitted and/or that occurred in or were distributed through this state.

(Pls'. Opp. Br. at 37).

In light of the above discussion, however, this Court finds that even if Plaintiffs were privy to discovery on these limited items, Plaintiffs would nevertheless fail to establish either general or specific jurisdiction. The requested categories of discovery seek information about Funai Electric's contacts with New Jersey, and therefore, bear only on the general jurisdiction analysis under *Bauman*. If the Court were to permit discovery on these issues, the most Plaintiff would be able to show is that Funai Electric "engages in a substantial, continuous, and systematic course of business" in New Jersey; however, that showing would still be insufficient for this Court to have general personal jurisdiction over Funai Electric. *See Bauman, 134 S. Ct. at 760-761*

("Plaintiffs would have us look beyond the exemplar bases *Goodyear* identified, and approve the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, **[*37]** and systematic course of business. *That formulation, we hold, is unacceptably grasping.*") (emphasis added).

Nor would discovery of Funai Electric's business relationships with Funai Corp. in New Jersey have any meaningful bearing on the specific jurisdiction analysis. While disclosure of this information may provide insight into whether Funai Electric purposefully availed itself of the benefit of doing business in New Jersey, it would not change this speculative and tenuous relationship between the claims, the parties, and Funai Electric's contacts with New Jersey. Accordingly, the Court will deny Plaintiffs' request for jurisdictional discovery where Plaintiffs have not "present[ed] factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state.'"

## V. CONCLUSION

For the reasons stated above, the Court grants Defendant Funai Corp.'s Motion to Dismiss Counts I and III of Plaintiffs' Second Amended Complaint, and grants Defendant Funai Electric's Motion to Dismiss all claims against it for lack of personal jurisdiction. An appropriate Order accompanies this Opinion.

DATED: December 21st, 2015

/s/ Jose L. Linares **[*38]**

JOSE L. LINARES

UNITED STATES DISTRICT JUDGE

## ORDER

**LINARES**, District Judge.

This matter comes before the Court upon motions filed by Defendant Funai Corporation, Inc. (hereinafter "Funai Corp.") (ECF No. 79) and by Defendant Funai Electric Co., LTD. (hereinafter "Funai Electric") (ECF No. 80) seeking dismissal of Plaintiffs' Second Amended Complaint (ECF No. 73). Plaintiffs have opposed these motions (ECF No. 91) and Defendants have timely replied (ECF Nos. 96 and 97). Pursuant to Ru1e *78 of the Federal Rules of Civil Procedure*, the Court decides this matter on the papers. Upon consideration of the Parties' submissions, and for the reasons stated in the Opinion accompanying this Order,

IT IS on this 21st day of December, 2015

**ORDERED** that Defendant Funai Corp.'s Motion to Dismiss Counts I and III of Plaintiffs' Second Amended Complaint for failure to state a claim (ECF No. 79) is hereby GRANTED and it is further;

**ORDERED** that Counts I and III of Plaintiffs' Second Amended Complaint (ECF No. 73) are hereby DISMISSED *with prejudice*[1] as against Defendant Funai Corp.; and it is further

**ORDERED** that Defendant Funai Electric's Motion to Dismiss Plaintiffs' Second Amended Complaint for lack of personal jurisdiction (ECF No. 80) is hereby GRANTED and it is further;

**ORDERED** that all claims against Funai Electric are hereby DISMISSED *with prejudice* to refiling in this district.

IT IS SO ORDERED.

/s/ Jose L. Linares

JOSE L. LINARES

UNITED STATES DISTRICT JUDGE

---

**End of Document**

---

[1] As the Second Amended Complaint fails to correct the deficiencies identified in this Court's June 25, 2015 Opinion (ECF No. 63) dismissing these claims, **[*39]** the Court now dismisses Counts I and III of the Second Amended Complaint with prejudice.