# EXHIBIT D

⊕ Positive
As of: December 22, 2025 7:53 PM Z

## *Nelligan v. Zaio Corp.*

United States District Court for the District of New Jersey

March 21, 2011, Decided; March 21, 2011, Filed

Civil Action No.: 10-cv-1408 (FLW)

**Reporter**
2011 U.S. Dist. LEXIS 28628 *; 2011 WL 1085525

DIANE NELLIGAN, Plaintiff, v. ZAIO CORP.; ZAIO INC.; JAMES KIRCHMEYER, individually and in his representative capacity; REAL INFO, INC.; DOUGLAS VINCENT, individually and in his representative capacity; MARK CHAPIN, individually and in his representative capacity; STEVEN OLIVER, individually and in his representative capacity; JOHN DOE (1-10) (being fictitious names for unknown persons); ABC CORP. (1-20) (being fictitious names for unknown entities), Defendants.

**Notice:** NOT FOR PUBLICATION

**Counsel:** **[\*1]** For **DIANE NELLIGAN**, **Plaintiff**: RICHARD D. DEL MONACO, LAW OFFICES OF WILLIAM J. COURTNEY LLC, FLEMINGTON, NJ.

For **JAMES KIRCHMEYER**, *individually and in his representative capacity*, **Defendant**: **BRIAN MICHAEL SHER**, *LEAD ATTORNEY*, KAUFMAN BORGEEST & RYAN LLP, PARSIPPANY, NJ; **CARA A. O'SULLIVAN**, *LEAD ATTORNEY*, KAUFMAN BORGEEST & RYAN LLP, NEW YORK, NY; **MARK W. CATANZARO**, *LEAD ATTORNEY*, MOORESTOWN, NJ.

For **REAL INFO, INC., KIRCHMEYER & ASSOCIATES, INC.**, **Defendants**: MARK W. CATANZARO, *LEAD ATTORNEY*, MOORESTOWN, NJ.

For **DOUGLAS VINCENT**, *individually and in his representative capacity*, **MARK CHAPIN**, *individually and in his representative capacity*, **STEVEN OLIVER**, *individually and in his representative capacity*, **Defendants**: BRIAN MICHAEL SHER, *LEAD ATTORNEY*, KAUFMAN BORGEEST & RYAN LLP, PARSIPPANY, NJ; CARA A. O'SULLIVAN, *LEAD ATTORNEY*, KAUFMAN BORGEEST & RYAN LLP, NEW YORK, NY.

**Judges:** Honorable Freda L. Wolfson.

**Opinion by:** Freda L. Wolfson

## Opinion

**WOLFSON, United States District Judge:**

Presently before this Court is Defendants' motion to dismiss the Complaint pursuant to *Federal Rule of Civil Procedure 12(b)(2)*, and in the alternative, pursuant to *Rule 12(b)(6)*. Plaintiff Diane Nelligan ("Plaintiff") alleges in her Complaint **[\*2]** that individual defendants James Kirchmeyer, Stephen Oliver, [1] Douglas Vincent and Mark Chapin (hereinafter "Defendants") engaged in actions that violate: (1) the Equal Pay Act, *29 U.S.C. §206(d)*; (2) the retaliation provisions of the Fair Labor Standards Act, *29 U.S.C. §215(a)(3)*; (3) the New Jersey Wage and Hour Law, *N.J.S.A. 34:11-56.8*; and (4) the New Jersey Law Against Discrimination, *N.J.S.A. 10:5-1 et. seq.* She further alleges that these individual defendants aided and abetted their former, now-defunct employer, Zaoi, Inc., in discriminating against her. Lastly, Plaintiff brings a "breach of contract/promissory estoppel" claim. For the reasons that follow, the Court grants Defendants' motion to dismiss due to lack of personal jurisdiction over the Defendants.

### I. Factual Background and Procedural History

Plaintiff is, and was at all relevant times, a resident of the State of New Jersey. (Compl. ¶ 1). Plaintiff was hired by Zaio Inc. [2] in April 2007 as a consultant on a trial basis, and was offered a permanent position as

---

[1] Defendant Stephen Oliver was incorrectly sued as "Steven Oliver." The Court will use the correct spelling of "Stephen Oliver."

[2] Zaio Inc. is presently a dissolved business entity. It was a wholly owned subsidiary of Zaio Corp., and was incorporated and had its principal offices located in Scottsdale, Arizona.

Director in or around June 2007. **[\*3]** Id. at ¶ 16-18. As Director, Plaintiff received an annual salary of $80,000, plus 4% sales commission. Id. at ¶ 18. Defendants are all former employees of Zaio Inc., and reside in different states: James Kirchmeyer ("Kirchmeyer") is a resident of the State of New York; Douglas Vincent ("Vincent") is a resident of the State of Texas; Mark Chapin ("Chapin") is a resident of the State of California; and Stephen Oliver ("Oliver") is a resident of the State of Florida. Id. at ¶ 4-9. Plaintiff claims that all four Defendants exercised supervisory authority over her during her employment with Zaio. [3] Id. at ¶ 4-9.

The Court notes that Plaintiff's Complaint speaks in generalities by claiming **[\*4]** throughout that "Defendants," rather than individual defendants, engaged in certain conduct. However, Plaintiff's Complaint does allege that during her time with Zaio, she was: (1) not a member of the executive or senior management team, and was excluded from senior level team building meetings despite her title of Director; (2) compensated less than her male subordinate; (3) promised an annual bonus of $20,000 that she never received; (4) "harassed, discriminated, and retaliated against" when she was removed from her position as Director and demoted to an inferior position; and (5) "harassed, discriminated, and retaliated against" when she was terminated in or around September 2008. Id. at ¶ 33-35.

After Plaintiff filed her initial Complaint, Defendants filed a motion to dismiss for lack of jurisdiction pursuant to _F.R.C.P. 12(b)(2)_, or in the alternative, pursuant to _F.R.C.P. 12(b)(6)_. Subsequently, Defendants filed a declaration accompanied by Defendants' individual affidavits in support of the present motion. Plaintiff then filed Opposition, accompanied by a Certification of Diane Nelligan on July 6, 2010. The Court now rules upon Defendants' motion to dismiss for lack of jurisdiction **[\*5]** and, accordingly, does not reach Defendants' _Rule 12(b)(6)_ motion.

## II. Discussion

---

[3] Defendants Kirchmeyer, Chapin, and Oliver deny having any direct supervisory authority over Plaintiff. (Kirchmeyer Aff. at ¶ 8; Chapin Aff. at ¶ 8; Oliver Aff. at ¶ 8). Vincent claims that, contrary to Plaintiff's allegations, he was only her direct supervisor for several weeks during the summer of 2007. (Vincent Aff. at ¶ 8).

## A. Personal Jurisdiction

The present motion challenges whether this Court has personal jurisdiction over Defendants. Once challenged, a plaintiff bears the burden of establishing personal jurisdiction. _General Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001)_ (finding the plaintiff must demonstrate "[a] nexus between the defendant, the forum and the litigation."). This Court is not required to hold an evidentiary hearing; however, without such hearing, Plaintiff has the burden to establish a prima facie case of personal jurisdiction. _Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004)_. For a prima facie case, Plaintiff must "establish[] with reasonable particularity sufficient contacts between the defendant and the forum state." _Mellon Bank PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992)_ (citing _Provident Nat. Bank v. California Fed. Sav. & Loan Assoc., 819 F.2d 434 (3d Cir. 1987))_. Although Plaintiff bears this burden, in considering Defendants' Motion, this Court must take Plaintiff's allegations as true and resolves all factual disputes in Plaintiff's favor. _Miller, 384 F.3d at 97_.

_Federal Rule of Civil Procedure 4(k)_ **[\*6]** requires a district court to exercise personal jurisdiction according to the law of the state where it sits. In this instance, the New Jersey long-arm statute establishes New Jersey's jurisdictional reach conterminous to that allowed for under the U.S. Constitution, subject only to due process of law. Thus, the central inquiry is whether Defendants have "certain minimum contacts with. . . .[New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." See _Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)_ (internal quotation omitted). The Plaintiff only asserts specific jurisdiction, and therefore, the Court will not apply a general jurisdiction analysis. [4]

---

[4] The assertion of general jurisdiction over non-forum related activities is proper when the defendant has engaged in "systematic and continuous" activities in the forum state. _Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16, 104 S. Ct. 1868, 80 L. Ed. 2d 404_. Here, Plaintiff never asserts that the Defendants have "systematic and continuous" contacts with New Jersey; rather, Plaintiff alleges that: "In the case at bar, the Plaintiff's cause of action is related to or arises out **[\*7]** of the Defendants' contacts with the forum, thereby giving the Court 'specific jurisdiction' over Defendants." (Pl. Opp. at 8).

2011 U.S. Dist. LEXIS 28628, *7

## B. Specific Jurisdiction

The inquiry as to whether specific jurisdiction exists has three parts. First, Defendants must have "purposefully directed [their] activities" at the forum state. *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)* (quotation marks omitted). Second, the litigation must "arise out of or relate to" at least one of those activities. *Helicopteros, 466 U.S. at 414*; *Grimes v. Vitalink Commc'ns Corp., 17 F.3d 1553, 1559 (3d Cir. 1994)*. Finally, if the prior two requirements are met, the Court may consider whether the exercise of jurisdiction would offend "notions of fair play and substantial justice." *Int'l Shoe, 326 U.S. at 316*.

At the threshold level, the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum." *Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)*. Physical entrance is not required. See *Burger King Corp., 471 U.S. at 476*. But what is necessary is a deliberate targeting of the forum. *O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312 (3d Cir. 2007)*. Thus, the "unilateral activity **[*8]** of those who claim some relationship with a nonresident defendant" is insufficient. See *Hanson, 357 U.S. at 253*. Further, contacts with a state's citizens that take place outside the state are not purposeful contacts with the state itself. See *Gehling v. St. George's Sch. of Med., Ltd., 773 F.2d 539, 542-43 (3d Cir. 1985)*. Moreover, the jurisdictional nexus must also be the result of intentional conduct by the defendant and not merely "random, fortuitous, or attenuated contacts." *Amberson Holdings v. Westside Story Newspaper, 110 F.Supp. 2d 332, 334 (D.N.J. 2000)* (internal quotation omitted).

Importantly, the Supreme Court has recognized that "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him." *Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n. 13, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984)*. *Sathianathan v. Pacific Exchange, Inc., 248 Fed.Appx. 345 (3d Cir. 2007)* ("Jurisdiction over employees of a corporation does not arise automatically from jurisdiction over the corporation."). "As **[*9]** a general rule, an individual whose contacts with the forum state are in his corporate capacity does not thereby become subject to jurisdiction in his individual capacity." *Nicholas v. Saul Stone & Co. LLC, No. 97-860, 1998 U.S. Dist. LEXIS 22977, at *10 (D.N.J. June 30, 1998)*, aff'd, *224 F.3d 179 (3d Cir. 2000)*; see *Shapiro v. Sun Life Assurance Co. of Can., 117 F.R.D. 550 (1987)* (holding that defendants' only contacts with

the forum state were a result of following company procedures, and therefore, the exercise of jurisdiction over the defendants was unreasonable). Therefore, "each defendant's contacts with the forum State must be assessed individually." *Keeton, 465 U.S. at 781 n. 13* (citing *Rush v. Savchuk, 444 U.S. 320, 332, 100 S. Ct. 571, 62 L. Ed. 2d 516 (1980))*.

## C. Analysis

Plaintiff's allegations against the individual defendants are based upon contacts that were primarily through mail, email, and by phone. As an initial matter, then, the Court addresses Plaintiff's reliance on *Grand Entert. Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476 (3d Cir. 1993)*, for the general proposition that mail and telephone communications sent by a defendant into the forum state may demonstrate sufficient minimum contacts. **[*10]** Grand was a suit involving a contract dispute, where allegations relating to the negotiation of the agreement are paramount. Thus, the Third Circuit looked to mail and telephone communications evincing the formation of the agreement at issue in that case. *Id. at 482*. Here, by contrast, Plaintiff's claims sound in discrimination. So, while the Court agrees that mail and telephone communication may support specific jurisdiction in some instances, it is only where the plaintiff's claims arise out of those communications. Accord *Asanov v. Gholson, Hicks & Nichols, P.A., 209 Fed.Appx. 139, 142 (3rd Cir. 2006)* (distinguishing Grand where plaintiff brought legal malpractice claim against attorneys who represented plaintiff in a suit in a foreign forum); see also *O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 n.3 (3d Cir. 2007)* (noting that specific jurisdiction is usually assessed on a "claim-by-claim basis"). With this principle in mind, the Court will separately assess each individual defendant's contacts with New Jersey for the purpose of analyzing Defendants' 12(b)(2) motion to dismiss for lack of in personam jurisdiction.

## 1. Defendant Kirchmeyer

Kirchmeyer is a resident **[*11]** of the State of New York. Plaintiff asserts that she first met Kirchmeyer at a trade conference, [5] through a mutual business friend, while Kirchmeyer was in the process of negotiating his own employment with Zaoi, and that she maintained a

---

[5] Plaintiff does not state where this trade conference was held.

friendly relationship with him. [6] (Nelligan Cert. ¶¶ 4-6). Once Plaintiff began working for Zaoi on a trial basis in April of 2007, she avers, she engaged in discussions with Kirchmeyer in which she expressed her reluctance to accept a permanent position with Zaio on account of the below-market compensation and job title. Id. She, further, avers that Kirchmeyer encouraging her to accept the permanent position with Zaoi and promised her that he would "take care of things" once he joined the company. Id. In regards to these conversations, Plaintiff alleges that she conversed with Kirchmeyer from her home in New Jersey, and Plaintiff, thereafter, accepted Zaoi's offer of employment.

Plaintiff states that, while employed at Zaio in a permanent position, Kirchmeyer was her direct supervisor. Id. at ¶¶ 12-16. She asserts that she knew she worked out of her home office in New Jersey and conducted business on behalf of Zaio in New Jersey. Id. at ¶ 10. Plaintiff alleges that Kirchmeyer directed her to conduct business in New Jersey and the surrounding area. Id. at ¶ 22. Plaintiff further claims that after complaining about being compensated less than her male subordinate, Kirchmeyer stated that Plaintiff was "all set with a guarantee of 20k bonus." (Compl. ¶ 31; Nelligan Cert. Exh. E). Lastly, Plaintiff claims that when she questioned Kirchmeyer about senior level team building meetings that she had not been invited to attend, Kirchmeyer stated that she would not like the meetings because they were comprised of "a bunch of guys drinking and playing poker," and that the male managers did not like Plaintiff because she was too assertive. (Compl. ¶ 33).

Plaintiff's strongest argument for personal jurisdiction over Kirchmeyer relates [*13] to his conversation with Plaintiff about her employment at Zaio. When Kirchmeyer told Plaintiff that he would "take care of things," Plaintiff arguably relied on this statement and, therefore, such contact could potentially be related to Plaintiff's promissory estoppel claim. Id. at ¶ 72-74. However, this alleged statement is not only ambiguous, [7] but the Complaint's promissory estoppel allegations do not reference the Kirchmeyer statement. Plaintiff's promissory estoppel allegations are: "Plaintiff and Defendants agreed that Plaintiff would perform certain job functions, and that Plaintiff would be compensated for her labor, including a promise for an annual bonus of at least $20,000. Plaintiff provided services in a satisfactory manner and rendered demand for payment in connection therewith." Id. at ¶ 72-73. As such, Kirchmeyer's comment that he would "take care of things" is not related to the promissory estoppel claim, since the claim includes only allegations made during Plaintiff's employment with Zaio. When Kirchmeyer made this statement, he was not employed at Zaio, and had no influence over the terms of Plaintiff's contract or compensation. Thus, Kirchmeyer's statement is [*14] not related to any claim asserted, and is irrelevant for a specific jurisdiction analysis. See Helicopteros, 466 U.S. at 414 (holding that contact unrelated to the litigation at hand cannot be used to personal jurisdiction over a defendant).

Regarding Kirchmeyer's contacts with Plaintiff made during their employment at Zaio, the Court is similarly convinced that these contacts do not warrant personal jurisdiction over Kirchmeyer in New Jersey. Specifically, Kirchmeyer's contacts with Plaintiff as her supervisor are not sufficient to warrant jurisdiction over this defendant in New Jersey. [8] In [*15] MoneyGram

---

held liable under a theory of promissory estoppel for the statement that he would "take care of things". See Trianco, LLC v. IBM, 271 Fed. Appx. 198 (3d Cir. 2008) (stating that "a promise obliging only one party to a contract to do something, without receiving any benefit in return, is illusory and creates no enforceable obligation"). In addition, for a claim of promissory estoppel in New Jersey, the plaintiff must allege that the promise was "clear and definite." Del Sontro v. Cendant Corp., 223 F. Supp. 2d 563 (D.N.J. 2002).

[8] While this fact is disputed, for a 12(b)(2) motion without an evidentiary hearing, the Court will accept as true Plaintiff's allegations that Kirchmeyer was her supervisor for a period of time at Zaio Inc. Miller, 384 F.3d at 97. This analysis holds true for all four defendants, who claim that Plaintiff's characterization of their supervisory authority is false or misleading. The Court notes that this analysis also applies to this Court's assertion of personal jurisdiction over each individual defendant who Plaintiff contends had supervisory authority over her. Therefore, each defendant's contacts with Plaintiff in a supervisory capacity are insufficient to warrant jurisdiction over any of the Defendants in this case. See Bangura v. Pennrose Mgmt. Co., No. 1:09-04017, 2010 U.S. Dist. LEXIS 59450, at *10 ("The necessity of communicating with an employee who happens to work in New Jersey cannot be said to show that [*18] the supervisors purposefully

---

[6] At the trade conference, Plaintiff alleges that she discussed with Kirchmeyer that she resided and worked out of her home office in New Jersey. (Pl. Opp. at 2). The Court notes that this contact is unrelated [*12] to the litigation at hand, and as such, cannot be used to support personal jurisdiction over this defendant. See Helicopteros, 466 U.S. at 414.

[7] This court questions whether Kirchmeyer could ultimately be

2011 U.S. Dist. LEXIS 28628, *18

*Payment Systems, Inc. v. Consorcio Oriental, S.A., 65 Fed. Appx. 844 (3d Cir. 2003)*, the Court held that two individual defendants who travelled to the forum state of New Jersey "specifically for the purpose of doing business in New Jersey with a business then located in the state" could not be hailed into a New Jersey court due to lack of personal jurisdiction. Citing *Nicholas, 224 F.3d at 184*, and *Keeton, 465 U.S at 781*, the court noted that it was "not the business of the individual officers . . . with no identified contact with New Jersey other than in their capacity as corporate agents," that occasioned the few contacts the individual defendants had with the forum state. *MoneyGram, 65 Fed. Appx. at 850*. Rather, it was the business of the corporation, for whom the individuals worked, that led them to make the contacts with New Jersey. Hence the court held that the Plaintiff's attempt to "ensnare" the two individual defendants in a "jurisdictional web" ignores the defendants' separate legal identity from their employer, another defendant in that case. [9] Id. While Moneygram is nonprecedential, this Court finds its analysis persuasive, and it has been relied upon by many **[*16]** other courts for this same proposition. See *Oorah, Inc. v. Schick, No. 08-2202, 2009 U.S. Dist. LEXIS 5475 (D.N.J. Jan. 26, 2009)* ("To exercise jurisdiction over Schick, Plaintiff must make a prima facie showing that Schick has contacts with New Jersey, aside from his capacity as an officer . . ."); *Bangura, 2010 U.S. Dist.*

---

directed their activities at New Jersey.").

[9] In cases that have criticized this analysis, such as *Schley v. Microsoft Corporation, No. 08-3589, 2008 U.S. Dist. LEXIS 96059 (D.N.J. 2008)*, jurisdiction seems to exist over an individual defendant who is acting in a "corporate capacity" if the defendant is personally involved in committing a tort (or something analogous to a tort in the forum state), or where a defendant could be held statutorily liable as an individual. Here, Plaintiff has failed to assert that a tort or something analogous to a tort was committed by Kirchmeyer and aimed at the forum state. In addition, as explained herein, the facts put forth by the Plaintiff simply do not support individual liability under any of the alleged causes of action over Kirchmeyer. See *Acteon, Inc. v. Vista Dental Prods., No. 05-3847, 2006 U.S. Dist. LEXIS 27584, at * 3 (D.N.J. 2006)* (citing *Educational Testing Service v. Katzman, 631 F. Supp. 550, 555-559 (D.N.J. 1986))* (stating that the law of New Jersey permits a court to consider contacts with a forum made in a corporate capacity if the facts in the complaint support individual liability); see also 3A Fletcher **[*19]** Cyc. Corp. § 1296.10 (noting that "personal jurisdiction may be exercised over the officer as an individual defendant where the officer's acts are sufficient to subject the officer to personal liability, notwithstanding the fact that those acts were done in a corporate capacity.").

LEXIS 59450, at *9-10 ("Both Holden and Jones supervised employees in New Jersey, and, as such, were required to have contact with New Jersey for the purposes of fulfilling their professional responsibilities. However, these contacts do not demonstrate purposeful availment on their part."); *Goodman v. Goodman, No. 04-03869, 2010 U.S. Dist. LEXIS 20518, at *18 (D.N.J. Mar. 5, 2010)* ("Unidentified 'family visits' and limited business conducted on behalf of an employer does not establish this Court's personal jurisdiction over these defendants."); *Knierim v. Siemens Corporation, No. 06-4935, 2008 U.S. Dist. LEXIS 26571, at *22 (D.N.J. 2008)* ("In their declarations, plaintiffs point exclusively to contacts between plaintiffs and [their employer] in New Jersey, regarding the formation and alleged breach of the employment contracts. However, those contacts are not sufficiently **[*17]** independent of [their employer] to establish specific jurisdiction."). Indeed, it is "the general rule in federal courts [] that personal jurisdiction will not be exercised over an individual defendant for acts done in a corporate capacity." 3A Fletcher Cyc. Corp. § 1296.10.

In this case, Kirchmeyer, in his corporate capacity, had less substantial contacts with New Jersey than the defendants in Moneygram. Indeed, in Moneygram, the individual defendants were physically present in New Jersey for the purpose of doing business on behalf of their employer. Here, Kirchmeyer simply instructed Plaintiff to conduct business in New Jersey and the surrounding area. In addition, Kirchmeyer's "guarantee" of a $20,000 bonus cannot be construed as a personal guarantee, and Plaintiff does not suggest otherwise. Such minimal contacts will not serve to justify personal jurisdiction in this case. See *Knierim, 2008 U.S. Dist. LEXIS 26571* (holding that personal jurisdiction did not exist over two defendants who did not have any contacts with the forum state separate and apart from their relationship with their employer; such contacts with the forum state included soliciting business from the forum **[*20]** state, engaging in recruiting activities in the forum state, advising the plaintiff to recruit solely from the forum state, and communicating with Plaintiff several times a week while the plaintiff was located in the forum state); compare *Norben Imp. Corp. v. Metro. Plant & Flower Corp., No. 05-54, 2005 U.S. Dist. LEXIS 34386, at *24 (D.N.J. July 15, 2005)* (holding that because the individual defendants offered personal guarantees of their employer's checks, they were subjecting themselves to personal liability as guarantors, which made it reasonable that they should anticipate being haled into the forum state).

2011 U.S. Dist. LEXIS 28628, *20

Even Kirchmeyer's comment about the senior level team building meetings would not justify personal jurisdiction over Kirchmeyer in New Jersey. Plaintiff has not asserted when or where this comment was made, and therefore, she cannot prove that the defendant purposefully directed this activity at New Jersey. See *Burger King Corp., 471 U.S. at 472*. Simply because Plaintiff unilaterally decided to live and work in New Jersey is insufficient to show that Kirchmeyer directed this comment at the forum state. See *Hanson, 357 U.S. at 253* ("The unilateral activity of those who claim **[*21]** some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.").

An analysis under the "effects test", generally used for tortious conduct, or conduct analogous to a tort, substantiates the notion that Plaintiff's unilateral activity will not serve to establish jurisdiction in this case. In order to prevail on a claim of personal jurisdiction under the "effects test," Plaintiff must show that

> (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*Walburn v. Rovema Packaging Machs., L.P., No. 07-3692, 2008 U.S. Dist. LEXIS 25369, 2008 WL 852443, at *7 (D.N.J. 2008)* (citing *Imo Industries, Inc. v. Kiekert AG, 155 F.3d 254, 265-66 (1998))*. In Walburn, the court explained that "[a] court cannot automatically infer that a defendant expressly aimed its tortious conduct at the forum from the fact that the defendant knew the plaintiff resided in the forum." Id. In fact, "[p]ermitting jurisdiction [] would mean **[*22]** that jurisdiction in intentional tort cases would always be appropriate in the plaintiff's home state since the plaintiff would always feel the impact of the tort there." Id. In Walburn, the plaintiff asserted that she was present in New Jersey when the defendants made sexually derogatory remarks to her; however, this was insufficient to support deliberate targeting under the effects test. *2008 U.S. Dist. LEXIS 25369, [WL] at *7* (stating that "the Plaintiff's contention that jurisdiction is proper because the Defendants committed an intentional tort against her in New Jersey with the knowledge that she was an New Jersey resident does not comport with the holding of *Calder v. Jones, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984))*; see also *Imo Industries, 155 F.3d at 266* ("[T]he

plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum."). Here, Plaintiff never even asserts that she was in New Jersey when Kirchmeyer made the alleged comment regarding the senior level team building meeting, and never provides any further evidence of deliberate targeting **[*23]** of New Jersey besides her residence and home office in the State. Hence this Court will not exercise jurisdiction over Kirchmeyer.

## 2. Defendant Vincent

Plaintiff's argument regarding jurisdiction over Vincent, a resident of Texas, is similarly unconvincing. In addition to the claim that Vincent was her direct supervisor, which this Court already concluded is insufficient on its own to warrant personal jurisdiction over an individual defendant, Plaintiff asserts that Vincent communicated with Plaintiff about the terms of her contract. Specifically, Plaintiff alleges that "Vincent reassured Plaintiff that while her salary of $80,000 was well below market rate, everyone was being hired at lower salaries because Zaio Inc. was a start-up company, and [] it would offer greater financial rewards to Plaintiff once it became fully operational." (Compl. ¶ 20).

As with Plaintiff's allegations relating to Kirchmeyer, these are insufficient to warrant jurisdiction over Vincent in New Jersey because Plaintiff does not allege that Vincent "purposefully directed [his] activities" at New Jersey. *Burger King Corp., 471 U.S. at 472*. In fact, Plaintiff never asserts that she was in New Jersey during any **[*24]** of the alleged communications. Even if she was, however, Plaintiff has not demonstrated any deliberate targeting. In Walburn, the court held that even though the plaintiff was present in the forum state of New Jersey, this did not

> by itself establish that the[] Defendants were targeting New Jersey through their communications. Plaintiff's residence in New Jersey was a unilateral act in the sense that the contacts with the forum occurred as a result of Plaintiff's unilateral choice of residence. Such arbitrary contacts are insufficient to establish personal jurisdiction."

*2008 U.S. Dist. LEXIS 25369, 2008 WL 852443, at *7* (citing *Helicopteros, 466 U.S. at 416*). Indeed, Plaintiff's certification supports the notion that she initiated the

contact between Vincent and New Jersey, since it was her decision to work out of her home office in New Jersey. (Nelligan Cert. ¶ 3) (stating that she informed Kirchmeyer in 2004 that she worked out of her home office in New Jersey). Indeed, Plaintiff continued to work from that same address when Zaio hired her in 2007. (Compl. ¶ 1; Nelligan Cert. ¶ 3-5). Plaintiff's allegations demonstrate her availment of the forum, but fall short of proving that Vincent targeted New Jersey. [10]

Plaintiff suggests that Vincent's statement that Zaio Inc. would offer greater financial rewards to Plaintiff once it became fully operational was directed at the forum state, and is therefore sufficient to establish jurisdiction over this defendant. However, Vincent was not making any personal promise or individual claim, but rather, was asserting that Zaio would offer greater financial rewards once it became fully operational. See *Norben, 2005 U.S. Dist. LEXIS 34386, at *24 (D.N.J. July 15, 2005)* (finding jurisdiction over individual defendants who offered *personal* guarantees of their employer's checks). This statement may implicate Zaio Inc. in a promissory estoppel claim, but Plaintiff fails to show that Vincent made any promises or arguments on his own behalf that would induce her to take the job with Zaio. Therefore, this statement falls short of the activities necessary to prove that Vincent purposefully availed himself of New Jersey. Compare *Schley, 2008 U.S. Dist. LEXIS 96059, at *30* [*26] (holding that there was personal jurisdiction over an individual defendant acting in a corporate capacity where defendant (1) conducted extensive employment negotiations with the plaintiff while the plaintiff was in the forum state of New Jersey, (2) encouraged plaintiff to quit his job, and (3) induced the plaintiff to take actions that would affect him and his family in New Jersey)). This Court holds that there are insufficient contacts to assert jurisdiction over Vincent in New Jersey.

### 3. Defendant Chapin

Defendant Chapin is a resident of California. Plaintiff claims that Chapin "had involvement with the conditions of my employment and compensation," and was responsible for approving Plaintiff's reimbursed

---

expenses. [11] (Nelligan Cert at ¶ 18-19). [12] However, Plaintiff does not show that these acts are sufficiently independent from his activity as a corporate officer of Zaio. See *Knierim, 2008 U.S. Dist. LEXIS 26571*. While case law suggests that actions taken by an individual defendant in his "corporate capacity" may be considered in a personal jurisdiction analysis if the facts alleged support individual liability, this Court holds that the Plaintiff does not sufficiently allege [*27] that Chapin would be personally liable for his actions. See *Acteon, 2006 U.S. Dist. LEXIS 27584, at *11* (citing *Educational Testing, 631 F. Supp. at 555-559*) (stating that Educational Testing held "that the law of New Jersey allowed it to consider contacts with the forum made in a corporate capacity if the facts alleged supported individual liability").

Indeed, it seems that [*28] Plaintiff seeks to impute liability to Chapin under the Equal Pay Act, *29 U.S.C. § 206(d)*, the Fair Labor Standards Act, *29 U.S.C. § 215(a)(3)*, the New Jersey Wage and Hour Law, *N.J.S.A. 34:11-56.8*, and aiding and abetting in violation of the New Jersey Law Against Discrimination, *N.J.S.A. 10:5-1*. However, the allegations that Chapin was "involved" in Plaintiff's compensation because he informed her of her demotion and associated compensation, and calculated her commission, are insufficient to impute personal liability against Chapin under any of the aforementioned causes of action. See *Wildi v. Alle-Kiski Med. Ctr. Part of the West Penn Allegheny Health Sys., 659 F. Supp. 2d 640, 657-58 (W.D. Pa. 2009)* (citing *Dubowsky v. Stern, 922 F. Supp. 985, 990 (D.N.J. 1996)* ("To establish a prima facie case under the Equal Pay Act, a plaintiff must show that defendant paid different wages to employees of the opposite sex for equal work on jobs which

---

[10] Plaintiff [*25] provides an email where Vincent states that Plaintiff is "based out of New Jersey." (Nelligan Cert. Exhibit B). This evidence, however, does not negate that it was Plaintiff's unilateral decision to live and work in New Jersey.

[11] Plaintiff alleges that defendant had "involvement" with the conditions of Plaintiffs employment, including compensation. She provides Exhibit G and Exhibit H of her certification as evidence of such "involvement." The Court notes that the allegations provided shows that the "involvement" Plaintiff alleges solely consists of *informing* Plaintiff of her demotion and new compensation, and calculating her commission. The Plaintiffs Complaint does not state or otherwise show that Chapin was the officer in charge of *deciding* Plaintiff's compensation.

[12] Plaintiff also claims that Chapin supervised her work out of New Jersey, and was aware of her work on developing Zaio's business in New Jersey. (Nelligan Cert. at ¶ 21-22). As aforementioned, this is insufficient to establish jurisdiction over the Defendants in this case.

2011 U.S. Dist. LEXIS 28628, *28

required equal skill, effort, and responsibility, and all of which are performed under similar working conditions."); *Byrne v. Commissioner, 883 F.2d 211, 215 (3d Cir. 1989)* (citing *29 U.S.C. § 215(a)(3)*) (stating that *29 U.S.C. § 215(a)(3)* of the **[*29]** FLSA pertains to retaliation through discharge of an employee); *Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 110, 922 A.2d 710 (N.J. 2007)* (stating that the NJ Wage and Hour Law "directs employers to compensate employees who work in excess of forty hours a week with an overtime rate of '1 1/2 times' the employees' regular hourly wage."); *Lehmann v. Toys 'R' Us, 132 N.J. 587, 626 A.2d 445 (N.J. 1993)* (citing *N.J.S.A. 10:5-12*) (stating that the LAD makes it unlawful for an employer to discriminate against an individual in compensation or in "terms, conditions, or privileges of employment" based on sex). Moreover, Plaintiff has not cited to any additional contacts Chapin had with Plaintiff that could support personal liability. As such, this Court holds that there is no jurisdiction over Chapin in New Jersey.

### 4. Defendant Oliver

Defendant Oliver is a resident of Florida. Plaintiff alleges that in or around September 2007, Oliver suggested that Plaintiff hire a male friend of the CEO's as a regional salesperson. (Compl. ¶ 27). Since the CEO's friend was to work in Arizona, Plaintiff claims that Oliver stated that he would handle the negotiations of his compensation. Id. at ¶ 29. Soon after, Plaintiff discovered that **[*30]** the male friend was given a higher compensation package than Plaintiff, despite Plaintiff having better qualifications and Plaintiff being his supervisor. Id. at ¶ 30. Plaintiff also claims that, during her time at Zaio, Mr. Oliver played an active role in all Human Resources matters. (Nelligan Cert. ¶ 11). Plaintiff does not give a specific date, but claims that, at some point during her employment, the company sent out an announcement that all Human Resources matters, including the hiring of employees, changes in compensation, changes in job descriptions, and other matters required the approval of Mr. Oliver. Id.

Plaintiff's allegations regarding Oliver are insufficient to establish personal jurisdiction over him in New Jersey. Specifically, Plaintiff fails to establish (1) that Oliver purposefully directed his activities at the forum state, or (2) that Oliver could be individually liable for his actions. See *Burger King Corp., 471 U.S. at 472*; see also *Acteon, 2006 U.S. Dist. LEXIS 27584*. Importantly, Plaintiff never alleges that she was located in New Jersey during any of their alleged conversations.

Indeed, even if all of the communications between Oliver and Plaintiff occurred **[*31]** when Plaintiff was located in New Jersey, those would be insufficient to establish personal jurisdiction. Such communications are a necessary part of any supervisory job, and as aforementioned, "communicating with an employee who happens to work in New Jersey cannot be said to show that the supervisors purposefully directed their activities at New Jersey." *Bangura, 2010 U.S. Dist. LEXIS 59450, at *10*.

Plaintiff wants this Court to consider Oliver's contacts with New Jersey made in his corporate capacity. As aforementioned, New Jersey case law suggests that actions made in a corporate capacity can be considered in a personal jurisdiction analysis "if the facts alleged support[] individual liability." *Acteon, 2006 U.S. Dist. LEXIS 27584, at *11*. However, the evidence and allegations presented are insufficient to hold Oliver personally liable for the relevant causes of action in this case. Specifically, the Plaintiff states that Oliver was at some point responsible for changes in compensation at Zaio, but fails to allege that he was involved in determining her compensation, or that he was even aware of her compensation as compared to other employees at the company. Compare *2006 U.S. Dist. LEXIS 27584, at *12* (stating **[*32]** that because the plaintiff alleged that the individual defendants were "directly involved in directing [the defendant corporation] to take such actions complained of, and themselves contributed to the infringement by taking an active part and providing the plans and decisions which effected the defendant corporation's actions," the plaintiff has sufficiently pled facts supporting claims of individual liability against the individual defendants). As such, this defendant's individual actions taken in his corporate capacity will not be sufficient to establish jurisdiction in New Jersey.

Accordingly, for the foregoing reasons, the Court concludes that Plaintiff has not alleged sufficient minimum contacts with the State of New Jersey by any of the individual defendants. The Court, therefore, need not engage in a fair play and substantial justice analysis, and concludes that there is insufficient basis for exercising personal jurisdiction over these defendants.

### III. Conclusion

Defendants' motion to dismiss is granted and an appropriate Order shall follow.

/s/ Freda L. Wolfson

2011 U.S. Dist. LEXIS 28628, *32

Honorable Freda L. Wolfson

Dated: March 21, 2011

---

**End of Document**