# EXHIBIT E

✚ Positive

As of: December 22, 2025 4:55 PM Z

## *Nicholas v. Saul Stone & Co. LLC*

United States District Court for the District of New Jersey

June 30, 1998, Decided ; June 30, 1998, Filed; June 30, 1998, Entered

Civil No: 97-860(AET)

**Reporter**

1998 U.S. Dist. LEXIS 22977 *; 1998 WL 34111036

RICHARD NICHOLAS, LYNN NICHOLAS. ROBERT M. BLACKBURN, CHERYL S. BLACKBURN, On Behalf of Themselves and On Behalf of the Class of All Others Similarly Situated, Plaintiffs, v. SAUL STONE & COMPANY LLC F/K/A SAUL STONE AND COMPANY, et. al, Defendants.

**Notice:  [*1]**  NOT FOR PUBLICATION

**Disposition:** Various motions of defendants to dismiss plaintiffs' complaint granted, defendants' motion for *Rule 11* sanctions denied and this case closed.

# LexisNexis® Headnotes

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Challenges

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > General Overview

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

## *HN1* In Personam Actions, Challenges

When a defendant challenges the court's in personam jurisdiction, the plaintiff must show that the defendant had sufficient contacts with the forum. Where the issue is presented in a motion to dismiss, the court must accept as true the allegations in the complaint and resolve disputed issues of fact in favor of the plaintiff.

Civil Procedure > ... > Jurisdiction > Jurisdictional Sources > General Overview

Civil Procedure > ... > Jurisdiction > In Rem & Personal Jurisdiction > General Overview

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > General Overview

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Long Arm Jurisdiction

Civil Procedure > ... > Federal & State Interrelationships > Choice of Law > General Overview

## *HN2* Jurisdiction, Jurisdictional Sources

Generally, the law of the state in which the district court sits governs whether the district court may assert personal jurisdiction over a nonresident defendant. *Fed. R. Civ. P. 4(e)*. A federal court sitting in New Jersey, therefore, may exercise jurisdiction over any person who would be subject to the jurisdiction of the courts of the state of New Jersey. *Fed. R. Civ. P. 4(e)*. New Jersey's long arm statute, N.J. Ct. R. 4:4-4(c)(2), allows a court to exercise personal jurisdiction over non-resident defendants to the fullest extent permitted by the *Due Process Clause of the Fourteenth Amendment to the United States Constitution*.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > General Overview

Civil Procedure > ... > Jurisdiction > In Rem & Personal Jurisdiction > General Overview

## *HN3* In Rem & Personal Jurisdiction, In Personam Actions

Personal jurisdiction over defendants does not exist simply because they are agents or employees of organizations which presumably are amenable to personal jurisdiction. The law is clear that a corporate officer or agent who has contact with the forum state only with regard to the performance of corporate duties does not thereby become subject to jurisdiction in his or her individual capacity. Further, a person generally acting as an agent on behalf of a corporation is not individually subject to personal jurisdiction merely based on his actions in a corporate capacity. Each defendant's contacts with the forum state must, therefore, be evaluated individually.

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

### HN4 Defenses, Demurrers & Objections, Motions to Dismiss

The court cannot dismiss an action under *Fed. R. Civ. P. 12(b)(6)* unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims as plead which would entitle the plaintiff to relief. The factual allegations raised in the complaint must be assumed to be true. The complaint should be construed liberally in the plaintiff's favor, giving that party the benefit of all fair inferences which may be drawn from the allegations. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

Business & Corporate Compliance > Governments > Agriculture & Food > Commodity Exchange Act Governments > Agriculture & Food > Commodity Exchange Act

Governments > Agriculture & Food > General Overview

### HN5 Agriculture & Food, Commodity Exchange Act

The Commodity Exchange Act (CEA), *7 U.S.C.S. § 1 et seq.*, creates a private cause of action in limited circumstances for both direct violations of the CEA and aiding and abetting violations of the CEA.

Business & Corporate

Compliance > Governments > Agriculture & Food > Commodity Exchange Act Governments > Agriculture & Food > Commodity Exchange Act

Securities Law > Commodities Futures Trading > Future Delivery

Governments > Agriculture & Food > General Overview

### HN6 Agriculture & Food, Commodity Exchange Act

Under *7 U.S.C. § 25(a)(1)* of the Commodity Exchange Act, *7 U.S.C.S. § 1 et seq.*, a primary violator must be the "such person" who commits one of the enumerated acts in subsections (A)-(D); in other words defendants must have provided plaintiffs with trading advice for a fee, made any contract of sale of any commodity for future delivery or accepted the deposit of money, securities, or property in connection with any order to make such contract; or sold to or accepted the order for the purchase or sale of or interest or participation in a commodity pool. In order to establish aider and abettor liability, a plaintiff must be in one of the four above stated relationships with the defendant.

Commercial Law (UCC) > Sales (Article 2) > Form, Formation & Readjustment > General Overview

Contracts Law > Third Parties > Beneficiaries > Claims & Enforcement

Contracts Law > Third Parties > General Overview

Contracts Law > Third Parties > Beneficiaries > General Overview

Contracts Law > ... > Beneficiaries > Types of Third Party Beneficiaries > General Overview

Contracts Law > ... > Beneficiaries > Types of Third Party Beneficiaries > Intended Beneficiaries

### HN7 Sales (Article 2), Form, Formation & Readjustment

In New Jersey, a third party beneficiary may sue upon a contract made for his or her benefit without being privy to the contract. The standard for determining third-party beneficiary status is whether the contracting parties intended that a third party should receive a benefit

which might be enforced in the courts. Absent such a conclusion derived from the contract or surrounding circumstances, a third party has no cause of action despite the fact that it may derive an incidental-benefit from the contract's performance. When considering the intent of the contracting parties, however, it is not necessary that an intended beneficiary be identified when the contract containing the promise is made, nor is it necessary for the promisee's obligation to the intended beneficiary to be in existence at the formation of the contract. The "real test" in determining if a party is a third-party beneficiary to a contract is whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts.

Business & Corporate Compliance > Governments > Agriculture & Food > Commodity Exchange Act
Governments > Agriculture & Food > Commodity Exchange Act

Governments > Agriculture & Food > General Overview

**_HN8_ Agriculture & Food, Commodity Exchange Act**

Courts hold that _7 U.S.C.S. § 22_ of the Commodity Exchange Act, _7 U.S.C.S. § 1 et seq._, does not provide any private remedy for purported violations of Commodities Futures Trading Commission Regulations and the National Futures Association Bylaws and rules.

Securities Law > ... > Civil Liability > Fraudulent Interstate Transactions > General Overview

Securities Law > Blue Sky Laws > Offers & Sales

**_HN9_ Civil Liability, Fraudulent Interstate Transactions**

_N.J. Stat. Ann. § 49:3-71_ of the New Jersey Uniform Securities Law, _N.J. Stat. Ann. § 49:3-47 et seq._, requires that an offender must offer or sell securities to the aggrieved purchaser of those securities, or "materially aid" in the sale of those securities. To be a "seller" of securities the defendant must pass title to the security to the plaintiff, or defendant must solicit plaintiff to purchase the security. Mere allegations that the defendant's participation in the transaction was a substantial factor in causing the sale to occur is

insufficient to establish that the defendant is a statutory seller. To establish liability on the part of a broker-dealer for materially aiding in the sale of a security, the plaintiff must demonstrate that the broker-dealer's involvement in the sale is "considerable, significant, or substantial."

Torts > ... > Multiple Defendants > Concerted Action > Civil Aiding & Abetting

Torts > Negligence > General Overview

Torts > Procedural Matters > Multiple Defendants > General Overview

**_HN10_ Concerted Action, Civil Aiding & Abetting**

A person is liable for harm resulting to a third person from the conduct of another when he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the others so to conduct himself. Courts recognize the definition as setting forth the standard for civil aiding and abetting.

Business & Corporate Law > ... > Causes of Action & Remedies > Breach of Fiduciary Duty > General Overview

Governments > Fiduciaries

Torts > Intentional Torts > Breach of Fiduciary Duty > Elements

Business & Corporate Law > Agency Relationships > Fiduciaries > General Overview

Torts > Intentional Torts > Breach of Fiduciary Duty > General Overview

**_HN11_ Causes of Action & Remedies, Breach of Fiduciary Duty**

Under New Jersey Law, a confidential or fiduciary relationship encompasses all relationships whether legal, natural, or conventional in their origin, in which confidence is naturally inspired, or in fact, reasonably exists. A fiduciary, therefore is a person with a duty to act primarily for the benefit of another. For a breach of fiduciary duty claim to succeed, plaintiff must show that either the particular relationship presumes fiduciary duties, or that the particular facts indicate that within the

particular relationship, fiduciary duties have arisen.

Business & Corporate
Compliance > Governments > Agriculture &
Food > Commodity Exchange Act
Governments > Agriculture & Food > Commodity
Exchange Act

Business & Corporate Law > Agency
Relationships > Fiduciaries > General Overview

Governments > Fiduciaries

### HN12 Agriculture & Food, Commodity Exchange Act

Neither federal commodities laws, nor the National Futures Association's Rules or Bylaws, give rise to a relationship of trust and dominance so as to establish a fiduciary relationship.

Torts > ... > Duty > Affirmative Duty to
Act > Creators of Foreseeable Peril

Torts > Negligence > General Overview

Torts > ... > Elements > Duty > General Overview

Torts > ... > Elements > Duty > Foreseeability of
Harm

### HN13 Affirmative Duty to Act, Creators of Foreseeable Peril

In order to state a claim for negligence, a plaintiff must first establish that a duty is owed to the plaintiff by a defendant. The question of whether a duty exists is a matter of law properly decided by the court, and is largely a question of fairness and policy. If the court finds no duty exists, there can be no action for negligence. A duty of care exists when an actor creates an unreasonable risk of foreseeable harm or when such a duty is judicially imposed by policy considerations. In order for a court to find the existence of a duty, the court must make a value judgment, based on an analysis of public policy, that the actor owed the injured party a duty of reasonable care. That value judgment requires a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution.

Antitrust & Trade Law > ... > Private
Actions > Racketeer Influenced & Corrupt
Organizations > General Overview

Criminal Law & Procedure > Preliminary
Proceedings > Entry of Pleas > General Overview

Criminal Law &
Procedure > ... > Racketeering > Racketeer
Influenced & Corrupt Organizations Act > General
Overview

### HN14 Private Actions, Racketeer Influenced & Corrupt Organizations

_18 U.S.C.S. § 1962(c)_, found in the Racketeer Influenced and Corrupt Organizations Act (RICO), _18 U.S.C.S. § 1961 et seq._, requires a plaintiff to plead: 1) the existence of an enterprise whose activities affect interstate commerce; 2) that defendants participated in the conduct of the affairs of the enterprise; and 3) that the participation took the form of racketeering activities. Plaintiffs must plead that they were injured in their business or property by a violation of _18 U.S.C.S. § 1962(c)_. Liability under _§ 1962(c)_ only attaches to persons who participate in the operation or management of the enterprise and may not be imposed on one who merely carries on or participates in an enterprise. Rather, one must have some part in directing those affairs. Mere rendering professional services does not constitute participation in the direction of the corporation to which the services are provided. There must be a nexus between the person and the conduct in the affairs of an enterprise. The operation or management test goes to that nexus.

Antitrust & Trade Law > ... > Private
Actions > Racketeer Influenced & Corrupt
Organizations > General Overview

Criminal Law & Procedure > ... > Inchoate
Crimes > Conspiracy > Elements

Criminal Law & Procedure > ... > Inchoate
Crimes > Conspiracy > General Overview

Criminal Law &
Procedure > ... > Racketeering > Racketeer
Influenced & Corrupt Organizations Act > General
Overview

### HN15 Private Actions, Racketeer Influenced &

**Corrupt Organizations**

Conspiracy to violate any other provision of *18 U.S.C.S. § 1962*, found in the Racketeer Influenced and Corrupt Organizations Act (RICO), *18 U.S.C.S. § 1961 et seq.*, is a separate RICO violation. To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose. A defendant must knowingly agree to participate in the enterprise through a pattern of racketeering. Additional elements include agreement to commit predicate acts and knowledge that the acts were part of a pattern of racketeering activity. A *§ 1962(d)* claim can exist in the absence of a viable claim under *18 U.S.C.S. § 1962(c)*. However, liability is limited to those who conspire to operate or manage an enterprise, and does not extend to those who conspire with someone who is operating or managing the enterprise.

> Contracts Law > ... > Consideration > Enforcement of Promises > General Overview

> Torts > Business Torts > Fraud & Misrepresentation > General Overview

> Contracts Law > Contract Formation > Consideration > General Overview

**HN16** **Consideration, Enforcement of Promises**

Under New Jersey law, the elements of civil fraud are: 1) the making of a misrepresentation of material fact; 2) which is made with the knowledge of its falsity; 3) that plaintiffs rely upon to their detriment. There can be no liability for misrepresentations based on failure to disclose unless a duty to disclose exists.

> Criminal Law & Procedure > ... > Inchoate Crimes > Conspiracy > Elements

> Torts > ... > Concerted Action > Civil Conspiracy > General Overview

> Criminal Law & Procedure > ... > Inchoate Crimes > Conspiracy > General Overview

**HN17** **Conspiracy, Elements**

A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong or injury upon another, and an overt act that results in damage. The gist of the claim is not the unlawful agreement, but the underlying wrong which, absent the conspiracy, would give a right of action. In order to show civil conspiracy, an act must be committed by at least one of the co-conspirators towards the fulfillment of the conspiracy, and the action must cause some injury to the plaintiff. A conspiracy need not be proven directly, but rather can be inferred from the circumstances.

> Antitrust & Trade Law > Consumer Protection > General Overview

> Securities Law > Postoffering & Secondary Distributions > General Overview

> Securities Law > Blue Sky Laws > Offers & Sales

**HN18** **Antitrust & Trade Law, Consumer Protection**

The New Jersey Consumer Fraud Act, *N.J. Stat. Ann. § 56:8-1 et seq.*, does not apply to the sale of securities.

> Civil Procedure > Attorneys > General Overview

> Civil Procedure > Parties > Pro Se Litigants > General Overview

> Civil Procedure > Parties > Pro Se Litigants > Pleading Standards

> Civil Procedure > ... > Eligibility for Sanctions > Parties Subject to Sanction > Self Represented Litigants

> Civil Procedure > Sanctions > Baseless Filings > General Overview

**HN19** **Civil Procedure, Attorneys**

Pursuant to *Fed. R. Civ. P. 11(b)*, attorneys and pro se litigants must comply with certain standards of propriety. Where an attorney, law firm, or litigant has failed to comply with *Rule 11(b)*, a court may, after notice and a reasonable opportunity to respond, impose sanctions.

However, *Rule 11* is intended for only exceptional circumstances. In deciding whether sanctions are appropriate, the court should avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted.

Civil Procedure > Sanctions > Baseless Filings > General Overview

Legal Ethics > Sanctions > General Overview

*HN20* **Sanctions, Baseless Filings**

The reasonable inquiry element of *Fed. R. Civ. P. 11* is measured by an objective standard of reasonableness under the circumstances. Subjective good faith on the part of the attorney is insufficient to avoid sanctions. The court must use its own discretion to set proper sanctions under *Rule 11*, which may or may not include attorney's fees. Sanctions are imposed under *Rule 11* only to the extent necessary to deter unfounded claims. The rule is not intended as a punishment. The court should impose the least sanction necessary to serve as an adequate deterrence.

**Counsel:** For RICHARD NICHOLAS, LYNN NICHOLAS, ROBERT M. BLACKBURN, CHERYL S. BLACKBURN, plaintiffs: EDWARD M. BERNSTEIN, LAWRENCEVILLE, NJ.

For SAUL STONE & COMPANY LLC, FIRST OPTIONS OF CHICAGO, INC., LFG, LLC, ING (U.S.) SECURITIES FUTURES & OPTIONS, INC., CLARENCE DELBRIDGE, III, THOMAS H. STONE, defendants: NOLA R. BENCZE, PARKER, MCCAY & CRISCUOLO, PA, MARLTON, NJ.

For MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., defendant: DAVID J. LIBOWSKY, ESQ., BRESSLER, AMERY & ROSS, FLORHAM PARK, NJ.

**Judges:** ANNE E. THOMPSON, CHIEF JUDGE.

**Opinion by:** ANNE E. THOMPSON

# Opinion

*THOMPSON, Chief Judge*

This matter comes before the Court on the motions of various defendants to dismiss plaintiffs' complaint pursuant to *Fed. R. Civ. P. 12(b)(2)* and *12(b)(6)* as well as defendants' motion for sanctions pursuant to *Fed. R. Civ. P. 11*. This matter was decided after oral argument held on June 9, 1998. For the reasons stated below, plaintiffs' complaint will be dismissed in its entirety and defendants's motion for sanctions will be denied.

**[*2] BACKGROUND**

**1. The Parties**

The instant action was commenced by certain investors against the named defendants, most of whom are Futures Commission Merchants or broker-dealers with which the Sigma Entities conducted transactions between February of 1991 and April of 1995. The named defendants in the complaint consist of 11 distinct Futures Commission Merchants ("the FCMs"), the National Futures Association ("NFA") and two individuals who are officers of one of the FCMs and also hold unsalaried positions on certain NFA committees. In addition, plaintiffs seek to assert claims against various unnamed employees of the FCMs. ("FCM EMPLOYEES").

Plaintiffs in this case are a number of individuals who invested money in the "Ponzi" scheme of "Chuckles" Kohli and the Sigma Entities and lost some or all of the funds they invested due to the fraud of the Sigma principals. Plaintiffs are contending that the actions or inactions of defendants in this case are actionable and expose them to liability as well.

The majority of the defendants in this case are Futures Commission Merchants, institutional clearing firms which open and clear customer accounts and hold customer funds **[*3]** within the commodities industry. Defendant Saul Stone was an Illinois corporation and is now an Illinois limited liability company registered with the Commodity Futures Trading Commission under Section 4f of the CEA as a Futures Commission Merchant. Defendant Saul Stone is engaged in the business of brokerage in connection with the sale of commodities and commodity futures contracts and is a clearing member of the Chicago Mercantile Exchange as well as a member of the National Futures Association. Also named as a defendant is John Doe, an individual alleged to be an employee or agent of defendant Saul Stone who acted under the titles of "account executive," "registered representative,"

"associated person," "Commission broker," and "introducing broker" for Saul Stone and was acting within the actual or apparent scope of his employment or agency.

Defendant First Option was a Delaware corporation registered with the CFTC under Section 4f of the CEA engaged in the business of brokerage in connection with the sale of commodities and commodity futures contracts. Defendant First Options is a clearing member of the Chicago Mercantile Exchange as well as a member of the National Futures Association. [*4] Also named as a defendant is Joan Doe, an individual employed by or an agent of defendant acting within the scope of her employment or agency.

Defendant Smith Barney was a Delaware corporation engaged in the business of brokerage in connection with the sale of commodities and commodity futures contracts. Smith Barney is a clearing member of the Chicago Board of Trade and the National Futures Association. Also named as a defendant is Smith Barney's employee and/or agent Joseph Doe acting within the scope of his employment or agency.

Defendant Linnco was an Illinois corporation and is now an Illinois limited liability company engaged in the business of brokerage in connection with the sale of commodities and commodity futures contracts. Linnco is a clearing member of the Chicago Mercantile Exchange as well as a member of the National Futures Association. Also named as a defendant is Linnco's employee and/or agent Jane Doe.

Defendant GNI, Incorporated was an Illinois corporation registered with the CFTC under Section 4f and engaged in the business of brokerage in connection with the sale of commodities and commodity futures. GNI is a clearing member of the Chicago Board of Trade as [*5] well as a member of the NFA. Defendant GNI Limited was a foreign broker within the meaning of 17 CFR Sections 15 through 17, engaged in the business of brokerage in connection with the sale of commodities and commodity futures contracts. Plaintiffs contend that GNI Incorporated and GNI Limited are part of a group or family of companies that hold themselves out to the public and operate under the designation of GNI for all purposes. Also named as a defendant is GNI's employee and/or agent "Jack Doe".

Defendant Dean Witter was a Delaware corporation registered with the CFTC under Section 4f of the CEA as a FCM and is engaged in the business of brokerage in connection with the sale of commodities and commodity futures contracts. Defendant Dean Witter is a clearing member of the Chicago Mercantile Exchange as well as a member of the NFA. Also named as a defendant is Jeff Doe, an employee and/or agent of defendant Dean Witter.

Defendant ING was an Illinois corporation registered with the CFTC under Section 4f of the CEA as a FCM and is engaged in the business of brokerage in connection with the sale of commodities and commodity futures contracts. Defendant ING is a clearing member of [*6] the Chicago Board of Trade as well as a member of the NFA. Also named as a defendant is Jean Doe, an employee and/or agent of defendant ING.

Defendant Merrill was a Delaware corporation registered with the CFTC under Section 4f of the CEA engaged in the business of brokerage in connection with the sale of commodities and commodity futures contracts. Defendant Merrill is a clearing member of the Chicago Board of Trade as well as a member of the NFA. Also named as a defendant is James Doe, an employee and/or agent of Merrill.

Defendant Prudential was a Delaware corporation registered with the CFTC under Section 4f of the CEA and engaged in the business of brokerage in connection with the sale of commodities and commodity futures contracts. Defendant Prudential is a clearing member of the Chicago Board of Trade as well as a member of the NFA. Also named as a defendant is Jill Doe, an employee and/or agent of defendant Prudential. P25.

Defendant Rosenthal was an Illinois corporation and is now an Illinois limited partnership registered with the CFTC under Section 4f of the CEA and engaged in the business of brokerage in connection with the sale of commodities and commodity futures contracts. [*7] Defendant Rosenthal is a clearing member of the Chicago Mercantile Exchange as well as a member of the NFA. Also named as a defendant is Jill Doe, an employee and/or agent of defendant Rosenthal. P27.

Defendant E D & F was a Delaware corporation registered with the CFTC under Section 4f and engaged in the business of brokerage in connection with the sale of commodities and commodity futures contracts. Defendant E D & F is a clearing member of the Chicago Mercantile Exchange as well as a member of the NFA. Also named as a defendant in this action is Joel Doe, an employee and/or agent of defendant E D & F. P29.

Defendants Saul Stone, First Options, Smith Barney, Linnco, GNI Incorporated, Dean Witter, ING, Merrill,

Prudential, Rosenthal and E D & F are all registered with the CFTC as a FCM and are referred to collectively as "FCMs". Defendants John Doe, Joan Doe, Jack Doe, Joseph Doe, Jane Doe, Jake does Jeff Ode, Jean Doe, James Doe, Jill Doe, and Joel Doe each of whom are employees or his or her respective defendant FCMs are collectively referred to as FCM EMPLOYEES.

Defendant the National Futures Association is a Delaware corporation which is a Registered Futures Association pursuant [*8] to *7 U.S.C. § 17* of the CEA that transacts business as the future's industry's self-regulatory organization It was established in 1976 to become the futures industry's self-regulatory organization under *7 U.S.C. § 21*. As a self-regulatory organization, the NFA performs screening to determine fitness to become or remain an NFA Member, establishes and enforces rules and standards, audits and investigates members and conducts arbitration of futures related disputes. No person or firm may engage in any business which involves buying or selling futures contracts for the public without being an NFA member. P34. Plaintiffs in this case are seeking to recover from defendant NFA alleging that the NFA breached contractual(Count Two) and fiduciary(Count VII) duties which it owed to these plaintiffs and that the NFA "acted in bad faith in failing to enforce its own Bylaws and Rules as set forth in the NFA manual pursuant to *7 U.S.C. § 21(b)(8)*. (Count III)

Also named as defendants in this action are Clarence Delbridge and Thomas Stone. Defendant Clarence Delbridge, a principal of Saul Stone, is a member of the NFA as an associated [*9] person and an elected member of the Regional Business Conduct Committees of the NFA for the Central Region. P32. Defendant Thomas Stone was employed as Chairman of the Board of Saul Stone, is a member of the NFA as a Floor Broker and serves as an elected member of the Advisory Committee of the NFA for Futures Commission Merchants. P33. Plaintiffs contend that in their positions, Delbridge and Stone acted as agents for both Saul Stone and the NFA.

Mr. Stone is Chairman of the Board of Saul Stone & Co. He has been employed by Saul Stone for thirty two years and has worked out of Saul Stone's offices at 30 South Wacker Drive, Chicago, Illinois since 1982. He has been a domiciliary of Illinois and has lived in Illinois for at least thirty one years.

Mr. Delbridge is an Executive Vice-President of Saul Stone & Co. He has been employed by Saul Stone

since 1987 and has worked out of Saul Stone's offices at 30 South Wacker Drive in Chicago, Illinois during his employment. Mr. Delbridge has been a domiciliary of Illinois since at least 1987. From February 1988 until March 15, 1995, Mr. Delbridge was a member of the NFA's Business Conduct Committee for the Central Region which was comprised [*10] of the following states: Alabama, Arkansas, Florida, Georgia, Illinois, Indiana, Iowa, Kentucky, Michigan, Mississippi, Ohio, Tennessee, Texas and Wisconsin. The NFA Business Conduct Committee for the Cental Region reviewed disciplinary actions brought to their attention by NFA staff members for improprieties alleged to have occurred in the Central Region. On March 15, 1994 the NFA restructured the Business Conduct Committee and its function. As of that date, the Committee is no longer engaged in fact-finding or imposing discipline but rather its role is now limited to determining whether regulatory actions should be brought against those members before the Hearing Committee. The Hearing Committee is now the body which conducts fact-finding and imposes discipline.

## 2. Other Relevant Entities and Individuals

Sigma, Inc. is a Delaware corporation that was engaged in the solicitation, pooling and investment of clients' funds in the securities, commodities futures and options markets.

Chuckles Kohli was one of two directors and a principal officer of Sigma and other related enterprises. On March 6, 1996, Kohli plead guilty to federal charges of commodities fraud, wire fraud [*11] and income tax evasion. *United States v. Chuckles Kohli*, Criminal No. 96-132(AET).

Ramchandran was also one of two directors and a principal officer of Sigma. He is currently the subject of investigation by the United States Attorney's Office.

## 3. Plaintiffs' Allegations

### A. General Allegations

The plaintiffs' Amended Complaint charges generally, that from as early as 1989 and until April 12, 1995, Kohli and Ramchandran, the sole shareholders and officers of the Sigma entities, solicited, on Sigma's behalf, approximately $ 41 million from 400 investors by falsely holding themselves out as experienced commodities

and options traders. The majority of these funds was placed with the defendants. The Amended Complaint alleges that Kohli and Ramchandran solicited these funds from members of the public, including plaintiffs, to invest in commodities for future delivery as well as other commodities, future contracts and commodity options. Kohli and Ramchandran conducted this activity using the business names of Sigma, Inc.; Geronimo, Inc.; Vol Partners, L.P.; and Savid Group. The investor plaintiffs were informed their funds would be pooled and used to trade in the currency **[*12]** and other markets and signed Powers of Attorney giving Kohli, Ramchandran and the Sigma Entities discretionary authority over investing funds and trading decisions. Throughout the relevant time period, Kohli, Ramchandran and Sigma were engaged in fraudulent activity commonly referred to as a "Ponzi" scheme. A Ponzi scheme is one in which early investors who seek to withdraw their funds or their purported profits are paid with funds invested by subsequent investors, and ultimately the later funds are lost due to the fraud of the principals.

The Amended Complaint alleges generally, with respect to the named defendants, that Sigma opened one or more accounts with each of the defendants and entered trades through these accounts. The defendants aided in the execution of trades and sent confirmations and monthly account statements reflecting the transactions which had been executed. The Amended Complaint alleges that defendants never conducted due diligence or made inquiries with respect to the financial condition of Sigma or the source of the deposited funds. The Amended Complaint further alleges that the defendants never inquired into the status of the CFTC registration and NFA membership **[*13]** of Kohli, Ramchandran or Sigma and that defendants knew or should have known of the "Ponzi" scheme being perpetrated by Kohli and Ramchandran. The Amended Complaint asserts that as a result of the fraudulent "Ponzi" scheme, in which defendants participated, the investor plaintiffs lost approximately $ 55 million.

More specifically, plaintiffs allege that along with Kohli, Chandran and the Sigma Entities, the defendants "knowingly, with intent to deceive, with reckless disregard for the truth or conscious avoidance of the truth, in bad faith, withheld and/or failed to disclose" to plaintiff investors the following: 1) that Kohli, Chandran and the Sigma Entities were not appropriately registered or licensed; 2) that Kohli, Chandran and the Sigma Entities were not members of the NFA; 3) that the securities solicited and sold to plaintiffs were not registered as securities under state or Federal laws or regulation; 4) that Kohli and Chandran were not investing all funds obtained from the plaintiffs in commodity futures contracts or other legitimate investments, but were also using said funds to pay phony "profits" and for other business and personal purposes; 5) that defendant FCMs and **[*14]** FCM EMPLOYEES earned commissions on every commodity futures contract trade made through the FCMs; 6) that defendant FCMs had not followed the rules and regulations of the CFTC and the NFA Manual concerning disclosure of information as required to be made to third party investors; 7) that some of the plaintiffs' funds were going to repay defendant FCMs for debit balances; and 8) that Kohli and Chandran had very little knowledge about commodity futures trading, did not maintain accurate and complete records, did not comply with the rules and regulations of the CFTC and the NFA Manual and created fictitious account statements. P90

## B. Sigma's Relationship with Defendants

Plaintiffs' Amended Complaint alleges that Kohli, Chandran and the Sigma Entities approached each of the defendant FCMs some time between January 1, 1989 and April 12, 1995 to place orders to purchase or sell futures contracts. P64. Plaintiffs further allege that, "Once Kohli, Chandran and the Sigma Entities secured the initial core of plaintiff investors, they induced additional persons to invest through the Sigma Entities' false appearance of legitimacy. The appearance of legitimacy stemmed from the fact that **[*15]** although only a properly registered and licensed FCM or CPO may hold customers' money in an omnibus account, the FCMs allowed the Sigma Entities to deposit customers' funds in an account with the FCMs even though they were not registered as an FCM or a CPO." P65

Plaintiffs contend that during the relevant time period, the FCM defendants opened Special Accounts for investment in commodities for Kohli and Chandran through business names of Sigma, Inc., Geronimo, Inc., Vol Partners, L.P. and Savid Group and these Special Accounts were all corporate and/or partnership accounts whose forms were completed by Kohli. PP68, 69. Plaintiffs contend that in connection with opening a new account, the FCMs should have required the Sigma Entities to submit certain documentation and information, including financial statements and/or information of the principals of the company as well as certification indicating who from the company was authorized to conduct trades and transfers of money in

and out of the account, but that the defendant FCMs failed to take such action. P69.

According to plaintiffs' Amended Complaint, the financial information which Kohli provided to the FCMs on account forms was **[*16]** inconsistent with the magnitude of the trading activity conducted in the accounts and the substantial losses sustained in the accounts over the relevant period and the volume of trading and trading losses as sustained in the accounts frequently exceeded the equity in the accounts and the net worth of the Sigma entities as shown on the financial information submitted to the defendant FCMs. P70. Plaintiffs assert that "in light of the material discrepancies between the reported financial information of the Sigma Entities, the volume of trading conducted in the accounts, the substantial losses which were being sustained in the accounts and the number of different individuals who were listed with trading authority on the accounts, defendant FCMs were aware that the accounts were being operated as commodity pools comprised of funds solicited from third party investors, therefore requiring registration pursuant to CFTC regulations and NFA rules." Plaintiffs assert that the failure of the FCMs to perform minimal diligence with regard to the background of Kohli, Chandran and the Sigma entities was reckless and without regard for the truth. P71.

At various times, the accounts of Kohli and **[*17]** Chandran under the business names of the Sigma Entities carried lower balances with the defendant FCMs than necessary to meet the withdrawal demands of the plaintiffs and at times carried negative balances. According to plaintiffs, at these points Kohli and Chandran had to solicit additional funds from new investors so that the new investors' money could be placed in the accounts, thus concealing from the plaintiffs the true diminished value of their accounts. P85. Plaintiffs contend that defendant FCMs and FCM EMPLOYEES knew or should have known that most of the funds in the accounts of the Sigma Entities during the period of January 1, 1989 and April 12, 1995 had been obtained by Kohli and Chandran from third party investors by false pretenses and without proper regard to the requirements of the CEA, CFTC Regulations and the NFA Manual concerning commodity pool investments. P86. Plaintiffs also contend that defendants knew or should have known that the account of the Sigma Entities contained funds that Kohli, Chandran and the Sigma Entities were soliciting from the plaintiff class members who were innocent investors who believed their money was being pooled legally and

properly invested **[*18]** in the commodities market. P88.

## C. Disclosure Documents, Registrations Requirements and "Due Diligence"

Plaintiffs' Amended Complaint also contains allegations that the defendants failed to ascertain whether the proper documents were filed or delivered to plaintiffs. Plaintiffs contend that the defendant FCMs and FCM EMPLOYEES never received from the plaintiffs an acknowledgment for receipt of the required Disclosure Document pursuant to *17 CFR § 4.24* from Kohli, Chandran and the Sigma Entities, nor a Written Statement explaining why a Disclosure Document is not required pursuant to NFA Compliance Rule 2-8(e). P77. Plaintiffs also assert that the FCMs and FCM EMPLOYEES did not confirm delivery of the required Disclosure Document by Kohli, Chandran and the Sigma Entities pursuant to *17 CFR § 4.21* of the CFTC Regulations and NFA Compliance Rule 2-13. P79. Plaintiffs also allege, upon information and belief, that the defendant FCMs and FCM EMPLOYEES did not deliver to plaintiffs the required Disclosure Document in the form mandated by *17 CFR § 1.55* and NFA Compliance Rule 2-26. P83.

Plaintiffs claim that the defendant FCMs and FCM EMPLOYEES failed to investigate and know their **[*19]** customers and failed to perform minimum due diligence by not contacting the CFTC and NFA to gather information regarding Kohli, Chandran and the Sigma Entities as the agents for the plaintiffs pursuant to NFA Compliance Rule 20-8a9e. P81. Plaintiffs further contend that the defendant FCMs and FCM EMPLOYEES violated the NFA Articles of Incorporation, Article III, *§ 1(f)* and NFA Bylaw 1101 by carrying accounts, accepting and handling transactions in commodity futures contracts on behalf of non-members of the NFA who were required to be registered with the CFTC and transacting business with an unregistered person pursuant to the statutory makeup of *7 U.S.C. Sections 6d*., 6e., 6k., and 6n. P82.

## D. Allegations Against Saul Stone

Plaintiffs contend that defendant Saul Stone in particular knew or had reason to know of the illicit activities of Kohli, Chandran and the Sigma Entities because of prior involvement in similar "Ponzi" schemes. According to plaintiffs, in September of 1982 defendant Saul Stone received actual notice of a similar "Ponzi" scheme of

fraud and deceitful practices perpetrated through and with the assistance of Saul Stone's offices and personnel. Plaintiffs contend **[\*20]** that this put Saul Stone on notice as to the likelihood and foreseeability of such "Ponzi" schemes developing when it did not diligently supervise the activities of its personnel and when it did not comply with the rules and regulations of the CFTC, CME and NFA. P93. Further, in June of 1985, Saul Stone also received actual notice of a "Ponzi" scheme perpetrated through and with the assistance of its offices and personnel. P94. Plaintiffs contend that the failure of defendant Saul Stone and the other defendant FCMs to properly and diligently train, manage, supervise and investigate the activities of their respective FCM EMPLOYEES as well as Kohli, Chandran and the Sigma Entities, facilitated the occurrence of the activities complained of. P95.

### E. NFA Failure to take Action

Plaintiffs assert that despite the fact that defendant FCMs and FCM EMPLOYEES carried accounts, accepted orders and handled transactions on behalf of parties not members of the NFA - no disciplinary action has been taken by the defendant NFA and no thorough, diligent and vigorous investigative action has been initiated by the NFA concerning the management and conduct of the FCMs and FCM EMPLOYEES. Further, **[\*21]** plaintiffs eontend that the NFA knew or should have known that defendant FCMs were failing to submit certain forms as required by 17 CFR § 17.01 and thus knew or should have known that Kohli was illegally acting as a Third Party Account Controller and took no action. P102. According to plaintiffs' Amended Complaint, the NFA received substantial income due to the trades and therefore, "due to the high volume of income generated by defendant FCMs for the benefit of the NFA, the NFA had an ulterior motive with little or no motivation to conduct a thorough and vigorous disciplinary investigation of the FCMs." P106

### F. FCM Failure to Cease Trading with Sigma

Plaintiffs similarly contend that defendant FCMs failed to cease trading with the Sigma Entities, despite knowledge of its fraudulent activities, because of commissions obtained through such trading. Plaintiffs assert that at various times beginning in 1989, the defendant FCMs authorized and permitted their employees to hold themselves out as agents of their employers and as such accepted orders from Kohli,

Chandran and the Sigma Entities for commodity futures transactions for which they received substantial commissions. P103. **[\*22]** Plaintiffs contend that there were approximately 10,000 trades per month which were excessive under the circumstances, contrary to the best interests of investors and constituted "churning" of the account and due to the high volume of commissions generated by FCM EMPLOYEES the FCMs had little or no motivation to conduct a thorough and vigorous investigation of FCM EMPLOYEES and the activities of Kohli, Chandran and the Sigma Entities. P103.

### G. Improper Transfers

Plaintiffs also contend that $ 710,000 in the Sigma Entities' Special Accounts at certain of the defendant FCMs were improperly transferred by those defendant FCMs upon instructions from Kohli to personal accounts maintained by Kohli. P73. Plaintiffs contend that a total of $ 590,000.00 was transferred from at least one account in the name of Geronimo at defendant Merrill Lynch to Kohli's personal account at Charles Schwab or Dean Witter. P74. Further, according to plaintiffs, $ 80,000 was transferred from a Merrill account in the name of Geronimo to Kohli's personal joint account with his wife at Schwab. P76. Plaintiffs also contend that a transfer in the amount of $ 40,000 was made from a Prudential account in the **[\*23]** name of Sigma to Kohli's personal joint account with his then wife at Schwab. P76.

### H. Involvement of FCM EMPLOYEES

Plaintiffs allege, as stated above, that as a result of the "Ponzi" scheme perpetrated by the Sigma Entities, they lost $ 55 million. Plaintiffs allege, upon information and belief that as of February 28, 1995, reports issued by Kohli and Chandran showed in the aggregate that the commodity pools operated by Kohli and Chandran had assets totaling at least $ 68 million and of this amount $ 55 million was lost through trading activities, and an additional $ 5 million was spent by Kohli and Chandran and $ 11.6 million was returned to investors. P60. Plaintiffs allege, upon information and belief that a portion of the $ 5 million spent by Kohli and Chandran was used to entertain FCM EMPLOYEES including employees of defendant Merrill Lynch at a December 1994 Florida golf trip and employees of defendant First Options at golf outings, football games and other events in either New Jersey or Las Vegas in 1994. P61.

1998 U.S. Dist. LEXIS 22977, *23

Further, with regard to the aforementioned $ 5 million of investor funds plaintiffs assert that some of the funds were used to pay for personal trips to Florida **[*24]** by Steve Kaczmer, who was employed first by defendant Linnco and then by defendant First Options. P62. Further, plaintiffs contend that the funds were used to pay a $ 10,000 per month salary to Kaczmer who, while trading during the day at First Options, traded at night for the Sigma Entities from his home terminal. Kaczmer also received from Kohli the sum of $ 60,000 in the form of a "loan" of which only $ 40,000 was repaid; the remaining balance was "forgiven" by Kohli. P63.

### I. Plaintiffs' Complaint

As a result of the above stated factual scenario, on February 13, 1997 the investor plaintiffs filed an eleven count Complaint against the named defendants. The following causes of action were asserted in the original Complaint: Count One alleges a violation of the Commodities Exchange Act; Count Two alleges a breach of contract under New Jersey common law; Count Three alleges bad faith failure to enforce NFA rules; Count Four alleges a violation of the New Jersey Uniform Securities Law; Count Five alleges violations of the Securities Act of 1933, Count Six alleges violations of the Securities Act of 1934; Count Seven alleges a breach of fiduciary duty; Count Eight asserts negligence; **[*25]** Count Nine alleges a violation of RICO; Court Ten alleges fraud and civil conspiracy; and Court Eleven alleges a violation of the New Jersey Consumer Protection statute. On November 24, 1997, plaintiffs filed their First Amended Class Action Complaint. The Amended Complaint contained the same claims as the original with the exception of Counts Five and Six, which were omitted.

Defendants now move to dismiss plaintiffs' complaint in its entirety for a variety of reasons. Defendant have also moved for the imposition of sanctions pursuant to *Fed. R. Civ. P. 11*.

### DISCUSSION

### 1. Personal Jurisdiction - Defendants Delbridge and Stone

The only specifically identified individual defendants in the instant case are Clarence Delbridge and Thomas Stone. Mr. Delbridge and Mr. Stone are named in the claims for breach of contract, bad faith failure to enforce NFA rules, and breach of fiduciary duties. According to plaintiffs' Amended Complaint, defendants Delbridge and Stone's wrongdoing stems from their dual capacity as (a) executives of Saul Stone & Co., and (b) members of certain National Futures Association committees. The Amended Complaint alleges that the individual defendants **[*26]** are liable to plaintiffs because they failed to detect and report to the NFA various misdeeds of nonparties.

The individual defendants have not consented to the exercise of personal jurisdiction by this Court and they contend that there are no relevant contacts between either Mr. Delbridge or Mr. Stone and this forum and the fact that they are employed by Saul Stone & Company or serve on NFA committees does not create personal jurisdiction over them. They have moved to dismiss the claims against them pursuant to *Fed. R. Civ. P. 12(b)(2)*. As their motion raises issues of this Court's jurisdiction, this Court will address it as an initial matter.

*HN1* When a defendant challenges the court's in personam jurisdiction, the plaintiff must show that the defendant had sufficient contacts with the forum. *Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63(3d Cir. 1984)*. Where the issue is presented in a motion to dismiss, the Court must accept as true the allegations in the complaint and resolve disputed issues of fact in favor of the plaintiff. *Carteret Savings Bank v. Shushan, 954 F.2d 141, 142 n. 1*(3d Cir.) *cert. denied, 506 U.S. 817, 113 S. Ct. 61, 121 L. Ed. 2d 29 (1992).* **[*27]**

*HN2* Generally, the law of the state in which the district court sits governs whether the district court may assert personal jurisdiction over a nonresident defendant. *Fed. R. Civ. P. 4(e)*; *Dent v. Cunningham, 786 F.2d 173, 175 (3d Cir. 1986)*. A Federal Court sitting in New Jersey, therefore may exercise jurisdiction over any person who would be subject to the jurisdiction of the courts of the state of New Jersey. *Fed. R. Civ. P. 4(e)*; *North Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 689*(3d Cir.) *cert. denied, 498 U.S. 847, 112 L. Ed. 2d 101, 111 S. Ct. 133(1990).* New Jersey's long arm statute, Civil Practice Rule 4:4-4(c)(2), allows a court to exercise personal jurisdiction over non-resident defendants to the fullest extent permitted by the *Due Process Clause of the Fourteenth Amendment to the United States Constitution. DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 284*(3d Cir.) *cert. denied, 454 U.S. 1085, 70 L. Ed. 2d 620, 102 S. Ct. 642(1981).*

For the exercise of jurisdiction to conform with the *Fourteenth Amendment*, it must be shown that a defendant has had "minimum contacts" **[\*28]** with the forum state, so that it would be "'reasonable . . . to require the corporation to defend the particular suit which is brought there.'" *World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-292, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980)* (quoting *International Shoe Co. v. State of Washington Office of Unemployment, 326 U.S. 310, 317, 90 L. Ed. 95, 66 S. Ct. 154 (1945)*). There are two grounds for asserting *in personam* jurisdiction. First, the court may find that the defendant has had sufficiently continuous and systematic contacts with the forum to support "general jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1983)*. Second, if the cause of action is related to or arises out of the defendant's activities within the forum, the court may exercise "specific jurisdiction." *Id.*

*HN3* Personal jurisdiction over the defendants does not exist simply because they are agents or employees of organizations which presumably are amenable to personal jurisdiction in this Court. *Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781, 79 L. Ed. 2d 790, 104 S. Ct. 1473(1984)*. **[\*29]** The law is clear that a corporate officer or agent who has contact with the forum state only with regard to the performance of corporate duties does not thereby become subject to jurisdiction in his or her individual capacity. *Forsythe v. Overmyer, 576 F.2d 779, 783-84*(9th Cir.) *cert. denied, 439 U.S. 864, 58 L. Ed. 2d 174, 99 S. Ct. 188(1978)*; *Arkansas Rice Growers v. Alchemy Industries, Inc., 797 F.2d 565(8th Cir. 1986)*. Further, a person generally acting as an agent on behalf of a corporation is not individually subject to personal jurisdiction merely based on his actions in a corporate capacity. *TJS Brokerage & Co. v. Mahoney, 940 F. Supp. 784, 788-89(E.D. Pa. 1996)*. Each defendant's contacts with the forum state must, therefore, be evaluated individually. *See Rush v. Savchuk, 444 U.S. 320, 332, 62 L. Ed. 2d 516, 100 S. Ct. 571(1980)*. *See also PSC Prof. Serv. Group v. American Digital Systems, 555 F. Supp. 788, 791 n.5(E.D. Pa. 1983)* (It is well settled that, absent allegations that the corporate shield is a sham, jurisdiction over the corporation does not subject officers, directors **[\*30]** and shareholders of the corporation to personal jurisdiction). Therefore, this Court must assess the contact of defendants Delbridge and Stone with the forum state in their individual capacities.

In the instant case, plaintiffs have not alleged any contact defendants Delbridge and Stone had with the forum New Jersey. Defendants Delbridge and Stone did not reside in New Jersey, did not visit here, did not own property here or even have any personal contact with the forum state. This Court cannot, therefore, find that defendants have systematic and continuous contacts with New Jersey. Further, defendants Delbridge and Stone never communicated with plaintiffs in New Jersey and never spoke or corresponded with anyone purporting to represent the Sigma entities. Therefore, this court cannot find that defendants Delbridge and Stone took any action by which they purposefully availed themselves of the privilege of conducting activities within the forum state or that would justify haling them into Court in this state. Considering this lack of any allegation that defendants had the requisite minimum contacts in their individual capacities, this Court cannot find that either specific or general **[\*31]** jurisdiction exists over them.

As a final matter, this Court notes that plaintiffs have argued that subsection 25(c) of the Commodity Exchange Act provides this Court with personal jurisdiction over defendants Delbridge and Stone. Subsection 25(c) of the CEA provides, in pertinent part, that "any action brought under subsection (a) of this section may be brought in any judicial district wherein a defendant is found, resides, or transacts business, or in the judicial district wherein any act or transaction constituting the violation occurs." *7 U.S.C. § 25(c)*. However, defendants contend, and this Court agrees that the above-stated provision is a venue provision, not a jurisdictional one, and as such, does not provide this Court with personal jurisdiction over the individual defendants. Therefore, while venue may be appropriate in the District of New Jersey - without an independent basis of personal jurisdiction over defendants, the above stated venue provision cannot provide this Court with such jurisdiction.

## 2. *Fed. R. Civ. P. 12(b)(6)*

*HN4* The court cannot dismiss an action under *Rule 12(b)(6)* unless it appears beyond doubt that the plaintiff can prove **[\*32]** no set of facts in support of the claims as plead which would entitle the plaintiff to relief. *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*. The factual allegations raised in the complaint must be assumed to be true. *Jenkins v. McKeithen, 395 U.S. 411, 421, 23 L. Ed. 2d 404, 89 S. Ct. 1843 (1969)*; *Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993)*. The complaint should be construed liberally in the plaintiff's favor, giving that party the

benefit of all fair inferences which may be drawn from the allegations. *Wilson v. Rackmill, 878 F.2d 772, 775 (3d Cir. 1989)*. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974)*.

### 3. Defendants GNI Incorporated and GNI Limited

This Court notes that defendants GNI Incorporated and GNI Limited filed motions to dismiss the Complaint with regard to them, however as the parties have stipulated to the dismissal of these defendants, and an Order to that effect has been **[*33]** entered, this Court will deny the motions of GNI Incorporated and GNI Limited as moot.

### 4. Count One: The Commodities Exchange Act

Count One of plaintiffs' Amended Complaint alleges a violation of the Commodities Exchange Act by defendant FCMs and FCM employees, asserting that these defendants carried accounts, accepted orders and handled commodity futures contracts for Kohli, Chandran and the Sigma Entities, all non-Members of the NFA, exceeding their authority, as agents for the plaintiffs. P127. Plaintiffs further contend that Kohli, Chandran and the Sigma Entities were a fiction under the CEA of which the FCMs and FCM employees were aware, or with required minimal due diligence would have discovered. P128. In Count One of the Amended Complaint, plaintiffs contend that defendants were both primary violators of the Commodity Exchange Act and aiders and abettors of Commodity Exchange Act violations.

*Section 25* of the Commodity Act provides, in pertinent part, that:

> Any person(other than a contract market, clearing organization of a contract market, licensed board of trade, or registered futures association) who violates this chapter or who willfully aids, abets, **[*34]** counsels, induces, or procures the commission of a violation of this chapter shall be liable for actual damages resulting from one or more of the transactions referred to in subparagraphs (A) through (D) of this paragraph and caused by such violation to any other person--
>
> > (A) who received trading advice from such person for a fee;

> (B) who made through such person any contract of sale of any commodity for future delivery(or option on such contract or any commodity); or who deposited with or paid to such person money, securities, or property(or incurred debt in lieu thereof) in connection with any order to make such contract;
>
> (C) who purchased from or sold to such person or placed through such person an order for the purchase or sale of--
>
> (i) an option subject to section 6c of this title(other than an option purchased or sold on a contract market or other board of trade);
>
> (ii) a contract subject to section 23 of this title, or
>
> (iii) an interest or participation in a commodity pool; or
>
> (D) who purchased or sold a contract referred to in subparagraph (B) hereof if the violation constitutes a manipulation of the price of any such contract or the price **[*35]** of the commodity underlying such contract.

*7 U.S.C. § 25(a)(1)(A)-(D)*. *Section 25(a)(2)* states that, except under certain circumstances not relevant here, "the rights of action authorized by this subsection . . . shall be the exclusive remedies under this chapter available to any person who sustains loss as a result of any alleged violation of this chapter." *7 U.S.C. § 25(a)(2)*. The Commodity Act also provides at *7 U.S.C. § 13c(a)* that:

> Any person who commits, or willfully aids abets, counsels, commands, induces, or procures the commission of a violation of any of the provision of [the Commodity Act], or any of the rules, regulations, or orders issued pursuant to [the Commodity Act], . . . may be held responsible for such violations as a principal.

Therefore, *HN5* the CEA creates a private cause of action in limited circumstances for both direct violations of the CEA and aiding and abetting violations of the CEA.

### A. Direct Violations

Plaintiffs contend that defendants are primary violators of subparagraphs (A), (B) and (C) of *7 U.S.C. § 25(a)(1)*. Plaintiffs first contend **[*36]** that the defendant FCM's provided trading advice to plaintiffs for a fee in violation of subparagraph (A) because they regularly

advised the Sigma entities what they could or could not trade. More specifically, plaintiffs contend that defendants gave advice to guide plaintiffs accounts around margin requirements and to allow Kohli to maximize the number of trades in order to maximize their own commission fees." Plaintiffs contend that this places defendant FCM in the shoes of "such person" listed in subparagraph (A).

As the FCM defendants had no contact with the investor plaintiffs, there is no allegation in the instant case that defendants directly gave plaintiffs advice, rather plaintiffs allege an "agency" theory in which defendants' alleged acts of giving trading advice to Kohli, who is alleged to be plaintiffs' agent, constitutes the giving of advice to plaintiffs in satisfaction of subparagraph (A). Plaintiffs have provided no authority for allowing a *section 25* relationship to be established through an agency theory and there is no indication in the statute indicating the availability of such relief. Further, this Court notes that allowing such a theory in the instant case, **[*37]** where Kohli, although technically the agent of the plaintiff, was clearly not operating in plaintiffs' interest does not seem appropriate.

Subparagraph B of *Section 25(a)(1)* which relates to contracts for sale of commodities for future delivery, will support a cause of action if the plaintiff made the contract of sale through the defendant or deposited with or paid to the defendant money, securities or property in connection with the order to make such a contract. *7 U.S.C. § 25(a)(1)(B)*; *Grossman v. Citrus Assoc. of the New York Cotton Exchange, Inc., 706 F. Supp. 221, 230(S.D.N.Y. 1989)*. Plaintiffs also contend that defendants accepted orders from plaintiffs for futures and options contracts and/or accepted deposits from plaintiffs in violation of subparagaph (B). This argument is based on the theory that as Kohli was the agent of the plaintiffs, accepting trades from him was the equivalent of accepting trades from plaintiffs in violation of *7 U.S.C. § 25(a)(1)(B)*. For the reasons stated above, this court finds that plaintiffs have failed to establish a relationship under Subparagraph B of *§ 25*.

Subparagraph C permits an **[*38]** individual to maintain a private action against persons who purchased an interest or participation in a commodity pool or sold such an interest to that pool. Plaintiffs contend that defendants created pool interests by allowing the Sigma entities to trade without margin and that undermargined positions were eventually transferred to plaintiff and that "this overt act of ignoring required margins places defendant FCM's in the position of both primary violator

of subparagraph C and as a aiders and abettors of such a violation." Plaintiffs do not allege that the FCM defendants sold them any such interest, but rather admit that the interest or participation in commodity pools were sold to them by Kohli, Chandran and the Sigma entities. As plaintiffs again rely on an agency theory, this Court does not find that plaintiffs have stated the required relationship under Subparagraph C.

As plaintiffs have failed to state any of the required relationships under *§ 25(a)*, their claim for a direct violation of the CEA must be dismissed.

## B. Aiding and Abetting Liability

Plaintiffs's Amended Complaint also alleges that defendants aided and abetted violations of the CEA. Plaintiffs contend **[*39]** that they were denied the opportunity to properly evaluate investing in Sigma because Kohli and Sigma were unregistered and that by allowing Kohli to open accounts and by ignoring or relaxing margin rules, the FCM defendants aided and abetted Sigma to continue trading when underfunded. Plaintiffs contend that as Kohli was not properly registered as required under the CEA and as the defendant FCMs carried accounts, accepted orders and handled futures contracts for Sigma that "common sense dictates that the FCM defendants also aided and abetted Kohli and the Sigma entities."

Defendants contend that plaintiffs' claim of aiding and abetting CEA violations cannot be maintained against them because they are not parties that can be held liable under the statute. This Court must determine, therefore, against whom the private right of action for aiding and abetting can be maintained. Defendants assert that plaintiffs' claims for aiding and abetting commodities fraud violations must be dismissed because there is not a "buyer-seller relationship" between the FCM defendants and the plaintiffs and such relationship is a condition precedent to a private right of action under the Commodities Exchange **[*40]** Act. Plaintiffs contend that the statute does not require that the alleged aider and abettor be in one of the relationships set out in *7 U.S.C. § 25(a)(1)(A) - (D)* with the plaintiff, but rather that only the principal must satisfy this requirement.

This Court notes that this issue is not settled. With the exception of this Court, no Court in the Third Circuit has spoken on this issue. However, this Court held in *Manley v. Stark & Stark*, Civ. No. 97-524(AET) that *HN6*

under *section 25(a)(1)* a primary violator must be the "such person" who commits one of the enumerated acts in subsections (A)-(D); in other words defendants must have provided plaintiffs with trading advice for a fee, made any contract of sale of any commodity for future delivery or accepted the deposit of money, securities or property in connection with any order to make such contract; or sold to or accepted the order for the purchase or sale of or interest or participation in a commodity pool. In so finding, this Court followed the majority of Courts to have spoken on this issue and found that in order to establish aider and abettor liability, plaintiffs must be in one of the four above stated relationships **[*41]** with the defendants. *See also Damato v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 878 F. Supp. 1156, 1161 (N.D. Ill. 1995)*(holding that the only persons subject to a private right of action under *§ 25(a)* of the CEA are those who sold or took orders for interests in the commodity pool); *Davis v. Coopers & Lybrand, 787 F. Supp. 787* (N.D. Ill, 1992) (same); *In re Lake States Commodities, Inc., 936 F. Supp. 1461, 1467 (N.D. Ill. 1996)* (Stating, "Congress could have not more clearly pronounced its intention to create only one vehicle for private causes of action . . . and given recent Supreme Court teachings on statutory construction, we are loathe to imply a private right of action into § 13(a)."); *Grossman v. Citrus Assoc. of N.Y. Cotton Exchange, 706 F. Supp. 221, 231 (S.D.N.Y. 1989)*; *Kolbeck v. LIT America, Inc., 923 F. Supp. 557, 566 (S.D.N.Y. 1996)*.

Plaintiffs argue that this Court should reverse its earlier decision, and ignore the above stated cases and find that a buyer-seller relationship is not required in order to state a cause of action for aiding and abetting under the Commodities **[*42]** Exchange Act. In support of this position, plaintiffs have provided this Court with an amicus curiae brief submitted by the CFTC to the Seventh Circuit Court of Appeals in the *D'Amato* case advocating a broader reading of possible aiding and abetting liability. Although noting the argument of the CFTC to the contrary, this Court finds that the statute on its face appears to preclude private rights of action against either a principal or an aider and abettor absent the existence of one of the four relationships described in *§ 25(a)(1)*. Further, it would appear from reading *§ 25(a)(2)* that a private right of action is not available outside the confines of *§ 25(a)(1)*. Therefore, this Court will follow the reasoning of the majority of courts to speak on this issue and preclude a private right of action absent one of the relationships listed in *§ 25*. As this Court has found above that no such relationship has been adequately alleged in the instant case, Count I

must be dismissed.

## 5. Count Two: Breach of Contract

In the second count of their Amended Complaint, plaintiffs allege a violation of New Jersey common law regarding contracts against defendants FCMs, FCM EMPLOYEES **[*43]** and the NFA. More specifically, plaintiffs allege that they were third party beneficiaries of the agreements between the NFA and its members. P137. In particular, plaintiffs rely upon NFA Bylaw 1101 and NFA Compliance Rule 2-8(e) as the sources of their purported contractual rights. P143

> NFA Bylaw 1101 provides that:
> No Member may carry on an account, accept an order or handle a transaction in commodities futures contracts for or on behalf of any non-Member of the NFA, or suspended Member, that is required to be registered with the Commission[CFTC] as an FCM, IB[Introducing Broker], CPO, CTA or LTM[Leverage Transaction Merchant], and that is acting in respect to the account, order or transaction for a customer, a commodity pool or participant therein, a client of a commodity trading advisor, or other person.

The interpretive notice regarding Bylaw 1101 states in part that, "the Rule, by its terms imposes strict liability on any Member conducting customer business with a non-Member that is required to be registered. The Rule does not require proof that the Member firm was at fault or failed to exercise due diligence - simply that it transacted customer business **[*44]** with a non-Member that is required to be registered." NFA Compliance Rule 2-8(e) provides the "no member FCM shall accept a customer account and no Member FCM or IB shall introduce a customer account over which a third party, not an associate of such FCM or IB, is to exercise discretion" without first obtaining an authorization from the customer and an acknowledgment from that customer that they received certain disclosure documents.

Based on the alleged violation of this Bylaw and Compliance Rule, plaintiffs contend they are entitled to bring a claim for breach of contract as third party beneficiaries of the contract between the defendant NFA and its members, the defendant FCMs. Plaintiffs claim that members of the general public are third party beneficiaries of the NFA Manual and are entitled to recover from the NFA under a breach of contract theory every time that a scheme to defraud involving the

futures market is perpetrated. Defendants contend that this claim must fail as the general public are not third party beneficiaries of the NFA's contract with its members. The defendants further contend that general statements of the NFA's desire to benefit the general investing public [*45] cannot support a third party beneficiary claim for breach of contract as there is no evidence that the NFA and its members intended to bestow contractual rights on the general public under the NFA Manual or Bylaws.

*HN7* In New Jersey, a third party beneficiary may sue upon a contract made for his or her benefit without being privy to the contract. *Rieder Communities, Inc., v. North Brunswick Tp., 227 N.J. Super. 214, 222, 546 A.2d 563(App. Div. 1988)*, cert. denied, 113 N.J. 638, 552 A.2d 164 (1988); see also *N.J.S.A. 2A:15-2* (providing that a person for whose benefit a contract is made may sue on the contract in any court). The standard for determining third-party beneficiary status is "whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts . . ." *Rieder, 227 N.J. Super. at 222* (quoting *Brooklawn v. Brooklawn Housing Corp., 124 N.J.L. 73, 77, 11 A.2d 83*(E & A, 1940). Absent such a conclusion derived from the contract or surrounding circumstances, "a third party has no cause of action despite the fact that it may derive an incidental-benefit from the [*46] contract's performance." *Rieder, 227 N.J. Super. at 222*(citing *Gold Mills, Inc. v. Orbit Processing Corp., 121 N.J. Super. 370, 373, 297 A.2d 203(Law Div. 1972).*

When considering the intent of the contracting parties, however, "it is not necessary that an intended beneficiary be identified when the contract containing the promise is made," nor is it necessary for the promise's obligation to the intended beneficiary to be in existence at the formation of the contract. *Werrmann v. Aratusa, LTD., 266 N.J. Super. 471, 476-77, 630 A.2d 302 (App. Div. 1993)*. The "real test" in determining if a party is a third-party beneficiary to a contract is "whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts." *Brooklawn v. Brooklawn Housing Corp., 124 N.J.L. 73, 11 A.2d 83 (1940)*; accord *Air Master Sales Co. v. Northbridge Park Co-op. Inc., 748 F. Supp. 1110, 1117 (D.N.J. 1990)*. A third-party, who is not an intended beneficiary, but incidentally benefits from a contract, has no contractual right to enforce the contract. See *Grant v. Coca-Cola Bottling Co., 780 F. Supp. 246, 249 (D.N.J. 1991)*. [*47]

There is simply no indication in the instant case that plaintiffs were the intended beneficiaries of the contractual relationship between the NFA and its FCM members. Plaintiffs find evidence of an intent to benefit them in the broad proclamations made concerning the association's desire to protect the investing public and the following language from Interpretive Notice regarding Bylaw 1101, "the suggested procedures should help foster . . . greater protection to the investing public." This language does not affirmatively indicate any desire to permit nonparties to enforce its terms. The Bylaw and Compliance Rule relied upon by the plaintiffs in this case do not indicate that non-parties have the right to seek private judicial remedies to enforce the agreement.

Further, third party enforcement of the rules of a self-regulatory organization has been considered and rejected by a number of other Courts. See *Lake States Commodities, 936 F. Supp. 1461 (N.D. Ill. 1996)* (NFA Bylaw 1101 and Compliance Rule 2-8(e), relied upon by plaintiffs in this case do not indicate that non-parties have the right to seek private judicial remedies to enforce the agreement. Without such [*48] language, the plaintiffs cannot claim third-party beneficiary status); *Bloch v. Prudential-Bache Sec., 707 F. Supp. 189, 195-96 (W.D. Pa. 1989)* (concluding that allowing third-party beneficiary claims under NYSE and NASD rules seems incongruous with the large body of case law holding that no private cause of action exists for violations of the rules of self-regulatory organizations); *Pittsburgh Terminal Corp. v. Baltimore & Ohio R. Co., 509 F. Supp. 1002(W.D. Pa. 1981) rev'd on other grounds, 680 F.2d 933* (3d Cir.) cert. denied *459 U.S. 1056, 74 L. Ed. 2d 621, 103 S. Ct. 475, 103 S. Ct. 476 (1982)* (Court refused to allow a third party claim for violation of NYSE rules);

Plaintiffs have cited several New Jersey cases in which third party beneficiary status has been found in the context of insurance. See *Eschle v. Eastern Freight Ways, Inc., 128 N.J. Super. 299, 306, 319 A.2d 786 (1974)*; *Werrmann v. Aratusa, Ltd., 266 N.J. Super. 471, 630 A.2d 302 (App. Div. 1993)*. However, these cases are clearly distinguishable and do not support a finding by this Court that a third party beneficiary [*49] relationship, upon which a private right of action can be based was created by the contractual relationship between the NFA and the FCM defendants. As there is no indication that the NFA and its members intended to bestow contractual rights on the public under the NFA Manuals or Bylaws, plaintiffs' third party beneficiary claim must be dismissed. Therefore, Count II of

plaintiffs' Amended Complaint alleging breach of contract will be dismissed.

### 6. Count Three: Bad Faith Failure to Enforce NFA Rules

Count Three is asserted by plaintiffs pursuant to the CEA, *7 U.S.C. § 25(b)* and the regulations established pursuant to the CFTC against defendant NFA. Plaintiff asserts that the NFA acted in bad faith in failing to enforce its own Bylaws and Rules as set forth in the NFA Manual, pursuant to *7 U.S.C. § 21(b)(8)*.

*Section 21(b)(8)* states that "the rules of the association provide that its members and persons associated with its members shall be appropriately disciplined, by expulsion, suspension, fine, censure, or being suspended or barred from being associated with all members, or any other fitting penalty, for any violations of its rules. **[*50]** " The CEA states at *§ 25(b)(2)* that a registered futures association that fails to enforce any bylaw or rule that is required under *section 21* of this title, or in enforcing any such bylaw or rule violates this chapter or any Commission rule, regulation or order shall be liable for actual damages sustained by a person that engaged in any transaction specified in subsection (a) of this section to the extent of such person's actual losses that resulted from such transaction and were caused by such failure to enforce or enforcement of such bylaw or rule. In order to be liable under these provisions, a contract market or clearing market must fail to enforce a bylaw, rule or regulation that is required to be enforced by *Section 17* of the CEA.

Defendants allege that the NFA prohibition against doing business with non-members that is contained in Bylaw 1101 is not a bylaw required by *Section 17* of the CEA and thus no private cause of action can be enforced for its non-enforcement. The NFA adopted Bylaw 1101, which indirectly compels membership in the NFA for all Commission registered FCMs pursuant to *Section 17(m)* of the CEA. *Section 17(m)* of the CEA provides that "the Commission may approve **[*51]** rules of futures associations that, directly or indirectly, require persons eligible for membership in such associations to become members of at least one such association. . ." Defendants contend, and this Court agrees, that the plain meaning of the word "may" in *Section 17(m)* permits the NFA to adopt rules such as Bylaw 1101, but does not require the NFA to do so as a condition.

Similarly, Rule 2-8(e) is not one of the Rules which the CFTC required under *§ 17* of the CEA as a condition to its authorization to the NFA to be a RFA. In fact, the CFTC approved the NFA's application for membership before Rule 2-8(e) was in existence, thus indicating that any requirements of the CEA were fully satisfied by the existing Rules 2-8(a) through 2-8(d). The NFA was in existence for four years before Rule 2-8(e) was added. This Court cannot, therefore, find that Rule 2-8(e) was a rule required by the CFTC, but rather it is a discretionary Rule passed by the NFA only to assist its members in their own internal compliance with Bylaw 1101 and as such, it cannot provide the basis for a private right of action against the NFA.

**HN8** Courts have consistently held that *Section 22* does not provide any private **[*52]** remedy for purported violations of CFTC Regulations and NFA Bylaws and rules. Courts have declined to imply a private cause of action into NFA Bylaw 1101 and its Interpretive Notice. *Lake States Commodities, Inc., 936 F. Supp. 1461, 1469 (N.D. Ill. 1996)* (declining to imply a cause of action into [NFA] Bylaw 1101 and its Interpretive Notice and holding that plaintiffs who had invested money with unregistered commodity pool operator failed to state a claim under the CEA against futures commission merchant). Courts have similarly declined to imply a private cause of action into other NFA rules. *See In re Indemnified Capital Invs., S.A. v. R.J. O'Brien & Associates, Inc., 12 F.3d 1406, 1412 (7th Cir. 1993)*. *See also Davis v. Coopers and Lybrand, 787 F. Supp. 787(N.D. Ill. 1992)* (The exclusive future remedy under CEA does not include a cause of action for violations of CFTC regulations.); *In re Soybean Futures Litigation, 892 F. Supp. 1025(N.D. Ill. 1995)* (Neither Section 4a nor *Section 22* authorize private enforcement of CFTC regulations nor have courts been willing to recognize such a claim); *Khalid Bin Alwaleed Found. v. E.F. Hutton & Co., 709 F. Supp. 815, 820(N.D. Ill. 1989)* **[*53]** (finding that Congress did not intend that the rules promulgated by the CFTC should give rise to a private cause of action); *Unity House, Inc. v. First Commercial Financial Group, 1997 U.S. Dist. LEXIS 17653, 1997 WL 701345* at *4(N.D. Ill. Nov. 5, 1997) (the CFTC and the NFA rules do not provide causes of action); *Indemnified Capital Investments, S.A. v. R.J. O'Brien & Assoc., 12 F.3d 1406, 1412 (7th Cir. 1993)* (dismissing investment company's action against FCM because no independent private right of action existed under NFA Compliance Rule 2-4 concerning just and equitable principles of trade); *Birotte v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 468 F. Supp. 1172, 1180 (D.N.J. 1979)* (holding that there is no implied federal right of action for alleged violations of the New

York Stock Exchange and Chicago Board Options Exchange Rules).

### 7. Count Four: New Jersey Uniform Securities Law

Count Four is asserted pursuant to the New Jersey Uniform Securities Law, *N.J.S.A. 49:3-47 et seq.*, against defendants FCMs and FCM EMPLOYEES as primary offenders, or in the alternative, as secondary offenders.

*N.J.S.A. 49:3-71(a)(2)* and *(b)* provide:

> (a) **[*54]** Any person who
> (2) Offers or sells a security in violation of subsection (a) or (c) of [N.J.S.A.] or by means of any untrue statement of material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission), is liable to the person buying the security from him . . .
>
> (b) Every person who directly or indirectly controls a seller is liable under paragraph (a) . . . and every broker-dealer or agent who materially aids in the sale are also liable jointly and severally with and to the same extent as the seller, unless the nonseller who is so liable sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

The text of *HN9 Section 49:3-71*, therefore, requires that the offender must offer or sell securities to the aggrieved purchaser of those securities, or "materially aid" in the sale of those securities.

To be a "seller" of securities the defendant must pass title to the security **[*55]** to the plaintiff, or defendant must solicit plaintiff to purchase the security. *Pinter v. Dahl, 486 U.S. 622, 100 L. Ed. 2d 658, 108 S. Ct. 2063(1988)*. Mere allegations that the defendant's participation in the transaction was a substantial factor in causing the sale to occur is insufficient to establish that the defendant is a statutory seller. *Zendell v. Newport Oil Corp., 226 N.J. Super. 431, 440-441, 544 A.2d 878 (App. Div. 1988)*. To establish liability on the part of a broker-dealer for "materially aiding in the sale of a security, the plaintiff must demonstrate that the broker-dealer's involvement in the sale is "considerable,

significant or substantial." *Schor v. Hope, 1992 U.S. Dist. LEXIS 1083*, *16 (E.D. Pa. 1992).

Defendants contend that the FCM defendants are not alleged to have "offered or sold" any securities so as to incur liability under the statute and further that they did not "materially aid in the sale" of securities so as to face liability under the statute. Defendants further contend that plaintiffs have also failed to allege that the FCM defendants played a "substantial role in persuading or seducing the purchasers **[*56]** into buying securities." *Craighead v. E.F. Hutton & Co., 899 F.2d 485, 493 (6th Cir. 1990)*.

This Court finds no allegation which supports a finding that defendants either passed title to the securities in question or were involved in the sale to the extent required by law. There are no allegations that defendants in this case had any contact with plaintiffs, so as to solicit or persuade plaintiffs to purchase securities.

Plaintiffs also contend that defendants aided and abetted in a violation of the statute. The Restatement of Torts provides that *HN10* a person is liable for harm resulting to a third person from the conduct of another when he "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the others so to conduct himself. *Restatement (Second) of Torts § 876(b)*. Courts have recognized that the Restatement provision sets forth the standard for civil aiding and abetting, *See Landy v. Federal Deposit Ins. Corp., 486 F.2d 139, 162(3d Cir. 1973)* cert. denied 416 U.S. 960, 40 L. Ed. 2d 312, 94 S. Ct. 1979 (1974).

In this case, this Court cannot find that plaintiffs' allegations **[*57]** support a claim that defendants aided and abetted a violation of the statute. Even accepting all of plaintiffs' allegations as true and reading all inferences in favor of plaintiffs, plaintiffs have not alleged sufficient facts to indicate that defendants gave Kohli substantial and knowing assistance in the sale of securities. Therefore, Count IV fails to state a claim for either a direct violation of or aiding and abetting a violation of the Uniform Securities Act.

### 8. Count Seven: Breach of Fiduciary Duties

Count Seven is brought pursuant to common law and is asserted against defendant FCMs, FCM EMPLOYEES, Delbridge, Stone and the NFA. Plaintiffs assert that the named defendants knew or should have known in the

1998 U.S. Dist. LEXIS 22977, *57

exercise of reasonable care that the money invested by Kohli and Chandran was the property of the plaintiff class members and that defendants, as fiduciaries with respect to the plaintiff class members were required to exercise reasonable and prudent discretion in connection with such transactions in the best interest of plaintiffs. P182. Plaintiffs contend that the NFA as a non-profit organization charged with self-regulation, had a duty to protect the public interest, **[*58]** and thus had a duty to protect the plaintiffs in this case. Plaintiffs further contend that the NFA breached that fiduciary duty to the investing public when it failed to uncover the fraud at issue in the instant case. Defendants argue that in the absence of any allegation of a transactional relationship or other dealings between plaintiffs and defendants, defendants clearly owe no fiduciary duty to plaintiffs.

*HN11* Under New Jersey Law, a confidential or fiduciary relationship encompasses all relationships "whether legal, natural, or conventional in their origin, in which confidence is naturally inspired, or in fact, reasonably exists." *Pascale v. Pascale, 113 N.J. 20, 33-34, 549 A.2d 782 (1988)*. A fiduciary, therefore is a person with a duty to act primarily for the benefit of another. For a breach of fiduciary duty claim to succeed, plaintiff must show that either the particular relationship presumes fiduciary duties, or that the particular facts indicate that within this particular relationship, fiduciary duties have arisen. *Hensler v. Busey Bank, 231 Ill. App. 3d 920, 927, 173 Ill. Dec. 390, 596 N.E.2d 1269 (4th Dist. 1992)*.

Plaintiffs claim that **[*59]** the NFA manual and the CEA make the NFA "fiduciaries or quasifiduciaries" to the plaintiffs in their dealings with Kohli, Chandran and Sigma which required the NFA to exercise reasonable and prudent discretion in connection with such transactions in the best interest of plaintiffs, and that defendants breached such duty. This Court disagrees. Plaintiffs contend that the NFA breached a fiduciary duty to the investing public when it failed to uncover the fraud at issue here. Plaintiffs have provided no support for their contention that a fiduciary duty is owed to them by with the NFA or the FCM defendants. Further, the lack of relationship between the plaintiffs and defendants forecloses the possibility that a fiduciary relationship existed between them. *See Melrose v. Shearson/American Express, 1988 U.S. Dist. LEXIS 940, 1988 WL 9042*, *12-13(N.D. Ill. 1998) (lack of interaction bars a fiduciary duty claim - a fiduciary duty is created by interaction between two parties, plaintiff cannot unilaterally impose a fiduciary duty upon the defendant). Considering these factors, this Court will

follow a number of other Courts which have held that *HN12* neither federal commodities laws, nor the NFA's Rules or **[*60]** Bylaws give rise to a relationship of trust and dominance so as to establish a fiduciary relationship. *See Indemnified Capital Invs. S.A. v. R.J. O'Brien & Assocs., 12 F.3d 1406, 1411-12 (7th Cir. 1993)* (no fiduciary duty created by NFA Compliance Rule 2-4); *Baird v. Franklin, 141 F.2d 238, 239 (2d Cir. 1944)* (no fiduciary duty arising from the stock exchange's requirement to investigate member wrongdoing); *Spicer v. Chicago Board of Trade, 1990 U.S. Dist. LEXIS 14469, 1990 WL 172712* at *15 (N.D. Ill. October 30, 1990) *aff'd 977 F.2d 255 (7th Cir. 1992)* (fiduciary duties are not lightly inferred . . . we conclude that the CBOE and OCC are not in a fiduciary relationship with investors who buy or sell options through their facilities); *Arneil v. Ramsey, 414 F. Supp. 334, 343 (S.D.N.Y. 1976)* (no fiduciary relationship between exchange and public customers of member firms); *Piemonte v. Chicago Board of Options Exchange, Inc., 405 F. Supp. 711, 718 n.4 (S.D.N.Y. 1975)* (same); *Steinberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 1974 U.S. Dist. LEXIS 8077, 1974 WL 411* at *1 (S.D.N.Y. 1974) (New York Stock Exchange has no **[*61]** fiduciary duty to investors arising from its statutory duty to supervise brokers). Therefore, this Court finds that even accepting plaintiffs' allegations as true and reading all inferences in favor of plaintiffs, they have failed to state a claim upon which relief can be granted and their claim for breach of fiduciary duty is dismissed.

This Court notes that defendant NFA has raised the issue of preemption with regard to the common law claims made against it in plaintiffs' complaint. The NFA states that allowing a plaintiff to bring a state law claim against a self regulatory organization which is an integral part of the CEA's self-regulatory scheme would frustrate Congress' intent to bring the markets under a uniform set of regulations. However, as all of the plaintiffs' claims which named the NFA as a defendant have failed to state a claim upon which relief can be granted and thus cannot be maintained, this Court need not address defendant NFA's contention that the maintenance of claims against it would be inappropriate.

## 9. Count Eight: Negligence

In Count Eight, plaintiffs assert a claim pursuant to common law against defendants FCMs and FCM EMPLOYEES for failure to **[*62]** exercise reasonable care and acting in a negligent manner. P189-190.

Plaintiff contends that the FCMs and FCM EMPLOYEES were negligent in failing to conduct a more thorough investigation of the source of funds invested by Kohli and Chandran; by assisting and encouraging Kohli and Chandran in soliciting investors for commodity futures trades; by failing to adequately train their respective agents with regard to the laws and regulations governing commodity futures trading and the NFA Ethics Rules and in failing to diligently supervise the activities at their respective offices and solicitation of accounts traded through their respective offices. P190. Defendants contend that as they owed no duty to the plaintiffs, they cannot be held liable under a negligence theory.

New Jersey law applies to plaintiffs' claim of negligence. New Jersey law requires that in order to state a cause of action for negligence, a plaintiff must allege and prove a set of facts showing he has a substantive right entitling him to maintain a cause of action and that there is a violation of that right by defendant which causes injury or damage. *Ryans v. Lowell, 197 N.J. Super. 266, 274, 484 A.2d 1253 (App. Div. 1984)*. [*63] **HN13** In order to state a claim for negligence, a plaintiff must first establish that a duty is owed to the plaintiff by a defendant. *Strachan v. JFK Memorial Hospital, 109 N.J. 523, 529, 538 A.2d 346 (1988)*. The question of whether a duty exists is a matter of law properly decided by the Court, and is largely a question of fairness and policy. *Wang v. Allstate Co., 125 N.J. 2, 15, 592 A.2d 527 (1991)*. If this Court finds no duty exists, there can be no action for negligence. *Ryan, 197 N.J. Super. at 275*.

A duty of care exists when an actor creates an unreasonable risk of foreseeable harm or when such a duty is judicially imposed by policy considerations. *Griesenbeck v. Kutter v. Walker, 199 N.J. Super. 132, 136, 488 A.2d 1038 (App. Div. 1985) cert. denied 101 N.J. 264, 501 A.2d 932 (1985)*. In order for a Court to find the existence of a duty, this Court must make a "value judgment, based on an analysis of public policy, that the actor owed the injured party a duty of reasonable care." *Kelly v. Gwinnell, 96 N.J. 538, 544, 476 A.2d 1219 (1984)*. This value judgment requires a "weighing of [*64] the relationship of the parties, the nature of the risk, and the public interest in the proposed solution." *Goldberg v. Housing Auth. of Newark, 38 N.J. 578, 583, 186 A.2d 291 (1962)*; *Carvalho v. Toll Brothers and Developers, 143 N.J. 565, 675 A.2d 209 (1996)*.

In the instant case, there was no relationship between plaintiffs and defendants. Although it is alleged that

defendants knew or should have known that Kohli was trading for third parties, there are no allegations that defendants had any contact with plaintiffs to solicit business or provide advice. Considering the absolute absence of a relationship between plaintiff and defendants, this Court cannot find that defendants' actions created an unreasonable risk of harm to plaintiffs or that the injury to plaintiffs was foreseeable in the instant case. See *Riggs v. Schappell, 939 F. Supp. 321, 332 (D.N.J. 1996)* (Finding that a clearing broker does not owe the customer of an introducing broker a "broad fiduciary duty" sufficient to support a negligence action under New Jersey law); *Kolbeck v. LIT America, Inc, 923 F. Supp. 557 (S.D.N.Y. 1996)* (Securities brokers [*65] do not owe a general duty of care or disclosure to the public simply because they are market professionals. A duty of care arises only when the broker does business with the plaintiff and then the duty of the broker is to attend to the plaintiff's business with care). Therefore, Count VIII of plaintiffs' Amended Complaint will be dismissed.

## 10. Count Nine: RICO, 18 U.S.C. § 1962(c) and § 1962(d)

In Count Nine, plaintiffs allege that the defendants violated the provisions of the Racketeer Influenced and Corrupt Organizations Act. *18 U.S.C. §§ 1961 et seq.* Specifically, plaintiffs allege a violation of *Section 1962(c)* which provides in relevant part:

> It shall be unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern or practice of racketeering activity or collection of an unlawful debt.

*18 U.S.C. § 1962(c)*. **HN14** *Section 1962(c)* requires the plaintiff to plead the following: 1) the existence of an enterprise whose activities affect interstate commerce; 2) that defendants [*66] participated in the conduct of the affairs of the enterprise; and 3) that the participation took the form, at least in part, of racketeering activities. Plaintiffs must also plead that they were injured in their business or property by reason of a violation of § 1962(c).

Liability under § 1962(c) only attaches to persons who participate in the operation or management of the RICO enterprise. *Reves v. Ernst & Young, 507 U.S. 170, 113 S. Ct. 1163, 1172-74, 122 L. Ed. 2d 525 (1993)*. This means that § 1962(c) may not be imposed on one who merely "carries on" or "participates" in an enterprise, but

rather, in order to be liable, "one must have some part in directing those affairs." *113 S. Ct. at 1168-70*. The mere rendering of professional services does not constitute participation in the direction of the corporation to whom those services were provided. *University of Maryland v. Peat, Marwick, Main, 996 F.2d 1534, 1539 (3d Cir. 1993)*. "Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result. There must be a nexus between the person and the conduct in the affairs of **[*67]** an enterprise. The operation or management test goes to that nexus." *University of Maryland, 996 F.2d at 1539*. "Outsiders" may be liable under *§ 1962(c)* if they are "associated with" an enterprise and participate in the conduct of its affairs to the point that they in some way direct the enterprise. *Reves, 507 U.S. at 185*. Under this test, not even action involving some degree of decisionmaking constitutes participation in the affairs of an enterprise. *University of Maryland, 996 F.2d at 1538*.

Many courts faced with post-Reves *§ 1962(c)* claims against outside professionals have agreed that providing important services to a racketeering enterprise is not the same as directing the affairs of the enterprise. *See e.g. Azrielli v. Cohen Law Offices, 21 F.3d 512, 521-22 (2d Cir. 1994)* (provision of legal services related to fraudulent real estate transaction was not management of the RICO enterprise conducting the fraudulent transaction); *University of Maryland at Baltimore at Maryland v. Peat, Marwick, Main & Co., 996 F.2d 1534, 1539 (3d Cir. 1993)* ("Simply because one provides goods or services that **[*68]** ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result); *Fidelity Federal Sav. & Loan Ass'n v. Felicetti, 830 F. Supp. 257, 260 (E.D. Pa. 1993)* (even if appraiser's reports are "keystone" of enterprise's perpetration of fraud, appraiser cannot be liable under *section 1962(c)*); *United States v. Oreto, 37 F.3d 739, 750 (1st Cir. 1994)* (accountants in Reves were not liable because": while they were undeniably involved in the enterprise's decisions, they neither made those decisions nor carried them out; in other words, the accountants were outside the chain of command), *cert. denied 513 U.S. 1177, 115 S. Ct. 1161, 130 L. Ed. 2d 1116(1995*); *Baumer v. Pachl, 8 F.3d 1341, 1344 (9th Cir. 1993)* (providing legal services to an enterprise did not satisfy "operation or management" test); *Stone v. Kirk, 8 F.3d 1079, 1092 (6th Cir. 1993)* (sales representative did not participate in "operation or management" of the enterprise).

Plaintiffs contend that defendants directly participated in the RICO enterprise by carrying the accounts of the Sigma Entities and by transacting **[*69]** the business of the Sigma entities through the clearing of commodity futures contracts and options transactions. Plaintiffs contend that within the customer account agreements between the Sigma entities and the defendant FCMs there is a clear and undisputable right to exercise control over the Sigma entities because the defendant FCMs had the right to limit or cease the trading of Sigma if the Sigma accounts failed to meet certain financial conditions or violated reasonable risk parameters. According to defendants, this inactivity is insufficient to qualify as "taking some part in directing the enterprise's affairs."

This Court cannot find that plaintiffs have adequately alleged that defendants participated in the operation or management of the Sigma entities. While plaintiffs have alleged that defendants' inaction allowed the Sigma entities to continue trading, there are no allegations that any of the defendants had decisionmaking authority at Sigma, or along with Kohli and Chandran was directing the fraudulent enterprise. Therefore, even reading plaintiffs' allegations as true, this Court finds that plaintiffs' have failed to state a claim upon which relief can be granted, and their **[*70]** RICO claim must be dismissed.

Plaintiffs have also alleged that defendants conspired to violate RICO in contravention of *§ 1962(d)*. **HN15** Conspiracy to violate any other provision of *§ 1962* is a separate RICO violation. To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose. *Kalmanovitz v. G. Heileman Brewing Co., 595 F. Supp. 1385, 1400-1401 (D.Del. 1984)* aff'd *769 F.2d 152 (3d Cir. 1985)*. A defendant must knowingly agree to participate in the enterprise through a pattern of racketeering. *United States v. Riccobene, 709 F.2d 214, 220-21* (3d Cir.) *cert. denied 464 U.S. 849 (1983)*. Additional elements include agreement to commit predicate acts and knowledge that the acts were part of a pattern of racketeering activity. *Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1167(3d Cir. 1989)*; *Odesser v. Continental Bank, 676 F. Supp. 1305, 1312-1313(E.D. Pa. 1987)*.

This Court notes that a *§ 1962(d)* claim can exist in the **[*71]** absence of a viable claim under *§ 1962(c)*. *See United States v. Antar, 53 F.3d 568(3d Cir. 1995)*; *see e.g. United States v. Viola, 35 F.3d 37, 43(2d Cir.*

1998 U.S. Dist. LEXIS 22977, *71

1994) (a "RICO conspiracy charge is proven if the defendant embraced the objective of the alleged conspiracy and agreed to commit two predicate acts in furtherance thereof, irrespective of the fact the defendant did not participate in the operation or management of the enterprise). However, liability is limited to those who conspire to operate or manage an enterprise, and does not extend to those who conspire with someone who is operating or managing the enterprise. See Antar, 53 F.3d 568, 581(3d Cir. 1995). In the instant case, plaintiffs have not alleged that defendants conspired to operate or manage the enterprise, but merely that they conspired with the individuals who do so. Therefore, plaintiffs have failed to state a claim under § 1962(d) and this claim will be dismissed.

**11. Count Ten: Fraud and Civil Conspiracy**

In Count Ten, brought pursuant to New Jersey common law against defendants FCMs and FCM EMPLOYEES, plaintiffs assert claims of fraud and civil conspiracy. [*72] Plaintiffs contend that defendant FCMs and FCM EMPLOYEES breached their duties by aiding and abetting Kohli, Chandran and the Sigma Entities in their frauds and conspiring with them to commit these frauds or acting in concert with them in these frauds by concealing the true nature of their activities from plaintiffs. P212. Further, plaintiffs contend that defendant FCMs defrauded plaintiffs by intentionally creating the false public perception that the unregistered pool was large, profitable and legitimate and by failing to disclose material facts to plaintiffs. P213. With regard to their claim of conspiracy, plaintiffs contend that defendant FCMs conspired in combination with Kohli, Chandran and the Sigma Entities to commit criminal or unlawful acts including but not limited to conspiring to obtain funds from the plaintiff class members by misrepresentation or fraud and conspiracy to cover up the true nature of Kohli and Chandran's "Ponzi" scheme. P216.

HN16 Under New Jersey law, the elements of civil fraud are: 1) the making of a misrepresentation of material fact; 2) which is made with the knowledge of its falsity; 3) that plaintiffs rely upon to their detriment. Jewish Center of Sussex County v. Whale, 86 N.J. 619, 624-25, 432 A.2d 521 (1981). [*73] There can be no liability for misrepresentations based on failure to disclose unless a duty to disclose exists. See Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1185, 1187 (3d Cir. 1993). As this Court finds that there was no duty imposed upon defendants with regard to plaintiffs, this Court cannot

find that the failure of defendants to disclose information it is alleged to have knowledge of constitutes fraud. Therefore, plaintiffs claim of fraud must be dismissed.

HN17 A civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong or injury upon another, and an overt act that results in damage." Morgan v. Union County Board of Chosen Freeholders, 268 N.J. Super. 337, 364, 633 A.2d 985 (App. Div. 1993). "The gist of the claim is not the unlawful agreement, but the underlying wrong which, absent the conspiracy, would give a right of action." Id. In order to show civil conspiracy, an act must be committed by at least one of the co-conspirators towards the fulfillment of the conspiracy, [*74] and this action must cause some injury to the plaintiff. A conspiracy need not be proven directly, but rather can be inferred from the circumstances. A co-conspirator is liable for all of the acts of his fellow conspirator made in furtherance of the conspiracy. Morgan v. Union County Board of Chosen Freeholders, 268 N.J. Super. 337, 364-366, 633 A.2d 985 (App. Div. 1993). Proof of a conspiracy makes the conspirators jointly liable for the wrong and the resulting damages. Board of Education of the City of Asbury Park v. Hoek, 38 N.J. 213, 183 A.2d 633 (1962). As direct evidence of an unlawful agreement is rare, the Supreme Court has stated that "the question of whether an agreement exists should not be taken from the jury in a civil conspiracy case so long as there is a possibility that the jury can infer from the circumstances [the alleged conspirators] had a meeting of the minds and thus reached an understanding to achieve the conspiracy's objectives." Adickes v. S.H. Kress, 398 U.S. 144, 158, 26 L. Ed. 2d 142, 90 S. Ct. 1598(1970).

In the instant case. Plaintiffs have failed to allege facts from which this Court could infer a [*75] meeting of the minds or an agreement to carry out the fraudulent scheme. Therefore, plaintiffs' claim for civil conspiracy must be dismissed.

**12. Count Eleven: New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq.**

In Count Eleven, plaintiffs assert a claim under the New Jersey Consumer Fraud Act against defendants FCMs and FCM EMPLOYEES. Plaintiffs contend that the named defendants have violated the New Jersey Consumer Fraud Act by allowing Kohli, Chandran and the Sigma Entities to trade commodities, futures

contracts, commodity options and contracts for sale of commodities for future delivery, on behalf of non-Members of the NFA that are required to be registered with the CFTC, thereby causing the acts of Kohli, Chandran and the Sigma Entities to appear to be legal. Plaintiffs assert that defendants' acts constitute unfair or deceptive trade practices and are in violation of the New Jersey Consumer Fraud Act in that defendants knowingly concealed and suppressed the material fact that Kohli, Chandran and the Sigma Entities were not registered with the CFTC as an AP, a CPO or a CTA nor a member of the NFA, in connection with the sale of merchandise and that such actions **[*76]** are in violation of Federal and state statutes enacted in the public interest and therefore constitute a violation of the New Jersey Consumer Fraud Act. P221.

The New Jersey Consumer Fraud Act provides that:

. . . The knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission in connection with the sale or advertisement of any merchandise or real estate. . . is declared to be an unlawful practice.

N.J.S.A. § 56:8-2(1996). Merchandise is broadly defined as "any objects, wares, goods, commodities, services, or anything offered, directly or indirectly to the public for sale." N.J. Stat. Ann, tit. 56 § 8-1(c). The New Jersey Consumer Fraud Act is, as its name implies, designed to protect consumers from deceptive sales or advertising practices. Its broad language evidences "legislative concern over sharp practices and dealings in the marketing of merchandise and real estate whereby the consumer could be victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practice." Daaleman v. Elizabethtown Gas Co., 77 N.J. 267, 271, 390 A.2d 566 (1978). **[*77]**

HN18 The New Jersey Consumer Fraud Act does not apply to the sale of "securities". Bramblewood Investors, Ltd. v. C & G Assoc., 262 N.J. Super. 96, 109 n.6, 619 A.2d 1332 (Law Div. 1992); In re Catanella, 583 F. Supp. 1388, 1441-44 (E.D. Pa. 1984). Part of the reason for such exclusion is the differentiation between professional or semi-professional services and traditional "consumer" services. In re Catanella, 583 F. Supp. 1388(1984) ("there is a distinction . . . between the policies underlying the protection of consumers in general and the protection of investors in particular. . . . Securities fraud is qualitatively different from the archetypal installment credit sale scam where the uneducated are duped into buying inferior consumer goods at exorbitant prices. The rationale behind the Consumer Fraud Act is inapposite in the securities fraud area). Moreover, the very existence of a carefully drawn state securities law militates against the application of the Consumer Fraud Act to securities." Catanella, 583 F. Supp. at 1443.

Therefore, plaintiffs' claim based upon the Consumer Fraud Act is dismissed.

### 13. Rule **[*78]** 11 Sanctions

Defendants Saul Stone & Company LC, First Options of Chicago, Inc., Smith Barney, Inc, L.G., LC, GNI Incorporated, GNI Limited, Dean Witter Reynolds, Inc., ING (U.S.) Securities Future & Options, Inc. (d/b/a ING Futures & Options), Merrill Lynch. Pierce, Fenner & Smith, Inc., Prudential Securities, Incorporated, Rosenthal Collins Group, L.P. (f/k/a Rosenthal & Company), E.D. & F. Man International, Inc. and the National Futures Association("NFA") have also moved for an Order sanctioning plaintiffs and their attorneys for asserting claims in violation of Fed. R. Civ. P. 11. Defendants have further moved for an award of their reasonable attorneys' fees and costs incurred as a result of the violation.

Defendants contend that despite repeated opportunities to withdraw or amend their complaint voluntarily, plaintiffs have persisted in their assertion of claims which are not well grounded in fact or supported by existing law or a good faith modification of that law. Defendants further contend that this deliberate refusal to comply with Rule 11 warrants the application of monetary sanctions, including the payment by plaintiffs and their counsel of the reasonable fees and **[*79]** costs incurred by defendants. Defendants, "recognizing that the CFTC's brief on the issue represents a nonfrivolous argument for the extension, modification or reversal of the existing law under Rule 11" have withdrawn their motion for sanctions insofar as it relates to the Section 22 aiding and abetting claim brought on behalf of the plaintiffs. Defendants, however, continue to seek sanctions with regard to plaintiffs' claims of direct liability under Section 22, RICO and state claims, and claims against defendants GNI, Inc. and GNI Limited claiming that such claims are without basis in fact or law.

HN19 Pursuant to Fed.R.Civ.P. 11(b), attorneys and pro se litigants must comply with certain standards of propriety:

1998 U.S. Dist. LEXIS 22977, *79

(b) *Representations to Court.* By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless **[\*80]** increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Where an attorney, law firm or litigant has failed to comply with *Rule 11(b)*, the Court may, after notice and a reasonable opportunity to respond, impose sanctions. However, "*rule 11* is intended for only exceptional circumstances." *Morristown Daily Record, Inc. v. Graphic Communications, Union Local 8N*, *832 F.2d 31, 32 n.1 (3d Cir. 1987)*. In deciding whether sanctions are appropriate, the Court should "avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe **[\*81]** at the time the pleading, motion or other paper was submitted." *Auchmuty & Greenwald v. Holtzman, 775 F.2d 535, 540 (3d Cir. 1985)*.

The Rule imposes an obligation on counsel and client analogous to the railroad crossing sign, "Stop, Look and Listen." It may be rephrased, "Stop, Think, Investigate and Research" before filing papers either to initiate a suit or to conduct the litigation. These obligations conform to those practices which responsible lawyers have always employed in vigorously representing their clients while recognizing the court's duty to serve the public efficiently.

*Gaiardo v. Ethyl Corp., 835 F.2d 479, 483 (3d Cir. 1987)*. *Rule 11* should not be utilized as a fee shifting device in order to avoid requiring each party to cover its own legal expenses. *Id. at 483*.

The Supreme Court has concluded that "the central purpose of *Rule 11* is to deter baseless filing in district court and thus, consistent with the Rules Enabling Act's grant of authority, streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393, 110 L. Ed. 2d 359, 110 S. Ct. 2447 (1990)*. **[\*82]** **HN20** The reasonable inquiry element is measured by an objective standard of reasonableness under the circumstances. *See Chambers v. NASCO, Inc., 501 U.S. 32, 47, 115 L. Ed. 2d 27, 111 S. Ct. 2123 (1991)*. Subjective good faith on the part of the attorney is insufficient to avoid sanctions.

The court must use its own discretion to set proper sanctions under *Rule 11*, which may or may not include attorney's fees. *Doering v. Union County Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3d Cir. 1988)*. Sanctions are imposed under *Rule 11* only to the extent necessary to deter unfounded claims. *Doering, 857 F.2d at 194*. The rule is not intended as a punishment. *See id. at 196*. The court should impose the least sanction necessary to serve as an adequate deterrence. *Id. at 194*.

In the instant case, plaintiffs have advanced a number of claims which this Court has not found to be viable. However, the analysis required close defining of legal theory. This Court is not persuaded that the claims were so unreasonable as to warrant *Rule 11* sanctions.

## CONCLUSION

For the foregoing reasons, the various motions of defendants **[\*83]** to dismiss plaintiffs' complaint are granted, defendants' motion for *Rule 11* sanctions is denied and this case is closed. An appropriate order is filed herewith.

Dated: 6/30/98

*ORDER*

*THOMPSON, Chief Judge*

1998 U.S. Dist. LEXIS 22977, *83

For the reasons stated in this Court's Opinion filed even date herewith;

It is on this 30th day of June, 1998;

ORDERED that the motion of defendants' Delbridge and Stone to dismiss pursuant to *Fed. R. Civ. P. 12(b)(2)* be and hereby is GRANTED; and it is further,

ORDERED that the motion of defendants GNI Incorporated and GNI Limited to dismiss be and hereby is DENIED AS MOOT; and it is further,

ORDERED that the remaining motions made by defendants to dismiss pursuant to *Fed. R. Civ. P. 12(b)(6)* be and hereby are GRANTED; and it is further,

ORDERED that defendants' motion for the imposition of sanctions pursuant to *Fed. R. Civ. P. 11* be and hereby is DENIED; and it is further,

ORDERED that this case is CLOSED.

ANNE E. THOMPSON, CHIEF JUDGE

---

**End of Document**