**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| |
|---|
| **DINAH YUKICH,** |
| **Plaintiff,** |
| **v.** |
| **PREMIER FENCING CLUB,** *et al.*, |
| **Defendants.** |

**CIVIL ACTION**

**NO. 2:25-cv-18011-KSH-AME**

**BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO**
**DEFENDANTS USA FENCING,**
**SHANNON DAUGHERTY AND ABDEL AZIZ'S MOTION TO DISMISS**

**SPECTOR GADON ROSEN VINCI P.C.**
**Randi Wolf, Esquire**
**One Logan Square, 18th Floor**
**130 N. 18th Street**
**Philadelphia, PA 19103**
**(215) 241-8887**
rwolf@sgrvlaw.com
*Attorney for Plaintiff Dinah Yukich*

**Dated:  January 6, 2026**

4119869_1

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. (ii)

I.    FACTUAL BACKGROUND ...................................................................... 1

II.    LEGAL ARGUMENT ............................................................................ 3

    A.    This Court has Jurisdiction over USAF Defendants ........................................ 3

        1.    Plaintiff Need Only Plead a Prima Facie Case for Jurisdiction ........... 3

        2.    USAF is Subject to General Jurisdiction in New Jersey ..................... 4

        3.    USAF is Subject to Specific Jurisdiction in New Jersey ................... 5

            a.    USAF Purposefully Availed Itself to New Jersey ................... 5

            b.    Litigation Arises Out of the Contacts with New Jersey ........... 6

            c.    Jurisdiction in New Jersey Comports with Fair Play and Substantial Justice ................................................................. 7

    B.    Premier Fencing was an Agent of USAF Defendants ....................................... 9

        1.    Defendant Dougherty is Subject to Specific Jurisdiction in New Jersey ................................................................. 10

        2.    New Jersey is the Focal Point of the Tortious Activity ..................... 12

    C.    The Forum is Not Oppressive or Vexatious ................................................. 13

    D.    Plaintiff Has Pled Sufficient Facts To Support Her Claims For Aiding And Abetting, Intentional Infliction Of Emotional Distress And Civil Conspiracy ................................................................. 15

        1.    Plaintiff Has Alleged Sufficient Facts To Support Her Claims For Aiding And Abetting ....................................... 16

        2.    Defendants Admitted That They Knew Their Conduct Would Cause Plaintiff Extreme Emotional Distress, Precluding Dismissal Of That Claim ....................................... 17

        3.    Plaintiff Has Alleged Sufficient Facts To State A Claim For Civil Conspiracy ................................................. 19

CERTIFICATE OF SERVICE

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**<u>Cases</u>:**

*Ackourey v. Sonellas Custom Tailors,*
    574 Fed. Appx. 208, 212 (3d. Cir. 2014) ....................................................... 6

*Acteon, Inc. v. Vista Dental Products*,
    2006 WL 12079999, at *4 (May 3, 2006).................................................... 10, 11

*Arlinghaus v. Ritenour,*
    622 F.2d 629, 639 (2d Cir. 1980) .................................................................. 19

*Bishop v. Okidata, Inc.*,
    864 F.Supp. 416, 427 (D.N.J.1994) ................................................................ 18

*Buckley v. Trenton Saving Fund Society*,
    111 N.J. 355, 544 A.2d 857 (1988) ................................................................ 18

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462, 477 (1985)................................................................................. 8

*Burke v. Quartey,*
    969 F.Supp. 921, 929 (D. N.J. 1997) ............................................................ 14

*Calkins v. Dollarland, Inc.*,
    117 F.Supp.2d 421, 432 (D.N.J.2000)............................................................ 18

*D'Jamoos ex. Rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*,
    566 F.3d 94, 108 (3d Cir. 2009) ..................................................................... 9

*Dutch Run-Mays Draft, LLC v. Wolf Block, LLP,*
    450 N.J. Super. 590, 599, 164 A.3d. 435, 440 (N.J. App. 2017).................................. 4

*Gear v. Constantinescu,*
    741 F.Supp. 525, 527 (D. N.J. 1990) ........................................................ 13, 14

*Gross-Quatrone v. Mizdol,*
    811 Fed.Appx. 95, 100 (3d Cir. 2020) ........................................................... 19

*Haber v. ASN 50th St. LLC*,2
    847 F.Supp.2d 578, 588 (S.D.N.Y. 2012) ..................................................... 19

*Hasson v. FullStory, Inc.*,
    114 F. 4th 181, 187 (3d. Cir. 2024)........................................................... 12, 13

*Imo Industries, Inc. v. Kiekert AG,*
    155 F.3d 254, 265 (3d Cir. 1998) .................................................................. 12

*Juzwiak v. Doe,*
    415 N.J. Super. 442, 451, 2 A.3d 428, 433 (App. Div. 2010) ....................................... 18

*Linus Holding Corp. v. Mark Line Industries*,
    376 F.Supp.3d 417, 423 (D. N.J. 2019) .......................................................... 9

*Loney v. E.I. DuPont*,
    886 F.2d. 628, 632 (3d. Cir. 1989) ................................................................ 13

**Page(s)**

*Marten v. Godwin,*
  499 F.3d 290, 297 (3d Cir. 2007) ........................................................ 12

*Metcalfe v. Renaissance Marine, Inc.,*
  566 F.3d 324, 330 (3d Cir. 2009) ........................................................ 4

*Migliore by Migliore v. Vision Solar, LLC,*
  160 F.4th 79, 87 (3d. Cir. 2025) ......................................................... 9

*Miller Yacht Sales, Inc. v. Smith,*
  384 F.3d 93, 96 (2004) ................................................................ 3-5, 8-9

*Morganroth & Morganroth v. Norris, McLaughlin & Marcus P.C.,*
  331 F.3d 406, 414 (3d Cir. 2003) ........................................................ 19

*Myers v. American Dental Ass'n,*
  695 F.2d 716, 722 (3d Cir. 1982) ................................................... 11, 12

*Nelligan v. Zaio Corp., No. 10-1408,*
  2011 U.S. Dist. LEXIS 28628, *12 (D.N.J. Mar. 21, 2011) ................... 10, 11

*O'Connor v. Sandy Lane Hotel, Co. Ltd.,*
  496 F.3d 312, 317 (3d. Cir. 2007) ...................................................... 5, 7

*Ontel Products Corp. v. Mindscape Products,*
  220 F.Supp.3d 555, 560 (D.N.J. 2016) ................................................ 4

*Otsuka Pharmaceutical Co., Ltd. v. Mylan Inc.,*
  106 F.Supp. 3d 456, 463 (D. N.J. 2015) .............................................. 4

*Ragonese v. Rosenfeld,*
  318 N.J.Super. 63, 71, 722 A.2d. 991, 996 (Law Div. 1998) ................... 5

*Rivera v. Cracker Barrel Old Country Store Inc., No. 02-4160(JBS),*
  2003 WL 21077965, at *6 (D.N.J. Mar. 3, 2003) ................................. 18

*Seltzer v. IC Optics, Ltd.,*
  339 F.Supp.2d 601,609 (D.N.J. 2004) ................................................ 9

## I.    <u>FACTUAL BACKGROUND</u>

Dinah Yukich is a forty-three-year-old woman who loves to fence, solely for the love of the sport.  *See* Plaintiff's Verified Complaint at ¶ 1, a true and correct copy of which is attached to Defendants' Motion to Dismiss as Exhibit "A".  Dinah first became a USA Fencing ("USAF") member in 2009.  *Id*. at ¶ 39.  At Dinah's request, USAF changed her gender marker from "M" to "F" and she was marked eligible for women's events.  *Id*. at ¶ 6.  Most fencing competitions are USAF sanctioned events, requiring USA Fencing Membership.  *Id*. at ¶ 7.  Dinah's participation in fencing events ended in July 2025, when USAF implemented the policy that banned transgender women from competing in women's events ("Trans Ban").  *Id*. at ¶¶ 10, 44.  However, USAF has explicitly admitted that there may be state laws contrary to the anti-transgender policy.  *Id*. at ¶ 45.

On or about August 25, 2025, USAF unilaterally changed Dinah's gender marker from "F" to "M" and later blocked her from registering for any women's competitions.  *Id*. at ¶ 11.  USAF claimed the United States Olympic and Paralympic Committee ("USOPC") alone forced USAF to implement the Trans Ban.  *Id*. at ¶ 12.  Contrary to that assertion, Dinah experienced and witnessed USOPC and USAF working together to ensure that transgender women were excluded from the women's competitions.  *Id*.

Mac Brown, a psychologist with the USOPC, consulted with USAF on implementing the anti-transgender policy.  *Id*.  Dinah contacted USAF CEO Phil Andrews and Mac Brown clearly declaring that she did not consent to changing her gender marker.  *Id*. at ¶ 46.  Dinah explicitly told USAF and the USOPC that the change was "demeaning and offensive."  On July 23, 2025, Mac Brown admitted to Dinah that he knew the policy caused Dinah great emotional distress.  *Id*. at ¶ 47.  Despite this acknowledgment, USOPC compelled USAF to implement and enforce the anti-transgender policy.  *Id*. at ¶ 48.  Despite USOPC's admission that the policy was causing

emotional distress, the USOPC, through Mac Brown, committed to the enforcement of the Trans Ban. *Id*.

On July 26, 2025, Dinah submitted a formal complaint to USA Fencing to dispute the Trans Ban. *Id*. at ¶¶ 49-50. The USAF closed consideration of Dinah's complaint without providing a finding. *Id*. at ¶¶ 49-50. On August 3, 2025, Phil Andrews joined Mac Brown in admitting to Dinah that the Trans Ban had a negative effect on Dinah. *Id*. at ¶ 753. Phil Andrews also explicitly stated that USOPC compelled USAF to implement the Trans Ban. *Id*. at ¶ 53. In addition to Phil Andrews of USAF, and Mac Brown of the USOPC, Damien Lehfeldt, the Chairman of the USAF Board, also admitted to Dinah that he knew the Trans Ban was causing emotional distress.[1] *Id*. at ¶ 54.

Dinah attempted to register for the Premier Challenge ROC, set for late September 2025 in Suffern, New York, and hosted by Premier Fencing Club of Metuchen, New Jersey. *Id*. at ¶ 13. On October 30, 2025, Defendant Premier Fencing Club was served. A true and correct copy of the Affidavit of Service is attached hereto as Exhibit "B." The Premier Challenge ROC is a public accommodation organized and run by Premier Fencing Club. *Id*. at ¶ 55. To register for the events, an individual must apply for a USAF account and become a member, then register for the events through the USAF website. *Id*. at ¶ 56. Dinah was denied registration as a woman competitor. *Id*. at ¶ 13. Dinah requested assistance from USAF on August 15, 2025, to which USAF, through Shannon Daugherty, stated that USAF implemented the Trans Ban to comport with USOPC's updated policy. *Id*. at ¶¶ 58-59. Dinah also contacted Abdel Aziz, the tournament organizer, regarding her inability to register for women's events. *Id*. at ¶ 60. Aziz stated he did not have the

---

[1] Paragraph 54 of Plaintiff's Complaint incorrectly identifies Damien Lehfeldt as the Chairman of the Board of the USOPC. Damien Lehfeldt was actually the Chairman of the Board of Directors for USAF.

4119869_1

option to register her for women's events and further directed Dinah to Shannon Daugherty. *Id.* at ¶ 61.

After contacting Daugherty again, Daugherty stated to Dinah that USAF prohibited Dinah from competing in women's events, and that USAF compelled Premier Fencing to discriminate against Dinah for being a transgender woman. *Id.* at ¶ 62. Dinah again contacted Defendant Aziz, as the manager and organizer of the event, for assistance in registering for the event, citing that the anti-transgender policy actually violates state law , and accordingly the imposed ban by the national organizations must be disregarded. *Id.* at ¶ 63. Contrary to the admission by the organizations regarding that state law could overrule its position regarding the disallowance of trans athletes from competing, Defendant Aziz responded that Premier Fencing is required to comply with USAF policies. *Id.* at ¶ 64.

Dinah Yukich has suffered great emotional distress as a result of the unlawful actions of Premier Fencing, aided and abetted by Shannon Daugherty, Abdel Aziz, and USAF. As a result, Dinah has raised claims against those parties. *Id.* at ¶¶ 66-126.

## II.     LEGAL ARGUMENT

### A.     This Court has Jurisdiction over USAF Defendants

New Jersey Court Rule 4:4-4, along with a litany of case law, provides for jurisdiction over the out of state defendants when there are sufficient minimum contacts. *See, Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (2004). As explained in detail below, USAF Defendants have sufficient minimum contacts that warrant jurisdiction in the state of New Jersey.

#### 1.     Plaintiff Need Only Plead a *Prima Facie* Case for Jurisdiction

Absent an evidentiary hearing, a party need only plead a *prima facie* case for jurisdiction. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (2004). Here, Dinah sufficiently pled a *prima*

4119869_1

*facie* case for jurisdiction over USA Fencing ("USAF") and Shannon Daugherty (collectively "USAF Defendants") and Abdel Aziz.  Defendants incorrectly assert that Plaintiff must "prove by affidavits or other competent evidence that jurisdiction is proper."  Doc. No. 10-1, p. 5, *citing Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009).  Defendants conveniently leave out the second half of the paragraph from which they cite, which reads, "…[i]f the district court does not hold an evidentiary hearing, 'the [plaintiff] need only establish a prima facie case of personal jurisdiction."  *Id*. at 1228, 330.  Even more compelling, at the motion to dismiss stage, "the court is required to accept the plaintiff's allegations as true and is to construe disputed facts in favor of plaintiff."  *Id., see also, Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 97 (3d Cir. 2004) ("[T]he plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have [her] allegations taken as true, and all factual disputes drawn in its favor.")  As explained below, Dinah sufficiently plead jurisdiction over all defendants.

## 2.    USAF is Subject to General Jurisdiction in New Jersey

In order to demonstrate general jurisdiction, plaintiff must allege that the out-of-state defendant is in fact "at home" in the forum.  *Otsuka Pharmaceutical Co., Ltd. v. Mylan Inc.*, 106 F.Supp. 3d 456, 463 (D. N.J. 2015).   Plaintiff must plead sufficient facts that demonstrate that the defendant's activities and operations in the state are "so substantial and of such nature as to render the corporation at home in the state."  *Ontel Products Corp. v. Mindscape Products*, 220 F.Supp.3d 555, 560 (D.N.J. 2016).  For general jurisdiction, the suit is, "not related directly to the defendant's contacts with the forum . . ."  *Dutch Run-Mays Draft, LLC v. Wolf Block, LLP*, 450 N.J. Super. 590, 599, 164 A.3d 435, 440 (N.J. App. 2017).  Here, USA Fencing is the national governing body for the sport of fencing in the United States. Ex. A at ¶26.  They sanction events that are open to members of the public, including the Premier ROC Challenge and oversee compliance for these

events.  *Id.*  USA Fencing is the national governing body for the sport in the United States of America, not Colorado.  They are "at home" in New Jersey.

### 3.    USAF is Subject to Specific Jurisdiction in New Jersey

In order to plead a prima face case for specific jurisdiction, plaintiff must demonstrate the following:  (1) defendants purposefully availed themselves to the forum, (2) whether the litigation arises out of or relates to at least one of the contacts, and (3) whether the jurisdiction in the forum comports with traditional notions of fair play and substantial justice.  *O'Connor v. Sandy Lane Hotel, Co. Ltd.*, 496 F.3d 312, 317 (3d. Cir. 2007).  A court looks that the "relationship of the [parties], the forum, and the litigation."  *Miller Yacht Sales v. Smith*, 384 F.3d. at 96 (3d. Cir. 2004).  The Third Circuit explicitly laid out that, "specific jurisdiction over a defendant exists when that defendant has 'purposefully directed [their] activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities."  *Id.*

### a.    USAF Purposefully Availed Itself to New Jersey

First, USAF Defendants purposefully availed itself to the forum.  USAF Defendants disseminated the Trans Ban to all USAF members and USAF clubs.  Ex. A. at ¶44.  This ban was disseminated in a way to ensure that every individual and club member in New Jersey and elsewhere, knew of the complete ban on transgender women from participating in women's events. The Premier ROC Challenge was promoted by USAF.  In fact, in order to register for the event itself, an individual must do so through the USA Fencing website.  Ex. A at ¶56.

The USAF website is not a passive website, rather it targets individuals to sign up for events held across the country.  "A passive website does little more than make information available to those who are interested in it…"  *Ragonese v. Rosenfeld*, 318 N.J.Super. 63, 71, 722 A.2d. 991, 996 (Law Div. 1998).  In *Ragonese*, the Superior Court found that the out-of-state defendant did

4119869_1

not avail itself to New Jersey through its website. *Id.* The Court found that, *inter alia,* the website did not have information that was aimed at New Jersey, nor had any interactive factors to effectuate a transaction. *Id.*[2] Here, USA Fencing promoted the Premier Challenge ROC Event on its webpage. It invited members of the public to sign up for the event through the USA Fencing website. Ex. A at ¶56. The Premier Fencing Club is the organizer and host of the event that took place on September 23, 2025. *Id.* at ¶¶ 22, 58. Premier Fencing Club is in New Jersey. *Id.* at ¶¶ 19-22. Premier Fencing Club, as the host, had to follow the USAF policies as a condition of it being sanctioned by USAF. *Id.* at ¶ 62. Defendant Aziz is the agent of the Premier Fencing Club. *Id.* at ¶ 23. Premier ROC Challenge took place in Suffern, New York. *Id.* at ¶ 68.[3]

### b.    Litigation Arises out of the Contacts with New Jersey

Second, the instant litigation arises out of the contacts with the forum. This entire case arises out of the contacts with the State of New Jersey. *See* Ex. A at ¶¶ 55-65. On August 15, 2025, Dinah initially made contact with the forum when she contacted USAF requesting assistance in registering for the Premier ROC Challenge. *Id.* at ¶ 58.[4] USAF engaged with the forum when they responded to Dinah regarding participation in the event by responding to Dinah's email. *Id.* at ¶ 59. Dinah then engaged in the forum when she contacted Defendant Aziz, the agent for Premier Fencing Club, a business whose principal place of business is in New Jersey. Ex. A at ¶¶ 19-25, ¶60. Dinah contacted Defendant Aziz and thereby Premier Fencing Club, about her ability to compete in the women's events at the Premier ROC Challenge.[5] USAF's subsequent

---

[2] Factors such as a website's invitation for people to "place orders, make payments, or engage in any business transactions" are considered when assessing a defendants availing itself to a forum. *Ackourey v. Sonellas Custom Tailors*, 574 Fed. Appx. 208, 212 (3d. Cir. 2014).

[3] Metuchen, New Jersey, and Suffern, New York, have a distance of 47.6 miles from each other.

[4] The Premier ROC Challenge event itself gets its name from the New Jersey based Premier Fencing Club.

[5] Defendants take issue with the fact that the Premier ROC Challenge takes place in Suffern, New York. This event was managed, supervised and run by Premier Fencing Club. Ex. A at ¶55. Abdel Aziz is the organizer and for the fencing competition and in his capacity was acting on behalf of Premier Fencing Club. *Id.* at ¶24. Premier Fencing Club is based in New Jersey. *Id.* at ¶¶19-22.

communication prohibiting Dinah from competing, all arise out of and are related to the Premier ROC Challenge – an event organized, controlled, and managed from the State of New Jersey. Ex. A at ¶¶58-65.

Even more, specific jurisdiction has been categorized as a "quid pro quo" dynamic with the out-of-state party. *See O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 323 (3d. Cir. 2007). Specific jurisdiction is the "cost of enjoying the benefits" of the forum. *Id.* Here, USAF Defendants worked closely with Premier Fencing Club and Defendant Aziz to put on and promote the public accommodation, the Premier Challenge ROC. Ex. A at ¶ 19-28. Defendant Aziz even directed Dinah to "check in with…USA Fencing…[as] he did not have the option to register Dinah for any women's events and that the system blocked [Defendant Aziz's] ability to register Dinah for the women's event." *Id.* at ¶61. USAF and Defendant Dougherty were very much emmeshed in planning, promoting, and operating the public accommodation (Premier ROC Challenge), with Defendant Premier Fencing Club (located in New Jersey) and its agent Defendant Aziz. *Id.* at ¶¶ 56-65.

Since Defendants USAF and Dougherty entered into this collaborative relationship with Defendant Premier Fencing Club and Defendant Aziz, there is no doubt that USAF Defendants were aware that conducting business in New Jersey would in fact "extend certain benefits and impose certain obligations." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 323 (3d. Cir. 2007).

### c.    Jurisdiction in New Jersey Comports with Fair Play and Substantial Justice

Third, the jurisdiction in the forum is fair and reasonable. When assessing whether the jurisdiction is fair, courts review the following factors: (1) the burden on the defendant to be in the forum, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interests in

obtaining the most efficient resolution and (4) the shared interests of several states in furthering fundamental substantive social policies. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

This case is akin to *Miller Yacht Sales*. In that case, the New Jersey plaintiff (Miller Yachts) sued the out of state company (Smith) for misappropriation and tortious interference with business relationships among other things. Miller Yachts entered into negotiations with Defendant Smith to be the exclusive marketing representative for selling vessels. 384 F.3d 93, 95 (3d. Cir. 2004). Defendant Smith made phone calls from out of state into New Jersey, to Miller Yachts. *Id.* Defendant Smith transmitted documents into New Jersey, including proposed licensing agreements. *Id.* Miller Yachts even gave Defendant Smith a sales brochure complete with photographs of the sales floor. *Id.* Defendant Smith sent communication into Miller Yachts (New Jersey) to plan for a trip to China, so that Smith could meet the manufacturer of the vessels. *Id.* at 100. Defendant Smith went to China and actually engaged with the manufacturer to build vessels that would compete with Miller Yachts. *Id.* These acts were the basis for the tort claims. *Id.* Eventually, these negotiations broke down and no deal was ever consummated. *Id.* at 95. The court found that Defendant Smith had sufficient contacts with the state of New Jersey to permit jurisdiction for the claim of misappropriation and tortious interference. *Id.* at 95.

The instant case is akin to *Miller*. Just as the brochure in *Miller Yacht* served as the roadmap for Defendant Smith to commit the unlawful acts in China, the Trans Bans served as the roadmap for Defendants Aziz and Premier Fencing Club to discriminate against Dinah Yukich at an event in New York. *See, Id.* at 98, Ex. A at ¶¶61, 64. USAF Defendant targeted and directed the Trans Ban into the State of New Jersey. Ex. A at ¶19. In *Miller Yacht*, the defendant (1) had communication and interaction with a New Jersey entity (Miller Yachts), (2) committed the

unlawful acts in a foreign jurisdiction (China) and (3) then was hailed into court in New Jersey. *Miller Yachts*, 384 at 99 (3d. Cir. 2004). The instant case is the same scenario. USAF Defendants, an out-of-state individual and entity, (1) had communication and interactions with New Jersey via Premier Fencing Club/Abdel Aziz, (2) compelled Premier Fencing/Aziz to commit unlawful acts in a foreign jurisdiction (New York). Ex. A at ¶¶ 61-65, ¶87-90. It follows that USAF must be hailed into court in New Jersey.

### B.     Premier Fencing was an Agent of USAF Defendants

This Court has specific jurisdiction over the USAF Defendants and Abdel Aziz because they controlled and directed Premier Fencing Club, a New Jersey entity. Defendant Premier Fencing Club and Defendant Aziz were agents of USAF Fencing Defendants. In order to defeat a motion to dismiss based on jurisdiction, plaintiff needs to make a *prima facie* showing of the actions between the agent and the principle. *D'Jamoos ex. Rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.,* 566 F.3d 94, 108 (3d Cir. 2009) ("[W]e recognize that for a plaintiff to defeat a motion to dismiss for lack of personal jurisdiction when the plaintiff relies on agency theory, "it need only make a prima facie showing of the connection between the actions of the agent and the principal."). "An agency relationship arises 'when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent.'" *Seltzer v. IC Optics, Ltd.*, 339 F.Supp.2d 601,609 (D.N.J. 2004), *see also, Migliore by Migliore v. Vision Solar, LLC,* 160 F.4th 79, 87 (3d. Cir. 2025).[6]

---

[6] While this is not a formal parent-subsidiary relationship, the analysis is helpful in this case. *See Linus Holding Corp. v. Mark Line Industries*, 376 F.Supp.3d 417, 423 (D. N.J. 2019)("[A] court may impute the contacts of a subsidiary corporation to a foreign parent corporation for the purposes of exercising specific jurisdiction, if the subsidiary corporation is merely operating as the parent corporation's alter ego, such that the 'independence of the separate corporate entities [may be] disregarded.").

Here, Dinah has plead sufficient facts to demonstrate that Premier Fencing and Defendant Aziz were acting act agents of USA Fencing Defendants.  Ex. A at ¶¶27, 23-25, 55-65.  USAF Defendants had total control over Defendant Aziz and Premier Fencing.  *Id.* at ¶¶55-64.

Defendant Aziz was the event organizer acting on behalf of Premier Fencing Club.  Ex. A at ¶24.  Defendant USAF "sanctioned the Premier Challenge ROC, meaning the event was authorized by a USA Fencing representative, and conducted in accordance with the USA Fencing "Rules of Competition" and the related "USA Fencing Operations Manual."  *Id.* at ¶ 27.  Defendant Dougherty was the enforcement arm of USAF in ensuring compliance.  *Id.* at ¶¶ 29-30, 59, 62.  Defendant Aziz, as the agent of Defendant Premier Fencing, admits that they have no control over the Premier Challenge ROC.  *Id.* at ¶ 64.  Defendant Aziz explicitly told Dinah, "…this remains a USA Fencing-sanctioned event.  Accordingly, we are required to comply fully with USA Fencing policies."  *Id.*  Defendant Premier Fencing was compelled by USAF Defendants and Defendant Aziz to discriminate.  Premier Fencing was acting on behalf of USA Fencing.  USAF Defendants controlled and directed the acts of Defendant Premier Fencing.

### 1.    Defendant Dougherty is Subject to Specific Jurisdiction in New Jersey

Defendant Dougherty's actions violate New York Law, and the actions took place in New Jersey.  Defendants contend that Defendant Dougherty was acting in her capacity as an employee of  USAF.  Doc. 10 at p. 7.  Defendant Dougherty's actions as an employee do not render her immune from liability.  *See Acteon, Inc. v. Vista Dental Products*, 2006 WL 12079999, at *4 (May 3, 2006)[7], *see also Nelligan v. Zaio Corp.*, No. 10-CV-1408 FLW, 2011 WL 1085525, at *8 (D.N.J. Mar. 21, 2011)[8].

---

[7] A copy of this unreported decision is attached as Exhibit "C" for the Court's convenience.
[8] A copy of this unreported decision is attached as Exhibit "D" for the Court's convenience.

4119869_1

An individual employee's actions most certainly exposes the individual to liability when the individual employee was involved in the discriminatory conduct. *Id.* at 31. The Court in *Nelligan* explicitly states that when a plaintiff's case is based in discrimination, then certain communication can support specific jurisdiction. *Id.* at 10 ("Here…Plaintiff's claims sound in discrimination. So, while the court agrees that mail and telephone communication may support specific jurisdiction in some instances, it is only where the Plaintiff's claims arise out of these communications.") This District Court held in *Acteon, Inc. v. Vista Dental Products*, individual defendants were (1) directly involved in directing the entity to take the actions at issue, and (2) themselves contributed to the unlawful activity by "taking an active part" in the unlawful activity. 2006 WL 1207999, slip op *4 (May 3, 2006).

Here, Plaintiff's claims are based in discrimination. Dinah Yukich has adequately alleged that Defendant Dougherty aided and abetted Defendant Premier Fencing Club to break New York State Law. Ex. A, ¶¶93-100. Dinah Yukich has adequately alleged that Defendant Dougherty communicated directly with Dinah explaining the implications of the Trans Ban on the public accommodation, Premier ROC Challenge. Dinah Yukich sufficiently pleaded that Defendant Dougherty took an active part in the discrimination by communicating directly with Dinah regarding the purported effect of the Trans Ban. Ex. A. at ¶62. Even more, Defendant Aziz's reliance on Defendant Dougherty to address Dinah's concerns, demonstrated Defendant Dougherty's active participation. Ex. A at ¶61.

This Court also has cited to *Myers v. American Dental Association*, which stands for the principle that an individual can be liable in their individual capacity "based on [her] contacts within the forum state while 'advanc[ing] the interests of' and 'endeavor[ing] to carry out [employer] policy' within the forum" *Acteon, Inc. v. Vista Dental Products*, at 4 (May 3, 2006). In that case,

11

the court found that the individual defendant had sufficient contacts with the Virgin Islands to render personal jurisdiction where the individual attended annual meetings to carry out the policy of the employer, and went to the Virgin Islands to lobby for the adoption of a Code of Ethics, which was at the center of the issue of the litigation. *Myers v. American Dental Ass'n*, 695 F.2d 716, 722 (3d. Cir. 1982).

> …it is alleged that [individual employee defendant] came to the Virgin Islands to urge adoption of the Code of Ethics which is at the center of this dispute underlying this action. Having purposefully entered the district to advance the interests of the [employer] in the Virgin Islands, [individual defendant] rendered himself subject to the jurisdiction of the Virgin Islands' courts as least with respect to dispute related to his presence there.

*Id. Myers* is simply very much on point. Just as the individual employee in *Myers* was advancing the interests of his employer and urging the adoption of the Code of Ethics*,* Defendant Dougherty entered the forum of New Jersey to advance the interests of USAF. Ex. A at ¶58-65. Except Defendant Daugherty did not just "urge the adoption" of the Trans Ban, she enforced and implemented the Trans Ban. *Id.* at ¶¶ 14-15, 59-63.

### 2. New Jersey is the Focal Point of the Tortious Activity

Jurisdiction is also proper as New Jersey is the focus of the tortious conduct. *See Imo Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 265 (3d Cir 1998). Dinah Yukich alleged that USAF Defendants and Defendant Abdel Aziz committed torts in New Jersey and conspired to break New York law. Ex. A. The New Jersey state law claims are torts. It follows that the Effects Test applies to this matter.[9] Per the Effects Tests (1) the defendant committed the intentional tort, (2) the

---

[9] The Effects Test has often been applied to assess personal jurisdiction over intentional tortfeasors. *Hasson v. FullStory, Inc.*, 114 F.4th 181, 189 (3d Cir. 2024). Furthermore, the Effects Test has often been applied where the alleged tortfeasor has de minimis contacts with the forum. *Id.* citing Marten v. Godwin, 499 F.3d 290, 297 (3d Cir. 2007). The Test has also been applied where "the tortious conduct occurs primarily 'outside the forum' but has an 'effect ... within the forum,'" *Id.* quoting IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 260 (3d Cir. 1998). As mentioned within this Opposition, Defendants have had *more* than de minimis contacts with the forum.

plaintiff felt the brunt of the harm in the forum; and (3) the defendant expressly aimed [the] tortious conduct at the forum. *Hasson v. FullStory, Inc.*, 114 F. 4th 181, 187 (3d. Cir. 2024).

Here, USAF Defendants committed the the conspiratorial misconduct within the state of New Jersey. Dinah felt the harm in New Jersey because that is where the acts were committed. Dinah was not even allowed to travel to New York and compete. She was never allowed to even get out of the State of New Jersey and get to New York to compete. Lastly, the tortious conduct was explicitly aimed at New Jersey. Defendant USAF and Defendant Dougherty made it their mission to ensure that Defendant Abdel Aziz and Premier Fencing Club prohibited transgender women from competing in women's events. USAF Defendants and Abdel Aziz worked together to make sure Dinah never left New Jersey to go to the state of New York to compete.

### C.    The Forum is Not Oppressive or Vexatious

New Jersey is the appropriate venue for this action. Defendants accurately indicate there is a four part analysis for *forum non convenience*: (1) whether there is an adequate alternative forum, (2) the amount of deference according to Plaintiff's forum, (3) private interest factors and public interest factors. *Gear v. Constantinescu*, 741 F.Supp. 525, 527 (D. N.J. 1990). Dismissal is appropriate based on *forum non conveniens* when "an alternative forum has jurisdiction to hear the case, and when the chosen forum would 'establish …oppressiveness and vexation to a defendant…out of all proportion to the Plaintiff's convenience." *Loney v. E.I. DuPont*, 886 F.2d. 628, 632 (3d. Cir. 1989).

Defendants mistakenly argue that very little deference should be given to Dinah Yukich's choice of forum. *Id.* at p. 9. Defendants conveniently omit that "[p]laintiff's choice of forum

should rarely be disturbed unless the balance of factors is strongly in favor of defendant." *Gear v. Constantinescu*, 741 F.Supp. at 527 (D. N.J. 1990).  Defendants fail to inform the court that they have the burden of persuasion to demonstrate why little to no deference should be afforded to Plaintiff's choice.  *Gear v. Constantinescu*, 741 F.Supp 525, 526 (D. N.J. 1990).  Specifically, neither USAF Defendants nor Defendant Aziz has adequately shouldered the mandate of their burden.

Defendants make the same arguments that were put forth in *Burke v. Quartey*.  969 F.Supp. 921, 929 (D. N.J. 1997).  In that case, plaintiff was a citizen of Maryland and brought a case in New Jersey.  *Id.* at 929.  Defendants in that case argued that there should be no presumption in favor of plaintiff's choice of forum.  *Id.*  The court reminded the defendants that while New Jersey was not Plaintiff's "home," they still had the burden to show "by a strong preponderance of convenience of the alternative forum."  *Id.*  In *Burke*, the defendants indicated that New Jersey had no vested interest in the plaintiff as there was "no relationship between the forum and the litigation."  *Id.* The court found that New Jersey was a reasonable forum for plaintiff, "in light of the regional proximity between his home state, Maryland, and New Jersey."  *Id.*  The Court concluded that it was "unreasonable to conclude that plaintiff chose this forum to vex, harass, or oppress the defendant."  *Id.*

Dinah's compelling argument is however even stronger than the facts in *Burke*.  Here, there is a relationship to the forum New Jersey; Defendant Premier Fencing Club is located at 215 Durham Avenue, Metuchen, New Jersey 08840.  *See* Complaint at ¶ 19.  There is a Defendant located in New Jersey, who actively discriminated against Dinah.  Even more, USAF Defendants and Defendant Aziz targeted their unlawful acts to New Jersey.  *Id.* at ¶¶ 60-61, 63-64.  It is

14

respectfully suggested that Dinah's choice to bring the lawsuit in New Jersey must be given deference and should not be disturbed.

Next, while USAF Defendants and Defendant Aziz cite the private interest facts that are weighed by courts, they do not delve into the purported oppression they would endure with a case housed in New Jersey. Doc. 10-1, p. 10. Hardly is their citation of the law, and mentioning Dinah's alleged desire to "drag four out of six defendants from Colorado Spring to New Jersey" sufficient to show that New Jersey is oppressive and vexatious intent. *Id.* USA Fencing actively took part in the discriminatory exclusion and made it their priority to ensure that Premier Fencing put on the public accommodation (Premier Challenge ROC) in accordance with their Trans Ban. Ex. A. Defendants cannot pick and choose when New Jersey is convenient for them. They cannot find New Jersey convenient to meddle in and compel others to break the law and then claim it is oppressive when they are being held accountable for their actions. USA Fencing Defendants clearly felt at home in New Jersey when it came to compelling Defendant Aziz and Premier Fencing Club to discriminate against Dinah Yukich. *See* Complaint at ¶ 62. New Jersey was a convenient place to enforce their discriminatory policy on others.

Lastly, there are public interest factors that must be considered. New Jersey has an interest in hearing this case in this state. New Jersey has an absolute interest to hear and evaluate matters where outside actors are infiltrating the state and compelling its own citizens to break the law. This compulsion happened in New Jersey. It Is respectfully suggested that based on those factors, the matter must stay in New Jersey for disposition.

> **D.    Plaintiff Has Pled Sufficient Facts To Support Her Claims For Aiding And Abetting, Intentional Infliction Of Emotional Distress And Civil Conspiracy**

While the moving Defendants do state the proper standard for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), they conveniently ignore well pled facts and instead rely upon "cherry-picked" conclusory language from the Complaint.  They also fail to support their arguments regarding Plaintiff's common law claims with New Jersey law, citing and even misstating New York law in a vain attempt to have this Court dismiss Plaintiff's well-pled claims.

### 1.    Plaintiff Has Alleged Sufficient Facts To Support Her Claims For Aiding And Abetting

Plaintiff has sufficiently plead the aiding and abetting causes of action. Defendants conveniently ignoring the numerous paragraphs that allege specific unlawful conduct by Aziz, the USAF and Shannon Dougherty.[10]  In addition to the paragraphs cited by Defendants, Plaintiff has also alleged:

-    USAF unilaterally changed Dinah's gender marker from "F" to "M" and later blocked her from registering for any women's competitions on or about August 1, 2025.  Complaint at ¶ 11.

-    USAF claimed the United States Olympic and Paralympic Committee ("USOPC") forced USAF to implement the anti-transgender policy and that USOPC and USAF worked together and conspired to ensure that transgender women were excluded from the women's competitions.  *Id*. at ¶ 12.

-    On July 26, 2025, Plaintiff submitted a formal complaint to USA Fencing to dispute the anti-transgender policy, but the USAF closed the complaint without providing a finding.  *Id*. at ¶¶ 49-50.

---

[10] Defendants also assert that Defendants' refusal to permit Plaintiff to register for the Premier Challenge ROC was not discriminatory because she could have competed against men.  Defendants' Brief, p. 13.  This assertion ignores the fact that the specific events Plaintiff attempted to register for were the Veteran Women's Epee events (Complaint, ¶57), in which she could not have participated if she were a man, and that Defendants were attempting to force her to compete against men even though she is a transgender woman.

4119869_1

-    When Plaintiff was denied registration as a woman competitor and was only permitted to register for men's events she requested assistance from USAF on August 15, 2025, to which USAF, through Shannon Daugherty, stated that USAF was required to update their transgender policy to comport with USOPC's updated policy.  *Id*. at ¶¶ 13, 58-59.

-    When Plaintiff contacted Abdel Aziz, the tournament organizer, regarding her inability to register for women's events, Aziz stated he did not have the option to register her for women's events and would only direct Plaintiff back to Shannon Daugherty.  *Id*. at ¶¶ 60-61.[11]

-    After she contacted Daugherty again, Daugherty told Plaintiff that USAF prohibited Plaintiff from competing in women's events, and that USAF compelled Premier Fencing to discriminate against her for being a transgender woman.  *Id*. at ¶ 62.

-    Dinah again contacted Aziz, as the manager and organizer of the event, to assistance in registering for the event, citing that fact that the anti-transgender policy violates state law, but Aziz merely responded that Premier Fencing is required to comply with USAF policies.  *Id*. at ¶¶ 63-64.

As demonstrated above, Plaintiff has specifically and sufficiently alleged facts regarding USAF's, Daugherty's and Aziz's participation in unlawful acts to support Plaintiff's claims of aiding and abetting against them.  Therefore, it is respectfully suggested that Defendants' motion to dismiss those claims must be denied.

### 2.    Defendants Admitted That They Knew Their Conduct Would Cause Plaintiff Extreme Emotional Distress, Precluding Dismissal Of That Claim

---

[11] Defendants disingenuously assert that Aziz attempted to help Plaintiff register for the event but, contrary to Defendants' assertions, Plaintiff's complaint alleges that, when she asked him for help to register for the event, Aziz refused saying he had to comply with USAF policies prohibiting transgender women from registering for women's events.  *Id*., at ¶¶ 60-61, 63-64.

4119869_1

Defendants contend that Plaintiff has failed to plead sufficient facts to support her common law claim for intentional infliction of emotional distress.  Initially, Defendants improperly rely on New York law even though the instant action is properly pending in a New Jersey Court.  In New Jersey, the four required elements of a claim for intentional infliction of emotional distress as set forth in *Buckley v. Trenton Saving Fund Society,* 111 *N.J.* 355, 544 *A.*2d 857 (1988) are: (1) the defendant acted either intentionally or recklessly; (2) the defendant engaged in conduct that is so "extreme and outrageous ... as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community;" (3) the defendant's intentional or reckless conduct was the proximate cause of the plaintiff's emotional distress; and (4) the defendant's conduct resulted in distress that is "so severe that no reasonable man could be expected to endure it."  *Juzwiak v. Doe*, 415 N.J. Super. 442, 451, 2 A.3d 428, 433 (App. Div. 2010).

New Jersey courts will rarely dismiss an intentional infliction of emotional distress claim on a motion to dismiss.  *See Calkins v. Dollarland, Inc.,* 117 F.Supp.2d 421, 432 (D.N.J.2000) (citing *Bishop v. Okidata, Inc.,* 864 F.Supp. 416, 427 (D.N.J.1994)).

Plaintiff's allegations are similar to those in *Rivera v. Cracker Barrel Old Country Store Inc.*, No. 02-4160(JBS), 2003 WL 21077965, at *6 (D.N.J. Mar. 3, 2003).[12]  In *Rivera*, the plaintiff alleged that the defendant knew of her disability and purposefully harassed her because of her disability, thereby causing her severe emotional distress.  The Court refused to dismiss the plaintiff's claim for intentional infliction of emotional distress finding that the facts alleged, if taken as true, and if rising to the aggravated level required by New Jersey law, may sustain a claim for intentional infliction of emotional distress.

---

[12] A copy of this unreported decision is attached as Exhibit "E" for the Court's convenience.

4119869_1

In the present matter, the Defendants admitted that they actually knew that their conduct in forcing Plaintiff to be labeled in a manner that does not align with her identity would cause Plaintiff great emotional distress.  *See*, Complaint, ¶¶ 47, 53-54.  As in *Rivera*, Plaintiff has alleged sufficient facts to overcome a motion to dismiss under Rule 12(b)(6).  It is, therefore, respectfully suggested, that Defendants' motion to dismiss Plaintiff's claim for intentional infliction of emotional distress must be denied.

### 3.    Plaintiff Has Alleged Sufficient Facts To State A Claim For Civil Conspiracy

Again, Defendants ignore the fact that this action is pending in a New Jersey court and cite only to New York law to assert that Plaintiff has failed to plead a claim for civil conspiracy because she has not pled a "cognizable tort."  Defendant's Brief, pp. 11-12.  In New Jersey, the elements of a civil conspiracy are: (1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages.  *Gross-Quatrone v. Mizdol*, 811 Fed.Appx. 95, 100 (3d Cir. 2020) (citing *Morganroth & Morganroth v. Norris, McLaughlin & Marcus P.C.*, 331 F.3d 406, 414 (3d Cir. 2003).  New Jersey courts make it clear that any unlawful act is sufficient. *Id*.[13]

In the present matter, Plaintiff has alleged that Defendants conspired to implement and enforce a transgender ban that violates the NYSHRL.  Therefore, she has sufficiently alleged an "unlawful act" and it is respectfully suggested that Defendants' motion to dismiss her claim for civil conspiracy must be denied.

---

[13] Even if New York law were appropriately applied here, Defendants conveniently ignore settled New York law holding that a "tort" for the purposes of civil conspiracy includes any "unlawful" act or any "lawful" act done "in an unlawful manner." *Haber v. ASN 50th St. LLC*, 847 F.Supp.2d 578, 588 (S.D.N.Y. 2012), citing *Arlinghaus v. Ritenour*, 622 F.2d 629, 639 (2d Cir. 1980).

4119869_1

**SPECTOR GADON ROSEN VINCI P.C.**

By: /s/ Randi A. Wolf
    Randi A. Wolf, Esquire
    One Logan Square, 18th Floor
    130 N. 18th Street
    Philadelphia, PA 19103
    (215) 241-8903
    rwolf@sgrvlaw.com
    *Attorney for Plaintiff Dinah Yukich*

Dated:  January 6, 2026

20

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DINAH YUKICH,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| **v.** | **NO. 2:25-cv-18011-KSH-AME** |
| **PREMIER FENCING CLUB,** *et al.*, | |
| **Defendants.** | |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 6th day of January, 2026, I electronically filed this

Response to Defendants' Motion to Dismiss on behalf of Dinah Yukich, with the Clerk of the Court

using CM/ECF filing system, which sent a notification filing to the following attorneys:

Aimee S. Lin, Esq.
Claudia A. Costa, Esq.
**GOLDBERG SEGALLA LLP**
Mailing address: PO Box 847, Buffalo, NY 14201
1037 Raymond Boulevard, Suite 1010
Newark, NJ 07102-5423
973-681-7000
alin@goldbergsegalla.com
ccosta@goldbergsegalla.com
*Attorneys for Defendants*
*Abdel Aziz, USA Fencing Association,*
*and Shannon Daugherty*

Christopher S. Porrino, Esq.
**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas
New York, NY 10020
212-419-5880
*Attorneys for United States Olympic &*
*Paralympic Committee and Mac Brown*

4119869_1

*Premier Fencing Club*[14]
215 Durham Avenue
Metuchen, NJ 08840

**SPECTOR GADON ROSEN VINCI P.C.**

By:_____
        Randi Wolf, Esquire
        One Logan Square, 18th Floor
        130 N. 18th Street
        Philadelphia, PA 19103
        (215) 241-8887
        rwolf@sgrvlaw.com
        *Attorney for Plaintiff Dinah Yukich*

Dated: January 6, 2026

---

[14] Defendant Premier Fencing Club has not answered or otherwise responded in this Matter. A copy of the Opposition has been sent to Premier Fencing Club via certified US mail.

4119869_1