# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DINAH YUKICH, | Civil Action No. 25-18011-KSH-AME |
| Plaintiff, | |
| v. | |
| PREMIER FENCING CLUB, ABDEL AZIZ, USA FENCING, SHANNON DOUGHERTY, MAC BROWN, and UNITED STATES OLYMPIC AND PARALYMPIC COMMITTEE, | Oral Argument Requested<br><br>(Document Electronically Filed) |
| Defendants. | |

---

## BRIEF IN SUPPORT OF DEFENDANTS UNITED STATES OLYMPIC AND PARALYMPIC COMMITTEE'S AND MAC BROWN'S MOTION TO DISMISS

---

Barry T. Albin
Christopher Porrino
Jarrett R. Schindler
**LOWENSTEIN SANDLER LLP**
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500
*Attorneys for United States Olympic and Paralympic Committee and Mac Brown*

## **<u>TABLE OF CONTENTS</u>**

**Page**

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................4

    A. The USOPC is a federal corporation with a statutory obligation to ensure a fair and safe competition environment in women's sports. .........4

    B. National Governing Bodies oversee individual sports. ............................5

    C. USOPC oversight by the President and Congress. ....................................6

    D. The President issues Executive Order 14201. ..........................................7

    E. The USOPC updates its NGB Athlete Safety Policy. ...............................8

    F. Plaintiff seeks to fence in a New York women's event. ............................9

    G. Plaintiff sues the USOPC and Brown under New York law in New Jersey state court, and USOPC removes the case to federal court. ..........10

ARGUMENT ...................................................................................................11

  I. Plaintiff's claims against the USOPC and Brown must be dismissed for lack of personal jurisdiction. .......................................................................11

    A. The USOPC and Brown are not subject to general jurisdiction in New Jersey. ...................................................................................................13

    B. The USOPC and Brown are not subject to specific jurisdiction in New Jersey under the traditional test or the *Calder* effects test. ......................14

      1. Traditional Test ................................................................................15

      2. The Calder Effects Test....................................................................19

  II. Plaintiff's state law claims must be dismissed because they are preempted by the Sports Act. ......................................................................................22

    A. Congress intended to create a uniform national framework through the Sports Act. ...........................................................................................24

    B. Courts have found state law claims that challenge the athlete fairness and safety requirements of the USOPC or an NGB are preempted by the Sports Act. ...........................................................................................28

    C. It is impossible for the USOPC to comply with both EO 14201 and New York law...........................................................................................32

  III. Plaintiff fails to state any viable claim against the USOPC and Brown. ......35

A.  Plaintiff's NYSHRL claims fail because neither the USOPC nor Brown had any role in planning Premier's fencing event.........................35

B.  Plaintiff has failed to state a claim of intentional infliction of emotional distress. .......................................................................................36

C.  Plaintiff has failed to state a claim for civil conspiracy. ...........................39

CONCLUSION .......................................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*B.P.J. v. W. Va. State Bd. of Educ.*,
  98 F.4th 542 (4th Cir. 2024) ...........................................................................39

*Behagen v. Amateur Basketball Ass'n of Am.*,
  884 F.2d 524 (10th Cir. 1989) .........................................................................24

*BNSF Ry. Co. v. Swanson*,
  No. 23-43, 2024 WL 5245233 (D. Mont. Dec. 30, 2024) ................................35

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*,
  582 U.S. 255 (2017)..........................................................................................17

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)..........................................................................12, 17, 19

*In re Burlington Coat Factory Secs. Litig.*,
  114 F.3d 1410 (3rd Cir. 1997) ...........................................................................4

*Calder v. Jones*,
  465 U.S. 783 (1984)...................................................................................*passim*

*Cantrell v. U.S. Soccer Fed'n (USSF)*,
  924 P.2d 789 (Okla. Civ. App. 1996) ..............................................................29

*Chanko v. Am. Broadcasting Cos. Inc.*,
  27 N.Y.3d 46 (2016) .........................................................................................37

*Chavez v. Dole Food Co.*,
  836 F.3d 205 (3d Cir. 2016) .............................................................................13

*Crosby v. Nat'l Foreign Trade Council*,
  530 U.S. 363 (2000)..........................................................................................23

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014).....................................................................................13, 14

*Display Works, LLC v. Bartley*,
  182 F. Supp. 3d 166 (D.N.J. 2016)...................................................................19

*Doe v. Horne*,
115 F.4th 1083 (9th Cir. 2024)........................................................................38

*Dolan v. U.S. Equestrian Team, Inc.*,
257 N.J. Super. 314 (App. Div. 1992) ............................................................30

*Dzielak v. Whirlpool Corp.*,
120 F. Supp. 3d 409 (D.N.J. 2015)............................................................22, 23

*Farina v. Nokia Inc.*,
625 F.3d 97 (3d Cir. 2010) .............................................................................23

*Farrell v. U.S. Olympic & Paralympic Comm.*,
567 F. Supp. 3d 378 (N.D.N.Y. 2021)........................................................27, 28

*Figueroa v. Foster*,
864 F.3d 222 (2d Cir. 2017) ...........................................................................35

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021)...............................................................................*passim*

*Hasson v. FullStory, Inc.*,
114 F.4th 181 (3d Cir. 2024) .....................................................................14, 15

*Hillsborough Cnty., Fla. v. Automated Med. Lab'ys, Inc.*,
471 U.S. 707 (1985).........................................................................................22

*Howell v. N.Y. Post Co.*,
81 N.Y.2d 115 (1993) ................................................................................37, 38

*IMO Indus., Inc. v. Kiekert AG*,
155 F.3d 254 (3d Cir. 1998) ......................................................................11, 20

*J. McIntyre Mach., Ltd. v. Nicastro*,
564 U.S. 873 (2011).................................................................................16, 17

*Jovanovic v. U.S. Olympic & Paralympic Comm.*,
No. 22-2098, 2025 WL 1218155 (D.N.J. Apr. 28, 2025) ..................................18

*Kimmel v. State*,
29 N.Y.3d 386 (2017) ....................................................................................40

*L.E. v. Lee*,
728 F. Supp. 3d 806 (M.D. Tenn. 2024) ...........................................................39

*Lee v. U.S. Taekwondo Union*,
331 F. Supp. 2d 1252 (D. Haw. 2004).........................................................29, 31

*Leibowitz v. Bank Leumi Tr. Co. of N.Y.*,
152 A.D.2d 169 (2d Dep't 1989)........................................................................38

*Little v. Hecox*,
104 F.4th 1061 (9th Cir. 2024), *cert. granted*, 145 S. Ct. 2871
(2025)..................................................................................................................38

*Long Island Roller Rebels v. Cnty. of Nassau*,
242 A.D.3d 860 (2d Dep't 2025)........................................................................32

*Marten v. Godwin*,
499 F.3d 290 (3d Cir. 2007) ..............................................................................20

*McSpedon v. Levine*,
158 A.D.3d 618 (2d Dep't 2018)........................................................................40

*Medtronic, Inc., v. Lohr*,
518 U.S. 470 (1996)............................................................................................23

*Monsanto v. Elec. Data Sys. Corp.*,
141 A.D.2d 514 (2d Dep't 1988)........................................................................40

*Moreau v. U.S. Olympic & Paralympic Comm.*,
641 F. Supp. 3d 1122 (D. Colo. 2022)...............................................................27

*Nezaj v. PS450 Bar & Rest.*,
719 F. Supp. 3d 318 (S.D.N.Y. 2024) ...............................................................36

*O'Connor v. Sandy Lane Hotel Co.*,
496 F.3d 312 (3d Cir. 2007) ........................................................................15, 17

*Oldfield v. Athletic Cong.*,
779 F.2d 505 (9th Cir. 1985) .............................................................................24

*Pliuskaitis v. USA Swimming, Inc.*,
243 F. Supp. 3d 1217 (D. Utah 2017), *aff'd sub nom.*, 720 F.
App'x 481 (10th Cir. 2018) ....................................................................29, 31, 32

*PLIVA, Inc. v. Mensing*,
   564 U.S. 604 (2011)...........................................................................................35

*Proteonomix, Inc. v. Crompton*,
   No. 09-00266, 2009 WL 10728610 (D.N.J. Nov. 10, 2009)..............................16

*Rickman v. BMW of N. Am. LLC*,
   538 F. Supp. 3d 429 (D.N.J. 2021)....................................................................21

*Roe v. Utah High Sch. Activities Ass'n*,
   2022 WL 3907182 (D. Utah Aug. 19, 2022)......................................................38

*Russell v. N.Y. Univ.*,
   204 A.D.3d 577 (1st Dep't 2022) ......................................................................38

*S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*,
   483 U.S. 522 (1987).........................................................................................5, 24

*Sikkelee v. Precision Airmotive Corp.*,
   907 F.3d 701 (3d Cir. 2018) ..............................................................................22

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
   549 U.S. 422 (2007)...........................................................................................21

*Slaney v. Int'l Amateur Athletic Fed'n*,
   244 F.3d 580 (7th Cir. 2001) ........................................................................28, 30

*United States v. Curtiss-Wright Exp. Corp.*,
   299 U.S. 304 (1936)...........................................................................................33

*Walden v. Fiore*,
   571 U.S. 277 (2014).......................................................................15, 16, 17, 18

*Walton-Floyd v. U.S. Olympic Comm.*,
   965 S.W.2d 35 (Tex. App. 1998)..................................................................28, 29

*Wong v. Campbell*,
   626 F.2d 739 (9th Cir. 1980) .............................................................................33

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980)...........................................................................................18

**Statutes**

U.S. Const. art. VI, cl. 2 ...................................................................................22

36 U.S.C. § 220501 ............................................................................................4

36 U.S.C. § 220502 ..........................................................................................13

36 U.S.C. § 220503 .......................................................................5, 24, 25, 30

36 U.S.C. § 220505 ..................................................................................*passim*

36 U.S.C. § 220511 ..........................................................................................27

36 U.S.C. § 220521 .....................................................................................5, 24

36 U.S.C. § 220522 ............................................................................................5

36 U.S.C. § 220523 ..........................................................................................30

36 U.S.C. § 220551 .......................................................................................7, 27

36 U.S.C. § 220552 ............................................................................................7

Ala. Code § 16-1-52 (2024) ............................................................................38

Alaska Admin. Code Educ. & Early Dev. 44 § 06.115(b)(5)(D) (2023) ...............38

Ariz. Rev. Stat. Ann. § 15-120.02 (2022) ......................................................38

Ark. Code. Ann. § 6-1-107 (2023) .................................................................38

Fla. Stat. § 1006.205 (2025) ..........................................................................38

Ga. Code Title 20, Ch. 3, Art. 1, Pt. 3(2024) ...............................................38

Idaho Code § 33-6203 (2024) ........................................................................38

Ind. Code § 20-33-13-4 (2022) ......................................................................38

Ind. Code § 21-18-13.5-2 (2025) ...................................................................38

Iowa Code § 261I.2 (2022) .............................................................................38

Kan. Stat. Ann. § 60-5603 (2023) ..................................................................38

Ky. Rev. Stat. Ann. § 164.2813 (2022) ...................................................................38

La. Stat. Ann. § 4:444 (2022) .................................................................................38

Miss. Code Ann. § 37-97-1 (2021) .........................................................................38

Mo. Rev. Stat. § 163.048 (2023) ............................................................................38

Mont. Code Ann. § 20-7-1306 (2023) ....................................................................38

N.C. Gen. Stat. Ann. § 115C-407.59 (2023) ..........................................................38

N.C. Gen. Stat. Ann. § 116-401 (2023) ..................................................................38

N.H. Rev. Stat. Ann. § 193:41 (2024) .....................................................................38

N.Y. Exec. Law § 292-35 ..................................................................................11, 32

N.Y. Exec. Law § 296-2a .................................................................................10. 32

Neb. Rev. Stat. § 79-3804 (2025) ...........................................................................38

Ohio Rev. Code Ann. § 3313.5320 (2024) .............................................................38

Ohio Rev. Code Ann. § 3345.562 (2024) ...............................................................38

S.C. Code Ann. § 59-1-500 (2022) ........................................................................38

SD Codified Laws § 13-67-1 (2022) ......................................................................38

Tenn. Code Ann. § 49-6-310 (2022) .......................................................................38

Tex. Educ. Code Ann. § 33.0834 (2022) ................................................................38

Tex. Educ. Code Ann. § 51.980 (2023) ..................................................................38

Utah Code Ann. § 53G-6-902 (2022) .....................................................................38

W. Va. Code § 18-2-25d (2021) .............................................................................39

Wyo. Stat. 21-25-101–02 (2023) ............................................................................39

**Other Authorities**

Exec. Order No. 14168, 90 Fed. Reg. 8615 (Jan. 20, 2025)................................8, 33

Exec. Order No. 14201, 90 Fed. Reg. 9279 (Feb. 5, 2025) ............................*passim*

1978 U.S.C.C.A.N. 7478 ...........................................................................................24

S. Rep. No. 116-245 (2020) .......................................................................................7

U.S. Dep't of State, *Duties of the Sec'y of State*,
    https://www.state.gov/duties-of-the-secretary-of-state (last visited
    Jan. 16, 2026) ...................................................................................................33

*Participation Policy for Transgender Student- Athletes*, NCAA
    https://www.ncaa.org/sports/2022/1/27/transgender-participation-
    policy.aspx (last visited Jan. 18, 2026) .......................................................38, 39

## **INTRODUCTION**

The Complaint brought by Plaintiff Dinah Yukich (Plaintiff) against Defendants United States Olympic and Paralympic Committee (USOPC) and Mac Brown (Brown) should be dismissed because (1) the Court lacks personal jurisdiction over the USOPC and Brown, (2) the state law claims are preempted by a comprehensive federal scheme regulating national amateur athletics, and (3) Plaintiff fails to state a valid cause of action against the USOPC and Brown.

The USOPC is a federally chartered corporation headquartered in Colorado, and Brown, a USOPC psychologist, is domiciled and works in Colorado. The USOPC is charged by Congress in the Olympic and Amateur Sports Act (Sports Act) with coordinating amateur athletic activity in the United States relating to international competition, such as the Olympic and Paralympic Games. The USOPC serves as this nation's exclusive representative to the International Olympic Committee and International Paralympic Committee and, by law, annually reports to both Congress and the President.

Under the Sports Act, the USOPC exercises broad responsibilities, which include ensuring a fair and safe competition environment in women's sports events and certifying one national governing body (NGB) to oversee the administration of each sport. Defendant USA Fencing (USAF) serves as the NGB for fencing.

On February 5, 2025, the President issued Executive Order (EO) 14201, stating, in part, that the United States shall "rescind support for and participation in people-to-people sports exchanges or other sports programs" that permit individuals to compete in women's events based on their gender identity rather than solely on their biological sex and would seek to amend the standards governing international Olympic sporting events accordingly. In June 2025, the USOPC updated its NGB Athlete Safety Policy "to ensure that women have a fair and safe competition environment consistent with Executive Order 14201" and the Sports Act.

Plaintiff Dinah Yukich is a transgender woman who fenced as a male in high school and college. Approximately twenty years later, she transitioned. Afterward, when she attempted to register as a female for a USAF-sanctioned women's fencing event in New York, hosted and organized by Defendant Premier Fencing Club (Premier) of Metuchen, New Jersey, she was not permitted to do so. USAF explained that participation in a USAF-sanctioned event required that Plaintiff be identified according to her biological sex consistent with USOPC's NGB Athlete Safety Policy. For that reason, Premier would allow Plaintiff to register only for male fencing events.

Plaintiff filed a Complaint in New Jersey Superior Court alleging that the USOPC and Brown—as well as USAF, Premier, and individual representatives of those organizations—engaged in gender identity discrimination in violation of the

New York State Human Rights Law (NYSHRL). She also asserts intentional infliction of emotional distress and civil conspiracy claims under New York's common law. The Complaint does not allege any specific violation of New Jersey law. The USOPC removed the action to federal court pursuant to Section 220505(b)(9) of the Sports Act.

USOPC's motion to dismiss the Complaint should be granted. First, this Court lacks personal jurisdiction over the USOPC and Brown. Plaintiff was not permitted to compete in a women's fencing event in New York. The Complaint fails to allege that the USOPC and Brown, both "at home" in Colorado, engaged in any activities in New Jersey relating to Plaintiff's claims. Plaintiff, moreover, is a Maryland resident, and USAF is headquartered in Colorado. The Complaint's single tenuous connection to New Jersey is Premier's location in Metuchen.

Second, to the extent the NYSHRL imposes athlete eligibility requirements for women's sports inconsistent with the Sports Act, it is preempted by federal law. The Sports Act requires the USOPC to ensure a fair and safe competition environment in women's sports events, and it did so consistent with EO 14201. Requiring the USOPC to comply with varying state rules regarding transgender women's participation in women's sports events would stand as an insurmountable obstacle to effective implementation of the Sports Act. Federal preemption also applies because it is impossible for the USOPC to comply with both EO 14201 and

state laws that mandate eligibility of transgender women to participate in women's sports events.

Third, Plaintiff has failed to state a claim under the NYSHRL. Premier determined on its own to hold a USAF-sanctioned event and "had full and final responsibility to control who would participate." Plaintiff does not allege that the USOPC or Brown had anything to do with hosting or sponsoring the event. And, even when viewed in the most indulgent fashion, the Complaint does not support a claim against them for intentional infliction of emotional distress or conspiracy.

## **BACKGROUND**

For the purposes of this motion only, the USOPC and Brown accept the Complaint's allegations as true.[1]

### A.    **The USOPC is a federal corporation with a statutory obligation to ensure a fair and safe competition environment in women's sports.**

In 1978, Congress established the current USOPC structure through the Ted Stevens Olympic and Amateur Sports Act (Sports Act). 36 U.S.C. §§ 220501, *et seq*. The USOPC has its principal place of business in Colorado Springs, Colorado. (Compl. ¶ 31; Declaration of Evangeline Rivera (Rivera Decl.), dated Jan. 18, 2026, ¶ 2.)

---

[1]   USOPC's NGB Athlete Safety Policy, which is referenced in the Complaint, is attached to this brief, in accordance with *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3rd Cir. 1997).

The USOPC is empowered to exercise exclusive jurisdiction over "all matters pertaining to the United States participation in the Olympic Games" and certain other international competitions. *See* 36 U.S.C. § 220503(3)(A). Among the purposes of the USOPC is "to establish national goals for amateur athletic activities"; "to coordinate and develop amateur athletic activity in the United States, directly related to international amateur athletic competition"; and "to encourage and provide assistance to amateur athletic activities for women." 36 U.S.C. § 220503(1), (2), (12). Notably, "Congress has a broader public interest in promoting, through the activities of the USOC [(USOPC's predecessor)], the participation of amateur athletes from the United States" in the "Olympic Games." *S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 537 (1987) (quoting Olympic Charter, Rule 1 (1985)).

### B. National Governing Bodies oversee individual sports.

The Sports Act tasks the USOPC with certifying one independent organization for each sport in the United States to serve as that sport's NGB. *See* 36 U.S.C. §§ 220505(c)(4), 220521. For certification purposes, and to remain in good standing, an NGB must comply with the Sports Act's eligibility requirements and "provide[] an equal opportunity to amateur athletes . . . to participate in amateur athletic competition, without discrimination on the basis of . . . sex . . . ." 36 U.S.C. § 220522(8); *see also id.* §§ 220521(d), 220527, 220528. An NGB is also authorized

to "establish procedures for determining eligibility standards for participation in competition" unique to its sport and must "provide equitable support and encouragement for participation by women where separate programs for male and female athletes are conducted on a national basis." *Id.* §§ 220523(a)(5), 220524(a)(6). Defendant USAF is the NGB for fencing. (Compl. ¶ 26.)

### C.    USOPC oversight by the President and Congress.

Under the Sports Act, the President and Congress possess significant regulatory authority over the USOPC. For example, the USOPC is required to submit annually "to the President and to each House of Congress a detailed report on the operations of the [USOPC] for the preceding calendar year." 36 U.S.C. § 220511(a)(1). The report must include seven different categories of information, including a comprehensive description of USOPC's activities and accomplishments, the agenda and meeting minutes of all USOPC board meetings, and a report on USOPC's compliance standards. *Id.* § 220511(a)(2). The report must also include data concerning the participation of women in amateur athletics and detail the steps taken to encourage women's participation in amateur athletic activities. *Id.* § 220511(a)(2)(B)–(C). Further, annually, the USOPC is audited, and an auditor submits a detailed report to "the Committee on Commerce, Science, and Transportation of the Senate, the Committee on the Judiciary of the House of

Representatives, and the chair of the Athletes' Advisory Council." *Id.* § 220511(b)(4).

The Sports Act was amended in 2020 to "provide for increased congressional oversight of the [USOPC's] board of directors." S. Rep. No. 116-245, at 1 (2020). To ensure that the USOPC and NGBs meet their statutory duties, those amendments gave Congress the power to dissolve the USOPC Board and terminate the recognition of any NGB that "has failed to fulfill its duties." 36 U.S.C. §§ 220551, 220552. For example, Congress can terminate the recognition of an NGB for failing to "provide equitable support and encouragement for participation by women where separate programs for male and female athletes are conducted on a national basis." *Id.* § 220524(a)(6); *see id.* §§ 220551, 220552.

### D.    The President issues Executive Order 14201.

On February 5, 2025, the President issued EO 14201, titled "Keeping Men Out of Women's Sports." Exec. Order No. 14201, 90 Fed. Reg. 9279 (Feb. 5, 2025); (*see also* Certification of Barry T. Albin (Albin Cert.), dated Jan. 19, 2026, Ex. A (EO 14201).) EO 14201 pronounces that "it is the policy of the United States to oppose male competitive participation in women's sports more broadly, as a matter of safety, fairness, dignity, and truth." 90 Fed. Reg. at 9279. The EO further states:

> The Secretary of State, including through the Bureau of Educational and Cultural Affairs' Sports Diplomacy Division and the Representative of the United States of America to the United Nations, shall:

> (i) rescind support for and participation in people-to-people sports exchanges or other sports programs within which the relevant female sports category is based on identity and not sex.

*Id.* at 9280.  The EO also directs the Secretary of State to "use all appropriate and available measures to see that the International Olympic Committee" amends its eligibility standards to ensure that "participation in women's sporting events is determined according to sex and not gender identity or testosterone reduction."  *Id.*

EO 14201 incorporates definitions set forth in EO 14168.  *Id.* at 9729.  EO 14168 announced that sex "shall refer to an individual's immutable biological classification as either male or female" and that sex "is not a synonym for and does not include the concept of 'gender identity.'"  Exec. Order No. 14168, 90 Fed. Reg. 8615 (Jan. 20, 2025).

### E.    The USOPC updates its NGB Athlete Safety Policy.

On June 18, 2025, the USOPC issued an updated "NGB Athlete Safety Policy," stating that "NGBs are committed to protecting opportunities for athletes participating in sport" and to "ensur[ing] that women have a fair and safe competition environment consistent with Executive Order 14201 and the [Sports Act]."  (*See* Albin Cert., Ex. B (NGB Athlete Safety Policy), at § 4.4.)  That same day, the USOPC issued an update to its similar USOPC Athlete Safety Policy.  (*See* Albin Cert., Ex. C (USOPC Athlete Safety Policy), at § 3.3.)

### F.    Plaintiff seeks to fence in a New York women's event.

Plaintiff is a transgender woman who resides in Maryland.  (Compl. ¶¶ 2, 18, 37, 40.)  She fenced as a male in both high school and college from at least 1998 to 2000.  (*Id.* ¶¶ 2–3.)  Plaintiff first became a member of USAF in 2009 as a male but did not fence from 2009 to 2024.  (*Id.* ¶ 39.)  In 2021, she "commenced the physical process of transitioning" and "began fencing again at the DC Fencers Club."  (*Id.* ¶ 40.)  To compete in a USAF-sanctioned fencing event, Plaintiff needed to become a member of USAF again.  (*Id.* ¶ 41.)  In July 2023, Plaintiff requested that USAF change her gender marker from "M" to "F."  (*Id.*)  She did not compete in any fencing events in 2023 and 2024 and let her USAF membership lapse.  (*Id.* ¶¶ 42–43.)  In April 2025, she reactivated her USAF membership.  (*Id.* ¶ 43.)

On July 22, 2025, the USAF's Chief Executive Officer notified its members that USAF must comply with USOPC's NGB Athlete Safety Policy that "excludes transgender women from participating in women's events."[2]  (*Id.* ¶¶ 44–45.)  That same day, Plaintiff sent a communication to USAF's CEO and to Brown, a USOPC psychologist who is domiciled and works in Colorado.  (Declaration of Mac Brown (Brown Decl.), dated Jan. 18, 2026, ¶¶ 2–4; Compl. ¶¶ 33, 46.)  In that

---

[2]    Damien Lehfeldt is the Chair of the Board of USAF, not USOPC, as now admitted by Plaintiff. (Pl.'s Opp'n Br. to Defs.' Abdel Aziz, Shannon Doughtery & USA Fencing Mot. to Dismiss, ECF No. 12, at 2 n.1.)  With this correction to Paragraph 54 of the Complaint, there is no allegation that USOPC's Chair communicated with Plaintiff.

communication, Plaintiff stated that she did not consent to having her sex marker changed from "F" to "M." (*Id.* ¶¶ 33, 46.)  Brown responded by acknowledging that being "labeled in a manner that does not align with our held identities" can cause distress.  (*Id.* ¶ 47.)  The Complaint does not allege that Brown played any role in drafting or promulgating USOPC's NGB Athlete Safety Policy.

In September 2025, Premier, located in Metuchen, New Jersey, sponsored and hosted the Premier Challenge Regional Open Circuit (Premier Challenge) in Suffern, New York.  (*Id.* ¶¶ 13, 55.)  Premier not only "managed, supervised, and r[a]n" the USAF-sanctioned fencing competition, but also "had full and final responsibility to control who would participate in the Premier Challenge." (*Id.* ¶¶ 22, 55.)

Because the Premier Challenge was a USAF-sanctioned fencing tournament, Plaintiff was not permitted to register for the women's epee event or any of the other women's events.  (*Id.* ¶¶ 57, 59.)  A USAF agent explained that USAF-sanctioned fencing tournaments must abide by USAF policies.  (*Id.* ¶ 62.)

### G.    Plaintiff sues the USOPC and Brown under New York law in New Jersey state court, and USOPC removes the case to federal court.

Plaintiff filed this lawsuit in the Superior Court of New Jersey.  Plaintiff alleges that Premier discriminated against her based on her gender identity in violation of NYSHRL by refusing to allow her to compete in the women's fencing events at the Premier Challenge in New York.  (*Id.* ¶¶ 66–76.)

NYSHRL prohibits discrimination in places of public accommodation based on "gender identity or expression." N.Y. Exec. Law § 296-2a. Under that law, "gender identity or expression" means "a person's actual or perceived gender-related identity, appearance, behavior, expression, or other gender-related characteristic regardless of the sex assigned to that person at birth, including, but not limited to, the status of being transgender." N.Y. Exec. Law § 292-35.

Plaintiff claims that the USOPC, Brown, and others aided and abetted Premier in this alleged discrimination. (Compl. ¶¶ 101–16.) Plaintiff also alleges that all Defendants intentionally inflicted emotional distress upon her by excluding her from competing in the women's fencing events. (*Id.* ¶ 117–20.) Last, based on "information and belief," Plaintiff pleads that all Defendants engaged in a civil conspiracy to exclude her from the women's fencing events. (*Id.* ¶¶ 121–26.)

The USOPC removed this case to federal court pursuant to 36 U.S.C. § 220505(b)(9). (Def. USOPC's Notice of Removal, ECF No. 1, at 1.)

## **ARGUMENT**

### I. **Plaintiff's claims against the USOPC and Brown must be dismissed for lack of personal jurisdiction.**

The barebone allegations in the Complaint do not remotely suggest that the USOPC or Brown—or Plaintiff's claims—have any meaningful connection to New Jersey. Thus, this Court lacks personal jurisdiction over the USOPC and Brown.

"[T]he New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). Under the Fourteenth Amendment's Due Process Clause, a court may not exercise jurisdiction over a defendant unless the defendant has sufficient "contacts" with the forum state such that "the maintenance of the suit" is "reasonable" and "does not offend traditional notions of fair play and substantial justice." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)). The focus is "on the nature and extent of 'the defendant's relationship to the forum State.'" *Id.* (quoting *Bristol-Myers Squibb Co.* v. *Super. Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017)).

The Supreme Court recognizes "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Id.* (citing *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011)). Even the most permissive reading of the Complaint cannot support this Court's exercise of general or specific jurisdiction over the USOPC and Brown.

First, for purposes of general jurisdiction, neither the USOPC nor Brown are at home in New Jersey. *Id.* at 358. Second, for purposes of specific jurisdiction, Plaintiff has not claimed that either Defendant has "meaningful contacts, ties, or

relations" with New Jersey, *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (citation modified), nor has she claimed that New Jersey is the forum where the USOPC and Brown aimed their alleged tortious conduct or where Plaintiff felt the brunt of that alleged conduct, *see Calder v. Jones*, 465 U.S. 783, 788–89 (1984).

### A.    The USOPC and Brown are not subject to general jurisdiction in New Jersey.

Plaintiff does not allege facts sufficient to establish that the USOPC and Brown are subject to general jurisdiction in New Jersey. A defendant is subject to "general jurisdiction only when [it] is essentially at home in the State." *Ford Motor Co.*, 592 U.S. at 358 (citation modified).

While in the "'paradigm' case an individual is subject to general jurisdiction in her place of domicile," "the 'equivalent' forums for a corporation are its place of incorporation and principal place of business." *Id*. at 358–59 (citation modified). "[I]t is incredibly difficult to establish general jurisdiction [over a corporation] in a forum *other* than the place of incorporation or principal place of business." *Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016) (citation modified). Even a "substantial, continuous, and systematic course of business" will not confer general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014) (citation modified). Only when a corporation's operations are "so substantial and of such a nature as to

13

render the corporation at home in that State" is the corporation subject to general jurisdiction in the forum state. *Id.* at 139 n.19.

The Complaint fails to allege facts sufficient to meet this demanding standard. The USOPC is a federally chartered corporation that is incorporated in Washington, D.C. and maintains its principal place of business in Colorado. (Rivera Decl. ¶ 2; Compl. ¶ 31 (admitting USOPC is located in Colorado)); *see* 36 U.S.C. § 220502 (recognizing USOPC's federal charter). Plaintiff has not alleged ***any*** contacts that the USOPC has with New Jersey that are "so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n.19.

Similarly, Brown is domiciled and works in Colorado. (Brown Decl. ¶¶ 2–4; Compl. ¶ 33 (admitting Brown maintains office in Colorado)); *see Ford Motor Co.*, 592 U.S. at 358–59 (explaining for individuals, domicile is "paradigm case" for general jurisdiction). Plaintiff does not allege that Brown has any ties to or contacts with New Jersey, much less contacts that would "render [him] at home in that State." *See Daimler*, 571 U.S. at 139 n.19. Thus, this Court lacks general jurisdiction over the USOPC and Brown because neither have the requisite contacts that would render them "at home" in New Jersey.

**B.    The USOPC and Brown are not subject to specific jurisdiction in New Jersey under the traditional test or the *Calder* effects test.**

"The Supreme Court has articulated two tests for specific jurisdiction: (1) the 'traditional' test—also called the 'minimum contacts' or purposeful availment test

and (2) the 'effects' test" set forth in *Calder v. Jones*, 465 U.S. at 787 n.6. *Hasson v. FullStory, Inc.*, 114 F.4th 181, 186 (3d Cir. 2024) (citation modified). The Third Circuit has "stressed that '*Calder* [did not] carve out a special intentional torts exception to the traditional specific jurisdiction analysis.'" *Id.* at 189 (citation modified). Neither the traditional test nor the *Calder* effects test provides a basis for this Court to exercise jurisdiction over the USOPC or Brown.

### 1.    *Traditional Test*

Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy (i.e., an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation)." *Walden v. Fiore*, 571 U.S. 277, 284 n.6 (2014) (citation modified). For Plaintiff to satisfy the traditional test: (1) "the defendant must have 'purposefully directed [its] activities' at the forum," (2) "the litigation must 'arise out of or relate to' at least one of those activities," and (3) "if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (citation modified).

Plaintiff fails prong one because she has not alleged that either the USOPC or Brown engaged in "some act by which [either] purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Ford Motor Co.*, 592 U.S.

at 359 (citation modified).  "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'"  *Id*.  "[I]t is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction," and "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."  *Walden*, 571 U.S. at 285–86.

Plaintiff has not alleged that the USOPC or Brown directed any activities toward New Jersey or had any communication with Premier, a New Jersey entity that "organized and hosted" the competition at issue in New York.  (Compl. ¶ 13.) Plaintiff alleges a single communication between herself and Brown, (*id.* ¶ 47), but that communication is not alleged to have any connection to New Jersey.  Even if a communication were somehow connected to New Jersey, "[c]ommunications via telephone, email, or mail will not by themselves trigger personal jurisdiction." *Proteonomix, Inc. v. Crompton*, No. 09-00266, 2009 WL 10728610, at *2 (D.N.J. Nov. 10, 2009).

USOPC's promulgation of a national Athlete Safety Policy, not specifically targeting New Jersey, is an insufficient basis on which to find that the USOPC "purposefully directed" its activities at New Jersey.  In her lawsuit, Plaintiff connects USOPC's Athlete Safety Policy to her claim that she was discriminated against in a ***New York*** competition.  The USOPC cannot be subject to blanket jurisdiction in every state simply because it is a federally chartered corporation with a national

16

policy that others may choose to follow in any state. *See Ford Motor Co.*, 592 U.S. at 362 n.3 (rejecting the view that "a state court should have jurisdiction over a nationwide corporation . . . on *any* claim, no matter how unrelated to the State or [the defendant's] activities there."); *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 886 (2011) (finding lack of personal jurisdiction over entity that targeted the United States as a whole, but did not specifically target New Jersey).

For the same reasons, Plaintiff's allegations fail the second prong of the test, which requires that the litigation "arise out of or relate to" USOPC's and Brown's jurisdictional contacts with New Jersey. Plaintiff has not alleged a "connection between" the forum state (New Jersey) and Plaintiff's "specific claims" that the USOPC and Brown obstructed her participation in a women's fencing event in New York in violation of New York Law. *See Bristol-Myers Squibb*, 582 U.S. at 265; *Walden*, 571 U.S. at 283 n.6 (specific jurisdiction requires an "affiliation between the forum and the underlying controversy") (citation modified).

Because Plaintiff cannot meet the first two prongs of the traditional jurisdiction test, New Jersey is not the proper forum. But even had Plaintiff vaulted the first two prongs, Plaintiff could not satisfy the third prong because the exercise of jurisdiction would not comport with notions of fair play and substantial justice. *See O'Connor*, 496 F.3d at 324. That analysis includes consideration of "the burden on the defendant" in defending a case in the forum State; "the forum State's interest

in adjudicating the dispute," and the "plaintiff's interest in obtaining convenient and effective relief." *Burger King*, 471 U.S. at 477 (citation modified).

First, Plaintiff cannot thrust the burden on the USOPC and Brown to defend a lawsuit in a state where they have not directed their activities—a state that has no ties to the litigation.  If the Court were to find jurisdiction in New Jersey, then arguably the USOPC and its agents would be subject to personal jurisdiction in almost every state, regardless of its lack of contacts in the forum state.  A defendant's conduct and connection to the forum must be "such that [the defendant] should reasonably anticipate being haled into court there." *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Plaintiff, moreover, cannot establish personal jurisdiction over the USOPC or Brown by referencing that Premier is located in New Jersey.  "[I]t is [***the USOPC and Brown's***] *conduct* that must form the necessary connection with [New Jersey] that is the basis for [New Jersey's] jurisdiction," and "[***the USOPC and Brown's***] relationship with [Plaintiff] or [Premier], standing alone, is an insufficient basis for jurisdiction." *See Walden*, 571 U.S. at 285–86 (emphasis added).  Again, there are no allegations that the USOPC and Brown interacted with Premier.  Even so, merely "interacting with persons affiliated with" the forum state is not sufficient to establish specific jurisdiction. *Id.*; *Jovanovic v. U.S. Olympic & Paralympic Comm.*, No. 22-2098, 2025 WL 1218155, at *5 (D.N.J. Apr. 28, 2025) (finding USOPC was not

18

subject to specific personal jurisdiction in New Jersey in part because "a transaction with a forum resident . . . alone does not give rise to specific personal jurisdiction").

Second, a New Jersey court has no discernible interest in adjudicating a dispute brought by a ***Maryland*** plaintiff against mostly ***non-New Jersey*** defendants, concerning alleged violations of ***New York*** law arising from a sporting event in ***New York***.

Last, Plaintiff cannot plausibly argue that New Jersey is the only jurisdiction where she can obtain convenient and effective relief. The other *Burger King* factors—"the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and "the shared interest of the several States in furthering fundamental substantive social policies"—are not relevant and do not weigh in favor of the Court asserting jurisdiction over this case. *See* 471 U.S. at 477.

### 2. *The Calder Effects Test*

Plaintiff fares no better in establishing jurisdiction under "the *Calder* effects test," which applies to complaints alleging intentional tort claims. *See Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 180 (D.N.J. 2016) (stating that the *Calder* effects test is a variation of the traditional specific jurisdiction test).

In the present case, the *Calder* effects test requires that Plaintiff allege:

(1) The defendant committed an intentional tort;

> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
>
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity[.]

*IMO Indus.*, 155 F.3d at 265–66.

Even if Plaintiff's allegations satisfy prong one, Plaintiff cannot meet the second or third prongs of the *Calder* test.

Plaintiff is a Maryland resident.  (Compl. ¶ 18.)  The Complaint alleges that Plaintiff was harmed by the USOPC and Brown because she was denied registration as a transgender woman in a **New York** women's fencing competition.  (*Id*. ¶ 13.) The Complaint does not allege that Plaintiff ever set foot in New Jersey or that she ever communicated with the USOPC or Brown in New Jersey.  The Complaint does not allege that she felt harm, much less the "brunt of the harm" in New Jersey.  *IMO Indus.*, 155 F.3d at 265–66.  Thus, Plaintiff cannot satisfy *Calder's* prong two.

Plaintiff also cannot meet the third prong of *Calder*.  In her Complaint, Plaintiff does not "point to specific activity indicating that [the USOPC or Brown] expressly aimed [their allegedly] tortious conduct at [New Jersey]," nor does she claim that the USOPC or Brown "knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in [New Jersey]."  *See Marten v. Godwin*, 499 F.3d 290, 297–98 (3d Cir. 2007) (quoting *IMO Indus.*, 155 F.3d at 266).

The only alleged connection between this suit and New Jersey is that Premier is based in New Jersey, (Compl. ¶¶ 13, 19), which is not a sufficient basis to establish jurisdiction over the USOPC or Brown. "Each defendant's contacts with the forum State must be assessed individually," and Plaintiff cannot simply impute Premier's forum contacts to the USOPC or Brown. *See Calder*, 465 U.S. at 790. The conspiracy theory of jurisdiction has been rejected, and thus Premier's (or any other parties') jurisdictional contacts cannot be imputed to the USOPC or Brown. *See Rickman v. BMW of N. Am. LLC*, 538 F. Supp. 3d 429, 440 (D.N.J. 2021) ("Federal due process does not square with the conspiracy-jurisdiction theory. Purposeful availment must be analyzed individually to assure that *each* defendant deliberately targeted this State.").

Plaintiff alleges only a single communication between herself and Brown, (Compl. ¶ 47), but that communication is not alleged to have any connection to New Jersey. The Complaint alleges no relevant discriminatory or tortious conduct by the USOPC or Brown that is connected in any way to New Jersey. Without any allegations that relevant conduct of the USOPC or Brown was aimed at New Jersey or that Plaintiff felt any harm in New Jersey, the claims against them must be dismissed for lack of personal jurisdiction under the *Calder* test.

For those reasons, the Court should dismiss the claims against the USOPC and Brown for lack of personal jurisdiction without reaching the merits. *See*

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007).

## II.    Plaintiff's state law claims must be dismissed because they are preempted by the Sports Act.

In her Complaint, Plaintiff claims that USOPC's general athlete fairness and safety policy for women's sports events violates state law.  How New York courts will ultimately construe the NYSHRL in matters related to the participation of transgender women in women's sports is a matter yet to be decided.  Nevertheless, assuming that the NYSHRL is directly at odds with USOPC's NGB Athlete Safety Policy, then Plaintiff's state law claims would frustrate one of the USOPC's purposes under the Sports Act: ensuring a fair and safe competition environment in women's sports.  In that circumstance, Plaintiff's claims are preempted by federal law.

The preemption doctrine flows from the Constitution's Supremacy Clause.  U.S. Const. art. VI, cl. 2 (providing federal law "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.").  Under the Supremacy Clause, "state laws that interfere with, or are contrary to, federal law" are invalid.  *Hillsborough Cnty., Fla. v. Automated Med. Lab'ys, Inc.,* 471 U.S. 707, 712 (1985) (citation modified).  For our purposes, conflict preemption takes two forms: (1) "obstacle preemption, where compliance with both laws is possible, but state law poses an obstacle to the full achievement of

federal purposes" and (2) "impossibility preemption, where compliance with both federal and state duties is impossible." *Sikkelee v. Precision Airmotive Corp.*, 907 F.3d 701, 709 (3d Cir. 2018).

"What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects . . . ." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000); *see Dzielak v. Whirlpool Corp.*, 120 F. Supp. 3d 409, 420 (D.N.J. 2015) (explaining obstacle preemption occurs when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress") (citation modified). "Preemption can apply to all forms of state law, including civil actions based on state law." *Farina v. Nokia Inc.*, 625 F.3d 97, 115 (3d Cir. 2010). The "ultimate touchstone" of any preemption analysis is Congress's intent. *Medtronic, Inc., v. Lohr*, 518 U.S. 470, 485 (1996). In discerning Congressional intent, courts should look to the "structure and purpose of the statute as a whole, as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme" to operate. *Id.* at 486.

Plaintiff's state law claims are preempted under the doctrine of obstacle preemption. First, assuming that the NYSHRL mandates that Plaintiff has the right to participate in a USAF-sanctioned women's fencing event, then enforcement of

New York's law in a way that conflicts with USOPC's NGB Athlete Safety Policy would frustrate a central purpose of the Sports Act: establishing a fair and safe competition environment in women's sports in amateur athletics in the United States. Congress intended the USOPC to be governed by federal authority, rather than numerous differing state law regimes, as evidenced by USOPC's rigorous federal reporting requirements and its right to remove cases arising under the Sports Act to federal court. Second, courts have determined that state law claims pertaining to athlete eligibility are preempted by the Sports Act. Thus, Plaintiff's state law claims, which challenge her eligibility to participate in a USAF-sanctioned fencing event, must be dismissed as preempted by the Sports Act.

A.    **Congress intended to create a uniform national framework through the Sports Act.**

Congress enacted the Sports Act to remedy the widespread disorganization, inconsistency, and confusion that was plaguing amateur athletics in the United States. *S.F. Arts & Athletics*, 483 U.S. at 544; *Behagen v. Amateur Basketball Ass'n of Am.*, 884 F.2d 524, 527 (10th Cir. 1989); *Oldfield v. Athletic Cong.*, 779 F.2d 505, 506 (9th Cir. 1985). To that end, the Sports Act established a vertical sports structure with the USOPC at the top of the hierarchy as the national coordinating entity for amateur sports. H.R. Rep. No. 1627, 95th Cong., 2d Sess. 8, *as reprinted in* 1978 U.S.C.C.A.N. 7478 (Cong. Report), 7482; *see also* 36 U.S.C. § 220503. The USOPC is tasked with certifying one NGB for each sport in the United States, with

24

that NGB acting as that sport's governing body.  *See* 36 U.S.C. §§ 220505(c)(4), 220521.

This centralized structure reflects a clear Congressional objective to allow the USOPC to set general athlete fairness and safety requirements for women's sports, regardless of the state in which athletes compete.  *See* Cong. Report, at 7482 (detailing that Congress intended to empower USOPC to act as a "central policy making forum" and to "induce" organizations to belong to an NGB "so that their activities can be coordinated").  Allowing state anti-discrimination laws to impose alternative or conflicting athlete fairness and safety standards different from those of the USOPC would frustrate those federal objectives and reintroduce the patchwork system Congress intended to correct through the Sports Act.

As part of this national program, the Sports Act also tasks the USOPC with encouraging the participation of women in amateur athletics.   36 U.S.C. § 220503(12).  In service of that purpose, the USOPC must report to the President and Congress on data concerning the participation of women in amateur athletics and the steps taken to encourage women's participation in amateur athletic activities.  *Id.* § 220511(a).    Additionally, NGBs must provide equitable support and encouragement for women participating in national athletics programs.  *Id.* §§ 220511(a)(2)(B)–(C), 220524(a)(6).  Those provisions demonstrate that, through the Sports Act, Congress authorized the USOPC to set policy to ensure a fair and

safe competition environment for women's sports events.  Consistent with EO 14201 and the Sports Act, Congress surely did not intend USOPC's national athlete fairness and safety requirements for women's sports to be subject to differing state laws.

To impose on the USOPC and its NGBs a patchwork of state-law athlete requirements would undermine the national goals of the Sports Act.  Under Plaintiff's formulation, the USOPC and USAF would need to simultaneously abide by the eligibility requirements of (1) state laws that may require allowing transgender women to participate in women's events *and* (2) state laws that, like EO 14201, separate women's sports events by biological sex.  (*See infra* n.5.) Mandating that USAF competitions adapt to conflicting athlete fairness and safety requirements in the state where a competition occurs is the antithesis of a nationally uniform standard.  Requiring the USOPC to establish different eligibility requirements to comply with potentially conflicting anti-discrimination laws for each of these USAF-sponsored competitions not only defies common sense but also undermines the Sports Act's principles of having a uniform and national athlete fairness and safety policy for women's sports.  *See* Cong. Report, at 7482 (revealing that Congress intended to empower USOPC to "guarantee an athlete's right to compete").

Other provisions of the Sports Act also demonstrate that Congress intended the USOPC to oversee a comprehensive national framework for amateur athletics.

The Sports Act imposes rigorous federal reporting requirements on the USOPC to ensure its compliance with its federal charter. 36 U.S.C. § 220511. As part of that compliance regime, the USOPC must submit annual reports to the President and each House of Congress and detailed annual audit reports to various Congressional committees. *Id.* §§ 220511(a)(1), (b)(4)(A). Moreover, in the absence of compliance with those statutory mandates, Congress can dissolve USOPC's board or terminate recognition of an NGB. *See id.* §§ 220551, 220552. The Sports Act makes clear that the USOPC is a federally chartered corporation with a nationwide charge to establish athlete fairness and safety requirements for participation in amateur women's sport's events, and therefore the USOPC cannot be governed by fifty different state laws within this realm.

USOPC's right to remove any civil action relating to its responsibilities under the Sports Act is further evidence of Congress's intent to empower federal courts to preempt state laws that interfere with USOPC's authority to impose a nationwide athlete fairness and safety policy for women's sports events. *See Moreau v. U.S. Olympic & Paralympic Comm.*, 641 F. Supp. 3d 1122, 1128 n.3 (D. Colo. 2022) ("Under [36 U.S.C.] § 220505(b)(9), when a plaintiff sues a federally charte[re]d corporation such as USOPC and the suit relates to 'the corporation's responsibilities,' the corporation may remove the action to federal district court.");

*Farrell v. U.S. Olympic & Paralympic Comm.*, 567 F. Supp. 3d 378, 384 (N.D.N.Y. 2021) (explaining removal by USOPC under 36 U.S.C. § 220505(b)(9)).

**B.    Courts have found state law claims that challenge the athlete fairness and safety requirements of the USOPC or an NGB are preempted by the Sports Act.**

Against this backdrop, courts have recognized that Congress intended the Sports Act to preempt state law claims pertaining to USOPC and NGB eligibility determinations.    For example, the Seventh Circuit found that the Sports Act preempted an athlete's state-law claims that the USOPC unlawfully administered its drug testing program.  *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 594–96 (7th Cir. 2001).  The *Slaney* court explained that the plaintiff "cannot escape the fact that her state-law claims, whether framed as breach of contract, negligence, breach of fiduciary duty, fraud, constructive fraud, or negligent misrepresentation, are actually challenges to the method by which the USOC determines eligibility of athletes," and "the USOC has exclusive jurisdiction, under the Amateur Sports Act, to determine all matters pertaining to eligibility of athletes."  *Id.* at 596.

Another court found that the Sports Act preempted state law tort claims against the USOPC relating to an athlete's four-year suspension for use of a banned substance.  *See Walton-Floyd v. U.S. Olympic Comm.*, 965 S.W.2d 35, 40 (Tex. App. 1998).    As the court explained, "[t]he interest of maintaining consistent interpretations among jurisdictions requires the [Sports] Act to pre-empt claims

asserted under state tort law." *Id.* "To hold [otherwise] . . . threatens to override legislative intent and opens the door to inconsistent interpretations of the [Sports] Act." *Id.*

Courts have reached the same conclusion for state law claims brought by coaches. *See, e.g.*, *Pliuskaitis v. USA Swimming, Inc.*, 243 F. Supp. 3d 1217, 1227 (D. Utah 2017), *aff'd sub nom.*, 720 F. App'x 481 (10th Cir. 2018) (finding Sports Act preempted coach's state law claims challenging coach's expulsion from USA Swimming); *Lee v. U.S. Taekwondo Union*, 331 F. Supp. 2d 1252, 1257 (D. Haw. 2004) (finding Sports Act preempted state law challenge to USOPC's decision to remove coach); *see also Cantrell v. U.S. Soccer Fed'n (USSF),* 924 P.2d 789, 792 (Okla. Civ. App. 1996) ("We find Congress, as a general matter, intended to leave questions of eligibility of those involved in amateur athletics to be resolved in accordance with the [Sports] Act."). Those courts reason that "[a]llowing coaches or athletes to litigate eligibility in court under the common law of each state would . . . conflict with a principal purpose of the Sports Act: establishing uniform eligibility standards . . . ." *Pliuskaitis*, 243 F. Supp. 3d at 1227. Ruling otherwise would "conflict with, and frustrate, Congress' intent that the Sports Act gives exclusive jurisdiction over eligibility issues to the USOC and NGBs." *Id.*

The Sports Act gives the USOPC exclusive jurisdiction over "*all matters* pertaining to United States participation in the Olympic Games, the Paralympic

Games, the Pan-American Games, and the Parapan American Games, including representation of the United States in the games."  36 U.S.C. § 220503(3)(A) (emphasis added).  This extremely broad mandate includes the promotion and development of amateur athletic programs and competitions that occur domestically, for among the goals of the USOPC is to identify the best athletes to represent the United States in international competition.  To that end, the Sports Act expressly authorizes NGBs, such as USAF, to set eligibility standards for participation in all competitions, both domestic and international.  *Id.* § 220523(a)(5).  The Sports Act sets forth a national framework for developing amateur athletics in the United States.

In short, the Sports Act authorizes the USOPC to promulgate uniform standards for a fair and safe competition environment for amateur athletes in women's sports, and state laws that impose inconsistent eligibility requirements for NGB-sanctioned women's sports events are preempted by the Sports Act.

As Judge Posner observed in his often-cited concurrence, "there can be few less suitable bodies than the federal courts for determining the eligibility, or procedures for determining the eligibility, of athletes to participate in the Olympic Games."  *Slaney*, 244 F.3d at 594–95 (quoting *Michels v. U.S. Olympic Comm.*, 741 F.2d 155, 159 (7th Cir. 1984) (Posner, J., concurring)); *see also Dolan v. U.S. Equestrian Team, Inc.*, 257 N.J. Super. 314, 320 (App. Div. 1992) ("[C]ourts are hardly suitable to determine the eligibility, or the procedure for determining the

eligibility, of athletes to participate on our behalf in international competitions."). Thus, courts asked to intervene with respect to athlete eligibility "have uniformly determined that judicial intervention should occur only in extremely limited circumstances"—for example, when an NGB is accused of violating its own bylaws, when the breach will immediately result in serious and irreparable harm, and when the plaintiff has exhausted all internal remedies. *Pliuskaitis*, 243 F. Supp. 3d at 1225 (citing *Harding v. United States Figure Skating Ass'n*, 851 F. Supp. 1476 (D. Or. 1994)). No such exceptional circumstances exist here. At bottom, Plaintiff's state law claims challenge the determination that she was ineligible to participate in a USAF-sanctioned fencing competition in the women's category and thus are preempted by the Sports Act.

Nor does it matter that Plaintiff has brought a challenge to athlete eligibility requirements under a state anti-discrimination law. Courts that have considered discrimination claims pertaining to eligibility have "made a distinction between claims arising under *federal* anti-discrimination statutes and state-law claims addressing eligibility." *Id.* (emphasis added). The Sports Act "does not nullify or supersede other *federal* laws that provide private rights of action to ensure freedom from discrimination." *Lee*, 331 F. Supp. 2d at 1260 (emphasis added). However, where a plaintiff "does not assert any claim or right under any federal statute" and the plaintiff's "claims all arise from state law," the claims are preempted by the

Sports Act. *Pliuskaitis*, 243 F. Supp. 3d at 1226. Plaintiff brings only state law claims that challenge her exclusion from an NGB-sponsored women's fencing competition. They are thus preempted by the Sports Act and must be dismissed.[3]

### C.    It is impossible for the USOPC to comply with both EO 14201 and New York law.

Additionally, it is impossible for the USOPC to comply with both NYSHRL and EO 14201, and thus Plaintiff's claims must be dismissed on preemption grounds.

NYSHRL prohibits discrimination based on "gender identity or expression," and defines gender identity to include "gender-related characteristic regardless of the sex assigned to that person at birth, including . . . the status of being transgender." N.Y. Exec. Law §§ 296-2a, 292-35; *see id.* § 296-6 (prohibiting aiding and abetting the same); *Long Island Roller Rebels v. Cnty. of Nassau*, 242 A.D.3d 860, 861–62 (2d Dep't 2025) (finding, at preliminary injunction stage, likelihood of success on claim that local law prohibiting transwomen from women's sports violated the NYSHRL).

EO 14201 sets forth a policy that opposes the participation of transgender women in women's sports to ensure "women and girls [have] the equal opportunity to participate and excel in competitive sports." 90 Fed. Reg. at 9279. EO 14201 incorporates the definitions set forth in EO 14168, which announced that sex shall

---

[3]    To be clear, the USOPC is not challenging adherence to state anti-discrimination laws that are not in conflict with federal law.

refer only to an individual's "immutable biological classification" as assigned at birth and does not include the concept of "gender identity." *See id.*; *see also* 90 Fed. Reg. at 8615.  And EO 14201 announces a policy that prohibits persons born as biological males from participating in women's sports.  *See* 90 Fed. Reg. at 9279.

The part of EO 14201 that addresses women's sports competitions in the Olympic and Paralympic movement is an expression of the President's Article II foreign affairs powers.  *See United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319 (1936) ("The President is the sole organ of the nation in its external relations, and its sole representative with foreign nations.") (citation modified); *see also Wong v. Campbell*, 626 F.2d 739, 743 (9th Cir. 1980) (collecting cases for proposition that the Constitution vests the President with "considerable responsibility" over foreign affairs).

In EO 14201, the President directs the Secretary of State[4] to "rescind support for and participation in people-to-people sports exchanges or other sports programs within which the relevant female sports category is based on identity and not sex," and, at the Secretary's discretion, to "convene international athletic organizations and governing bodies, and female athletes harmed by policies that allow male

---

[4]    The Secretary of State serves as the President's principal foreign affairs advisor and carries out the President's foreign policies through the State Department and Foreign Service.  *See* U.S. Dep't of State, *Duties of the Sec'y of State*, https://www.state.gov/duties-of-the-secretary-of-state (last visited Jan. 16, 2026).

participation in women's sports, to promote sporting policies that are fair, safe, and in furtherance of the best interests of female athletes." 90 Fed. Reg. at 9280. EO 14201 further directs the Secretary of State to "use all appropriate and available measures to see that the [IOC] amends the standards governing Olympic sporting events to promote fairness, safety, and the best interests of female athletes by ensuring that eligibility for participation in women's sporting events is determined according to sex and not gender identity or testosterone reduction." *Id.* In addition, the Secretary of Homeland Security is instructed to "review and adjust, as needed, policies permitting admission to the United States of males seeking to participate in women's sports, and shall issue guidance with an objective of preventing such entry to the extent permitted by law." *Id.* Those provisions of EO 14201 emanate from the President's Article II foreign affairs powers.

To the extent that NYSHRL forbids the biological sex-based classification for women's sports events that the EO 14201 requires, then it is impossible for the USOPC to comply with both New York law and the EO.

In short, the USOPC is forced to decide whether to comply with New York law or a Presidential executive order. It cannot do both. Thus, for this additional reason, Plaintiff's state-law claims, which flow from NYSHRL, must be dismissed as preempted. *See PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617–18 (2011) (state law must give way to federal law where it is "impossible for a private party to comply

with both state and federal requirements") (quoting *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995)); *see also Figueroa v. Foster*, 864 F.3d 222, 234 (2d Cir. 2017) (a state law claim must be dismissed when "state law penalizes what federal law requires") (quoting *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 97 (2d Cir. 2013)); *BNSF Ry. Co. v. Swanson*, No. 23-43, 2024 WL 5245233, at *4 (D. Mont. Dec. 30, 2024); ("Presidential executive order . . . can preempt state law" because it has the force and effect of law).

## III. Plaintiff fails to state any viable claim against the USOPC and Brown.

### A. Plaintiff's NYSHRL claims fail because neither the USOPC nor Brown had any role in planning Premier's fencing event.

Plaintiff's NYSHRL § 296-6 claims against the USOPC and Brown (Counts Five and Six) fail because the Complaint does not allege that the USOPC or Brown had anything to do with hosting or sponsoring the Premier Challenge.

NYSHRL § 296-6 makes it unlawful for a person to "aid, abet, incite, compel or coerce" any unlawful discriminatory practice under the act. To state this secondary liability claim, a plaintiff must allege: (1) a predicate primary violation of NYSHRL, (2) the defendant's "actual participation in the conduct giving rise to the claim," and (3) the defendant shared the intent or purpose of the principal actor. *Nezaj v. PS450 Bar & Rest.*, 719 F. Supp. 3d 318, 333 (S.D.N.Y. 2024) (citation modified). Here, Plaintiff alleges that Premier committed a primary violation of the

law by hosting and sponsoring the Premier Challenge competition. But Plaintiff alleges no participation whatsoever on the part of the USOPC or Brown.

Nowhere in the Complaint does Plaintiff allege that the USOPC or Brown had anything to do with Premier's decision to hold an event sanctioned by USAF. Nor does she allege that Premier had any obligation to hold a USAF-sanctioned event that applied USOPC's NGB Athlete Safety Policy. And Plaintiff does not allege that the USOPC or Brown had any role in Premier's selection of New York as the venue for the event. Rather, Plaintiff concedes that Premier "organized the fencing competition" and "[a]s the organizing club of the event at issue . . . had full and final responsibility to control who would participate in the Premier Challenge." (Compl. ¶¶ 21–22.) Premier determined on its own to sponsor and host a USAF-sanctioned fencing event in New York. That the event organizer voluntarily decided to host a USAF-sanctioned event that was subject to USOPC's NGB athlete fairness and safety requirements is not a basis to involuntarily dragoon the USOPC and its employee into litigation based on New York's anti-discrimination laws. Because the Complaint alleges no participation or shared intent on the part of the USOPC or Brown, Plaintiff fails to state an NYSHRL claim against them. Plaintiff's discrimination claims must be dismissed.

**B.      Plaintiff has failed to state a claim of intentional infliction of emotional distress.**

Plaintiff does not allege that the USOPC or Brown engaged in the type of extreme and outrageous conduct that would satisfy a claim of intentional infliction of emotional distress (IIED) under New York law.  An IIED claim "has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993).  On an IIED claim under New York law, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Chanko v. Am. Broadcasting Cos. Inc.*, 27 N.Y.3d 46, 56 1171, 1178 (2016) (quoting *Howell,* 81 N.Y.2d at 122).

Those "requirements" are so "rigorous, and difficult to satisfy" that the New York Court of Appeals has stated that "of the intentional infliction of emotional distress claims considered by this Court, every one has failed because the alleged conduct was not sufficiently outrageous." *Howell*, 81 N.Y.2d at 122 (citation modified).  For that reason, New York courts dismiss IIED claims at the pleading stage. *See*, *e.g.*, *Leibowitz v. Bank Leumi Tr. Co. of N.Y.*, 152 A.D.2d 169, 182 (2d Dep't 1989) (finding that ethnic slurs "did not rise to such an extreme or outrageous

level"); *Russell v. N.Y. Univ.*, 204 A.D.3d 577, 581 (1st Dep't 2022) (upholding dismissal of IIED claim despite "abhorrent . . . offensive and insulting" conduct).

Plaintiff's allegations about the conduct of the USOPC and Brown do not remotely satisfy the elements of an IIED claim. In other words, they do not rise to the level of conduct "atrocious, and utterly intolerable in a civilized community." *Howell*, 81 N.Y.2d at 122 (citation modified). USOPC's promulgation of athlete fairness and safety requirements for women's sports events is no different than the laws of most states,[5] the policy of the NCAA, *Participation Policy for Transgender*

---

[5] More than half of the states have passed legislation banning transgender females from participating in sports consistent with their gender identity. *See* Ala. Code § 16-1-52 (2024); Alaska Admin. Code Educ. & Early Dev. 44 § 06.115(b)(5)(D)(2023); Ariz. Rev. Stat. Ann. § 15-120.02 (2022) (temporary injunction blocking law from being enforced pending further judicial review, *see Doe v. Horne*, 115 F.4th 1083 (9th Cir. 2024)); Ark. Code. Ann. § 6-1-107 (2023); Fla. Stat. § 1006.205 (2025); Ga. Code Title 20, Ch. 3, Art. 1, Pt. 3 (2024); Idaho Code § 33-6203 (2024) (temporary injunction blocking law from being enforced pending further judicial review, *see Little v. Hecox*, 104 F.4th 1061 (9th Cir. 2024), *cert. granted*, 145 S. Ct. 2871 (2025)); Ind. Code § 20-33-13-4 (2022); Ind. Code § 21-18-13.5-2 (2025); Iowa Code § 261I.2 (2022); Kan. Stat. Ann. § 60-5603 (2023); Ky. Rev. Stat. Ann. § 164.2813 (2022); La. Stat. Ann. § 4:444 (2022); Miss. Code Ann. § 37-97-1 (2021); Mo. Rev. Stat. § 163.048 (2023); Mont. Code Ann. § 20-7-1306 (2023); Neb. Rev. Stat. § 79-3804 (2025); N.H. Rev. Stat. Ann. § 193:41 (2024); N.C. Gen. Stat. Ann. § 115C-407.59 (2023); N.C. Gen. Stat. Ann. § 116-401 (2023); N.D. Cent. Code Ann. § 15.1-39-02 (2023); N.D. Cent. Code Ann. § 15-10.6-02 (2023); Ohio Rev. Code Ann. § 3345.562 (2024); Ohio Rev. Code Ann. § 3313.5320 (2024); Okla. Stat. Ann. Schools 70, § 27-106 (2022); S.C. Code Ann. § 59-1-500 (2022); SD Codified Laws § 13-67-1 (2022); Tenn. Code Ann. § 49-6-310 (2022) (as applied challenge granted solely for individual plaintiff, *see L.E. v. Lee*, 728 F. Supp. 3d 806, 840 (M.D. Tenn. 2024); Tex. Educ. Code Ann. § 51.980 (2023); Tex. Educ. Code Ann. § 33.0834 (2022); Utah Code Ann. § 53G-6-902 (2022) (temporary

*Student-Athletes*, NCAA https://www.ncaa.org/sports/2022/1/27/transgender-participation-policy.aspx (last visited Jan. 18, 2026), and is consistent with an Executive Order issued by the President of the United States, EO 14201. That Policy was enacted to "ensure that women have a fair and safe competition environment." (NGB Athlete Safety Policy § 4.4.)

Brown, a USOPC psychologist, is merely alleged to have emailed a sympathetic statement to Plaintiff, stating that "[s]hifting people into different categories to align with policy is a logistical and systems move, but the fact of the matter is that is painful and distressing to be labeled in a manner that does not align with our held identities." (Compl. ¶ 47.) By any standard, that caring statement cannot be viewed as atrocious and utterly intolerable in a civilized community. The IIED claim should be dismissed.

## C.    Plaintiff has failed to state a claim for civil conspiracy.

Under New York law, to state a civil conspiracy claim, a "plaintiff must allege a cognizable tort, coupled with an agreement between the conspirators regarding the tort, and an overt action in furtherance of the agreement." *McSpedon v. Levine*, 158

---

injunction blocking law from being enforced pending further judicial review, *see Roe v. Utah High Sch. Activities Ass'n*, 2022 WL 3907182 (D. Utah Aug. 19, 2022); W. Va. Code § 18-2-25d (2021) (temporary injunction blocking law from being enforced pending further judicial review, *see B.P.J. v. W. Va. State Bd. of Educ.*, 98 F.4th 542 (4th Cir. 2024); Wyo. Stat. 21-25-101–02 (2023).

A.D.3d 618, 621 (2d Dep't 2018) (citation modified).  Thus, a civil conspiracy claim "stands or falls with the underlying tort."  *Id.*

Here, the civil conspiracy claim must fall because Plaintiff has failed to state an actionable IIED claim—the only underlying tort pled in the Complaint.  The alleged violation of the NYSHRL is not an underlying tort because an NYSHRL claim is a creature of "statute, which did not exist at common law, and therefore cannot give rise to tort liability."  *Monsanto v. Elec. Data Sys. Corp.*, 141 A.D.2d 514, 515 (2d Dep't 1988); *see also Kimmel v. State*, 29 N.Y.3d 386, 395 n.4 (2017) ("[C]laims brought under the Human Rights Law are not tort claims . . . .").

Because "New York does not recognize civil conspiracy to commit a tort as an independent cause of action," in the absence of any underlying tort, the civil conspiracy count must be dismissed.  *See McSpedon*, 158 A.D.3d at 621.

## CONCLUSION

For those reasons expressed, all claims against the USOPC and Brown must be dismissed.

Respectfully submitted,

Dated:  January 19, 2026

*s/ Barry T. Albin*
Barry T. Albin
Christopher Porrino
Jarrett R. Schindler
**LOWENSTEIN SANDLER LLP**
*Attorneys for United States Olympic
and Paralympic Committee and Mac
Brown*

40