## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DINAH YUKICH,<br><br>                     Plaintiff,<br><br>v.<br><br>PREMIER FENCING CLUB, ABDEL AZIZ, USA FENCING, SHANNON DOUGHERTY, MAC BROWN, and UNITED STATES OLYMPIC AND PARALYMPIC COMMITTEE,<br><br>                     Defendants. | Civil Action No. 25-18011-KSH-AME<br><br><br>**CERTIFICATION OF**<br>**BARRY T. ALBIN**<br><br><br>(Document Electronically Filed) |

I, BARRY T. ALBIN, of full age, certify as follows:

1.    I am an attorney admitted to practice before this Court and a partner of the law firm Lowenstein Sandler LLP, counsel for Defendants United States Olympic and Paralympic Committee (USOPC) and Mac Brown (Brown) in this matter.  I submit this Certification in support of USOPC's and Brown's Motion to Dismiss Counts Five, Six, Seven, and Eight of Plaintiff Dinah Yukich's Complaint. I am fully familiar with the facts set forth in this Certification.

2.    Attached as **Exhibit A** to this Certification is a true and correct copy of Executive Order 14201, which is titled "Keeping Men Out of Women's Sports" and dated February 5, 2025.  Executive Order 14201 can be found at 90 Fed. Reg. 9279.

3.      Attached as **Exhibit B** to this Certification is a true and correct copy of USOPC's NGB Athlete Safety Policy, which was issued on June 18, 2025.

4.      Attached as **Exhibit C** to this Certification is a true and correct copy of USOPC's Athlete Safety Policy, which was issued on June 18, 2025.

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  January 19, 2026

*s/ Barry T. Albin*
Barry T. Albin
Christopher Porrino
Jarrett R. Schindler
**LOWENSTEIN SANDLER LLP**
One Lowenstein Drive
Roseland, NJ 07068
(973) 597-2500
balbin@lowenstein.com
cporrino@lowenstein.com
jschindler@lowenstein.com

*Attorneys for United States Olympic and Paralympic Committee and Mac Brown*

# EXHIBIT A

Exec. Order No. 14201, 90 FR 9279, 2025 WL 446216(Pres.)

Executive Order 14201

Keeping Men Out of Women's Sports

February 5, 2025

**\*9279**  By the authority vested in me as President by the Constitution and the laws of the United States of America, and to protect opportunities for women and girls to compete in safe and fair sports, it is hereby ordered:

Section 1. Policy and Purpose. In recent years, many educational institutions and athletic associations have allowed men to compete in women's sports. This is demeaning, unfair, and dangerous to women and girls, and denies women and girls the equal opportunity to participate and excel in competitive sports.

Moreover, under Title IX of the Education Amendments Act of 1972 (Title IX), educational institutions receiving Federal funds cannot deny women an equal opportunity to participate in sports. As some Federal courts have recognized, "ignoring fundamental biological truths between the two sexes deprives women and girls of meaningful access to educational facilities." Tennessee v. Cardona, 24-cv-00072 at 73 (E.D. Ky. 2024). See also Kansas v. U.S. Dept. of Education, 24-cv-04041 at 23 (D. Kan. 2024) (highlighting "Congress' goals of protecting biological women in education").

Therefore, it is the policy of the United States to rescind all funds from educational programs that deprive women and girls of fair athletic opportunities, which results in the endangerment, humiliation, and silencing of women and girls and deprives them of privacy. It shall also be the policy of the United States to oppose male competitive participation in women's sports more broadly, as a matter of safety, fairness, dignity, and truth.

Sec. 2. Definitions. The definitions in Executive Order 14168 of January 20, 2025 (Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government), shall apply to this order.

Sec. 3. Preserving Women's Sports in Education. (a) In furtherance of the purposes of Title IX, the Secretary of Education shall promptly:

(i) in coordination with the Attorney General, continue to comply with the vacatur of the rule entitled "Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving

Federal Financial Assistance" of April 29, 2024, 89 FR 33474, see Tennessee v. Cardona, 24-cv-00072 at 13-15 (E.D. Ky. 2025), and take other appropriate action to ensure this regulation does not have effect;

(ii) take all appropriate action to affirmatively protect all-female athletic opportunities and all-female locker rooms and thereby provide the equal opportunity guaranteed by Title IX of the Education Amendments Act of 1972, including enforcement actions described in subsection (iii); to bring regulations and policy guidance into line with the Congress' existing demand for "equal athletic opportunity for members of both sexes" by clearly specifying and clarifying that women's sports are reserved for women; and the resolution of pending litigation consistent with this policy; and

(iii) prioritize Title IX enforcement actions against educational institutions (including athletic associations composed of or governed by such institutions) that deny female students an equal opportunity to participate in sports and athletic events by requiring them, in the women's category, to compete with or against or to appear unclothed before males. **\*9280**
(b) All executive departments and agencies (agencies) shall review grants to educational programs and, where appropriate, rescind funding to programs that fail to comply with the policy established in this order.

(c) The Department of Justice shall provide all necessary resources, in accordance with law, to relevant agencies to ensure expeditious enforcement of the policy established in this order.

Sec. 4. Preserving Fairness and Safety in Women's Sports. Many sport-specific governing bodies have no official position or requirements regarding trans-identifying athletes. Others allow men to compete in women's categories if these men reduce the testosterone in their bodies below certain levels or provide documentation of "sincerely held" gender identity. These policies are unfair to female athletes and do not protect female safety. To address these concerns, it is hereby ordered:
(a) The Assistant to the President for Domestic Policy shall, within 60 days of the date of this order:

(i) convene representatives of major athletic organizations and governing bodies, and female athletes harmed by such policies, to promote policies that are fair and safe, in the best interests of female athletes, and consistent with the requirements of Title IX, as applicable; and

(ii) convene State Attorneys General to identify best practices in defining and enforcing equal opportunities for women to participate in sports and educate them about stories of women and girls who have been harmed by male participation in women's sports.

(b) The Secretary of State, including through the Bureau of Educational and Cultural Affairs' Sports Diplomacy Division and the Representative of the United States of America to the United Nations, shall:

(i) rescind support for and participation in people-to-people sports exchanges or other sports programs within which the relevant female sports category is based on identity and not sex; and

(ii) promote, including at the United Nations, international rules and norms governing sports competition to protect a sex-based female sports category, and, at the discretion of the Secretary of State, convene international athletic organizations and governing bodies, and female athletes harmed by policies that allow male participation in women's sports, to promote sporting policies that are fair, safe, and in furtherance of the best interests of female athletes.

(c) The Secretary of State and the Secretary of Homeland Security shall review and adjust, as needed, policies permitting admission to the United States of males seeking to participate in women's sports, and shall issue guidance with an objective of preventing such entry to the extent permitted by law, including pursuant to section 212(a)(6)(C)(i) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(6)(C)(i)).

(d) The Secretary of State shall use all appropriate and available measures to see that the International Olympic Committee amends the standards governing Olympic sporting events to promote fairness, safety, and the best interests of female athletes by ensuring that eligibility for participation in women's sporting events is determined according to sex and not gender identity or testosterone reduction.

Sec. 5. General Provisions. (a) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party **\*9281** against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

(d) If any provision of this order, or the application of any provision to any person or circumstance, is held to be invalid, the remainder of this order and the application of its provisions to any other persons or circumstances shall not be affected thereby.

 THE WHITE HOUSE,February 5, 2025.

Billing code 3395-F4-P

Exec. Order No. 1420190 FR 92792025 WL 446216(Pres.)

---

**End of Document**                                                   © 2026 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT B

# U.S. OLYMPIC AND PARALYMPIC COMMITTEE POLICY



**Policy Name:** NGB Athlete Safety Policy

**Date of Issuance:** 06-18-2025

**Policy Owner:** Chief of Security & Athlete Services

**Applies to:** NGBs

**Purpose:** To establish clear conformance, communication, and requirements for the national governing bodies ("*NGBs*") regarding matters of athlete safety.

**Policy Statement:** The USOPC is committed to the safety and wellbeing of athletes and Participants, as defined by the U.S. Center for SafeSport's (the "*Center*") SafeSport Code for the U. S. Olympic and Paralympic Movement (the "*Code*"), involved in the U.S. Olympic and Paralympic Movement. As part of this commitment, the USOPC's policy, prevention, and education efforts aim to create an environment free from emotional, physical, and sexual misconduct and abuse, and to ensure effective and prompt action and resolution upon the occurrence of misconduct and/or abuse.

Federal legislation and the *Center* both promulgate rules, policies, and procedures to protect and govern the well-being of athletes and this policy reinforces and builds on those principles by providing more specifics regarding both communication and coordination between the USOPC and all *NGBs*.

## Section 1. Definitions

### 1.1     Terms

Capitalized and italicized terms are defined terms for purposes of this Athlete Safety Policy (the "*Policy*"). This means that they have a specific meaning whenever they are used in this *Policy*. Section 13 sets out all defined terms for purposes of this *Policy*, and their meanings.

## Section 2. Authority and Applicable Policies and Procedures

### 2.1     The Center

The *Center* is authorized by federal law to serve as the independent national safe sport organization to develop national policies and procedures to prevent the emotional, physical, and sexual abuse of amateur athletes. *NGBs* are required to comply with all policies, procedures and protocols put forth by the *Center* to prevent and respond to misconduct and abuse.

### 2.2     NGB Membership and Recognition

In addition to complying with the policies and procedures of the *Center*, *NGBs* are also required, either by the USOPC Bylaws and/or written agreement, to abide by all other applicable policies and procedures regarding athlete safety set forth by the USOPC, including but not limited to, this Policy.

# U.S. OLYMPIC AND PARALYMPIC COMMITTEE POLICY

## Section 3. Communicating with the USOPC Office of Athlete Safety

### 3.1    General Inquiries

All questions and/or concern for the USOPC regarding athlete safety matters must be directed to the USOPC Office of Athlete Safety. A centralized point of contact within the USOPC provides for appropriate expertise, coordination, and record retention while protecting the confidentiality and privacy of all parties involved.

### 3.2    Allegations

*NGBs* must notify the USOPC's Office of Athlete Safety as soon as possible but no later than 24 hours after learning of an allegation of *Prohibited Conduct*, as defined in the *Code*, that occurred at an Olympic & Paralympic Training Center ("*OPTC*"), a *USOPC Sponsored Event*, or at any third party-sponsored event in which the USOPC sends a delegation (a "*USOPC Delegation Event*"). Any temporary measure(s) imposed by the *NGB* and/or the *Center* in response to an allegation must be included in the required notification (as described in the following section).

This notification requirement is **in addition to** any other requirement to report an allegation to the *Center* and/or law enforcement. Any such notifications shall be submitted by email to athlete.safety@usopc.org.

### 3.3    Sanctions and Temporary Measures

*NGBs* must notify the USOPC's Office of Athlete Safety as soon as possible but no later than 24 hours of imposing its own or being notified of *Center*-imposed sanction(s) and/or temporary measure(s), affecting Participants who the *NGB* knows, or reasonably expects, to:

- be nominated for or selected as a Participant to a *USOPC Delegation Event*,
- be a Participant at a *USOPC Sponsored Event*,
- have access to an *OPTC*, and/or
- receive a benefit and/or service from the USOPC as outlined in the USOPC Athlete Safety Policy.

As well, the USOPC Office of Athlete Safety should also be notified in the event of any change or removal of any such sanction and/or temporary measure(s) within 24 hours of such change by the *NGB* or notified of a change or removal by the *Center*. Any such notifications shall be submitted by email to athlete.safety@usopc.org.

## Section 4. Jurisdiction

### 4.1    USOPC Assertion of Jurisdiction

The USOPC will assert jurisdiction over any alleged incident of Prohibited Conduct which is reported to have occurred at an *OPTC*, *USOPC Sponsored Event*[1], or a *USOPC Delegation Event* where the *Center* has not exercised exclusive or discretionary jurisdiction, and over matters the *Center* refers to the USOPC. In limited circumstances, the USOPC may elect, in its sole and absolute discretion, to refer the incident and jurisdiction thereof to the appropriate *NGB*.

### 4.2    Applicable Policies and Procedures

The USOPC Athlete Safety Policy shall apply and will govern the response and resolution of any allegation for which the USOPC asserts jurisdiction. In instances when the USOPC declines jurisdiction, the applicable

---

[1] For a *USOPC Sponsored Event* that is run by an *NGB* (e.g., an Olympic or Paralympic Trials event), the USOPC reserves the right to take jurisdiction over any allegation of Prohibited Conduct not under the exclusive jurisdiction of the Center.

# U.S. OLYMPIC AND PARALYMPIC COMMITTEE POLICY

*NGB* shall be responsible for the response and resolution of the allegation according to its own policies and procedures.

## 4.3    Interference/ Restrictions/Enforcement

*NGB*s shall not interfere or attempt to influence the outcome of any Prohibited Conduct investigation regardless of jurisdiction.

*NGBs* must prohibit any individual who is an employee, agent, or contractor, from assisting a member or former member in obtaining a new job (except the routine transmission of administrative and personnel files) if the individual knows that such member or former member violated the policies or procedures of the *Center* related to sexual misconduct or was convicted of a crime involving sexual misconduct with a minor.

If an *NGB* Participant is sanctioned or subject to Temporary Measures under the USOPC Athlete Safety Policy, that sanction(s) or Temporary Measure(s) must be reciprocally enforced by and between all *NGBs* and LAOs within the Olympic and Paralympic Movement.

## 4.4    Additional Requirements

*NGBs* are committed to protecting opportunities for athletes participating in sport. *NGBs* will continue to collaborate with various stakeholders with oversight responsibilities, *e.g.*, IOC, IPC, international federations, to ensure that women have a fair and safe competition environment consistent with Executive Order 14201 and the Ted Stevens Olympic & Amateur Sports Act, 36 U.S.C. § 22501, et. Seq.

## Section 5. Definitions

"Center" means the U.S. Center for SafeSport.

"Code" means the SafeSport Code for the U.S. Olympic and Paralympic Movement.

"NGB" means a U.S. Olympic National Governing Body, Pan American Sport Organization, or Paralympic Sport Organization recognized by the USOPC pursuant to the Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. §§ 220501, et seq.

"OPTC" means an Olympic & Paralympic Training Center.

"USOPC Delegation Event" means events to which the USOPC officially sends an individual or group of individuals on behalf of the USOPC and/or the United States.

"USOPC Sponsored Event" means Olympic and Paralympic Trials, and any other event or competition organized, operated, sanctioned, or formally authorized by the USOPC.

# EXHIBIT C

# U.S. OLYMPIC AND PARALYMPIC COMMITTEE POLICY

  

**Policy Name:** USOPC Athlete Safety Policy

**Date Of Issuance:** 06-18-2025

**Policy Owner:** Chief of Security & Athlete Services

**Applies to:** Board of Directors, USOPC Staff, and Others (as below)

**Purpose:** To establish clear policy, communication, and requirements for *USOPC Participants* and *USOPC* departments.

**Policy Statement:** The *USOPC* is committed to the safety and wellbeing of all *USOPC Participants*, as defined in this *Policy*. As part of this commitment, the *USOPC*'s policy, prevention, and education efforts aim to create an environment free of *Emotional*, *Physical* and *Sexual Misconduct* and abuse, and to ensure effective and prompt action and resolution upon the occurrence of misconduct and/or abuse.

Federal legislation and the *Center* both promulgate rules, policies, and procedures to protect and govern the wellbeing of athletes and this *Policy* reinforces and builds on those principles by providing specific application for the *USOPC*.

## Section 1. Definitions

### 1.1    Terms

Capitalized and italicized terms are defined terms for purposes of this Athlete Safety Policy (the "*Policy*"). This means that they have a specific meaning whenever they are used in this *Policy*. Section 12 sets out all defined terms for purposes of this *Policy*, and their meanings.

## Section 2. Application

### 2.1    Participants

This *Policy* applies to the following individuals defined as *Participants* by the *USOPC*:

- ➢ An employee or board member of the *USOPC*;

- ➢ Within the governance or disciplinary jurisdiction of the *USOPC*;

- ➢ Authorized, approved, or appointed by the USOPC to have regular contact with or authority over *Minor Athletes*;

- ➢ Individuals serving as a *USOPC* contracted program coach or personal coaches receiving funding through the *USOPC*;

1

# U.S. OLYMPIC AND PARALYMPIC COMMITTEE POLICY

➢ All individuals participating in a *USOPC Sponsored Event¹*, or individuals authorized, approved, or appointed by the *USOPC* to be a member of the US Delegation at a *Delegation Event or NOC/NPC Event* for the relevant event period.

- The relevant event period for a *Sponsored Event* consists of the competition and any travel or lodging arranged by the *USOPC*.

- The relevant event period for a *Delegation Event* or *NOC/NPC Event* begins when an individual's Pre-Validated Card (PVC) is activated, and ends when the Athlete Village closes, or the individual is released from the Delegation. If the individual does not activate their PVC, the relevant event period begins when: (i) they are identified as part of the Delegation, (ii) they are physically in the host country of the *Delegation Event* or *NOC/NPC Event*, and (iii) they used their PVC to enter the country or are in the city/state of the location of the *Delegation Event* or *NOC/NPC Event* for official Delegation duties, excluding any pre-Games camps which would be under the jurisdiction of the applicable *NGB*.

➢ Athletes in the following additional categories:

- Athletes training and/or residing at an Olympic & Paralympic Training Center ("*OPTC*");

- Athletes from any of the Paralympic and Olympic sports managed internally by the *USOPC* who are:

  o On any National team; and/or,
  o On a selected team during the timeframe of the respective competition and training; and/or,
  o On a *Delegation Event* or *NOC/NPC Event* short list during the timeframe they are on the list; and/or,
  o Receiving benefits (i.e., Direct Athlete Support, EAHI, etc.) as a result of their participation with that internally managed sport;

- Athletes otherwise under the jurisdiction of the *USOPC* when the *USOPC* assumes the responsibility of an *NGB***;**

➢ Volunteers working at an *OPTC*

➢ Independent Contractors & Vendors that have:
- *Regular Contact* with and/or *Authority* over *Minor Athletes*; and/or,
- Substantive direct contact with athletes; and/or,
- Access to *Minor Athletes* or athlete areas, in a non-public space

➢ Individuals otherwise under the jurisdiction of the *USOPC* when the *USOPC* assumes

---

¹ For a *USOPC Sponsored Event* that is run by an *NGB* (e.g., an Olympic or Paralympic Trials event), the respective *NGB* is responsible for the tracking of Athlete Safety and education and training requirements, and the individual is considered a *USOPC Participant* for purposes of Response and Resolution only.

# U.S. OLYMPIC AND PARALYMPIC COMMITTEE POLICY

the high performance management responsibilities for a sport where there is no recognized National Governing Body ("*NGB*");

➢ Any other individual otherwise deemed a *Participant* as further outlined in the USOPC Participant & Training Model.

### 2.1.1  Exceptions

Team USA athletes receiving benefits through the *USOPC*, but not otherwise participating in the Movement or holding membership with an *NGB*, are considered limited *USOPC Participants* for the purposes of response and resolution only and are exempt from the training and education requirements in Section 4.2 below.

Individuals listed on the various *USOPC* healthcare provider directories are a resource provided by the *USOPC*. While not considered *USOPC Participants*, directory members are background checked and required to take SafeSport training. This requirement is in place to ensure the safety of athletes utilizing their services. It also provides the directory members with knowledge regarding athlete safety in the movement to enable them to recommend resources applicable to the athletes they serve.

In other limited circumstances, the *USOPC* Office of Athlete Safety may determine an individual(s) otherwise meeting the definition of *Participant* in 2.1 will not be deemed to be a *Participant(s)*.

### 2.1.2  Dual Jurisdiction

In addition to this *Policy*, *USOPC Participants* may also be subject to athlete safety policies, and other policies, of an *NGB*.

## 2.2  USOPC Department Responsibilities

Each *USOPC* Department will undertake the following:

### 2.2.1  Identification of *Participants*

Each *USOPC* Department is responsible for the identification of individuals, as prescribed by the guidance in the USOPC Participant & Training Model (which can also be found on the *USOPC* Policies and Procedures page on SharePoint), who meet the definition of *Participant*.

### 2.2.2  Vetting of *Participants*

Each *USOPC* Department will work with the *USOPC* Office of Athlete Safety to vet *Participants* it identifies under Section 2.2.1 against the *Center*'s adjudication log.

### 2.2.3  Tracking Compliance with Education and Training Requirements

Each *USOPC* Department will track compliance with education and training requirements for *Participants* it identifies under Section 2.2.1.

# U.S. OLYMPIC AND PARALYMPIC COMMITTEE POLICY

### 2.2.4  Enforcement of *Temporary Measures* and Sanctions.

Each *USOPC* Department will assist in the enforcement of *Temporary Measures* (defined in Section 12) and sanctions as communicated by the *USOPC* Office of Athlete Safety.

The *USOPC* also prohibits any individual who is an employee, agent, or contractor, from assisting a member or former member in obtaining a new job (except the routine transmission of administrative and personnel files) if the individual knows that such member or former member violated the policies or procedures of the *Center* related to *Sexual Misconduct* or was convicted of a crime involving *Sexual Misconduct* with a *Minor*.

## Section 3. Jurisdiction

### 3.1    Coverage

For purposes of this *Policy*, the *USOPC* shall have jurisdiction to investigate, and resolve, allegations of *Prohibited Conduct* (as defined in Section 5) that are not within the *Center's* exclusive jurisdiction or where the *Center* declines jurisdiction AND one of the following applies:

➢  The *Center* has referred the matter to the *USOPC*;

➢  The allegations involve a *Respondent* (defined in Section 12) who is a *USOPC Participant* as identified in Section 2.1 above;

➢  The alleged *Prohibited Conduct* took place at:

- A *Delegation Event*;
- An *NOC/NPC Event*;
- A *USOPC Sponsored Event*[2];
- An *OPTC*;
- An office of the *USOPC*; or
- Any other event, including but not limited to, travel, lodging, practice, competition, and health or medical treatment, which is organized, operated, formally sanctioned, or formally authorized by the *USOPC*;

➢  The alleged *Prohibited Conduct* took place during proceedings, including investigations and hearings, addressed in this *Policy*.

### 3.1.1. Exceptions

In limited circumstances, the *USOPC* may refer allegations of *Prohibited Conduct* for which the *USOPC* would otherwise have jurisdiction to the appropriate *NGB*.

---

[2] For a *USOPC Sponsored Event* that is run by an *NGB* (e.g., an Olympic or Paralympic Trials event), the USOPC reserves the right to take jurisdiction over any allegation of Prohibited Conduct not under the exclusive jurisdiction of the Center.

# U.S. OLYMPIC AND PARALYMPIC COMMITTEE POLICY

Allegations of Prohibited Conduct involving athletes participating in a *USOPC* Internally Managed Sport (IMS) may be addressed under the sport's Code of Conduct Policy in coordination with or in lieu of this *Policy*.

Allegations of *Prohibited Conduct* (as defined in Section 5) against *USOPC* employees will be addressed through the *USOPC*'s employment policies and may also be addressed under this *Policy*.

Allegations of *Prohibited Conduct* against Independent Contractors or Vendors will be addressed as outlined in their respective agreement for services and may also be addressed under this *Policy*.

Depending on the nature of the allegations, and the role of a volunteer, the *USOPC* may not, in its sole discretion, afford a volunteer a formal resolution process.

## 3.2    Interference

*USOPC Participants* shall not interfere or attempt to influence the outcome of any *Prohibited Conduct* investigation regardless of jurisdiction.

## 3.3    Additional Requirements

The USOPC is committed to protecting opportunities for athletes participating in sport. The USOPC will continue to collaborate with various stakeholders with oversight responsibilities, *e.g.*, IOC, IPC, NGBs, to ensure that women have a fair and safe competition environment consistent with Executive Order 14201 and the Ted Stevens Olympic & Amateur Sports Act, 36 U.S.C § 22501, *et. seq.*

# Section 4. Prevention Policies

## 4.1    Background Check Policy

Certain individuals are subject to, and must comply with, the *USOPC*'s Background Check Policy and Procedures, which can be found at USOPC Background Check Policy and Procedures (and can also be found on the *USOPC* Policies and Procedures page on SharePoint).

## 4.2    Training and Education

### 4.2.1    *Adult Participants* Required to Complete Training

The following *Adult Participants* at the *USOPC* must complete the *Center's* SafeSport® Trained Core Course *through the Center's online training:*

- *Adult Participants* who have *Regular Contact* with any *Amateur Athlete(s)* who is a *Minor*;
- *Adult Participants* who have *Authority* over any *Amateur Athlete(s)* who is a *Minor*;
- *Adult Participants* who are employees or board members of the *USOPC*;

5

# U.S. OLYMPIC AND PARALYMPIC COMMITTEE POLICY

- Other *Adults* as determined by the *USOPC* in its discretion, or as required by the *Center.*

*Adult Participants* who are medical providers required to take training can take the Health Professionals Course in lieu of the SafeSport® Trained Core Course.

## 4.2.2   Timing of Training

*Adult Participants* must complete this training before *Regular Contact* with an *Amateur Athlete* who is a *Minor* begins or within the first 45 days of beginning a new role subjecting the *Adult* to this policy, whichever comes first.

## 4.2.3   Refresher Training

The above listed *Adult Participants* must complete a refresher course on an annual basis, within 12 months after completing the SafeSport® Trained Core Course training. Every four years, *Adult Participants* will complete the SafeSport® Trained Core Course training. Medical providers can take the Health Professionals Course in lieu of the SafeSport® Trained Core Course, and are required to take the refresher courses on an annual basis if they meet the criteria in 4.2.1.

## 4.2.4   Accessing the Training Online

The SafeSport® Trained Core Course, the Health Professionals Course, and the Refresher training can be accessed at https://safesporttrained.org/.

## 4.2.5   Additional *USOPC* Training and Requirements

The *USOPC* may require the individuals listed above and other *Participants* to take additional athlete safety training.

## 4.2.6   *Minor* Training

The *USOPC* will, subject to parental/guardian consent, annually offer and provide training to *Minor Athletes,* who are currently participating with the *USOPC*, on the prevention and reporting of *Child Abuse*. The *USOPC* will track:

- A description of the training(s);
- The date the training(s) was offered and given; and
- A description of how the training(s) was offered and given.
- The Center offers youth courses, located at safesporttrained.org, that meet this requirement.

## 4.2.7   Parent Training

The *USOPC* will, on an annual basis, offer training to the parents/guardians of *Minor Athletes*, who are currently participating with the *USOPC*, on the prevention and reporting of *Child Abuse*. The *USOPC* will track:

6

# U.S. OLYMPIC AND PARALYMPIC COMMITTEE POLICY

- A description of the training(s);
- The date the training(s) was offered and given; and
- A description of how the training(s) was offered and given.
- The Center offers a parent course, located at safesporttrained.org, that meets this requirement.

### 4.2.8  Optional Training

A. *Adult* Participants serving in a volunteer capacity, who will **not** have regular contact with or authority over any *Amateur Athlete(s)* who is a *Minor*, should take the Center's brief Volunteer Course (or *SafeSport® Trained* Core Course) before engaging or interacting with any *Minor Athlete(s).*

B. The *USOPC* may provide training *in addition to* the *SafeSport® Trained* Core Course, although they cannot refer to this training as "SafeSport" training. **Training other than the *SafeSport® Trained* Core Course or Refresher does not satisfy this policy.**

### 4.2.9  Exemptions and Accommodations

- Exemptions to the online training requirement may be requested by survivors of abuse and misconduct. Survivors of abuse can request an exemption by contacting the *USOPC* at athletesafety@usopc.org or can choose to contact the Center directly to request an exemption at exemptions@safesport.org. All exemptions granted by the Center or the *USOPC* in this category are considered indefinite and do not need to be re-requested every year.

- Exemptions to the online training requirement for reasons other than survivor of abuse and misconduct are limited to cognitive or physical disability or language barrier. Requests for these exemptions must be made by the individual to the *USOPC*. The *USOPC* will determine whether to grant the exemption. If the *USOPC* grants the exemption, it must track the exemption to ensure it is appropriately applied to the individual's record. The *USOPC* must preserve documentation that the exemption was granted and for what duration.

- The Center has several options available to assist individuals in completing the online training courses, including screen reader-compatible versions and course availability in several languages, including English, Spanish, French, Mandarin, Russian, German, and Japanese. If none of the available options will fit the individual's needs, the *USOPC* may determine whether to grant an exemption.

## 4.3    MAAPP

The USOPC Minor Athlete Abuse Prevention Policies (*MAAPP)* (available at https://www.usopc.org/safe-sport) are hereby incorporated into this *Policy* by reference.

## 4.4    Supporting Athletes with an Intellectual Impairment Policy

Section 4 of the Supporting Athletes with an Intellectual Impairment Policy (Available at https://www.usopc.org/safe-sport) is hereby incorporated into this *Policy* by reference.

# U.S. OLYMPIC AND PARALYMPIC COMMITTEE POLICY

## Section 5. Prohibited Conduct

The following constitutes "*Prohibited Conduct*" under this *Policy*:

### 5.1    Violation of the *Code*

The *USOPC* adopts and incorporates herein the definitions of *Prohibited Conduct*, as defined in the *Code* (which can be found at https://uscenterforsafesport.org/). Any defined terms in the *Prohibited Conduct* definitions of the *Code* shall have the same meaning in this *Policy*. Some definitions of *Prohibited Conduct* in the *Code* may refer to the *Center*. For purposes of this *Policy*, those references to the *Center* will mean the *USOPC*.

*Participants* are prohibited from engaging in conduct (or failing to report misconduct and/or abuse, if applicable) in violation of the *Code*. In addition, all *Participants* are subject to the *Code* and the jurisdiction of the *Center*.

### 5.2    Violation of *MAAPP*

*Adult Participants* are prohibited from violating the USOPC Minor Athlete Abuse Prevention Policies *(MAAPP)*, which are incorporated in Section 4.3 above.

### 5.3    Violation of the *USOPC*'s Process

*Participants* are prohibited from engaging in the following conduct related to the *USOPC*'s procedures:

#### 5.3.1    Failure to Report *Prohibited Conduct*

Failing to make a report as required under this *Policy*.

#### 5.3.2    Retaliation

Retaliation or attempt to the do the same by a *Participant*, or someone acting on behalf of a *Participant*, an *NGB*, *LAO*, or the *USOPC*, is prohibited.

Retaliation is any adverse action or threat to take any adverse action against any person related to allegations of *Prohibited Conduct*.

Adverse actions include, but are not limited to: threatening, intimidating, harassing, coercing, or any other action or conduct with the potential effect of dissuading any reasonable person from reporting *Prohibited Conduct* or engaging in activity related to any reporting or investigative processes.

Retaliation may take place at any time, including before, during, or after an individual's reporting or engagement in the processes of the *USOPC* or the *Center*. Retaliation may be present even where there is a finding that no violation occurred. Retaliation does not include good-faith actions lawfully pursued in response to a report of a *Code* violation.

#### 5.3.3    Other Violations of the *USOPC*'s Process

# U.S. OLYMPIC AND PARALYMPIC COMMITTEE POLICY

Any of the following conduct, as defined in the *Code*, constitutes *Prohibited Conduct*. For the sake of clarity, where the *Code* refers to the *Center* and its processes when discussing those violations, it will be interpreted to apply to the *USOPC* and its processes.

➢ Aiding and Abetting
➢ Intentionally Filing a False Allegation, and
➢ Abuse of Process

### 5.3.4 Violation of Section 4 of the Supporting Athletes with an Intellectual Impairment Policy

*Adult Participants* are prohibited from violating Section 4 of the Supporting Athletes with an Intellectual Impairment Policy, which is hereby incorporated in Section 4.4 above.

## Section 6. Reporting

This Section provides guidance on what to report, to whom to report, and how to report. **The reporter's vital job is simply to report the allegation to the appropriate entity(ies). DO NOT evaluate the credibility of the allegation or investigate it. Individuals should contact the Office of Athlete Safety with any questions or if they need assistance with reporting.**

### 6.1    Mandatory Reporter Designation

Although the *USOPC* strongly encourages all *Participants* to report allegations of *Prohibited Conduct*, *Adult Participants* are mandatory reporters under this *Policy*. If an *Adult Participant* learns of any allegation of *Prohibited Conduct,* they must report the allegation as follows:

### 6.2    *Sexual Misconduct, Child Abuse,* and *Retaliation*

➢ Report *Sexual Misconduct, Child Abuse, and Retaliation* to the U.S. Center for SafeSport.
   • **Online:** https://uscenterforsafesport.org/report-a-concern/
   • **Phone:**  833-587-7233
   • If a *Participant* becomes aware of an allegation of *Sexual Misconduct* or *Child Abuse*, or *Retaliation* the *Participant* **MUST** report this to the *Center* **IMMEDIATELY.**

   –AND–

➢ Report *Child Abuse* to Law Enforcement
   • <u>Important</u>: If an *Adult Participant* learns of information and reasonably suspects that a *Minor* has suffered an incident of *Child Abuse* (to include neglect, physical, emotional, and sexual abuse), they MUST report this to law enforcement (or in some states child protective services) AND the *Center* **IMMEDIATELY. <u>Filing a report with the *Center* does not satisfy the reporting requirement to law enforcement</u>.**

   • Please visit https://www.childwelfare.gov/topics/responding/reporting/how/

9

# U.S. OLYMPIC AND PARALYMPIC COMMITTEE POLICY

for more information on reporting to law enforcement/child protective services.

–AND–

➢ Report Criminal Conduct to include Abuse and/or Neglect involving *an Athlete with an Intellectual Impairment* to Law Enforcement

- **Important:** An *Adult Participant* who learns of information and reasonably suspects that an *Athlete with an Intellectual Impairment* is or has been subject to criminal conduct, including abuse and/or neglect, as defined by any applicable state law, must report to Law Enforcement within 24 hours. **Filing a report with the *Center* does not satisfy the reporting requirement to law enforcement**.

## 6.3 Reporting *Emotional* or *Physical Misconduct*, other *Prohibited Conduct*, *MAAPP* Violations, or Violations of the Athlete Safety requirements in Section 4 of the Supporting Athletes with an Intellectual Impairment Policy

➢ Promptly report it to the *USOPC* Office of Athlete Safety
- **Online**: https://www.usopc.org/safe-sport
- *Phone*: 719.866.3869
- **Report in-person directly to the *USOPC* Office of Athlete Safety** If a reporter chooses this option, the *USOPC* Office of Athlete Safety will talk the reporter through the various options for reporting and will help to ensure that they satisfy their reporting obligations.
- **Nothing precludes a reporter from reporting *Emotional* or *Physical Misconduct*, other *Prohibited Conduct*, or *MAAPP* violations to the *Center*[2].** While the *Center* has the exclusive jurisdiction for response and resolution of allegations of *Sexual Misconduct*, it may also assume discretionary jurisdiction over other forms of abuse. If the *Center* does not assume jurisdiction, it has a process to route the allegation to the appropriate entity (*NGB* or *USOPC*) for response and resolution.

AND–

➢ Report Criminal Conduct to include Abuse and/or Neglect involving an *Athlete with an Intellectual Impairment* to Law Enforcement
- **Important:** An *Adult Participant* who learns of information and reasonably suspects that an *Athlete with an Intellectual Impairment* is or has been subject to criminal conduct, including abuse and/or neglect, as defined by any applicable state law, must report to Law Enforcement within 24 hours. **Filing a report with the *USOPC Office of Athlete Safety* does not satisfy the reporting requirement to law enforcement**.

## 6.4 Criminal Charges and Dispositions

---

[2] The Center does not have jurisdiction over the Athlete Safety requirements in Section 4 of the Supporting Athletes with an Intellectual Impairment Policy.

# U.S. OLYMPIC AND PARALYMPIC COMMITTEE POLICY

*Adult Participants* are required to report to the *Center Criminal Charge(s) and Disposition(s)* (as defined in the *Code*) against any known *Participant* involving *Sexual Misconduct* or misconduct involving *Minors*. All other *Criminal Charges and Dispositions* must be reported to the *USOPC*.

## 6.5    Licensed Medical and Mental Health Providers

An *Adult Participant* who is a licensed medical or mental health professional is not required to report information related to the reasonable suspicion of Prohibited Conduct involving an *Adult Claimant* to the Center or the *USOPC* if such a report would violate the medical or mental health professional's ethical obligations pursuant to state or federal law, namely privileged communications.

An *Adult Participant* who is duly authorized by state or federal law as a medical or mental health professional shall report all information related to a reasonable suspicion of *Child Abuse* as required in Section 6.2 above. Medical and mental health professionals should follow applicable laws and licensure requirements for reporting Abuse/Neglect of an *Athlete with an Intellectual Impairment.*

A patient may waive privilege at any time and request an *Adult Participant* who is a medical or mental health professional report information related to a violation of Prohibited Conduct to the Center or the *USOPC* as applicable.

This provision is not intended to and does not supersede any state or federal law regarding mandatory reporting obligations and privileged communications between medical or mental health professionals and their patients. Privilege may be waived upon an allegation by a patient that the medical or mental health professional engaged in misconduct. Medical and mental health professionals include only those persons licensed by a state or federal licensing board or agency.

## 6.6    Escalation of Reports

If an individual feels that the *USOPC* Office of Athlete Safety has failed to act upon the information reported, not managed the matter appropriately, or feels there is an inherent conflict of interest in reporting the matter to said office, they may escalate these concerns to the *USOPC* Ethics and Compliance Team. Individuals can make their report online at usopc.ethicspoint.com, in person (to the Chief Ethics & Compliance Officer or Sr. Director, Compliance Investigations & Ethics), or via the *USOPC* Integrity Hotline (1-877-404-9935; note that calls to this Hotline may be made anonymously).

If an individual feels there is a conflict of interest in reporting the matter to the *USOPC* Ethics and Compliance Team or that the Ethics and Compliance Team has been unresponsive to their inquiry, they may escalate the matter to the *USOPC* CEO. Similarly, if an individual feels there is a conflict of interest in reporting the matter to the *USOPC* CEO or the CEO has been unresponsive to their inquiry, they may further escalate the matter to the Chair of the *USOPC* Board of Directors.

**Making a report pursuant to this section does <u>not</u> relieve an individual of their duty to report to law enforcement or the *Center*, if required.**

## 6.7    Self-Reporting

11

# U.S. OLYMPIC AND PARALYMPIC COMMITTEE POLICY

Nothing in this *Policy* requires a victim/survivor of *Child Abuse* or other misconduct to self- report.

## 6.8    Anonymous Reports

Reports may be made anonymously to the *USOPC*. It does **not** mean that the underlying information will be protected. However, an anonymous report may limit the *USOPC*'s ability to investigate and respond to a report, and if an *Adult Participant* reports anonymously, it may not be possible for the *USOPC* to verify that mandatory reporting obligations have been satisfied.

For these reasons, the *USOPC* strongly encourages *Adult Participants* to provide their name and contact information when reporting.

## 6.9    Privacy

When a report is filed with the *USOPC*, the *USOPC* will make reasonable efforts to protect the privacy of individuals involved, while balancing the need to gather information to assess a report and to take steps to eliminate *Prohibited Conduct*.

### 6.9.1    Information Sharing

Information will be shared as necessary with *USOPC* staff and counsel, witnesses, the parties, relevant *NGBs*, and law enforcement.

### 6.9.2    Parents/Legal Guardians

The *USOPC* reserves the right to notify parents/legal guardians of *Minors* involved in the process.

### 6.9.3    *Third-Party Reporters*

The *USOPC* may, in its discretion, share information with *Third-Party Reporters* (as defined in Section 12) as necessary. However, nothing in this *Policy* gives a *Third-Party Reporter* a right to updates or other information on a matter once a report is made.

## Section 7. Intake, Investigation, and Initial Resolution Proceedings

### 7.1    Intake and Routing Reports

When the *USOPC* receives a report of allegations of *Prohibited Conduct* it will evaluate the information to determine appropriate jurisdiction.

### 7.1.1    Allegations that fall under the *Center's* Exclusive Jurisdiction

All allegations of *Prohibited Conduct* received by the *USOPC* that fall under the *Center's*

# U.S. OLYMPIC AND PARALYMPIC COMMITTEE POLICY

exclusive jurisdiction will be forwarded to the *Center* immediately, but no later than within 24 hours of becoming aware of the allegations. All allegations of *Child Abuse* will also immediately be reported to law enforcement.  The *USOPC* will promptly notify the reporting party of the report referral.

### 7.1.2   Requests for information from the *Center*

The *USOPC* Office of Athlete Safety is the primary contact for all information requests from the *Center* to include the eligibility status of a *Participant* and the existence of *USOPC* imposed *Temporary Measures* or safety plans.  The *USOPC* Office of Athlete Safety will respond to all requests from the Center within 72 hours.

### 7.1.3   Allegations of *Prohibited Conduct* that fall under the jurisdiction of an *NGB*

All allegations of *Prohibited Conduct* that fall under the jurisdiction of an *NGB* will be forwarded to that *NGB* for response and resolution unless the *USOPC* identifies a conflict of interest or other concern that necessitates the report being filed with the *Center* instead. The *USOPC* will promptly notify the reporting party of the report referral.

### 7.1.4   Allegations of *Prohibited Conduct* that fall under the jurisdiction of the *USOPC.*

For all allegations of *Prohibited Conduct* that fall within the jurisdiction of the *USOPC*, the *USOPC* will notify the relevant *NGB (if applicable),* notify the reporting party that it will be initiating an inquiry[3], and, if appropriate, undertake an investigation to determine whether a *Participant* engaged in *Prohibited Conduct*.

Note: Reporting *Child Abuse* and *Sexual Misconduct* to the *USOPC* **does not** relieve an individual of their duty to report to law enforcement or the *Center*, if required.

## 7.2   Effect of Criminal or Civil Proceedings

Because the standards for finding a violation of criminal law are different from the standards for finding *Prohibited Conduct*, the resolution of a criminal proceeding without a *Criminal Disposition* does not decide (but may be relevant to) whether *Prohibited Conduct* has occurred.

Conduct may be *Prohibited Conduct* even if the *Respondent* is not charged, prosecuted, or convicted for, is acquitted of a *Criminal Charge* for, or legal authorities decline to prosecute the behavior that could constitute potential *Prohibited Conduct*.

Apart from the application of this *Policy* as it relates to *Criminal Charge(s)* and *Disposition(s)*, the *USOPC*'s resolution will not be precluded merely because (a) a civil case or *Criminal Charges* involving the same incident or conduct have been filed, (b) *Criminal Charges* have been dismissed or reduced; or (c) a civil lawsuit has been settled or dismissed.

---

[3] Due to the confidential nature of investigations, third party reporters will not receive information related to the investigation or updates regarding cases and will only receive acknowledgement of receipt of the report.

# U.S. OLYMPIC AND PARALYMPIC COMMITTEE POLICY

Barring extreme circumstances, or an allegation that occurred in or is related to, participation in sport, the *USOPC* will not conduct an investigation into the elements of a crime that resulted in a *Criminal Disposition* or *Criminal Charge,* but will allow the *Respondent* to provide any mitigating information they believe should be considered in any sanctioning associated with the violation.

The *USOPC* also reserves the right to handle *Criminal Dispositions* or *Criminal Charges*, not under the exclusive jurisdiction of the *Center*, through the *USOPC*'s Background Check Procedures and/or applicable *USOPC* Code of Conduct Policy. When making this determination, the factors considered by the *USOPC* include but are not limited to:

- The age of the *Criminal Disposition*
- The severity of the charge(s) or *Criminal Disposition*
- Was the incident that resulted in the charge(s) or *Criminal Disposition* related to or did it occur in sport
- Is the underlying factual basis of the charge(s) or *Criminal Disposition* analogous to *Prohibited Conduct* as defined in this Athlete Safety Policy.

### 7.2.1  Statute of Limitations or Other Time Bars

No criminal, civil, or rules-based statutes of limitations or time bars of any kind prevent the *USOPC* from investigating, assessing, considering, and adjudicating any allegation regardless of when it occurred.

Where the alleged *Prohibited Conduct* occurred prior to the effective date of this *Policy*, the *USOPC* may apply other substantive standards in effect at the time of the conduct that are analogous to *Prohibited Conduct*, including then effective criminal laws and/or previous *Center*, *USOPC*, *NGB*, and/or *LAO* (defined in Section 12) standards. However, in all cases, the procedures in this *Policy* will be used to investigate and resolve matters, regardless of when the incident of *Prohibited Conduct* occurred.

## 7.3  Coordinating with Law Enforcement

At the written request of law enforcement, the *USOPC* may delay its investigation temporarily.

## 7.4  *Temporary Measures*

The *USOPC* may, at any point before a matter is final, impose *Temporary Measures* (see Section 8, below).

## 7.5  Methods of Resolution

### 7.5.1  Administrative Closures

The *USOPC*, in its discretion, may administratively close a matter as a result of insufficient evidence or other factors as determined by the *USOPC*. The *USOPC* will notify the relevant parties of an administrative closure. The *USOPC* may, upon receipt of new information or evidence, or a change in circumstances, reopen a matter for further investigation.

# U.S. OLYMPIC AND PARALYMPIC COMMITTEE POLICY

### 7.5.2  Jurisdictional Hold

If the *Respondent* was not a *Participant* at the time of the conduct and is not a current *Participant* or seeking to be a *Participant*, the *USOPC* may place a Jurisdictional Hold on the individual, so that the conduct can be addressed should they seek *Participant* status in the future.

### 7.5.3  Informal Resolution

A *Respondent* may, at any time before a matter is final, elect to resolve allegations of *Prohibited Conduct* by accepting responsibility for the *Prohibited Conduct* and accepting any sanction agreed upon by the *Respondent* and the *USOPC* Office of Athlete Safety An informal resolution is not a settlement but does constitute a final and binding disposition of the matter. The outcome and/or sanctions of an informal resolution may be published by the *USOPC*.

### 7.5.4  Formal Resolution

A formal resolution occurs after the *USOPC* has completed an investigation and either closes the matter or, if a violation is found, issues its *Decision* (defined in Section 7.9 below).

## 7.6  Participation

### 7.6.1  Parties

The *Claimant* and *Respondent* will have the opportunity to submit information and relevant evidence, to identify witnesses who may have relevant information, and to submit questions they believe should be directed by the investigator to each other or witness(es).

A *Claimant* and *Respondent* are not required to participate in the investigation or any form of resolution under these procedures, but they do each have a right to participate if they choose. However, full cooperation and participation in the investigation and resolution process is important to ensure that all relevant information and evidence are presented so the *USOPC* can determine whether *Prohibited Conduct* has occurred. If a *Claimant* or *Respondent* chooses not to cooperate or participate in an investigation, the *USOPC* will make its decision based on the available evidence.

### 7.6.2  *Advisors*

Throughout the resolution process, *Claimant(s)* and *Respondent(s)* each have the right to choose and consult with an advisor ("*Advisor*"). The *Advisor* may be any person, including an attorney, who does not have an actual or perceived vested interest in the matter, is not a party or witness involved in the investigation or hearing, and who is not a *USOPC* employee, Board member, or committee member. The *Claimant* and *Respondent* may be accompanied by their respective *Advisors* at any meeting or proceeding related to the investigation, hearing and resolution of a report under these procedures. *Advisor* may provide support and advice to the parties at any meeting and/or proceeding, but they may

# U.S. OLYMPIC AND PARALYMPIC COMMITTEE POLICY

not speak on behalf of the *Claimant* or *Respondent*, or otherwise participate in such meetings and/or proceedings except as provided in this *Policy*. A *Claimant* or *Respondent* may share information that is designated confidential under this *Policy* with their *Advisor*. *Advisors* are subject to the same confidentiality requirements as *Claimants* and *Respondents*.

### 7.6.3  Witnesses

Witnesses who are *Adult Participants* are expected to participate and cooperate in the *USOPC*'s investigation and any related proceedings.

## 7.7    Recordings

No audio or video recording of any kind, to include Artificial Intelligence (AI) transcription services, is permitted during interviews or meetings, except as authorized and conducted by the *USOPC*. Recordings of interviews or meetings will not be distributed, except in accordance with Section 7.12.

## 7.8    Investigation Report

A final investigation report ("*Investigation Report*") will be prepared that sets forth the investigator's findings of fact and may make a recommendation as to whether *Prohibited Conduct* occurred. The *Investigation Report* will be shared with the *Claimants(s)* and *Respondents(s)* and any relevant *NGBs* upon issuance of the *Decision*, subject to redactions as necessary to protect confidentiality and privacy. The *Investigation Report* and any attachments are considered confidential.

## 7.9    Decision

The *Chief of Security & Athlete Services* (defined in Section 12) will determine whether there is sufficient information, by a preponderance of the evidence, to support a finding that *Respondent* engaged in *Prohibited Conduct*, as well as the appropriate sanction(s).

If there is a finding that the *Respondent* engaged in *Prohibited Conduct*, the decision ("*Decision*") will note the violation and any sanction(s). The *Claimant* and *Respondent*, the *Center* if applicable, and any relevant *NGBs* will be notified of the *Decision*. The notice of *Decision* ("*Notice of Decision*") will list any findings of *Prohibited Conduct*, as supported by the rationale discussed in the *Decision* and *Investigation Report*; the sanction(s) imposed against the *Respondent* (if applicable); and the rationale for any sanction(s) imposed. The *Notice of Decision* is considered confidential, however, the outcome reflected in the *Decision*—including whether a *Prohibited Conduct* occurred, the nature of *Prohibited Conduct*, and any sanctions imposed—is not.

For any Decision that results in suspension or ineligibility or materially affects the right to participate in a Protected Competition, the *Respondent* can request a hearing before a *USOPC* Hearing Panel in accordance with the USOPC Dispute Resolution Hearing Procedures.

## 7.10    Requesting a Stay of Final Sanctions

After requesting a hearing on a *Decision*, at any time prior to that hearing, a *Respondent* may

# U.S. OLYMPIC AND PARALYMPIC COMMITTEE POLICY

request that the *USOPC* Office of Athlete Safety stay or modify a sanction pending the outcome of the hearing, by emailing athlete.safety@usopc.org. The *USOPC* Office of Athlete Safety may, in its sole discretion, delay or modify temporarily the implementation of the sanction(s). For example, the *USOPC* may allow the *Respondent* to participate in *Protected Competition* (defined in Section 12) under the oversight of a chaperone.

## 7.11    Reopening a Matter

At any time, the *USOPC* Office of Athlete Safety on its own or at the request of a *Claimant* or *Respondent*—may reopen a matter based upon new evidence that was previously unavailable or a change in circumstances that could substantially impact the original finding or sanction.

Whether to reopen a case is within the *USOPC*'s sole discretion and is not reviewable.

## 7.12    Confidentiality – Release/Use of Materials

The following documents and/or evidence related to the response and resolution process must remain confidential, and may not be disclosed outside of the proceedings, except as may be required by law or law enforcement or authorized by the *USOPC*:

- the *Notice of Decision*;
- the *Investigation Report;*
- any documents and/or evidence attached to the *Investigation Report*, including interview statements of a *Claimant*, *Respondent*, or other witnesses;
- any other documents and/or evidence collected by, submitted to, or prepared by the investigator or the *USOPC* Office of Athlete Safety;
- any audio recordings or transcripts of those recordings created as part of the investigative process;
- all documents and/or evidence submitted to or prepared by the Hearing Panel, including any hearing transcripts;
- any other documents that may be necessary to the *Respondent* for use in the hearing.

Only the *Investigation Report* and *Notice of Decision* will be automatically distributed to certain parties as provided in Sections 7.8 and 7.9 above. If a *Respondent* requests a hearing, (1) the *USOPC* will consider requests from the *Respondent* for additional items such as interview recordings or transcripts from the investigation, and may, but is not required to, disclose those items; and (2) the *USOPC* will disclose to *Respondent* any additional documents that the *USOPC* concludes are relevant to the matter. The *USOPC* investigator may also provide additional materials to the *Respondent* or other witnesses if agreed upon by the *USOPC* investigator and the *Respondent* or other witness.

While the physical documentation must remain confidential, the *USOPC*, the *Center*, and the relevant *NGBs* and their affiliates may disclose the outcome of the matter, including the *Summary of Decision* (defined in Section 10.4), to those parties or organizations with a need to know so that the outcome can be properly implemented and understood.

Additionally, subject to the abuse of process prohibition (including the prohibition on identifying a *Claimant*), the *USOPC* does not impose any restrictions on a *Claimant's* or *Respondent's* ability to discuss the incident, their participation in the *USOPC*'s process, or the outcome of that

# U.S. OLYMPIC AND PARALYMPIC COMMITTEE POLICY

process. If a *Claimant* or *Respondent* intentionally misrepresents the process, the underlying facts, or the outcome of a matter, the *USOPC* reserves the right to publicly correct the record.

**Violation of this provision, including by an *Advisor* for an involved party, may constitute an Abuse of Process, as discussed in Section 5.3.3.**

**Note:** This Section 7.12 is not intended to require an individual or the *USOPC* to keep confidential any public information or documents, or any information or documents that they rightfully have in their possession independent of this process.

## 7.13    Documentation

The *USOPC* maintains documentation of all reported allegations received by the *USOPC* Office of Athlete Safety in its case management system, to include those reports that fall within the jurisdiction of the *USOPC*, how those allegations were responded to, and the outcomes of those matters.

## 7.14    Policy Enforcement

The *USOPC* Office of Athlete Safety, under the direction of the *Chief of Security & Athlete Services*, is responsible for ensuring the response and resolution procedures in this *Policy* are followed.  Should anyone feel that the *USOPC* Office of Athlete Safety failed to act in compliance with this *Policy* they can escalate the matter as detailed in Section 6.6 above.

## Section 8. Temporary Measures

The *USOPC* may implement temporary measures ("*Temporary Measures*"), which are designed for protective purposes pending a *Decision*, at any time. Generally, *Temporary Measures* are implemented based on the severity of the allegations, the evidentiary support for the allegations, and/or the perceived risk to athletes or the Olympic and Paralympic Movement.

A *Temporary Measure* is effective immediately upon notice, unless stated otherwise. *Temporary Measure(s)* will remain in effect until the *USOPC* expressly removes the *Temporary Measure(s)*.

When a Temporary Measure materially affects the right to participate in Protected Competition (such as suspension), the *Respondent* can request a hearing in accordance with the USOPC Dispute Resolution Procedures.

## 8.1    Remedies

*Temporary Measures* may include, but are not limited to:

- altering training schedules,
- providing or requiring chaperones,
- implementing contact limitations,
- implementing measures prohibiting one-on-one interactions,

# U.S. OLYMPIC AND PARALYMPIC COMMITTEE POLICY

- suspensions from *OPTC* privileges,
- alternative housing arrangements,
- alternative transportation arrangements,
- suspensions from participation in some or all aspects of activity in the Olympic and Paralympic Movement

*Temporary Measures* may also be issued in the form of a safety plan. Safety plans are usually event or season specific, issued after an investigation has already been initiated, and do not include suspension from participation in a *Protected Competition*. In some circumstances, the *USOPC* Office of Athlete Safety may issue a safety plan for matters that have been administratively closed by the *USOPC*, administratively closed or placed on an administrative hold by the Center, or in other instances where an identified risk requires mitigation.

*Temporary Measures* will be enforced by the *USOPC* and the relevant *NGBs* and *LAO*s, as appropriate. The *USOPC* may share information regarding *Temporary Measures* with additional organizations, such as International Federations ("*IF*s"), as it deems appropriate. The *USOPC* may also share *Temporary Measures* to certain affected groups (i.e., team members, Delegation members) and/or publicly to ensure the safety and wellbeing of others in the Movement and to effectuate the enforcement of the *Temporary Measures.*

The *USOPC* will notify the *Center* within 72 hours of any *Temporary Measures* it imposes on an individual affecting their participation in sport, and any *Temporary Measures* it imposes on an individual who is currently a *Respondent* in an investigation under the *Center's* jurisdiction.

## 8.2    By an *NGB* or *LAO*

Nothing in this *Policy* prevents an *NGB* or *LAO* from enacting appropriate *Temporary Measures* before the *USOPC* exercises jurisdiction, such as a temporary suspension, which will stay in place unless and until modified by the *USOPC*.

## 8.3    Requesting a Stay of *Temporary Measures*

At any time prior to a hearing, a *Respondent* may request that the *USOPC* stay or modify a *Temporary Measure*. The *USOPC* may, in its sole discretion, delay, or modify implementation of the *Temporary Measures*, such as, by way of example, to allow the *Respondent* to participate in *Protected Competition* under the oversight of a chaperone.

## Section 9. Sanctions

Where there is sufficient evidence through the investigation and resolution procedure to support a finding that a *Participant* engaged in *Prohibited Conduct*, the *Chief of Security & Athlete Services* will determine the appropriate sanction(s).

Sanctions include, but are not limited to, the following (either by itself or in combination):

- Written warning
- Education and/or training

# U.S. OLYMPIC AND PARALYMPIC COMMITTEE POLICY

- Probation
- Suspension
- Other eligibility restrictions
- Permanent ineligibility
- Other discretionary sanctions

For any Decision that results in suspension or ineligibility or materially affects the right to participate in a Protected Competition, the *Respondent* can request a hearing before a *USOPC* Hearing Panel in accordance with the USOPC Dispute Resolution Hearing Procedures.

## Section 10. Enforcement

### 10.1  Temporary Measures

All *Temporary Measures* imposed by the *USOPC* will be in effect immediately upon issuance. A *Respondent* may request a stay or modification of a *Temporary Measure* if the *Respondent* has timely requested a hearing, in accordance with the USOPC Dispute Resolution Procedures.

### 10.2  Sanctions

Final sanctions imposed in the *Decision* will take effect if the *Respondent* does not request a hearing as outlined in the USOPC Dispute Resolution Procedures, or immediately after issuance from a Hearing Panel.

Nothing prevents the *USOPC* from enacting safety measures during the time period between the issuance of a *Decision* and the finalization of the sanction via hearing or failure to request a hearing.

### 10.3  Reciprocal Enforcement

If a *Participant* is sanctioned or subject to *Temporary Measures* under this *Policy*, that sanction(s) or *Temporary Measure(s)* must be reciprocally enforced by and between all *NGBs* and *LAO*s within the Olympic and Paralympic Movement.

### 10.4  Summary of Decision

The *USOPC* may provide a "*Summary of Decision*," which *NGBs* and *LAO*s may provide to parties to assist with enforcement of sanctions. The *USOPC* may share the *Summary of Decision* with additional organizations, such as *IF*s, as it deems appropriate.

## Section 11. Loss of USOPC Services and Benefits

This Section is intended to provide clarity on *Participant* eligibility guidelines for *USOPC* services and benefits in the event of a sanctioning determination by the *Center*, *NGB*, or the *USOPC*.

20

# U.S. OLYMPIC AND PARALYMPIC COMMITTEE POLICY

## 11.1 Allegations

With the exception of certain circumstances outlined in the Athlete Safety Eligibility Matrix, revocation of *USOPC* services and benefits will not occur based solely on a report or an allegation made against a *Participant* for *Prohibited Conduct*.

## 11.2 Temporary Measures

- For any *Temporary Measure* other than a temporary suspension imposed on a *Participant*, the *USOPC may* suspend applicable services and benefits as outlined in the Athlete Safety Eligibility Matrix (which can also be found on the *USOPC* Policies and Procedures page on SharePoint), up until the case is resolved or the *Temporary Measure* is lifted or altered.

- In instances where a temporary suspension is imposed on a *Participant*, the *USOPC* will suspend applicable services and benefits as outlined in the Athlete Safety Eligibility Matrix, until the case is resolved or the temporary suspension is otherwise lifted or altered.

- In the event of alteration of a *Temporary Measure* or temporary suspension, the *USOPC* may reevaluate the known information to determine whether suspension of applicable services and benefits should be lifted, reduced, or expanded.

## 11.3    Final Sanction – Suspension or Permanent Ineligibility

If a *Participant* is suspended or deemed permanently ineligible, then the *Participant* will be deemed ineligible to receive the applicable services and benefits, as outlined in Athlete Safety Eligibility Matrix, for the duration of the sanction.

### 11.3.1    Sanctions that Do Not Result in Suspension or Other Eligibility Restriction

If the *Participant* receives a final sanction other than suspension or ineligibility, the eligibility for services and benefits will be determined on a case-by-case basis and based on the conditions of those sanctioning determinations.

### 11.3.2    Reinstatement

When a *Participant's* suspension is lifted or period of ineligibility has elapsed, all or a portion of the applicable service(s) or benefit(s) under Athlete Safety Eligibility Matrix may be reinstated if the *Participant* otherwise meets the necessary criteria to receive those services and benefits. For services and benefits with eligibility based on performance criteria, the applicable criteria will still apply to determine eligibility after a case is resolved.

# Section 12. Definitions

"Adult" means an individual 18 years of age or older.

"Advisor" has the meaning set forth in Section 7.6.2.

# U.S. OLYMPIC AND PARALYMPIC COMMITTEE POLICY

"Amateur Athlete" means an athlete who meets the eligibility standards established by the National Governing Body or Paralympic sports organization for the sport in which the athlete competes.

"Athlete with an Intellectual Impairment" means athletes participating in the following sports in the following sport classes: Paralympic Track & Field T20/F20, Paralympic Swimming S14/SB14/SM14, Paralympic Table Tennis class 11.

"Authority" means when one person's position over another person is such that, based on the totality of the circumstances, they have the power or right to direct, control, give orders to, or make decisions for that person, or where a Power Imbalance exists as defined in the *Code*.

"Center" means the U.S. Center for SafeSport.

"Chief of Security & Athlete Services" means the highest-ranking individual in the *USOPC* Office of Athlete Safety or his/her designee.

"Child Abuse" as the term is used in this *Policy*, has the meaning set forth in Section 203 of the Victims of Child Abuse Act of 1990 (34 U.S.C. § 20341) or any applicable state law.

"Claimant" means a person who is alleged to have experienced conduct that constitutes *Prohibited Conduct*.

"Code" means the SafeSport Code for the U.S. Olympic and Paralympic Movement.

"Criminal Charge or Disposition" has the meaning given to it in the *Code*.

"Days" unless expressly provided otherwise, the term "days" shall mean calendar days, which includes weekends and national holidays.

"Decision" has the meaning set forth in Section 7.9.

"Delegation Event" means the Olympic Games, the Olympic Winter Games, the Paralympic Games, the Paralympic Winter Games, the Pan American Games, and the Parapan American Games, individually or collectively as applicable.

"Emotional Misconduct," as the term is used in this *Policy*, has the meaning given it in the *Code*.

"IF" or "International Federation" means the international governing body for a sport.

"Investigation Report" has the meaning given to it in Section 7.8.

"LAO" means a regional, state, or local club or organization that is directly affiliated with an *NGB* or that is affiliated with an *NGB* by its direct affiliation with a regional or state affiliate of said *NGB*. *LAO* does not include a regional, state, or local club or organization that is only a member of a National Member Organization of an *NGB*.

"MAAPP" means the USOPC Minor Athlete Abuse Prevention Policies available at https://www.usopc.org/safe-sport and on the *USOPC* Policies and Procedures page on SharePoint.

22

# U.S. OLYMPIC AND PARALYMPIC COMMITTEE POLICY

"Minor" means an individual under the age of 18.

"Minor Athlete" means an amateur athlete under 18 years of age who participates in, or participated within the previous 12 months in, an event, program, activity, or competition that is part of, or partially or fully under the jurisdiction of the *USOPC*, an *NGB*, or *LAO*. This also includes any minor who participates or participated in a non-athlete role partially or fully under the jurisdiction of the *USOPC* (i.e., officials, coaches, volunteers).

"NGB" means a U.S. Olympic National Governing Body, Pan American Sport Organization, or Paralympic Sport Organization recognized by the *USOPC* pursuant to the Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. §§ 220501, et seq.

"NOC/NPC Event" means the Youth Olympic Games, World Beach Games, Youth Parapan American Games, Junior Pan American Games, and other international sporting events as designated by the *USOPC*.

"Notice of Decision" has the meaning set forth in Section 7.9.

"OPTC" means an Olympic & Paralympic Training Center.

"Participant" has the meaning set forth in Section 2.1.

"Policy" as used herein means the *USOPC* Athlete Safety Policy.

"Physical Misconduct," as the term is used in this *Policy*, has the meaning given it in the *Code*.

"Prohibited Conduct" has the meaning given to it in Section 5.

"Protected Competition" has the meaning given to it in Section 1.3(x) of the *USOPC* Bylaws.

"Regular Contact" means substantive interactions between an *Adult* Participant and a Minor Athlete(s) during a 12-month period that include direct and active engagement where the duration and/or frequency allows for the opportunity for relationship and rapport building.

"Respondent" means a *Participant* who is alleged to have violated this *Policy*.

"Retaliation" as the term is used in this *Policy*, has the meaning given it in the *Code*.

"Sexual Misconduct" as the term is used in this *Policy*, has the meaning given it in the *Code*.

"Summary of Decision" has the meaning set forth in Section 10.4.

"Temporary Measures" has the meaning given to it in Section 8 of this *Policy*.

"Third-Party Reporter" means an individual other than a *Claimant* or *Respondent* who makes a report under this *Policy*.

"USOPC" means the U.S. Olympic & Paralympic Committee.

# U.S. OLYMPIC AND PARALYMPIC COMMITTEE POLICY

"USOPC Sponsored Event" means Olympic and Paralympic Trials, and any other event or competition organized, operated, sanctioned, or formally authorized by the *USOPC*.

24

# U.S. OLYMPIC AND PARALYMPIC COMMITTEE POLICY



*USOPC* Athlete Safety Policy

**Appendix A**

**Data Reporting to the *Center***

Beginning in 2024, the *USOPC* will annually submit to the *Center* by the deadline specified by the *Center*, data maintained in its case management system regarding:

1. Reports of *Emotional* or *Physical Misconduct* made to the *USOPC*

    a. Total reported incidents of alleged *Emotional Misconduct*
    b. Total reported incidents of alleged *Physical Misconduct*
    c. Total number of investigations of alleged *Emotional Misconduct*
    d. Total number of investigations of alleged *Physical Misconduct*
    e. Total number of violations for *Emotional Misconduct* adjudicated by the *USOPC*
    f. Total number of violations for *Physical Misconduct* adjudicated by the *USOPC*

2. Reports to the *USOPC* that a Participant violated the Minor Athlete Abuse Prevention Policies (*MAAPP*)

    a. Total reported incidents of alleged violations of the *MAAPP*, by policy type
    b. Total number of investigations of alleged violations of the *MAAPP*
    c. Total number of violations of the *MAAPP* adjudicated by the *USOPC*

3. Reports to the *USOPC* that a *Participant* engaged in *Retaliation*

    a. Total reported incidents of alleged *Retaliation*
    b. Total number of investigations of alleged *Retaliation*
    c. Total number of violations of *Retaliation* policy adjudicated by the *USOPC*

# U.S. OLYMPIC AND PARALYMPIC COMMITTEE POLICY

| Publication Type | Policy Approver | Enabling Action | Publication Date | Next Review | Revision Summary |
|---|---|---|---|---|---|
| Initial Publication | Board of Directors | Board Vote: January 17, 2020 | January 20, 2020 | September 2021 | N/A – initial publication |
| Annual Review | Board of Directors | Board Vote: September 23, 2021 | September 27, 2021 | September 2022 | Updates to policy statement, Section 2, Section 3, addition of Section 6.5, update to Section 7.2, update to Section 12, Addition of Appendix A – Hearing Procedures, addition of the USOPC Participant & Training Model to replace the Participants Coverage Model |
| Annual Review | Board of Directors | Board Vote: September 23, 2021 | January 1, 2022 | September 2022 | Updated sections 4.2, 4.3, 5.2. and definitions in Section 12 to comply with MAAPP released January 1, 2022 |
| Annual Review | Board of Directors | Board Vote: December 7, 2022 | December 12, 2022 | December 2023 | Updates to Section 2.1 and Participant & Training Model regarding athletes who are Participants, addition of full retaliation definition in Section 5.3.2 other violations of process moved to Section 5.3.3, updates to Section 7, 8, and addition of Appendix B to comply with the Center's Response & Resolution Standards. Updates to office title and supervisory title throughout. |
| Annual Review | Board of Directors | Board Vote: December 12, 2024 | January 1, 2025 | December 2025 | Updates to Section 5 to include Supporting Athletes with an Intellectual Impairment Policy violations, Section 6 to include Supporting Athletes with an Intellectual Impairment Policy reporting parameters, clarify medical and mental health providers' reporting obligations, and additional updates as required by the 2025 MAAPP, Section 7 updated Administrative Hold to Jurisdictional Hold for consistency with the Center, Section 8 to include additional parameters on when the USOPC can issue temporary measures, removal of Hearing Procedures in Section 10 and Appendix A to instead utilize DRU Procedures, updated Athlete Safety Eligibility Matrix, updated Participant & Training Model for further clarity, Section 12 added NOC/NPC Event definition and updated additional definitions for consistency with the MAAPP and Bylaws. |

## U.S. OLYMPIC AND PARALYMPIC COMMITTEE POLICY

| Update | Board of Directors | Board Vote: June 18, 2025 | June 18, 2025 | December 2026 | Added Section 3.3 Additional Requirements. |
|---|---|---|---|---|---|
| Historical – USOC Safe Sport Policy | N/A | N/A | September 7, 2012 | N/A | N/A - Historical |
| Historical- USOC SafeSport Policy | Board of Directors | Board vote: June 20, 2017 | June 20, 2017 | N/A | N/A - Historical |
| Historical –USOC Athlete Safety | Board of Directors | Board vote: April 18, 2018 | April 18, 2018 | June 2018 | N/A - Historical |
| Historical – Review USOC Athlete Safety | Board of Directors | Board vote: June 22, 2018 | June 22, 2018 | December 2019 | N/A - Historical |