# EXHIBIT C

Case 2:25-cv-18011-KSH-AME   Document 17-3   Filed 01/20/26   Page 2 of 9 PageID: 547

Lakeview Renovations, Inc. v. City and County of Denver, Not Reported in Pac. Rptr....

2017 WL 11932533
Only the Westlaw citation is currently available.
**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Colorado Court of Appeals, Division II.

LAKEVIEW RENOVATIONS, INC., d/b/a North American Property Services, Inc., Plaintiff-Appellant,

v.

CITY AND COUNTY OF DENVER, Colorado, Defendant-Appellee.

Court of Appeals No. 16CA2102
|
Announced November 16, 2017

City and County of Denver District Court No. 16CV32950, Honorable J. Eric Elliff, Judge

**Attorneys and Law Firms**

Sherman & Howard L.L.C., Tamir I. Goldstein, William R. Reed, Denver, Colorado, for Plaintiff-Appellant

Kristin M. Bronson, City Attorney, Tracy A. Davis, Assistant City Attorney, Joshua L. Roberts, Assistant City Attorney, Denver, Colorado, for Defendant-Appellee

**Opinion**

Opinion by JUDGE WELLING

*1 ¶ 1 Lakeview Renovations, Inc., d/b/a North American Property Services, Inc. (NAPS), appeals the district court's dismissal of its action against the City and County of Denver (City) for breach of contract and breach of implied covenant of good faith and fair dealing. We affirm.

I. Background

¶ 2 NAPS provides janitorial services for City-owned municipal buildings. In 2007, NAPS entered into a first services contract with the City that terminated October 1, 2009. In 2009, NAPS successfully bid to renew its services contract with the City, and the parties entered into a new services contract, effective January 1, 2010 (the Agreement).

¶ 3 Both contracts contained alternative dispute resolution (ADR) clauses providing that "[a]ll disputes ... between the City and Contractor regarding this Agreement shall be resolved by administrative hearing, pursuant to the procedure established by Denver Revised Municipal Code, Section 56-106." Each ADR clause identified the Denver City Manager of General Services (Manager) as the official responsible, pursuant to Denver Revised Municipal Code 56-106 (D.R.M.C.), for rendering a final determination on any dispute.

¶ 4 In 2014, a dispute arose concerning payment amounts and whether NAPS was in compliance with certain prevailing wage conditions imposed by the Agreement. On June 1, 2014, NAPS sent an invoice to the City requesting payment. The City refused NAPS' request to pay the invoice. Between June 1 and June 20, 2014, NAPS representatives met with the Manager, Adrienne Benavidez, to discuss the invoice. Following the meeting, on June 20, 2014, NAPS sent the Manager a follow-up letter that provided explanations and documentation for the items in the invoice. On July 17, 2014, the Manager informed NAPS that she had reviewed the request and determined that the City would not pay the requested amount. In her letter, the Manager set forth the basis for her denial of each payment NAPS requested.

¶ 5 On August 11, 2014, NAPS sent a letter requesting that the Manager reconsider her denial. The Manager, in an August 19th response, confirmed that she had considered the explanation and documentation that NAPS had provided in the June 20th letter prior to reaching her decision, and that the request remained denied. The Manager's letter further explained why the contentions raised in NAPS' August 11th letter did not alter her decision. The Manager offered to review any additional, relevant documents NAPS could provide. No additional materials were provided.

¶ 6 On May 19, 2015, NAPS filed a complaint in federal district court against the City, alleging, among other things, breach of contract. After NAPS' complaint was dismissed for lack of subject matter jurisdiction, NAPS filed a breach of contract action in state court on August 15, 2016. The City moved to dismiss NAPS' complaint for lack of subject matter jurisdiction, contending that NAPS had failed to comply with the parties' contractual ADR provision, or, in the alternative, that NAPS was required to seek review of the Manager's decision under C.R.C.P. 106(a)(4), and could not do so through a breach of contract suit.

Case 2:25-cv-18011-KSH-AME   Document 17-3   Filed 01/20/26   Page 3 of 9 PageID: 548

Lakeview Renovations, Inc. v. City and County of Denver, Not Reported in Pac. Rptr....

**\*2** ¶ 7 The district court determined that the ADR provision was enforceable and applicable, and granted the City's motion. The district court concluded that NAPS was required to challenge the Manager's determination under C.R.C.P. 106(a)(4), but failed to do so within the twenty-eight day window under C.R.C.P. 106(b). The district court then dismissed the action for lack of subject matter jurisdiction.

II. Analysis

¶ 8 NAPS argues that the district court's dismissal should be reversed for three reasons. First, NAPS contends that the ADR provision in its contract with the City is unconscionable. Second, NAPS contends that, because it is pursuing a breach of contract claim and because the Manager's decision was not quasi-judicial in nature, C.R.C.P. 106 is inapplicable and, therefore, NAPS should be permitted to proceed with its breach of contract claim in district court. Third, NAPS contends that the City is estopped from enforcing the ADR provision against NAPS because the City repudiated its own obligation under the ADR provision by failing to hold a hearing on NAPS' dispute. We disagree with each contention and, therefore, affirm the district court's dismissal.

A. The ADR Provision Is Not Unconscionable

1. Standard of Review and Legal Principles

¶ 9 A finding of unconscionability is a question of law, Leprino v. Intermountain Brick Co., 759 P.2d 835, 836 (Colo. App. 1988), and we review questions of law de novo, Quintano v. People, 105 P.3d 585, 592 (Colo. 2005).

¶ 10 In order to invalidate a contractual provision on the basis of unconscionability, the evidence must show unreasonably favorable contract terms together with overreaching by one of the parties, such as where there is an inequality of bargaining power or an absence of meaningful choice on the part of the disadvantaged party. Leprino, 759 P.2d at 836 (citing Davis v. M.L.G. Corp., 712 P.2d 985 (Colo. 1986)). In order to prevail on a claim of unconscionability, a party must demonstrate both procedural unconscionability (i.e., the disadvantage of the weaker party in negotiations) and substantive unconscionability (i.e., the unfairness of the terms or outcomes). Davis, 712 P.2d at 992.

¶ 11 Davis sets forth a non-exhaustive list of seven factors relevant to the unconscionability determination: (1) a standardized agreement executed by parties of unequal bargaining strength; (2) a lack of opportunity to read or become familiar with the document before signing it; (3) the use of fine print in the portion of the contract containing the provision at issue; (4) an absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated; (5) substantive unfairness in the terms of the contract; (6) the relationship of the parties, including factors of assent, unfair surprise, and notice; and (7) all the factors surrounding the formation of the contract, including its commercial setting, purpose, and effect. Id. at 991.

2. Discussion

a. The Colorado Supreme Court Has Upheld the ADR Provision

¶ 12 Before turning to the application of the Davis factors, the supreme court's decision in City & County of Denver v. District Court, 939 P.2d 1353 (Colo. 1997), appears to foreclose NAPS' contention that the ADR clause in its contract with the City is unconscionable and, therefore, invalid. The ADR clause in section 5.21 of NAPS' contract with the City provides:

> **\*3** Disputes. All disputes between the City and Contractor regarding this Agreement shall be resolved by administrative hearing pursuant to the procedure established by D.R.M.C. § 56-106(b), et seq. For the purposes of that procedure, the City official rendering a final determination shall be the Manager.

¶ 13 In City & County of Denver, the ADR clause at issue provided:

> DISPUTES: It is agreed and understood by the parties that disputes regarding the contract shall be resolved by administrative hearing under procedures described in Revised Municipal Code Section 56–106.

939 P.2d at 1365 (emphasis omitted).

¶ 14 Both ADR clauses incorporate the procedures set forth in a Denver municipal ordinance, which provides:

> Any person who disputes any determination made by or on behalf of the city pursuant to the authority of the manager,

Case 2:25-cv-18011-KSH-AME    Document 17-3    Filed 01/20/26    Page 4 of 9 PageID: 549

Lakeview Renovations, Inc. v. City and County of Denver, Not Reported in Pac. Rptr....

which determination adversely affects such person, may petition the manager for a hearing concerning such determination no later than thirty (30) days after having been notified of any such determination. Compliance with the provisions of this subsection shall be a jurisdictional prerequisite to any action brought under the provisions of this section, and failure of compliance shall forever bar any such action.

D.R.M.C. 56-106(b).

¶ 15 The ADR clause that NAPS challenges as unconscionable is materially identical to the provision considered by the supreme court in *City & County of Denver*. The supreme court in *City & County of Denver* "acknowledge[d] that the ADR clause provides for a Denver official, rather than a decision-maker unrelated to either party, to determine the merits" of disputes within the scope of the ADR clause. 939 P.2d at 1365. Similarly, the ADR clause in NAPS' Agreement with the City provides that the final determination on the dispute will issue from the Manager, rather than a neutral third-party.

¶ 16 NAPS argues that the ADR clause is invalid because it fails to provide for a neutral decision-maker, a contention raised and rejected in *City & County of Denver*. In that case, the supreme court held that an ADR clause that provides for a non-neutral government official as the decision-maker is not invalid so long as it "provides for judicial review of the official's determination." *Id.* at 1365; *see also Kiewit W. Co. v. City & Cty. of Denver*, 902 P.2d 421, 424 (Colo. 1994).

¶ 17 The ADR clause in NAPS' Agreement with the City provides for judicial review by incorporating "the procedure established in D.R.M.C. section 56-106(b), *et seq.*" Under D.R.M.C. 56-106(f), a determination by the Manager is reviewable pursuant to C.R.C.P. 106(a)(4). Thus, because C.R.C.P. 106(a)(4) provides a mechanism for judicial review of any determination reached by the non-neutral government official pursuant the ADR clause, the fact that the ADR clause provides for a non-neutral decision-maker (i.e., the Manager) does not render it invalid. *City & Cty. of Denver*, 939 P.2d at 1365.

b. Application of the *Davis* Factors

¶ 18 An analysis of the *Davis* factors further supports a conclusion that the ADR clause is not unconscionable. With respect to the first *Davis* factor, NAPS contends that the bargaining relationship between itself and the City was so unequal as to bear the "hallmark of unconscionability." We disagree. NAPS is not an unsophisticated consumer. *Cf. Coll. Park Pentecostal Holiness Church v. Gen. Steel Corp.*, 847 F. Supp. 2d 807, 816 (D. Md. 2012) (purchase agreement between steel corporation and church pastor who lacked "business sophistication, including experience with contracts" held unconscionable); *Davis*, 712 P.2d at 992 (rental agreement between individual consumer and car rental company held unconscionable). To the contrary, NAPS has the resources and wherewithal of a large business, as evidenced by, among other things, the sophistication it exhibited in navigating the City's bidding procedures and in seeking payment from the City through counsel. The first *Davis* factor thus does not support a finding of unconscionability.

 *4 ¶ 19 NAPS does not argue that the second *Davis* factor, which focuses on whether the party claiming unconscionability was provided ample opportunity to review the agreement, supports its position. We agree that it does not. Indeed, NAPS provided janitorial services to the City from 2007 through 2009 pursuant to an agreement that contained a near-identical ADR clause. Thus, NAPS does not (and cannot) claim to have been unfamiliar with the terms of the second Agreement. Accordingly, the second *Davis* factor does not support a finding of unconscionability.

¶ 20 NAPS argues that the third *Davis* factor — the use of "fine print" — supports a finding of unconscionability because the Agreement incorporates D.R.M.C. 56-106 but does not provide the language of the ordinance in the Agreement. We are unpersuaded that this factor supports a finding of unconscionability. Whether or not the omission of the text of D.R.M.C. 56-106 from the body of the Agreement is analogous to "fine print," this should not have prevented NAPS, a party to a prior contract that also incorporated D.R.M.C. 56-106, from fully understanding the terms of the Agreement. Thus, the third *Davis* factor does not support a finding of unconscionability.

¶ 21 The fourth *Davis* factor focuses on whether the terms of the agreement are commercially reasonable or should reasonably have been anticipated. In support of its contention that the fourth *Davis* factor supports a finding of unconscionability, NAPS argues that no party with equal bargaining power to the City would ever agree to the ADR clause. But NAPS' allegation is at odds with the fact that the same or similar provisions have existed in City contracts for

Case 2:25-cv-18011-KSH-AME   Document 17-3   Filed 01/20/26   Page 5 of 9 PageID: 550

Lakeview Renovations, Inc. v. City and County of Denver, Not Reported in Pac. Rptr....

years, and also with NAPS' acknowledgement that numerous other contractors were competing with NAPS for the contract at issue. See *Ad Two, Inc. v. City & Cty. of Denver*, 9 P.3d 373, 376-77 (Colo. 2000); *City & Cty. of Denver*, 939 P.2d at 1365; *Kiewit W. Co.*, 902 P.2d at 424; *First Christian Assembly of God, Montbello v. City & Cty. of Denver*, 122 P.3d 1089, 1091 (Colo. App. 2005). The fourth *Davis* factor thus does not support a finding of unconscionability.

¶ 22 NAPS argues that the fifth *Davis* factor, which centers on the substantive fairness of the terms, supports a finding of unconscionability for three reasons: (1) crucial terms in the ADR clause are indefinite; (2) the ADR procedure suffers from an inherent conflict of interest; and (3) the ADR clause fails to require an evidentiary hearing.

¶ 23 NAPS argues that, because it is unclear when the Manager has made a "determination" within the meaning of the Agreement, and because D.R.M.C. 56-106(b) requires a party to petition for a hearing within thirty days of such determination, a party's right to judicial review may be extinguished without fair notice. But NAPS' argument is belied by the facts at hand. In fact, NAPS was afforded an opportunity to argue its case to the Manager before a final determination was reached, notwithstanding that NAPS' dispute concerned payments the City had allegedly withheld, in some cases, more than two years prior. NAPS was also provided adequate notice of the twenty-eight day window for seeking judicial review pursuant to C.R.C.P. 106(a)(4), as this window began to run only once NAPS met with the Manager and was informed of her determination following NAPS' request for reconsideration.

¶ 24 NAPS also argues that the fifth *Davis* factor — substantive unfairness in the terms of the contract — supports a finding of unconscionability because the ADR clause provides for a non-neutral decision-maker and because the ADR clause does not require that the Manager hold an evidentiary hearing.[1] We acknowledge that the designation of a city employee as the decision-maker renders the ADR clause quite favorable to the City, but it does not render the Agreement unconscionable. See *City & Cty. of Denver*, 939 P.2d at 1365. We are also not persuaded by NAPS' bald claim that a decision reached by the Manager on the basis of written correspondence and documentary evidence, as occurred here, is inherently less fair or effective than an evidentiary hearing for the purpose of creating a reviewable record (particularly where, as here, NAPS never requested such a hearing). Thus, the fifth *Davis* factor does not persuasively support a finding of unconscionability.

**\*5** ¶ 25 Under the sixth *Davis* factor, NAPS argues that ambiguous and conflicting terms in the ADR clause and in D.R.M.C. 56-106 result in unfair surprise by denying any meaningful review of a City determination, and thus support a finding of unconscionability. NAPS contends that, absent judicial intervention, its rights to ADR procedures or judicial review would have been unfairly extinguished. But NAPS' contention is again belied by the facts presented. Prior to any judicial intervention, NAPS received the ADR procedure to which it was entitled pursuant to the ADR clause in the parties' Agreement. During that time, the City made no attempt to assert any jurisdictional bar on NAPS' dispute. To the contrary, the City, in one instance, accepted NAPS' request for reconsideration even though NAPS made the request after the expiration of the fifteen-day window provided for by D.R.M.C. 56-106(e).

¶ 26 NAPS next argues that the sixth *Davis* factor supports a finding of unconscionability because the "withdrawal of the right to a hearing" resulted in unfair surprise. Whether or not the parties' Agreement required a formal hearing, the complete absence of any reference to or request for a hearing throughout the entirety of NAPS' correspondence with the City belies NAPS' claim that the City's failure to hold such a hearing resulted in unfair surprise. Accordingly, the sixth *Davis* factor does not support a finding of unconscionability.

¶ 27 NAPS argues that the seventh *Davis* factor, which focuses on the circumstances surrounding the formation of the contract, including the commercial setting, purpose, and effect, supports a finding of unconscionability because the contract's overall effect is to divest NAPS of any realistic and fair opportunity to contest the City's decision. NAPS argues, in effect, that the ADR clause denies due process. But, as discussed in *supra* Part II.A.2.a, the supreme court in *City & County of Denver* considered and rejected a due process challenge to a nearly-identical ADR clause in a City contract. 939 P.2d at 1362. Moreover, because NAPS "chose, with its business eyes open, to accept the terms, specifications and risk of the bid contract, including the ADR clause," *id.* (citation omitted), NAPS cannot now bypass an ADR clause that was a part of the bargain for which NAPS successfully bid. Thus, the seventh *Davis* factor does not support a finding of unconscionability.

Case 2:25-cv-18011-KSH-AME    Document 17-3    Filed 01/20/26    Page 6 of 9 PageID: 551

Lakeview Renovations, Inc. v. City and County of Denver, Not Reported in Pac. Rptr....

¶ 28 Altogether, our analysis of the *Davis* factors lends support to the conclusion that the ADR clause in NAPS' Agreement with the City is not unconscionable.

B. C.R.C.P. 106 Is Applicable

1. Standard of Review and Legal Principles

¶ 29 Whether NAPS' claim should have been brought pursuant to C.R.C.P. 106(a)(4) presents a legal question that we review de novo. *Quintano*, 105 P.3d at 592.

¶ 30 C.R.C.P. 106(a)(4) provides a mechanism for judicial review "[w]here any governmental body or official ... exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law." C.R.C.P. 106(b) further provides that, "[i]f no time within which review may be sought is provided by any statute, a complaint seeking review under subsection (a)(4) of this Rule shall be filed in the district court not later than 28 days after the final decision of the body or officer."

2. Discussion

¶ 31 NAPS contends that C.R.C.P. 106(a)(4) is not available here because the availability of a breach of contract action means there is a "plain, speedy and adequate remedy" available and because the Manager was not exercising "judicial or quasi-judicial functions" when she rendered her decision. We address both contentions, in turn, below.

a. No Plain, Speedy, and Adequate Alternative Legal Remedy Was Available

¶ 32 NAPS contends that C.R.C.P. 106(a)(4) does not apply to its dispute with the City because a plain, speedy, and adequate legal remedy is available to NAPS through a breach of contract action. NAPS argues that, because this legal remedy is available to NAPS, the district court never had jurisdiction under C.R.C.P. 106(a)(4) to hear its dispute with the City. Because jurisdiction under C.R.C.P. 106(a)(4) never existed, NAPS argues, it is immaterial whether NAPS petitioned for review within the twenty-eight day window provided for by C.R.C.P. 106(b). We disagree.

**\*6** ¶ 33 NAPS fails to recognize that its breach of contract action is barred by the ADR clause. Section 5.21 of NAPS' Agreement with the City provides that "*[a]ll disputes* between the City and [NAPS] *regarding this Agreement shall be resolved* by administrative hearing pursuant to the procedure established by D.R.M.C. § 56-106(b), *et seq.*" (Emphasis added.) The ADR clause, therefore, "prohibit[s] litigation 'unless the court can say with "positive assurance" that the arbitration provision is not susceptible of any interpretation that encompasses the subject matter of the dispute.' " *City & Cty. of Denver*, 939 P.2d at 1363-64 (citations omitted). NAPS does not argue that the claims alleged in its breach of contract action represent anything other than a dispute "regarding th[e] Agreement." NAPS' contract claims are thus encompassed by the ADR clause.

¶ 34 Because NAPS' breach of contract claims are encompassed by a valid and enforceable ADR clause, *see supra* Part II.A (ADR clause not unconscionable); *infra* Part II.C (City did not repudiate its obligations under the Agreement), a breach of contract action was not available, *City & Cty. of Denver*, 939 P.2d at 1370 ("[A] valid, enforceable arbitration clause divests the trial court of jurisdiction over all the questions that are submitted to arbitration, pending the conclusion of arbitration."), and, therefore, there was no plain, speedy, and adequate remedy available to NAPS (apart from a C.R.C.P. 106 action).

¶ 35 NAPS' reliance on *Wilson v. Town of Avon*, 749 P.2d 990 (Colo. App. 1987), is also unavailing. NAPS argues that *Wilson* should control the outcome here, but NAPS omits key factual details that distinguish *Wilson* from this case. In *Wilson*, prior to filing a breach of contract action in district court, the two police officers who had been terminated by the town sought reinstatement through a limited administrative review process. *Id.* at 991. A division of this court ultimately held that C.R.C.P. 106(a)(4) did not apply to bar the officers' contract claims from being brought in district court. *Id.* at 992.

¶ 36 *Wilson* is distinguishable in two respects. First, in *Wilson*, the officers were not bound by an ADR or arbitration clause, as NAPS is here. *Wilson* held that C.R.C.P. 106(a)(4) did not bar the officers from pursuing a breach of contract action in district court, but C.R.C.P. 106(a)(4) does not bar NAPS from pursuing a breach of contract action in district court — the ADR clause does. Second, the officers' contract claims in *Wilson* were not encompassed by the limited

Case 2:25-cv-18011-KSH-AME   Document 17-3   Filed 01/20/26   Page 7 of 9 PageID: 552

Lakeview Renovations, Inc. v. City and County of Denver, Not Reported in Pac. Rptr....

administrative review process. In *Wilson*, the administrative review determined no more than whether the acts leading to termination in fact occurred, and whether mitigating conduct by the employee cured the effect of such acts. *Id.* at 991. NAPS, in contrast to *Wilson*, is bound by an ADR clause that does encompass its breach of contract claim.[2] Because the issues raised in NAPS' breach of contract claim are within the scope of the administrative process under the ADR clause, a district court has jurisdiction under C.R.C.P. 106(a)(4) to review any resulting determination. *Cf. Wilson*, 749 P.2d at 992 (determining that no jurisdiction existed for review under C.R.C.P. 106(a)(4) because breach of contract claims were outside the scope of the administrative review).

¶ 37 For these reasons, we reject NAPS' contention that a breach of contract action provides NAPS with a "plain, speedy and adequate remedy" such that C.R.C.P. 106(a)(4) does not apply.

b. The Manager's Determination Was Quasi-Judicial

¶ 38 NAPS further contends that C.R.C.P. 106(a)(4) does not apply here because the Manager's determination was not an exercise of a quasi-judicial function. NAPS argues that, because the Manager did not hold a formal hearing, her determination was instead an administrative or ministerial action. We disagree.

*7 ¶ 39 The decision as to whether or not to hold a formal hearing is not dispositive of whether an action is quasi-judicial. *Prairie Dog Advocates v. City of Lakewood*, 20 P.3d 1203, 1207 (Colo. App. 2000) ("There is no 'litmus test' for whether a particular action is quasi-judicial." (quoting *Cherry Hills Resort Dev. Co. v. City of Cherry Hills Village*, 757 P.2d 622, 627 (Colo. 1988))).

¶ 40 Whether an action is quasi-judicial under C.R.C.P. 106(a)(4) instead depends on "the nature of the governmental decision and the process by which that decision is reached." *Cherry Hills*, 757 P.2d at 627. The supreme court has described quasi-judicial action as a decision that is "likely to adversely affect the protected interests of specific individuals ... reached through the application of preexisting legal standards or policy considerations to present or past facts presented to the governmental body." *Id.* at 627. While an action may be quasi-judicial in the absence of a statutory notice and hearing requirement, "it is incumbent upon the governmental body to provide adequate notice and an opportunity to be heard to those persons whose protected interests are likely to be affected." *Id.* at 627-28.

¶ 41 Although the Manager did not hold a formal hearing, her determination was nevertheless quasi-judicial within the meaning of C.R.C.P. 106(a)(4). Notwithstanding the lack of a formal hearing, NAPS was afforded an opportunity to be heard before the Manager rendered her final determination. NAPS met with the Manager between June 1 and June 20, 2014. Following the meeting, NAPS sent the Manager documents and written explanations to support the payments NAPS requested in the June 1st invoice. The Manager acknowledged receipt of these materials and said that she considered them in reaching her decision. When the Manager notified NAPS of her decision to deny the payment request, she set forth in writing the legal and factual bases for the denial. NAPS then submitted a request for reconsideration. The Manager considered the request and replied in a letter in which she not only confirmed the earlier denial, but also invited NAPS to send additional documents, if they were available, to show that NAPS was entitled to payment. NAPS made no further submissions.

¶ 42 The quasi-judicial character of a governmental decision does not entirely depend, as NAPS argues, on whether a formal hearing was held. NAPS relies on four decisions by divisions of this court to argue that a determination made without a hearing cannot be quasi-judicial. Three of these decisions were issued after the supreme court's 1988 decision in *Cherry Hills*: *Prairie Dog Advocates*, 20 P.3d 1203; *Miller v. Collier*, 878 P.2d 141 (Colo. App. 1994); and *Chellsen v. Pena*, 857 P.2d 472 (Colo. App. 1992).

¶ 43 Yet these cases do not stand for the proposition that a formal hearing is required for an action to be quasi-judicial. In *Prairie Dog Advocates*, the court held that an opportunity for public citizen comment during a regularly scheduled city council meeting did not constitute a hearing within the meaning of C.R.C.P. 106(a)(4). In so holding, however, the court distinguished *Carpenter v. Civil Service Commission*, 813 P.2d 773, 776 (Colo. App. 1990), which notably held that a "meaningful opportunity for the aggrieved party to be heard by presenting her case in writing" was equivalent to a hearing under C.R.C.P. 106(a)(4). *Prairie Dog Advocates*, 20 P.3d at 1207. In *Miller*, the court merely held that the summary denial of a concealed weapons permit "without an explanation" was not a quasi-judicial function. 878 P.2d at 143. Finally, the court in *Chellsen* held that the city's ex parte dismissal of probationary firefighters — a decision

Case 2:25-cv-18011-KSH-AME   Document 17-3   Filed 01/20/26   Page 8 of 9 PageID: 553

Lakeview Renovations, Inc. v. City and County of Denver, Not Reported in Pac. Rptr....

reached "without permitting the affected firefighters to have any input" — was not quasi-judicial. 857 P.2d at 475. *Prairie Dog Advocates*, *Miller*, and *Chellsen* thus not only fail to establish a bright-line rule requiring a formal hearing before a determination may be considered quasi-judicial, but fail to otherwise establish that the detailed, written back-and-forth between NAPS and the Manager is insufficient to constitute a quasi-judicial determination under C.R.C.P. 106(a)(4).

**\*8** ¶ 44 The Manager's determination bears the characteristics of a quasi-judicial function as set forth in *Cherry Hills* and is readily distinguishable from each of the decisions on which NAPS relies for the proposition that a formal hearing is required. Accordingly, we reject NAPS' contention that the denial of its payment request was not an exercise of a quasi-judicial function, and that C.R.C.P. 106(a)(4) does not apply for that reason.

C. The City Is Not Estopped From Enforcing ADR Clause

1. Standard of Review and Preservation

¶ 45 Whether the City repudiated the ADR clause in its Agreement with NAPS by not holding a formal hearing presents a mixed question of law and fact. Because the trial court dismissed NAPS' complaint pursuant to C.R.C.P. 12(b), we review the trial court's evidentiary findings for clear error and review the trial court's legal determinations de novo. *Bazemore v. Colo. State Lottery Div.*, 64 P.3d 876, 878 (Colo. App. 2002), *aff'd sub nom. Robinson v. Colo. State Lottery Div.*, 179 P.3d 998 (Colo. 2008).

¶ 46 NAPS preserved this argument below.

2. Discussion

¶ 47 NAPS contends that the City's failure to hold a formal hearing before rendering a determination amounted to a repudiation of its obligations under the ADR clause. NAPS argues that the City is therefore estopped from enforcing the ADR clause now as a bar on NAPS' breach of contract action. We disagree.

¶ 48 NAPS has not identified conduct by the City that amounts to a repudiation. NAPS relies on *Jefferson County School District Number R-1 v. Shorey*, 826 P.2d 830 (Colo. 1992), for the proposition that a party's repudiation of contractual dispute resolution procedures estops that party from later relying on those unexhausted procedures as a defense. NAPS argues that *Shorey* controls, but *Shorey* is distinguishable.

¶ 49 The plaintiff in *Shorey*, a teacher, filed a grievance with the school district pursuant to an arbitration clause. The arbitration clause entitled a grievant to participate in three "levels" of hearings before district officials. If dissatisfied with the level-two disposition, the clause authorized the grievant to "request a [level-three] hearing before an umpire." *Id.* at 834. The school district, however, denied Shorey's request for level-three arbitration. *Id.* at 835. The majority in *Shorey* held that, because "the conduct of the employer amounts to a repudiation of" the contractual arbitration procedure, the district was thereafter estopped from relying on the unexhausted arbitration procedures as a defense to Shorey's breach of contract claims in district court. *Id.* at 845 (quoting *Vaca v. Sipes*, 386 U.S. 171, 185 (1967)).

¶ 50 In Colorado, a repudiation of a contract "must consist of a present, positive, unequivocal refusal to perform the contract." *Lake Durango Water Co., Inc. v. Pub. Utils. Comm'n*, 67 P.3d 12, 21 (Colo. 2003). In *Shorey*, the school district repudiated the arbitration procedure by denying an express request for a procedure explicitly authorized by the agreement. 826 P.2d at 845.

¶ 51 In contrast, the City's failure to hold an evidentiary hearing on NAPS' dispute does not meet the criteria for repudiation. The City never "refused" to conduct a hearing. *See Brown v. Jefferson Cty. Sch. Dist. No. R-1*, 2012 COA 98, ¶ 24 (distinguishing *Shorey* where plaintiff never requested performance, so employer "had no opportunity to refuse to arbitrate"). The record indicates that NAPS never requested a formal hearing. NAPS contends otherwise, but nowhere in the correspondence between NAPS and the Manager does either side refer to a "hearing." Nor does NAPS at any time request any procedure pursuant to the ADR clause that it does not receive. In short, NAPS received all of the process it requested.

**\*9** ¶ 52 To support its contention that it requested a hearing, NAPS relies entirely on a determination by the district court that NAPS' June 20, 2014, letter "qualifies ... as a petition to the manager for a hearing under D.R.M.C. § 56-106(b)." But this was not a determination by the district court that NAPS requested a hearing. Rather, the carefully phrased determination reflects the district court's judgment

Case 2:25-cv-18011-KSH-AME   Document 17-3   Filed 01/20/26   Page 9 of 9 PageID: 554

Lakeview Renovations, Inc. v. City and County of Denver, Not Reported in Pac. Rptr....

that NAPS' June 20 letter was sufficient to invoke the ADR procedures of D.R.M.C. 56-106(b).

¶ 53 Based on the record and the district court's order, we conclude that NAPS never expressly requested a formal hearing. Because no request was ever made to the City, the City never had the opportunity to "refuse" to conduct a hearing and thereby repudiate the ADR procedure, as NAPS contends that it did. Cf. *Shorey*, 826 P.2d at 843 (concluding that the school district "repudiated the grievance process by *refusing* to participate in level-three advisory arbitration") (emphasis added).

¶ 54 The City's failure to conduct a hearing also could not have amounted to an "unequivocal" refusal of performance. See *Lake Durango Water Co., Inc.*, 67 P.3d at 21 (repudiation requires "present, positive, *unequivocal* refusal to perform") (emphasis added). For the City's failure to hold a hearing to amount to an unequivocal refusal of the ADR procedure, the parties — or even NAPS alone — must have understood that a hearing was required. But, in its district court complaint, NAPS alleged that, "[a]s allowed by City ordinance, the Manager denied Plaintiff's claims without holding an evidentiary hearing."[3] Thus, as of August 15, 2016, the day on which NAPS filed its complaint in district court, NAPS' position was that the Manager was not required to conduct a formal hearing. Given NAPS' understanding of what the Agreement required, the City's failure to hold a formal hearing between June 1 and August 19, 2014, could not have amounted to an "unequivocal" refusal to perform.

¶ 55 The City's conduct was also inconsistent with a repudiation of the ADR procedures in other respects. In her second and final letter to NAPS, dated August 19, 2014, the Manager invited NAPS to send any additional documentation responsive to the deficiencies identified in the Manager's August 19, 2014, denial letter. Despite the Manager's offer to review additional documentation, NAPS made no further submissions. In another instance, the City accepted NAPS' August 11, 2014, request for reconsideration, despite the fact that the request was untimely. The City's invitation to continue the ADR process and its acceptance of NAPS untimely submissions both represent conduct inconsistent with repudiation. See *First Christian Assembly of God*, 122 P.3d at 1094 (concluding that the City had not waived the dispute resolution process where "the city has attempted to honor the dispute resolution procedures, not repudiate the process").

III. Conclusion

¶ 56 The district court's dismissal of NAPS' complaint for lack of subject matter jurisdiction is affirmed.

JUDGE DAILEY and JUDGE HAWTHORNE concur.

**All Citations**

Not Reported in Pac. Rptr., 2017 WL 11932533

---

Footnotes

1   NAPS' contention that the ADR clause's failure to require an evidentiary hearing supports a finding of unconscionability is in tension with NAPS' contention, discussed in *infra* Part C, that the City is estopped from enforcing the ADR clause because the City, by failing to hold an evidentiary hearing as required by the ADR clause, repudiated the ADR procedures found therein.

2   The ADR clause requires that "[a]ll disputes ... regarding this Agreement shall be resolved" through ADR procedures.

3   The district court reached a similar conclusion when it determined that "the contract ... does not require a formal evidentiary hearing."

**End of Document**                                                                 © 2026 Thomson Reuters. No claim to original U.S. Government Works.