**EXHIBIT E**



Caution
As of: March 10, 2026 11:06 PM Z

# *Jevremovic v. Courville*

○ On Appeal

United States District Court for the District of New Jersey

July 11, 2025, Decided; July 11, 2025, Filed

Civil Action No. 22-4969 (ZNQ) (RLS)

**Reporter**
2025 U.S. Dist. LEXIS 131994 *; 2025 LX 268145; 2025 WL 1911696

LIMA JEVREMOVIC, et al., Plaintiffs, v. BRITTANY JEREAM COURVILLE, et al., Defendants.

**Notice:** NOT FOR PUBLICATION

**Subsequent History:** Appeal filed, 08/13/2025

**Prior History:** *Jevremovic v. Courville, 2023 U.S. Dist. LEXIS 139440, 2023 WL 5127332 (Aug. 10, 2023)*

**Counsel:** **[*1]** For LIMA JEVREMOVIC, an individual, AUTONOMOUS USER REHABILITATION AGENT, LLC, a Delaware Limited Liability Company, Plaintiffs: ELLIOT DAVID OSTROVE, LEAD ATTORNEY, EPSTEIN OSTROVE LLC, EDISON, NJ; VAHBIZ P. KARANJIA, EPSTEIN OSTROVE, LLC, EDISON, NJ.

For BRITTANY JEREAM COURVILLE, an individual, PREM BENIPAL, an individual, THAT SURPRISE WITNESS TV LLC, a New Jersey limited liability corporation, Defendants: JOHN P. JOHNSON, JR., LEAD ATTORNEY, COZEN O'CONNOR, CHERRY HILL, NJ.

**Judges:** ZAHID N. QURAISHI, UNITED STATES DISTRICT JUDGE.

**Opinion by:** ZAHID N. QURAISHI

## Opinion

**QURAISHI, District Judge** **THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendants Brittany Jeream Courville ("Courville") and That Surprise Witness TV LLC (the "LLC") (collectively, "Defendants"). ("Motion", ECF No. 86.) Defendants filed a brief in support of their Motion. ("Moving Br.", ECF No. 86-1.) Plaintiffs Lima Jevremovic ("Jevremovic") and Autonomous User Rehabilitation Agent, LLC ("AURA") (collectively, "Plaintiffs") filed an Opposition to the Motion ("Opp'n Br.", ECF No. 91), to which Defendants replied ("Reply Br.", ECF No. 92).

The Court has carefully considered the parties' submissions and decides the Motion without **[*2]** oral argument pursuant to *Federal Rule of Civil Procedure 78* and Local Civil Rule 78.1.[1] For the reasons set forth below, the Court will GRANT Defendants' Motion.

## I. BACKGROUND AND PROCEDURAL HISTORY

This action arises out of alleged defamatory statements made by Defendants across various online platforms about Jevremovic and her company, AURA. (*See generally* Fourth Amended Complaint, "FAC", ECF No. 79.) A complete factual background of this dispute is set forth in the Court's earlier Opinion dated August 10, 2023, which the Court incorporates by reference. (ECF No. 44.) *Jevremovic v. Courville, Civ. No. 22-4969, 2023 U.S. Dist. LEXIS 139440, 2023 WL 5127332 (D.N.J. Aug. 10, 2023) (hereinafter Jevremovic I)*. The relevant background and procedural history for the purposes of the current motion are summarized as follows.

Plaintiffs initiated the instant action on August 8, 2022, by filing the original Complaint. (ECF No. 1.) On May 30, 2022, the Court issued an Order to Show Cause why this matter should not be dismissed for lack of subject matter jurisdiction because Plaintiffs failed to adequately allege the citizenship of AURA. (ECF No. 24.) On June 6, 2023, Plaintiffs filed an Amended Complaint (ECF No. 26) that adequately alleged AURA's citizenship; the original Complaint and the Amended Complaint were otherwise identical. Accordingly, the Court **[*3]** withdrew its Order to Show Cause. (ECF No. 32.)

---

[1] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

The Amended Complaint asserted two counts of libel against Courville. (ECF No. 26 ¶¶ 29-111.) Between the two counts, Plaintiffs alleged that Courville made defamatory statements about Plaintiffs on her YouTube channel, on Instagram posts, and on other social media platforms. The statements largely concerned Plaintiffs' relationship with Amanda Rabb and Brandon "Bam" Margera, individuals associated with Jevremovic and AURA's efforts to provide mental health services and substance abuse treatment.

Defendants filed a Motion to Dismiss the Amended Complaint (ECF No. 20), which the Court granted. *Jevremovic I, 2023 U.S. Dist. LEXIS 139440, 2023 WL 5127332*. In *Jevremovic I*, the Court held that Courville's statements were unactionable opinions, not defamatory statements. *Id.* The Court provided several explanations to support its conclusion, including that: (1) the statements were made on Instagram and YouTube which are "forums that welcome opinions and candor," (*2023 U.S. Dist. LEXIS 139440, [WL] at *5*); (2) despite being a lawyer, Courville "disclaims that her opinions are 'not legal advice,'" (*2023 U.S. Dist. LEXIS 139440, [WL] at *6*); and (3) Courville characterizes her opinions as "theories" and even refers to herself as a "conspiracy theorist," *Id.* The Court also found that **[*4]** Plaintiffs failed to sufficiently plead actual malice, a demanding standard requiring "particularized facts to suggest that . . . [the statement] was published with knowledge of its falsity or a reckless disregard for the truth or falsity of the reported statement." *Id.* Ultimately, the Court dismissed the two libel counts without prejudice and granted Plaintiffs leave to "cure the defects" identified and noted that a failure to do so may result in dismissal with prejudice. *Jevremovic I, 2023 U.S. Dist. LEXIS 139440, 2023 WL 5127332, at *8*.

On September 11, 2023, Plaintiffs filed the Second Amended Complaint ("SAC"). (ECF No. 48.) Just a few months later, Plaintiffs filed the Third Amended Complaint ("TAC") on December 6, 2023, to correct a clerical error in the caption of the SAC. (ECF No. 64.) Other than the caption, the SAC and the TAC were identical.

The amendments in the TAC significantly exceeded the Court's narrow leave provided to Plaintiffs to cure the defects of the Amended Complaint. First, Plaintiffs added two new parties: Defendants Benipal and the LLC. (*See generally id.*) Second, Plaintiffs added eight new counts, Counts Three through Ten, alleging various causes of action including invasion of privacy, harassment, intentional and negligent **[*5]** infliction of emotional distress, and unfair competition. (*Id.* ¶¶ 173-222.)

To support their additional causes of action, Plaintiffs pled several factual allegations describing Defendants' purported harassment and doxing behavior towards them. (*Id.* ¶¶ 44-63.) Plaintiffs described how Defendants "resorted to an unabashed campaign of doxing and cyber-harassment in attempts to intimidate Jevremovic and prevent" her from bringing this lawsuit. (*Id.* ¶ 44.) Plaintiffs alleged that Defendants have published over 300 videos and over 1,000 posts about Jevremovic across Defendants' social media outlets. (*Id.* ¶ 47.) Plaintiffs pointed to a photo that Defendants published "falsely communicating that Courville had found an OnlyFans page for Jevremovic—a profile page which links to pornographic films and photographs that are not Jevremovic." (*Id.* ¶ 48.) Finally, Plaintiffs alleged that Defendants have distributed personal information relating to Jevremovic and her family. (*Id.* ¶¶ 50-53.) Altogether, Plaintiffs claimed that Defendants' conduct has caused "substantial and irreversible damage to Jevremovic's career and reputation" and well as destroying AURA's ability to operate professionally or commercially. **[*6]** (*Id.* ¶¶ 60-61.)

Although Defendants recognized that Plaintiffs "tried to widen the scope of this action" with their amendments in the TAC, Defendants did not object to the TAC on a procedural basis and the Motion only sought dismissal under Rule 12(b)(6). (Moving Br. at 1.) As such, the Court accepted the TAC as the operative pleading and considered Defendants' arguments for dismissal.

On August 30, 2024, the Court granted Defendants' Motion to Dismiss the TAC. (ECF No. 76.) *Jevremovic v. Courville, Civ. No. 22-4979, 2024 U.S. Dist. LEXIS 156331, 2024 WL 402144 (D.N.J. Aug. 30, 2024) (hereinafter Jevremovic II)*. The Court dismissed without prejudice Counts One and Two (libel), Three (intrusion upon seclusion), Four (false light), Seven (intentional infliction of emotional distress), Eight (negligent infliction of emotional distress), Nine and Ten (unfair competition claims). *Id.* The Court dismissed with prejudice Counts Five and Six (harassment claims).[2] The Court allowed Plaintiffs to file a Fourth Amended Complaint limited again to remedying the defects identified and noted that a failure to do so might result in dismissal with prejudice.

---

[2] The Court also dismissed as time barred Counts One, Two and Four against newly added Defendant Benipal. *2024 U.S. Dist. LEXIS 156331, [WL] at *4*.

*Id.* at 11.

On October 23, 2024, Plaintiffs filed a Fourth Amended Complaint ("FAC"). (ECF No. 79.) The FAC retains the libel claims (Counts One, Two), invasion of privacy **[*7]** claims(Counts Three, Four) and both the intentional and negligent infliction of emotional distress claims (Counts Five, Six), but drops AURA's unfair competition claims and attempts to add two new tortious interference claims (Counts Seven, Eight).

## II. LEGAL STANDARD

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)* (alteration in original) (quoting *Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)* (abrogated on other grounds)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011)*. "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal, 556 U.S. 662, 675, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)* (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed me. *Iqbal, 556 U.S. at 678* (citing *Twombly, 550 U.S. at 555*). Finally, the court must determine whether "the facts alleged in the complaint **[*8]** are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler, 578 F.3d at 211* (quoting *Iqbal, 556 U.S. at 679*). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. at 210* (quoting *Iqbal, 556 U.S. at 663*). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005)* (citing *Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)*).

## III. DISCUSSION

### A. NEW CLAIMS WITHOUT LEAVE

The FAC includes claims for tortious interference with contractual relations (Count Seven) and tortious interference with prospective economic advantage (Count Eight). (FAC ¶¶ 222-235.) Defendants object on the basis that the Court's prior dismissal of Plaintiffs' claims in *Jevremovic II* granted Plaintiffs leave to amend their Complaint, but expressly stated that it was for a narrow purpose: "*limited to remedying the defects in the counts dismissed without prejudice.*"

Insofar as the FAC purports to add entirely new claims, Plaintiffs again seek to exceed the leave provided by the Court. The Court exercised its discretion to consider new claims in the TAC. Given that this is Plaintiffs' second attempt to ignore the Court's instructions and this is their fifth pleading in this matter, the Court will not exercise **[*9]** that discretion again. Counts Seven and Eight will therefore be dismissed.

### B. DEFAMATION CLAIMS

In Counts One and Two, Plaintiffs assert claims for libel. In Count One, Jevremovic alleges a libel claim against Defendants (FAC ¶¶ 183-191), and in Count Two, AURA alleges a libel claim against Defendants (*id.* ¶¶ 192-199). To adequately state a claim for libel, a plaintiff must allege a prima facie case of defamation. To establish a prima facie case of defamation, a plaintiff must show that the defendant communicated a false statement about the plaintiff to a third person that harms the plaintiff's reputation in the eyes of the community or deters third persons from associating with the plaintiff. *Lynch v. New Jersey Educ. Ass'n, 161 N.J. 152, 164-65, 735 A.2d 1129 (1999)*. A defamatory statement is one that "harms the reputation of another such that it lowers the defamed person in the estimation of the community or deters third parties from dealing with that person." *Salzano v. N. Jersey Media Grp. Inc., 201 N.J. 500, 512, 993 A.2d 778 (2010)*. "To determine if a statement has a defamatory meaning, a court must consider three factors: '(1) the content, (2) the verifiability, and (3) the context of the challenged statement.'" *Id.* (quoting *DeAngelis v. Hill, 180 N.J. 1, 14, 847 A.2d 1261 (2004)*).

Second, where the plaintiff is a public figure, a plaintiff must also allege that the defendant acted **[*10]** with

"actual malice."[3] *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 356 (3d Cir. 2020) (quoting *Haynes v. Alfred A. Knopf, Inc., 8 F.3d 1222, 1227 (7th Cir. 1993)*). "Actual malice" is a term of art that does not connote ill will or improper motivation. Rather, it requires that the publisher of the statements either knew that the statements were false, or they published the statements with "reckless disregard" for their truth. *McCafferty*, 955 F.3d at 359.

The Court will address each count in turn.

1. Libel Claim by Jevremovic (Count One)

Jevremovic alleges that Defendants published false and defamatory statements about her involvement with Amanda Rabb ("Amanda") and Brandon Margera ("Bam"). In *Jevremovic II*, the Court dismissed Jevremovic's libel claim without prejudice, finding the statements alleged against Defendants constituted "unactionable opinions." *Jevremovic II, 2024 U.S. Dist. LEXIS 156331, 2024 WL 4024144, at *6*. In the FAC, Jevremovic alleges several new defamatory statements made by Courville.

As to Amanda, Jevremovic alleges that Courville, through her social media accounts including YouTube and Instagram, falsely claimed that Jevremovic: conspired with Amanda's father to put Amanda in prison; conducted experimental treatment on Amanda against her will; and lied about Amanda's death. (FAC ¶39-40, 64, 67.) Jevremovic alleges that Courville posted several videos on her YouTube channel throughout [*11] 2022 and 2023 in which Courville stated, among other things, that Jevremovic was "working in concert with Amanda's father . . . and Mark Laita," a photographer who interviewed Amanda for a YouTube series, "to make sure that Amanda went to jail."[4] (*Id.* ¶48.) Jevremovic further alleges that Courville claimed Jevremovic "forces people by court order to use [AURA'S] tools" and that Amanda's arrest was a set up to "put her into a conservatorship and . . . force her into rehab." (*Id.* ¶¶40, 56, 79.)[5] Jevremovic also pleads a statement by Courville in which she stated that Amanda "did not survive the treatment" and she "died in the AURA treatment center." (*Id.* ¶64).

As to Bam, Jevremovic alleges that Courville similarly falsely accused Jevremovic of "setting up" Bam to be arrested and forced into a treatment center and that Jevremovic was serving as a conservator to Bam to gain access to Bam's finances. (*Id.* ¶¶88, 104, 111, 115, 132.) Jevremovic pleads that Defendants knew, or had reckless disregard for the truth, that Bam was under a guardianship, not a conservatorship, and even went so far as to claim that conservatorships and guardianships are "exactly the same." (*Id.* ¶97.)

In their [*12] Motion, Defendants argue that Plaintiffs fail to cure the deficiencies the Court identified in *Jevremovic II* and the FAC therefore fails to allege actionable defamatory statements. (Moving Br. at 8, citing *Jevremovic II, 2024 U.S. Dist. LEXIS 156331, 2024 WL 4024144, at *6*). Defendants contend that the alleged defamatory statements attributed to Courville in the FAC are constitutionally protected opinion which were made without malice. (Moving Br. at 8.) Plaintiffs argue in opposition that each of Courville's allegedly defamatory statements are verifiably false, and that Courville either knew the statements were false or acted with "reckless disregard" for the truth. (Opp'n Br. at 13, 20.)

Upon a thorough review of the FAC, the Court finds that Jevremovic's allegations again fail to establish a prima

---

[3] Plaintiffs do not concede that Jevremovic is a public figure. The Court, however, has already found that in this instance she qualifies as a limited public figure. (ECF No. 44 at 16-17.); *see Gulrajaney v. Petricha, 381 N.J. Super. 241, 885 A.2d 496, 505 (N.J. Super. Ct. App. Div. 2005)* ("The classification of a person as a public or private figure is a question of law to be decided by the [court].")

[4] Jevremovic further alleges that Courville referred to Amanda's father as a "molester" based on an interview Amanda gave with Mark Laita but that Courville intentionally misled her audience because Amanda later clarified in that same video that, "the things I accused my dad of . . is not true. I had schizophrenia. I had mental illness where . . . I hear voices . . . so my dad has done nothing to hurt me. He's a great guy." (*Id.* ¶46.) Jevremovic contends that Courville claimed Jevremovic was thus working with Amanda's father to hurt Amanda. (*Id.* ¶¶48-51.)

[5] Jevremovic also pleads many statements that Courville made in response to comments Courville received on her social media posts. For example, Jevremovic alleges that Courville posted a photo on Instagram in March 2022, of Amanda wearing virtual reality headgear and participating in a "virtual reality exposure therapy session using AURA." (FAC ¶74.) In response to a comment on the post, Courville wrote, "the issue is that [Amanda] was forced to do this treatment under threat of going to prison. She was set up against her will with the help of the government do [sic] be used as a test subject and marketing tool . . . . What's not cool is taking away someone's choice for their own treatment." (*Id.*)

facie claim of libel. As in *Jevremovic I and II*, the context of the allegations as pled in the FAC stem from Instagram and YouTube, forums that the Court previously noted welcome opinions and candor. *Jevremovic II, 2024 U.S. Dist. LEXIS 156331, 2024 WL 4024144, at *6*. Furthermore, many of the statements alleged appear to have been made by Courville in her responses to viewers comments both on Instagram and YouTube. Further, "mere insults and rhetorical hyperbole, while they may be offensive, are not defamatory." *McLaughlin v. Rosanio, Bailets & Talamo, Inc., 331 N.J. Super. 303, 312, 751 A.2d 1066 (App. Div. 2000)* (quoting [*13] *Lynch, 161 N.J. at 167-68*). Accordingly, the Court finds that the new statements in the FAC are not defamatory statements, but rather unactionable opinions. For these reasons, the Court will dismiss Counts One and Two.

## C. ADDITIONAL CLAIMS

1. Invasion of Privacy Claims (Counts Three & Four)

*a) Invasion of Privacy - Intrusion upon Seclusion (Count Three)*

In Count Three, Jevremovic asserts a claim for intrusion upon seclusion. (FAC ¶¶ 200-206.) To state a claim for intrusion upon seclusion, the New Jersey Supreme Court has held that a plaintiff must allege (1) an intentional intrusion, (2) upon the seclusion of another, (3) that is highly offensive to a reasonable person. *In re Nickelodeon Consumer Privacy Litigation, 827 F.3d 262, 293 (3d Cir. 2016)* (citing *Hennessey v. Coastal Eagle Point Oil Co., 129 N.J. 81, 609 A.2d 11, 17 (N.J. 1992)*). Courts have explained that the "thrust" of an intrusion upon seclusion claim is that "a person's private, personal affairs should not be pried into" and that "there is no wrong where defendant did not actually delve into plaintiff's concerns, or where plaintiff's activities are already public or known." *D'Ambly v. Exoo, Civ. No. 20-12880, 2021 U.S. Dist. LEXIS 210315, 2021 WL 5083816, at *8 (D.N.J. Nov. 1, 2021)* (citing *Bisbee v. John C. Conover Agency, Inc., 186 N.J. Super. 335, 452 A.2d 689, 691 (N.J. Sup. Ct. App. Div. 1982)*).

Here, Jevremovic alleges that Defendants released her personal information including Jevremovic's home address; the name and address of the church she attends in Los Angeles; her phone number; her social security number; the [*14] names of Jevremovic's husband, sisters, mother and mother-in-law; and photos of her family. (FAC ¶202.) Jevremovic alleges that Defendants' intentional release of her social security number violates *N.J. Stat. Ann. §56:8-164* and that she has witnessed several drones circling near her home and property and that strangers have "show[n] up uninvited and unannounced" at her home. (*Id.* ¶¶203-04.)

Defendants argue that Jevremovic fails to allege how "any of the information identified is private, or at least not publicly known, or how Defendants "used anything other than public or permissible means to obtain [the] information." (Moving Br. at 26.) Defendants further contend that Jevremovic included her social security number in a "publicly available filing in Florida state court" and that such action on her part "undermines any suggestion that this information is private" and is thus "fatal to an invasion of privacy claim." (*Id.*) Jevremovic argues in response that she included her social security number in a guardianship application which was sealed and "not accessible to the public." (Opp'n Br. at 25.)

The Court finds that Jevremovic fails to adequately allege any conduct attributable to Defendants themselves that [*15] amounts to either direct or indirect intrusions. *See McQueen v. Credit One Bank, N.A., 769 F. Supp. 3d 321, 327 (D.N.J. 2025)* (explaining that the tort covers direct intrusions like "when someone opens a neighbor's mail" and indirect intrusions, whereby "the alleged intrusion runs through a third-party intermediary - as when A intrudes on B's 'seclusion' by improperly obtaining B's private information from C, [i.e., a bank]"). Rather than pleading allegations that Defendants themselves obtained such personal information by wrongful means, Jevremovic ultimately alleges only that Defendants released the information. Missing from the FAC are allegations as to actual intrusion on the part of any Defendant. That is, Jevremovic alleges that Defendants "published" and "released" personal and private information regarding Jevremovic and her family, but it is unclear whether Defendants themselves improperly obtained the information or whether a third-party, such as one of Defendants' viewers, obtained the information and provided it to Defendants. The same is true for the release of Jevremovic's social security number. Jevremovic does not plead that Defendants themselves obtained this information wrongfully from a sealed court filing; only that Defendants released [*16] the number.

The Court does not doubt that the information was in fact released but Jevremovic does not allege how Defendants obtained the information, whether Defendants "used anything other than public or permissible means to" obtain the information, or if the

information was not public. See *D'Ambly, 2021 U.S. Dist. LEXIS 210315, 2021 WL 5083816, at \*9*. Without more, Jevremovic cannot sufficiently allege an intentional intrusion into her private information. The Court will therefore dismiss Count Three.

*b) Invasion of Privacy - False Light (Count Four)*

In Count IV, Jevremovic asserts a claim for the tort of false light. (FAC ¶¶ 207-211.) To state a claim of false light, a plaintiff must allege that (1) the defendant publicized a matter concerning the plaintiff "before the public in a false light"; (2) "the false light in which [the plaintiff] was placed would be highly offensive to a reasonable person"; and (3) the defendant had "knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which [the plaintiff] would be placed." *Romaine v. Kallinger, 109 N.J. 282, 294, 537 A.2d 284 (1988)* (quoting *Restatement (Second) of Torts § 652E*). The third element of a false-light claim parallels the actual malice requirement of a defamation claim. *Durando v. Nutley Sun, 209 N.J. 235, 249, 37 A.3d 449 (2012)*. For the reasons provided above, the Court concludes **[\*17]** that Plaintiff did not sufficiently allege actual malice with respect to her two libel claims. As such, the Court finds that Jevremovic has also failed to properly allege actual malice for her claim of false light, and it will dismiss Count Four.

2. Jevremovic's Emotional Distress Claims (Counts Five & Six)

Next, Jevremovic alleges two emotional distress claims. In Count Five, Jevremovic alleges a claim for intentional infliction of emotional distress ("IIED") (FAC ¶¶ 212-215), and in Count Six, she alleges a claim for negligent infliction of emotional distress ("NIED") (*id.* ¶¶ 216-221).

Jevremovic premises both her emotional distress claims on the following facts: (1) Defendants' distribution of her home address, phone number, social security number, (FAC ¶¶213, 217) (2) Defendants' distribution of her mother and sister's home addresses, (*id.*) and (3) Defendants' suggestion that Jevremovic is involved in pornography, (*id.*). Jevremovic further alleges that, as a result, she and her family have had to relocate and hire 24/7 security and that she suffered, and continues to suffer, emotional distress. Jevremovic alleges that she regularly sees a psychiatrist and therapist, was diagnosed **[\*18]** with depression in April 2024, and has developed a heart condition. (*Id.* ¶¶214, 219).

*a) IIED*

To state a claim for intentional infliction of emotional distress, a plaintiff must plead "intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Buckley v. Trenton Saving Fund Soc., 111 N.J. 355, 366, 544 A.2d 857 (1988)*. "An intentional infliction of emotional distress claim is rarely dismissed on a motion to dismiss." *Acevedo v. Monsignor Donovan High Sch., 420 F. Supp. 2d 337, 349 (D.N.J. 2006)*. However, a plaintiff will not satisfy the above elements by merely demonstrating a defendant acted "unjust, unfair and unkind." *Fregara v. Jet Aviation Bus. Jets, 764 F. Supp. 940, 956 (D.N.J. 1991)*. To establish "extreme and outrageous" conduct, a plaintiff must sufficiently plead factual allegations to show the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Witherspoon, 173 F. Supp. 2d at 242* (quoting *Buckley, 544 A.2d at 863* (citation omitted)). As a threshold matter, the Court must determine whether a defendant's conduct meets this standard. *See Ali v. Jersey City Parking Auth., No. 13-2678, 2014 U.S. Dist. LEXIS 52547, 2014 WL 1494578, at \*5 (D.N.J. Apr. 16, 2014)* (citing *Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988)*). I

Accepting as true all Jevremovic's allegations and construing the facts in the light most favorable to her, and considering the newly pled allegations concerning Jevremovic's depression diagnosis, the Court finds **[\*19]** Jevremovic does not plead specific allegations which would constitute an IIED claim. Put simply, Jevremovic has not alleged any conduct that is "extreme or outrageous" or "beyond all possible bounds of decency." "Examples of conduct found to be extreme and outrageous by New Jersey courts include, when a physician, knowing it to be false, told parents their son was suffering from cancer; spreading a false rumor that plaintiff's son had hung himself; bringing a mob to plaintiff's door with a threat to lynch him if he did not leave town; and wrapping up a gory dead rat inside a loaf of bread for a sensitive person to open." *Coefield v. GPU, 125 F. App'x 445, 450 (3d Cir.2005)* (quoting *McConnell v. State Farm Mut. Ins. Co., 61 F.Supp.2d 356, 363 (D.N.J.1999)*). Jevremovic has not alleged that Defendants engaged in conduct that could be characterized as extreme and outrageous. The "elevated threshold" for finding outrageous conduct is only satisfied in extreme cases under New Jersey law.

*Griffin v. Tops Appliance City, Inc., 337 N.J. Super. 15, 766 A.2d 292, 296 (N.J. Super. Ct. App. Div. 2001)*.

*b) NIED*

A plaintiff can only recover for negligent infliction of emotional distress in one of two ways. *Jablonowska v. Slither, 195 N.J. 91, 948 A.2d 610, 618 (N.J. 2008)*. First, he can show "the defendant's negligent conduct placed the plaintiff in reasonable fear of immediate personal injury." *Id.* (citing *Falzone v. Busch, 45 N.J. 559, 214 A.2d 12 (N.J. 1965)*). Alternatively, a plaintiff can show (1) the defendant's negligence caused the death [*20] of, or serious physical injury to, another; (2) the plaintiff shared a marital or intimate, familial relationship with the injured person; (3) the plaintiff had a sensory and contemporaneous observation of the death or injury at the scene of the accident; and (4) the plaintiff suffered severe emotional distress." *Id.* (citing *Portee v. Jaffee, 84 N.J. 88, 417 A.2d 521 (N.J. 1980)*).

Jevremovic has not pled a sufficient basis to make out a claim for negligent infliction of emotional distress under either avenue. The FAC does not allege that any Defendants' conduct "placed the plaintiff in reasonable fear of immediate personal injury," *Falzone, 214 A.2d at 17*, or that any of Defendants' negligence caused the "death or serious injury" of Plaintiff's family member, *Portee, 417 A.2d at 527*. Therefore, Jevremovic's claim for negligent infliction of emotional distress will be dismissed.

**D. DISMISSAL WITH PREJUDICE**

Insofar as this was Plaintiffs' Fourth Amended Complaint and they were cautioned that failure to remedy their pleading defects would result in dismissal with prejudice, the Court will now dismiss this matter with prejudice on the basis that any further amendment would be futile. *See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002)* (noting that court has discretion to dismiss claims with prejudice when finding amendment would be [*21] futile (citing *Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)*)).

**IV. CONCLUSION**

For the reasons stated above, the Court will GRANT Defendants' Motion (ECF No. 86). The Fourth Amended Complaint will be DISMISSED WITH PREJUDICE and this matter will be closed. An appropriate Order will follow.

Date: July 11, 2025

/s/ Zahid N. Quraishi

**ZAHID N. QURAISHI**

**UNITED STATES DISTRICT JUDGE**

**ORDER**

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendants Brittany Jeream Courville ("Courville") and That Surprise Witness TV LLC (the "LLC") (collectively, "Defendants"). (ECF No. 86.) For the reasons set forth in the accompanying Opinion,

**IT IS** on this **11th** day of **July 2025**,

**ORDERED** that Defendants' Motion (ECF No. 86) is hereby **GRANTED**; it is further

**ORDERED** that the Fourth Amended Complaint is hereby **DISMISSED WITH PREJUDICE**; and it is further

**ORDERED** that the Clerk's Office is instructed to mark this matter **CLOSED**.

/s/ Zahid N. Quraishi

**ZAHID N. QURAISHI**

**UNITED STATES DISTRICT JUDGE**

**End of Document**