## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DINAH YUKICH, | Civil Case No. 2:25-cv-18011-KSH-AME |
| Plaintiff, | |
| v. | |
| PREMIER FENCING CLUB, ABDEL AZIZ, USA FENCING, SHANNON DOUGHERTY, MAC BROWN, and UNITED STATES OLYMPIC AND PARALYMPIC COMMITTEE, | Motion Day: April 6, 2026 |
| Defendants. | |

## BRIEF IN SUPPORT OF MOTION TO DISMISS BY
## DEFENDANT PREMIER FENCING CLUB & SPORTS CORP.

**GOLDBERG SEGALLA LLP**
<u>Mailing address:</u>  PO Box 847,
Buffalo, NY 14201
1037 Raymond Boulevard
Suite 1010
Newark, NJ 07102-5423
973-681-7000
Fax:  973-681-7101
ccosta@goldbergsegalla.com
alin@goldbergsegalla.com

*Attorneys for Defendants
Premier Fencing Club & Sports
Corp. (incorrectly pleaded as
Premier Fending Club), Abdelwahab
Abdelaziz (a/k/a Abdel Aziz), USA
Fencing Association (incorrectly
pleaded as USA Fencing), and
Shannon Daugherty (incorrectly
pleaded as Shannon Dougherty)*

*On the brief:*
    *Claudia A. Costa*
    *Aimée S. Lin*

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................. 1

II.    PROCEDURAL HISTORY ................................................................................. 1

III.   FACTUAL BACKGROUND ............................................................................... 2

IV.   LEGAL ARGUMENT ........................................................................................ 5

     A.      Standard on a Motion to Dismiss Pursuant
            to Federal Rule of Civil Procedure 12(b)(6) ........................................ 5

     B.      Plaintiff's Action Must Be Dismissed in
            Favor of Arbitration or the Action Stayed
            Pending Arbitration ............................................................................... 6

     C.      All of Plaintiff's Claims against Premier are
            Preempted by the Act ............................................................................ 9

            1.      Congress Established a Comprehensive,
                       Uniform Federal Regime for Amateur
                       Sport Eligibility and Dispute Resolution
                       that Preempts Conflicting State Law
                       Causes of Action .................................................................. 9

            2.      Courts Applying the Act Repeatedly
                       Hold that State Law Claims Attacking
                       Eligibility/Participation Decisions are
                       Preempted (or Must Be Resolved in
                       the Act's Arbitral Forum) ................................................... 11

            3.      Allowing the NYSHRL to govern Athlete
                       Categorization and Eligibility Would Pose
                       a Direct Obstacle to the Act's Purposes .............................. 12

            4.      The Preemption Analysis Here is Distinct
                       from – and Stronger Than – Routine FAA
                       Preemption ........................................................................... 13

     D.      Plaintiff Does Not Allege Conduct Sufficiently
            Extreme or Outrageous; Therefore, Her Claim
            for IIED Must Be Dismissed ............................................................... 13

     E.      A Civil Conspiracy Claim Cannot Survive a
            Motion to Dismiss without an Underlying Wrong ............................... 16

V.     CONCLUSION ................................................................................................ 116

**TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................5

*Banco Popular N. Am. v. Gandi*, 184 N.J. 161 (2005)..................................................16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)..........................................................5

*Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355 (1988) ..........................................14

*CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165 (3d Cir. 2014)...........................7

*Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52 (2003)....................................................6

*Clark v. Nenna*, 465 N.J. Super. 505 (App. Div. 2020)................................................14

*Cole v. Laughrey Funeral Home*, 376 N.J. Super. 135 (App. Div. 2005) ....................15

*Dames v. United States Ctr. For SafeSport*,
    No. 25-3503, 2026 U.S. Dist. LEXIS 657 (N.D. Ill. Jan. 5, 2026)............................ 11-12

*Digital Landscape Inc. v. Media Kings LLC*, P.3d 1200 (Colo. App. 2018),
    cert. denied, 2019 Colo. LEXIS 398 (May 20, 2019).........................................8

*Fregara v. Jet Aviation Bus. Jets*, 764 F. Supp. 940 (D.N.J. 1991)..............................15

*Galbraith v. Clark*, 122 P.3d 1061 (Colo. App. 2005) ..................................................8

*Harris v. Middlesex County College*, 353 N.J. Super. 31 (App. Div. 2002) ................15

*Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150 (2016)..........................................10

*Ingraham v. Ortho-McNeil Pharmaceutical*, 422 N.J. Super. 12 (App. Div. 2011) ...............14, 15

*Jevremovic v. Courville*, No. 22-4969,
    2025 U.S. Dist. LEXIS 131994 (D.N.J. July 11, 2025),
    appeal filed, Aug. 13, 2025 ..........................................................................15

*Kindred Nursing Ctrs. Ltd. v. Clark*, 581 U.S. 246 (2017) ..........................................13

*Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022) ..........................................................6

*Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902 (3d Cir. 1997)..................................5

*Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S.Ct. 1461 (2018)..........................9, 10

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)......................................15

*Radil v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
    233 P.3d 688 (Colo. 2010) .................................................................7

*Ruprecht v. Ruprecht*, 252 N.J. Super. 230 (Ch. Div. 1991) ........................15

*Slaney v. Int'l Amateur Ath. Fed'n*, 244 F.3d 580 (7th Cir. 2001) ...............11

*Smith v. Spizzirri*, 601 U.S. 475 (2024)...................................................6-7

*Taylor v. Metzger*, 152 N.J. 490 (1998)....................................................14

*Turner v. Wong*, 363 N.J. Super. 186 (App. Div. 2003) ..............................14

*Vaughn v. JP Morgan Chase & Co.*, No. 24-1016,
    2025 U.S. App. LEXS 31931 (10th Cir Dec. 8, 2025) .............................7

*Vernon v. Qwest Communs. Int'l, Inc.*,
    925 F. Supp. 2d 1185 (D. Colo. 2013) .................................................8

## **Constitutions**

U.S. Const. art. 1, § 8, cl. 3 .....................................................................6

U.S. Const. art. VI, cl. 2 ..........................................................................9

## **Statutes**

9 U.S.C. §§ 1-16, *et seq.* .......................................................................6

9 U.S.C. § 3 ...........................................................................................6

9 U.S.C. § 4 ...........................................................................................6

28 U.S.C. § 1441(a) ................................................................................2

36 U.S.C. §§ 220501, *et seq.*...................................................................1

36 U.S.C. §§ 220501-220505 ...................................................................9

36 U.S.C. § 220505(b)(9) ........................................................................2

36 U.S.C. §§ 220521-220525 ...................................................................9

36 U.S.C. § 220522(4)(B)............................................................10, 12, 13

N.Y. EXEC. LAW §§ 290, *et seq.*...............................................................1

NYSHRL...................................................................1, 5, 10, 11, 12, 13

Ted Stevens Act.................................................................1, 2, 9, 10, 11, 12, 13

**Court Rules**

FED. R. CIV. P. 12(b)(6).................................................................1, 5

**Other Authority**

Congressional Research Service, May 18, 2023,
    *Federal Preemption: a Legal Primer* (CRS Report No. R45825)
    https://www.congress.gov/crs-product/R45825.................................................................12

## I.    INTRODUCTION

Defendant Premier Fencing Club & Sports Corp. ("Premier" or "Defendant") moves to dismiss the claims of Plaintiff Dinah Yukich ("Yukich" or "Plaintiff") of violations of the New York State Human Rights Law, N.Y. EXEC. LAW §§ 290, *et seq.* (the "NYSHRL") (public accommodation) and New Jersey common law. As more fully set forth herein, Plaintiff's claims are barred, *inter alia*,  by the arbitration provision to which Plaintiff agreed and the Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. §§ 220501, *et seq.* (the "Ted Stevens Act" or the "Act"). Plaintiff agreed to arbitrate her claims regarding participation in fencing events and arbitrate those claims in Colorado and pursuant to Colorado law.

This matter relates to Plaintiff Yukich, a transgender woman, not being categorized as a woman for purposes of an amateur fencing competition. Yukich was not permitted to compete against women in a competition but would have been permitted to compete against men.

Premier moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for the following reasons:

- Plaintiff agreed to arbitrate the claims in her Complaint; therefore, the entire Complaint must be dismissed in favor of arbitration or this matter stayed pending arbitration;

- Plaintiff's claims are preempted by the Ted Stevens Act.

- Count Seven for failure to allege sufficiently conduct that satisfies the demanding pleading requirements of a claim of intentional infliction of emotional distress ("IIED"); and

- Count Eight, a claim for civil conspiracy, because this cause of action requires an underlying wrong; and because Plaintiff's IIED claim must be dismissed, Plaintiff's claim of civil conspiracy cannot survive.

## II.    PROCEDURAL HISTORY

Plaintiff filed her Complaint in the Superior Court of New Jersey, Law Division, Middlesex County, on October 10, 2025, alleging violation of the NYSHRL and New Jersey common law.

1

On November 26, 2025, Defendants Mac Brown ("Brown") and United States Olympic and Paralympic Committee ("USOPC") filed a Notice of Removal to this court pursuant to 28 U.S.C. § 1441(a) and 36 U.S.C. § 220505(b)(9) (the latter being a section of the Ted Stevens Act).

On December 23, 2025, Aziz, USAF, and Daugherty filed a Motion to Dismiss Plaintiff's Complaint. This motion was fully briefed as of January 20, 2026, and it awaits decision by the Court. On January 19, 2026, defendants USOPC and Brown filed a separate motion to dismiss. This motion should be fully briefed on or about March 12, 2026.

This application by defendant Premier follows.

### III.    FACTUAL BACKGROUND[1]

Plaintiff is a transgender woman who came out as such in the winter of 2005-2006; Plaintiff began her physical transition to womanhood in 2021. *See* Lin Cert. at Exhibit A at ¶ 4.

In July of 2023, Plaintiff re-activated her membership with USAF. *Id*. at ¶ 5. At Plaintiff's request, USAF changed Plaintiff's gender marker from "M" (for male) to "F" (for female). Plaintiff was also marked as eligible to compete against women in fencing events, as well as in mixed events. *Id*. at ¶¶ 5-6.

In the summer of 2024, Plaintiff underwent facial feminization surgery. *Id*. at ¶ 42. "Towards the end of 2024, [Plaintiff] presented for vaginoplasty." *Id*. It is unclear from the Complaint whether Plaintiff underwent the vaginoplasty procedure.

---

[1] For purposes of this motion only, Premier accepts the allegations in Plaintiff's Complaint as true. A true and correct copy of Plaintiff's Complaint is attached to the Certification of Aimée S. Lin, Esq. in Support of Motion to Dismiss by Defendant Premier Fencing Club & Sports Corp. ("Lin Cert."), submitted herewith, as Exhibit A.

On April 9, 2025, "after letting her USAF membership lapse briefly," Plaintiff reactivated her USAF membership and informed USAF that her name was legally changed to "Dinah." *Id*. at ¶ 42.

On July 22, 2025, USAF notified its members that "USAF was being forced by the USOPC to implement a transgender policy that excludes transgender women from competing in women's events." *Id*. at ¶ 44.

On or about August 1, 2025, USAF changed Plaintiff's gender marker back to "M" from "F," denying Plaintiff the ability to register for women's competitions. *Id*. at ¶ 11. In other words, if Plaintiff were to compete, she would have to compete against men. This change was due to a policy requirement of defendant USOPC. *Id*. at ¶ 12.

On August 3, 2025, Plaintiff contacted USAF and informed it that it "incorrectly modified her gender and requested that [USAF] change it back to 'F.'" *Id*. at ¶ 52.

In August 2025, Plaintiff attempted to register for the Premier Challenge Regional Open Circuit ("Premier Challenge ROC"), a fencing tournament, scheduled for September 25-28, 2025, in Suffern, New York. *Id*. at ¶ 13. Plaintiff alleges the Premier Challenge ROC was organized and hosted by Premier. *Id*. at ¶¶ 13, 55.

Plaintiff alleges that the Premier Challenge ROC was open to the public, but in order to register for events, an individual must create an account with USAF and become a member. *Id*. at ¶ 56. Once an individual becomes a member, they needed to register for the Premier Challenge ROC through the USAF website. *Id*.

Plaintiff became a member of USAF and in so doing signed a waiver which contained an arbitration clause. Pursuant to the arbitration clause, Plaintiff agreed that all claims arising out of or relating to her "membership or participation … in USA Fencing, including but not limited to

any matter arising from or relating to … competition in any fencing event, whether staged under the auspices of USA Fencing … or some fencing administrative body … compliance with or violations of any rules, regulations, policy, practice, bylaw, statute or common law, of USA Fencing … including any issue concerning compliance by USA Fencing or by … any club member, individual member … shall be settled by arbitration." Furthermore, any such arbitration must take place in Colorado Springs, Colorado, and apply Colorado law.

Plaintiff was not permitted to register as a woman for the Premier Challenge ROC; rather, Plaintiff was allowed to register as a man and compete against men. *Id*.

On August 15, 2025, Plaintiff alleges that she contacted defendant Daugherty at USAF for assistance with registering for the tournament. *Id*. at ¶¶ 58-59. Daugherty allegedly explained to Plaintiff that USAF had to update its transgender policy due to the USOPC's update to their Athlete Safety Policy. *Id*. at ¶ 59.

Plaintiff alleges that "In order to compete in a USAF sanctioned event, [Plaintiff] had to become a member of USAF. *Id*. at ¶ 41. Plaintiff alleges that Daughterty told Plaintiff that the Premier Challenge ROC was required to implement the policy that prevented Plaintiff from being able to register for women's events because it was a USAF-sanctioned event. *Id*. at ¶ 15.

Daughtery allegedly further informed Plaintiff that "all sanctioned [USAF] tournaments, local, regional, and nationals are required to abide by [USAF] policies. It is a condition of being a sanctioned event." *Id*. at ¶ 62.

On August 22, 2025, Plaintiff allegedly contacted defendant Aziz regarding her inability to register for the women's events. Aziz allegedly suggested that Plaintiff contact defendant Daugherty at USAF for assistance. Aziz allegedly explained to Plaintiff that "the system blocked [Aziz'] ability to register [Plaintiff] for the women's event." *Id*. at ¶ 61. Aziz also allegedly

informed Plaintiff that Premier, as the organizing club of Premier Challenge ROC, was required to comply with USAF policies. *Id*. at ¶ 64.

Plaintiff alleges that Premier's denial of permission for Plaintiff to compete against women is a violation of the NYSHRL, which prohibits discrimination in public accommodation, among other things.

Plaintiff further alleges that Premier committed IIED against Plaintiff in a civil conspiracy with the other defendants in not allowing Plaintiff to compete against women.

## IV.     LEGAL ARGUMENT

### A.     Standard on a Motion to Dismiss Pursuant to Federal Rule Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the "speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted); *see also* FED. R. CIV. P. 8(a)(2). While a court must accept as true all allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997) (citations omitted). The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. *Phillips*, 515 F.3d at 234. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 663, 678 (2009).

**B.    Plaintiff's Claims Must Be Dismissed
in Favor of Arbitration or the Action Stayed
Pending Arbitration**

As set forth above, Plaintiff executed a waiver when she became a member of USAF. That waiver contained an arbitration clause which is at the heart of this motion. That clause is governed by the Federal Arbitration Act.

The central purpose of the Federal Arbitration Act, 9 U.S. §§ 1-16, *et seq.* (the "FAA") is to "place agreements to arbitrate upon the same footing as other contracts," ensuring that written arbitration provisions are "valid, irrevocable, and enforceable" in both federal and state courts. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (citation and quotation marks omitted). The FAA applies broadly to any contract "involving commerce," a term interpreted by the Supreme Court to reach the full extent of Congress' Commerce Clause power. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003); U.S. Const. art. 1, § 8, cl. 3.

Here, the arbitration agreement involved is between Plaintiff, a Maryland resident, and USAF, in Colorado. Plaintiff, as a member of USAF, wished to compete in a tournament held in New York. Attending the tournament alone requires interstate travel, thereby "involving" interstate commerce. Therefore, the arbitration agreement herein is governed by Section 4 of the FAA states, in part:  party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court … for an order directing that such arbitration proceed in the manner provided for in such agreement. 9 U.S.C. § 4.

Further, section 3 of the FAA is entitled, "Stay of proceedings where issue referable to arbitration." *Id.* It provides that, when any issue in a suit is subject to arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration has concluded." *Smith v. Spizzirri*, 601 U.S. 472, 473-74 (2024) (quoting 9 U.S.C. § 3) (internal quotation marks

omitted). "Here, as in other contexts, the use of the word 'shall' creates an obligation impervious to judicial discretion." *Id*. (citation and internal quotation marks omitted).

Before a court decides whether arbitration should be compelled, however, the meaning of the Arbitration Provision must be interpreted. *Vaughn v. JP Morgan Chase & Co.*, No. 24-1016, 2025 U.S. App. LEXIS 31931, *12 (10th Cir. Dec. 8, 2025).[2] Because the Arbitration Provision designates Colorado law, we apply Colorado law. "Under Colorado law, [the court should] look to the plain and ordinary meaning of the terms of the agreement and construe it to effectuate the parties' intent and the purposes of the agreement." *Id*. (citing *Radil v. Nati'l Union Fire Ins. Co. of Pittsburgh, PA*, 233 P.3d 688, 692 (Colo. 2010)). "[A]ny doubts concerning the scope of arbitrable issues [must be resolved] … in favor of arbitration." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014) (citations and quotation marks omitted).

When Plaintiff joined defendant USAF as a member, Plaintiff signed the 2025 Individual Membership waiver, which contains an arbitration provision (the "Arbitration Provision"). A true and correct copy of the Waiver is attached to the Lin Cert. as Exhibit B. *See* Exhibit B. The Arbitration Provision reads, in part:

> [A]ny controversy or claim arising from or relating to my membership or participation, … in USA Fencing, including but not limited to any matter arising from or relating to … competition in, any fencing event, whether staged under the auspices of USA Fencing, … the USOPC, the IOC or some other fencing administrative body… (iii) compliance with or violation of any rules, regulations, policy, practice, bylaw, statute or common law, of USA Fencing, … USOPC or IOC, or of any national, state, provincial or local governing or administrative body, including any issue concerning compliance by USA Fencing or by … club member, individual member … of USA Fencing … shall to the fullest extent permitted by law be settled by arbitration, provided, however, that prior to the commencement of any such arbitration,

---

[2] A true and correct copy of this unpublished decision is attached to the Lin Cert., submitted herewith, at Exhibit C.

> any and all available administrative procedures and remedies of USA Fencing, … USOPC, … IOC or applicable sports, governmental or administrative body shall be exhausted.

*Id*. at 2.

Plaintiff signed the Waiver, and, from the above, it is clear Plaintiff agreed to arbitrate her claims herein. *Id*. Further, the Waiver designates Colorado law and that the arbitration will be conducted in Colorado Springs, Colorado. *Id*. at 3. There is no dispute that the parties entered into a valid arbitration agreement. Plaintiff has repeatedly renewed her membership by her own admission and executed the Waiver with the Arbitration Provision. The Arbitration Provision is prefaced by the word "ARBITRATION" in all caps. *Id*. at 2. It is therefore "reasonably conspicuous," and "plaintiff's assent was unambiguous," as evidenced by her electronic signature. *Vernon v. Qwest Communs. Int'l, Inc.*, 925 F. Supp. 2d 1185, 1191 (D. Colo. 2013).

With respect to whether the dispute between those parties falls within the language of the arbitration agreement, it is clear it does. *Digital Landscape Inc. v. Media Kings LLC*, 440 P.3d 1200, 1205 (Colo. App. 2018), <u>cert. denied</u>, 2019 Colo. LEXIS 398 (May 20, 2019) (stating that under Colorado law, a Colorado court must compel arbitration if the scope of the arbitration agreement between the parties encompasses the plaintiff's claims); and *Galbraith v. Clark*, 122 P.3d 1061, 1064-65 (Colo. App. 2005) (same, but with respect to federal law, under the FAA).

Plaintiff's allegations make it clear that the Arbitration Provision in the Waiver applies to this action. For example, in paragraph 55 of the Complaint, Plaintiff alleges that the event in question is a USAF-sanctioned event. The Plaintiff then goes on to allege that in order to compete in the Premier Challenge ROC event, one had to the UASF website, become a member of USAF and register for the event through the USAF website. *See* Lin Cert. at Exhibit A at ¶ 41.

Plaintiff then alleges that Premier advised her that it had to abide by USAF rules. *Id*. at ¶ 62. Moreover, Plaintiff claims that it was represented to her that she was blocked from entering

the event and had to discuss the issue with USAF. *Id.* at ¶ 15. When she did, Plaintiff was advised by USAF that Premier was required to implement the trans ban because "it was a USAF-sanctioned event." *Id.*

Thus, based upon Plaintiff's own allegations, the Arbitration Provision in the Waiver applies to the within matter.

This matter was filed by Plaintiff in New Jersey Superior Court, alleging violations of New York law, ignoring the Arbitration Provision which mandates that these claims be submitted to arbitration in Colorado, and ignoring the choice of law clause designating Colorado law as applying to these claims. However, this is a valid arbitration clause between the parties and Plaintiff's allegations fall within the clause. Accordingly, the Arbitration Provision should respectfully be enforced and the matter dismissed or stayed pending arbitration in Colorado and under Colorado law.

### C.    All of Plaintiff's Claims against Premier are Preempted by the Act

1.    Congress Established a Comprehensive, Uniform Federal Regime for Amateur Sport Eligibility and Dispute Resolution that Preempts Conflicting State Law Causes of Action

Plaintiff's claims are also preempted by Ted Stevens Act. The Constitution's Supremacy Clause provides that "the Laws of the United States … shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. This language is the foundation for the doctrine of federal preemption, under which federal law supersedes conflicting state laws. *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 477 (2018).

The Ted Stevens Act federally charters the USOPC and empowers it to certify NGBs and assigns to the USOPC/NGBs the centralized authority to regulate athlete participation and eligibility in sanctioned amateur competitions. 36 U.S.C. §§ 220501-220505, 220521-220525.

Among the express eligibility conditions for every NGB is an agreement to submit "any controversy involving … the opportunity of any amateur athlete, coach, trainer, manager, administrator or official to participate in amateur athletic competition" to binding arbitration administered under USOPC approved rules. 36 U.S.C. § 220522(4)(B) (requiring arbitration "upon demand" of the USOPC or the aggrieved participant). The statute's text – together with USOPC bylaws and movement arbitration rules – reflects Congress's purpose to ensure a uniform, national, and arbitral forum for participation disputes, not a patchwork of state law standards and remedies.

Under black letter preemption principles, when Congress erects a pervasive federal scheme in a domain requiring national uniformity and channels disputes into a specific remedial process, state law causes of action that would adjudicate those controversies are preempted by field preemption. *Murphy*, 584 U.S. at 479. Where, as here, state law (the NYSHRL and New Jersey common law) interferes with Congress' intent, that state law is preempted. A court's "inquiry into the scope of a federal statute's preemptive effect is guided by the rule that the purposes of Congress is the ultimate touchstone in every preemption case." *Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150, 163 (citation, quotation marks and brackets omitted).

Here, Congress's uniform, arbitration-centric framework created by the Ted Stevens Act leaves no room for state law claims that would supplant or second guess arbitration of decisions relating to an athlete's ability to compete. Premier, as a host of a USAF-sanctioned event (defendant USAF is an NGB) and USAF having to follow the USOPC's Athlete Safety Policy, required Premier to follow USOPC's Athlete Safety Policy as well. *See* Lin Cert. at Exhibit A at ¶¶ 53, 56. Thus, Premier and Plaintiff were compelled to follow the procedure created by the Ted Stevens Act. This means that Plaintiff is required to bring her grievances pursuant to the procedure set forth in the Act, *i.e.*, in arbitration.

2.     Courts Applying the Act Repeatedly Hold that State Law Claims Attacking Eligibility/Participation Decisions are Preempted (or Must Be Resolved in the Act's Arbitral Forum)

The Seventh Circuit's decision in *Slaney v. Int'l Amateur Ath. Fed'n*, 244 F.3d 580 (7th Cir. 2001), is instructive. There, an athlete asserted state law claims (contract and tort) to challenge eligibility determinations arising from anti-doping rules. The Circuit Court affirmed dismissal, holding that the Ted Stevens Act's allocation of authority over eligibility disputes and its dispute resolution scheme foreclosed state law litigation of those issues. In short, the Act grants "the USOC exclusive jurisdiction under the [Ted Stevens] Act, to determine all matters pertaining to eligibility of athletes," and state law claims "challeng[ing] … the method by which … eligibility of athletes" is determined cannot proceed outside the Act's mechanisms. 244 F.3d at 596. The *Slaney* holding maps directly onto Plaintiff's theory here, which seeks to use the NYSHRL to re-characterize and litigate a participation/eligibility decision governed by the Ted Stevens Act.

More recently, federal courts addressing disputes within the USOPC/NGB framework continue to require parties to proceed through Sports Act arbitration and to reject efforts to recast participation controversies as free-standing state law claims.

For example, in *Dames v. United States Ctr. for SafeSport*, No. 25-3503, 2026 U.S. Dist. LEXIS 657 (N.D. Ill. Jan. 5, 2026),[3] a U.S. Soccer Federation ("USSF" – an NGB) coach filed a complaint in state court to combat various complaints made against him by players. *Id*. at *6-8. The coach alleged claims of violation of his "fundamental rights," and two claims of tortious interference. The court found that Dames' complaint, like the Plaintiff's here, "does no more to plead around the preemption problem than his original complaint, and so the claims should be dismissed because they really are just challenges to the [United States Center for SafeSports]

---

[3] A true and correct copy of this unpublished decision is attached to the Lin Cert., submitted herewith, as <u>Exhibit D</u>.

*eligibility determination*." *Id*. at *10 (emphasis added). Here, Plaintiff tries to plead around the Ted Stevens Act by couching her eligibility to compete as she wishes as a violation of the NYSHRL.

        3.     Allowing the NYSHRL to Govern Athlete Categorization and Eligibility <u>Would Pose a Direct Obstacle to the Act's Purposes</u>

Plaintiff's NYSHRL theory seeks damages and injunctive relief predicated on how a USOPC recognized NGB (and those organizing a sanctioned competition – like Premier) categorized an athlete for entry into women's events. But athlete categorization for sanctioned events is a core eligibility/participation determination Congress placed inside the USOPC/NGB system, subject to uniform rules and arbitration – not 50 different state civil rights regimes with divergent standards, remedies, juries, and discovery. Imposing NYSHRL liability on participation decisions would (1) conflict with § 220522(4)(B)'s mandate that these controversies be resolved in binding arbitration; (2) undermine national uniformity by substituting state by state liability rules for the Act's centralized process; and (3) deter NGBs and sanctioned organizers (such as Premier) from enforcing nationally applicable eligibility policies for fear of inconsistent state law exposure. That is classic obstacle preemption. *See* Congressional Research Service, May 18, 2023, *Federal Preemption: a Legal Primer* (CRS Report No. R45825) https://www.congress.gov/crs-product/R45825 ("in its obstacle preemption cases, the Supreme Court has held that state law can interfere with federal goals by frustrating Congress' intent to adopt a uniform system of federal regulation;" in such a situation, state law is preempted.).

The USOPC's current governance materials reinforce the same point. They implement Congress's arbitration mandate and designate the arbitral body/rules that govern eligibility/participation disputes brought by amateur athletes within the Olympic & Paralympic Movement. Recognizing state law claims to re adjudicate those same disputes would directly contravene the Act's channeling of remedies.

4.    The Preemption Analysis Here is Distinct from – and Stronger Than – Routine FAA Preemption

Even apart from the FAA's broad preemption of state law rules that disfavor arbitration, *see, e.g.*, *Kindred Nursing Ctrs. Ltd. v. Clark*, 581 U.S. 246 (2017), the Ted Stevens Act itself embeds arbitration as a substantive prerequisite for NGB certification and qualifying amateur sports' governance structure. That is, Congress did not merely permit arbitration; it required it for participation with respect to controversies as part of a comprehensive federal scheme. NYSHRL claims that would bypass that scheme are therefore doubly preempted – by the FAA and, more fundamentally, by the Act's specific allocation of authority and remedies.

Plaintiff's claims seek to impose state law liability for an alleged denial of the right to compete against women at a USOPC/USAF-sanctioned event – a textbook opportunity to participate controversy. Under § 220522(4)(B), that dispute must be resolved in the Act's arbitral forum. Allowing the NYSHRL to supply a separate cause of action and damages remedy for the same alleged wrong would frustrate Congress's objectives, threaten uniformity, and create an impermissible end run around the arbitral process. The Court should therefore (i) hold that the Ted Stevens Act preempts Plaintiff's NYSHRL claims, and (ii) dismiss those claims with prejudice or, at minimum, compel arbitration and stay this action pending completion of Ted Stevens Act arbitration.

**D.    Plaintiff Does Not Allege Conduct Sufficiently Extreme or Outrageous; Therefore, Her Claim for IIED Must Be Dismissed**

Plaintiff alleges a claim of intentional infliction of emotional distress ("IIED") claim under New Jersey law. Plaintiff maintains that not being able to compete as a woman, but rather as a man, intentionally caused her emotional distress. These allegations are insufficient to support a claim for IIED.

There are four elements to the claim of intentional infliction of emotional distress in New Jersey. For starters, the defendant must have acted intentionally or recklessly. For an intentional act to result in liability, the Defendant must intend both to do the act and to produce emotional distress. For a reckless act to result in liability, a defendant must act in deliberate disregard of a high degree of probability that emotional distress will follow. *Turner v. Wong*, 363 N.J. Super. 186, 199 (App. Div. 2003).

Second, the Defendant's conduct must be extreme and outrageous. The conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Taylor v. Metzger*, 152 N.J. 490, 509 (1998) (citations and quotation marks omitted).

Third, the defendant's actions must have been the proximate cause of Plaintiff's emotional distress. *Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355, 365-368 (1988).

Fourth, the emotional distress suffered by plaintiff must be so severe that no reasonable person could be expected to endure such distress. *Clark v. Nenna*, 465 N.J. Super. 505, 511-12 (App. Div. 2020).

In the case at bar, Plaintiff has failed to allege that Premier engaged in conduct "extreme and outrageous as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Ingraham v. Ortho-McNeil Pharmaceutical*, 422 N.J. Super. 12, 21 (App. Div. 2011). This "element [is] an elevated threshold that is satisfied only in extreme cases." *Ingraham*, 422 N.J. Super. 21 (citation and internal quotation marks omitted). Plaintiff alleged that Premier followed a policy set by a governing body which was set by a Presidential Executive Order. This hardly speaks of intentional conduct to cause harm to Plaintiff.

14

New Jersey plaintiffs with far more egregious allegations as compared to Yukich's have failed to withstand dismissal of their IIED claims. For example, in *Ingraham*, the plaintiff was told by a human resources manager not to speak of her deceased teenaged and only child in the workplace because it made her coworkers uncomfortable. *Id.* at 17. The Appellate Division in *Ingraham* did a survey of cases where New Jersey State courts "declined to find sufficiently extreme and outrageous conduct where: (1) the decedent's children from an earlier marriage were not informed about and thus excluded from a viewing at the funeral home after the decedent was murdered, *Cole v. Laughrey Funeral Home*, 376 N.J. Super. 135, 147-48 … (App. Div. 2005); (2) a supervisor expressed doubt that the plaintiff had been diagnosed with breast cancer, and then came near her "on the verge of physically bumping into [the plaintiff's] breast area as if to see" if she truly had a mastectomy, *Harris v. Middlesex County College*, 353 N.J. Super. 31, 36 46-47 … (App. Div. 2002); … and (4) the defendant in a divorce case had a long-term adulterous affair with her boss, *Ruprecht v. Ruprecht*, 252 N.J. Super. 230, 236-38 … (Ch. Div. 1991)." *Id.* at 22.

Even taking Plaintiff's allegations as true and in the aggregate, Plaintiff alleges that Defendants acted, at most, in a manner that was "unjust, unfair and unkind." This has specifically been found not to be sufficient to plead a claim for IIED. *Jevremovic v. Courville*, No. 22-4969, 2025 U.S. Dist. LEXIS 131994, *18 (D.N.J. July 11, 2025), appeal filed, Aug. 13, 2025[4] (quoting *Fregara v. Jet Aviation Bus. Jets*, 764 F. Supp. 940, 956 (D.N.J. 1991)) (quotation marks omitted).

Plaintiff's allegations in her Complaint simply do not rise to the level required to state a claim of intentional infliction of emotional distress. For this reason, Plaintiff's claim of IIED does not have "facial plausibility" and must be dismissed with prejudice as to Premier.

---

[4] A true and correct copy of this unpublished decision is attached to the Lin Cert., submitted herewith, as Exhibit E.

E.    **A Civil Conspiracy Claim Cannot Survive
a Motion to Dismiss without an Underlying Wrong**

The elements of civil conspiracy under New Jersey law are: "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177 (2005) (citations and quotation marks omitted). "Most importantly, the gist of the claim is not the unlawful agreement, but the underlying wrong which, absent the conspiracy, would give a right of action." *Id*. at 177-78 (citations and quotation marks omitted). There is no right of action with respect to the alleged underlying wrongs and Plaintiff's civil conspiracy claim must be dismissed as to Premier.

V.    **CONCLUSION**

For the foregoing reasons, Plaintiff's Complaint should be dismissed as to Premier in its entirety and with prejudice. In the alternative, this matter should be stayed as to Premier pending arbitration.

Respectfully submitted,

 */s/ Aimée S. Lin*
Aimée S. Lin, Esq.

Dated: March 10, 2026