# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DINAH YUKICH,<br><br>　　　　Plaintiff,<br><br>v.<br><br>PREMIER FENCING CLUB, ABDEL AZIZ, USA FENCING, SHANNON DOUGHERTY, MAC BROWN, and UNITED STATES OLYMPIC AND PARALYMPIC COMMITTEE,<br><br>　　　　Defendants. | Civil Action No. 25-18011-KSH-AME<br><br>Oral Argument Requested<br><br>(Document Electronically Filed) |

## REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS UNITED STATES OLYMPIC AND PARALYMPIC COMMITTEE'S AND MAC BROWN'S MOTION TO DISMISS

> Barry T. Albin
> Christopher Porrino
> Jarrett R. Schindler
> **LOWENSTEIN SANDLER LLP**
> One Lowenstein Drive
> Roseland, New Jersey 07068
> (973) 597-2500
> *Attorneys for United States Olympic and Paralympic Committee and Mac Brown*

# TABLE OF CONTENTS

                                                                                   **Page**

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 4

    I.    Plaintiff's personal jurisdiction argument rests on unpled allegations and theories rejected by settled law. ........................................................ 4

        A.    Neither the USOPC nor Brown are at home in New Jersey. ................. 4

        B.    Plaintiff attempts to manufacture specific jurisdiction. ........................ 7

    II.    Plaintiff's state law claims are preempted. ................................................. 11

    III.    Plaintiff fails to state any viable claims. .................................................... 14

CONCLUSION ............................................................................................................... 15

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Buckley v. Trenton Saving Fund Soc'y*,
   111 N.J. 355 (1988) ..................................................................................15

*Carmouche v. Tamborlee Mgmt.*,
   789 F.3d 1201 (11th Cir. 2015) ...................................................................5

*Chavez v. Dole Food Co.*,
   836 F.3d 205 (3d Cir. 2016) ....................................................................4, 5

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ............................................................................4, 5, 7

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
   592 U.S. 351 (2021) ................................................................................9, 10

*Gentry v. Sikorsky Aircraft Corp.*,
   383 F. Supp. 3d 442 (E.D. Pa. 2019) ..........................................................6

*Hasson v. FullStory, Inc.*,
   114 F.4th 181 (3d Cir. 2024) ......................................................................9

*Hertz Corp. v. Friend*,
   559 U.S. 77 (2010) ...................................................................................5, 6

*J. McIntyre Mach., Ltd. v. Nicastro*,
   564 U.S. 873 (2011) ....................................................................................9

*Johnson v. SmithKline Beecham Corp.*,
   724 F.3d 337 (3d Cir. 2013) .......................................................................5

*Jovanovic v. U.S. Olympic & Paralympic Comm.*,
   No. 22-2098, 2025 WL 1218155 (D.N.J. Apr. 28, 2025) ....................10, 11

*Malik v. Cabot Oil & Gas Corp.*,
   710 F. App'x 561 (3d Cir. 2017) ................................................................5

*Metcalfe v. Renaissance Marine, Inc.*,
   566 F.3d 324 (3d Cir. 2009) .......................................................................7

*Nat'l Org. for Women, Essex Cnty. Chapter v. Little League Baseball, Inc.*,
   127 N.J. Super. 522 (App. Div.), *aff'd*, 67 N.J. 320 (1974) .......................... 12, 13

*Reich v. Lopez*,
   858 F.3d 55 (2d Cir. 2017) ........................................................................... 5

*Senju Pharm. Co. v. Metrics, Inc.*,
   96 F. Supp. 3d 428 (D.N.J. 2015) ................................................................ 5

*Time Share Vacation Club v. Atl. Resorts Ltd.*,
   735 F.2d 61 (3d Cir. 1984) .......................................................................... 7

*Unbeatablesale.com, Inc. v. Fascinations, Inc.*,
   No. 25-13533, 2026 WL 322512 (D.N.J. Feb. 5, 2026) ................................ 8

*Yocham v. Novartis Pharms. Corp.*,
   736 F. Supp. 2d 875 (D.N.J. 2010) ............................................................. 14

**Statutes**

36 U.S.C. § 220505 ........................................................................................... 12

36 U.S.C. § 220503 ........................................................................................... 11

36 U.S.C. § 220511 ........................................................................................... 11

36 U.S.C. § 220522 ........................................................................................... 6

36 U.S.C. § 220524 ........................................................................................... 11

36 U.S.C. § 220551 ........................................................................................... 6

**Other Authorities**

Exec. Order No. 14201, 90 Fed. Reg. 9279 (Feb. 5, 2025) ............................... 13

iii

## **INTRODUCTION**

Plaintiff asks this Court to credit factual assertions in her opposition brief that do not appear anywhere in her Complaint for the apparent purpose of manufacturing jurisdiction in New Jersey. Absent from the Complaint are any allegations that would warrant a New Jersey court exercising jurisdiction over the United States Olympic and Paralympic Committee (USOPC) and Mac Brown (Brown).

The Complaint alleges that Plaintiff, a Maryland resident, was not permitted to register for a women's fencing event in New York, in violation of New York law, as the result of a national athlete safety policy promulgated by the USOPC. The USOPC is headquartered in Colorado, and Brown, a USOPC psychologist, is a resident of that state. USA Fencing (USAF), which sanctioned the New York event, is headquartered in Colorado too. The only connection to New Jersey is Premier Fencing Club (Premier) located in Metuchen, which organized and hosted the New York event. The Complaint, however, does not allege that the USOPC or Brown had any contact with Premier or involvement in organizing the New York event, or that they engaged in any activity even remotely directed at New Jersey.

To compensate for the paucity of allegations against the USOPC and Brown in her Complaint, Plaintiff parades in her brief unverified statements and fictional scenarios and repeats a transparent falsehood. In her Complaint, Plaintiff erroneously referred to Damien Lehfeldt as USOPC's chairman and attributed

1

culpability to him and USOPC's board. In its initial brief, the USOPC made clear that Lehfeldt was the chairman of USAF, not USOPC's chairman. That information is easily verifiable. Despite having information to ascertain the truth, Plaintiff repeats the falsehood that Lehfeldt is USOPC's chairman.

Plaintiff refuses to separate fact from fiction. For example, in her Complaint, Plaintiff, a Maryland resident, never alleges setting foot in this state. Plaintiff now claims that "[s]he was never allowed to even get out of the State of New Jersey and get to New York to compete."

In her Complaint, Plaintiff alleges that she suffered harm because she could not register for the New York fencing event in violation of the New York State Human Rights Law (NYSHRL) and New York's common law. Plaintiff now claims that "the tortious conduct was explicitly aimed at New Jersey."

In her Complaint, Plaintiff does not allege that the USOPC or Brown had contact with Premier, that any USOPC employee was present in New Jersey, or that the fencing event—the Premier Challenge—occurred in this state. Plaintiff now claims that "[t]he USOPC Defendants committed the misconduct within the state of New Jersey." Plaintiff has failed to show that the USOPC and Brown had any contacts in New Jersey that would subject them to this Court's specific jurisdiction.

Attempting to backfill the bare allegations in her Complaint to establish general jurisdiction, Plaintiff now contends for the first time—with zero factual or

legal support—that the independent and autonomous corporate entities that the USOPC certifies as national governing bodies (NGBs) are the "nerve centers" of the USOPC. From that imaginary premise, Plaintiff then argues that the presence in New Jersey of USA Golf (USGA) and USA Rowing—NGBs that are neither mentioned in the Complaint nor alleged to have engaged in wrongful conduct—makes the USOPC at "home" in New Jersey. That newly invented argument lacks any legal basis and would render the USOPC, headquartered in Colorado, subject to the general jurisdiction of random states throughout the country.

The Complaint must be dismissed for other reasons as well. Through the Olympic and Amateur Sports Act (Sports Act), Congress conferred on the USOPC the authority to set fair and safe athlete eligibility criteria for women's participation in certain women's sports competitions. Under the Sports Act, USOPC's athlete eligibility requirements preempt conflicting state laws. Although the Sports Act carves out an exception to the general rule of preemption for "a duty of care" under state law, the Act has no similar carveout for athlete eligibility standards. Those standards cannot be subject to the conflicting laws of fifty states.

Last, the Complaint does not set forth viable state law claims. Notably, in her Complaint, Plaintiff alleges intentional infliction of emotional distress (IIED), only referencing New York law, but then in her brief analyzes that claim under New Jersey law. But her allegations fail under New Jersey law too.

# ARGUMENT

## I. Plaintiff's personal jurisdiction argument rests on unpled allegations and theories rejected by settled law.

Plaintiff has failed to plead in her Complaint any contacts sufficient to subject the USOPC or Brown to personal jurisdiction in New Jersey. (Defs.' Br. in Supp. of Mot. to Dismiss (Defs.' Br.) 11–22, ECF No. 16-1.) Unpled and unverified allegations in an opposition brief cannot salvage a deficient Complaint. Nor can newly spun legal theories that conflict with settled law. In the absence of any credible showing that the USOPC or Brown are subject to personal jurisdiction in New Jersey, the Court should dismiss all claims against them.

### A. Neither the USOPC nor Brown are at home in New Jersey.

Plaintiff does not contend that Brown, a Colorado domiciliary, is subject to general jurisdiction in New Jersey. She does not contest that the USOPC is headquartered in Colorado and incorporated in the District of Columbia. (Defs.' Br. 12 (citing Declaration of Evangeline Rivera (Rivera Decl.), dated Jan. 18, 2026, ¶ 2, ECF No. 16-3; Compl. ¶ 31).) Those are the principal bases for general jurisdiction over a corporation. *Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016). The Supreme Court has left open only a "possibility that in an exceptional case, a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 139

4

n.19 (2014) (citation modified).  Plaintiff has not even remotely met that "incredibly difficult" burden.  *Chavez*, 836 F.3d at 223 (citation modified).

Indeed, Plaintiff has not identified any post-*Daimler* corporation that has been subject to general jurisdiction beyond its place of incorporation or principal place of business.  Since *Daimler*, courts have uniformly rejected attempts to broaden the traditional notion of general jurisdiction.  *See, e.g., Senju Pharm. Co. v. Metrics, Inc.*, 96 F. Supp. 3d 428, 442 (D.N.J. 2015); *Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 564 (3d Cir. 2017); *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017); *Carmouche v. Tamborlee Mgmt.*, 789 F.3d 1201, 1204 (11th Cir. 2015).

Against that backdrop, Plaintiff implausibly contends that the "USOPC has thirteen different headquarters (nerve centers) because of the locations of its NGBs in those states, two of which are in New Jersey." (Pl.'s Opp'n 7, ECF No. 21 (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010).)  This unpled and unverified claim that the USOPC is "at home" in New Jersey because two NGBs unrelated to this case are headquartered there has no support in law.

"A corporation's 'nerve center,' usually its main headquarters, is ***a single place*** . . . within a State."  *Hertz*, 559 U.S. at 93 (emphasis added); *see Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 347 (3d Cir. 2013) (nerve center is the "single place that is the corporation's 'brain'").  That nerve center is where a corporation's "high level officers direct, control, and coordinate the corporation's

5

activities." *Hertz*, 559 U.S. at 80; *see Gentry v. Sikorsky Aircraft Corp.*, 383 F. Supp. 3d 442, 451 (E.D. Pa. 2019) ("A corporation has one nerve center for *all cases*.").

Plaintiff pays lip service to this line of cases in her brief, (Pl.'s Opp'n 7–8), and then argues that the USOPC has thirteen nerve centers, wherever an NGB may be located. And because two NGBs unrelated to this case are in New Jersey, Plaintiff claims that this state is USOPC's "home." (*Id.* at 8.) Plaintiff did not allege this basis for jurisdiction in her Complaint. She has offered no sworn affidavits or other competent jurisdictional evidence suggesting that the USOPC has high-level officers in or makes high-level decisions from New Jersey. Plaintiff admits in her brief that the USOPC promulgated policies from "its **Colorado home**." (*Id.* at 14 (emphasis added); *id.* at 13.) That confirms the record evidence that USOPC's nerve center is its headquarters in Colorado. (Rivera Decl. ¶ 2; Compl. ¶ 31.)

Moreover, as the Sports Act makes clear, NGBs are distinct legal entities that operate independently, with their own boards and corporate governance structures. NGBs are not captive corporate subsidiaries created by the USOPC. To be eligible for certification as an NGB, an amateur sports organization must be a preexisting "not-for-profit corporation" that is "autonomous in the governance of its sport" and "independently decides and controls all matters central to governance." 36 U.S.C. § 220522(1), (5). And Congress can terminate recognition of an NGB without input from the USOPC. *Id.* § 220551(2)(B). That the NGBs must follow USOPC's athlete

6

fairness and safety requirements to maintain their certification does not transform the NGBs into alter egos of the USOPC or render the USOPC "at home" wherever an NGB is located.

Plaintiff did not allege in her Complaint or append to her brief any competent evidence to support her new jurisdictional theory that NGBs are the alter egos of the USOPC. In response to the Rule 12(b)(2) motion, Plaintiff is required to "prove by affidavits or other competent evidence that jurisdiction is proper." *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (citation modified); *Time Share Vacation Club v. Atl. Resorts Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984) ("Once the [Rule 12(b)(2)] motion is made, plaintiff must respond with actual proofs, not mere allegations."). Plaintiff has not done so.

Last, Plaintiff's newly developed theory conflicts with settled law holding that engaging in nationwide conduct does not establish general jurisdiction in a state, even when those in-state activities are continuous and systematic. *See Daimler*, 571 U.S. at 139 n.20 (rejecting claim that nationwide seller's continuous sales to California rendered it "at home" there because a "corporation that operates in many places can scarcely be deemed at home in all of them."). Thus, Plaintiff has failed to establish general jurisdiction over the USOPC.

**B.     Plaintiff attempts to manufacture specific jurisdiction.**

Plaintiff is a Maryland resident who claims that Defendants excluded her from

7

registering as a female for the Premier Challenge in violation of New York law. Her Complaint alleges that Premier Fencing and its principal, located in Metuchen, organized and hosted the New York event but does not allege that the USOPC or Brown engaged in any act in New Jersey. The Complaint does not allege that the USOPC (headquartered in Colorado) or Brown (a Colorado domiciliary) had any contact with Premier or directed any relevant act towards New Jersey. (*See* Defs.' Br. 14–22.) Those straightforward facts alone should foreclose a finding that the USOPC and Brown are subject to specific jurisdiction in New Jersey.

Plaintiff has not come close to showing "with reasonable particularity sufficient contacts between" the USOPC and Brown and New Jersey to establish specific jurisdiction. *See Unbeatablesale.com, Inc. v. Fascinations, Inc.*, No. 25-13533, 2026 WL 322512, at *2 (D.N.J. Feb. 5, 2026) (citation modified). In her brief, Plaintiff makes unverified assertions and spins implausible scenarios that do not appear in her Complaint. Plaintiff was required to present "jurisdictional facts through sworn affidavits or other competent evidence." *See id*. (citation modified). Unsubstantiated ruminations are not a substitute. Plaintiff's attempt to satisfy the traditional and *Calder* effects tests falls flat.

First, Plaintiff, a Maryland resident, claims that she "felt the harm in New Jersey because that is where the acts were committed." (Pl.'s Opp'n 22.) Plaintiff, however, did not allege or present competent proof that she was ever physically

8

present in New Jersey during the events alleged in her Complaint. (*See generally* Compl.) In her brief, she makes the bizarre and unverified assertion that she "was never allowed to even get out of the State of New Jersey and get to New York to compete." (Pl.'s Opp'n 22.) It is hard to make sense of that statement.

Second, Plaintiff cannot establish that the USOPC or Brown purposefully directed activities at New Jersey merely because the USOPC issued a nationwide NGB Athlete Safety Policy. (*See id.* at 14.) The Supreme Court has rejected the proposition that a nationwide policy creates jurisdiction in every state where it might have consequences. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011) (stating nationwide conduct "permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State"). Plaintiff cannot show that a nationwide Athlete Safety Policy constitutes a relevant forum contact in New Jersey when Plaintiff claims the Policy denied her access to a New York event. *See Hasson v. FullStory, Inc.*, 114 F.4th 181, 186 (3d Cir. 2024) ("[P]laintiff's claims must arise out of or relate to at least some of those contacts, evidencing a strong relationship among the defendant, the forum, and the litigation." (citation modified)). The presence of non-party NGBs USGA and USA Rowing in this state has nothing to do with this Plaintiff and this litigation.

Despite first stating that the "present case is not like that in *Ford Motor Co.*

9

*v. Mont. Eighth Jud. Dist. Ct.,* 592 U.S. 351 (2021)," Plaintiff later relies heavily on *Ford Motor* in her specific jurisdiction argument. (Pl.'s Opp'n 8, 13.) *Ford Motor*, however, does not support her position on specific jurisdiction. In that case, residents of Minnesota and Montana brought product-liability actions against Ford because they suffered injuries when their Ford vehicles malfunctioned in their home states. 592 U.S. at 354–55. The Supreme Court held that Ford was subject to jurisdiction in Minnesota and Montana, in large part, because the accidents occurred in the states where the victims resided and because Ford had engaged in extensive advertising, selling, and servicing the very vehicle models that caused the injuries in those states. *Id.* at 361–65.

In contrast, Plaintiff, a Maryland resident, seeks redress in a New Jersey court under New York law for exclusion from competing as a female in a fencing competition that occurred in New York. Unlike *Ford Motor*, Plaintiff does not allege any relevant contacts that the USOPC and Brown had with New Jersey.

Plaintiff's efforts to distinguish this Court's recent dismissal of the USOPC on jurisdictional grounds in *Jovanovic v. United States Olympic & Paralympic Committee*, No. 22-2098, 2025 WL 1218155, at *1 (D.N.J. Apr. 28, 2025), also fail. In that wrongful death case, the USOPC and USA Bobsled/Skeleton were sued for negligence related to head injuries suffered by Jovanovic, an Olympic bobsled athlete who resided in New Jersey. *Id.* at *1–2. Despite some contacts with New

10

Jersey in that case—there are none here—the Court dismissed for lack of personal jurisdiction, holding that the USOPC did not purposefully avail itself of New Jersey as a forum. *Id.* at *4–5. In its dismissal for lack of jurisdiction, the Court noted that the USOPC did not own training sites, facilities, or real property in New Jersey, and did not host conferences or athletic competitions in New Jersey. *Id.* at *4.

Third, nowhere in the Complaint does Plaintiff allege that USAF or Premier (or their employees) were "agents" of the USOPC. Nor does she offer any competent proofs of an agency relationship with the other Defendants. The Complaint does not allege that the USOPC directed USAF or Premier to hold a fencing event in New York. Just the opposite. According to Plaintiff, Premier not only "managed, supervised, and r[a]n" the USAF-sanctioned event, but also "had full and final responsibility to control who would participate in the Premier Challenge." (Compl. ¶¶ 22, 55.) Unencumbered by competent proofs, Plaintiff's agency theory includes the absurd suggestion that Brown, a psychologist, controlled the USAF.

## II. Plaintiff's state law claims are preempted.

One of the goals of the Sports Act is to provide a fair and safe competitive environment for women participating in women's sporting events. 36 U.S.C. §§ 220511(a)(2)(B)–(C), 220524(a)(6), 220503(4), (15). Congress has conferred on the USOPC the authority to promulgate nationwide athlete eligibility criteria to advance that goal, and the USOPC has done so by issuing the NGB Athlete Safety Policy.

State laws setting different athlete eligibility criteria stand as an obstacle to that mission and therefore are preempted by the Sports Act.

Plaintiff argues, however, that the Sports Act is not intended to preempt state law. In support of that proposition, she cites Subsection 220505(d)(3) of the Act. (Pl.'s Opp'n 22.) But that provision supports Defendants' preemption argument. Subsection 220505(d)(3) provides "[n]othing in this subsection shall be construed to preempt or otherwise abrogate the *duty of care* of the corporation under State law or the common law." 36 U.S.C. § 220505(d)(3) (emphasis added).

That narrow carveout simply provides that certain state law tort claims implicating USOPC's duty of care are not preempted by the Act. If Congress did not intend for the Sports Act generally to preempt state law, there would have been no need for a "duty of care" exception. By the terms of that provision, the carveout does not apply to non-duty-of-care claims, such as Plaintiff's state law claim challenging USOPC's women's athlete eligibility requirements. That Congress intended to preempt state laws in conflict with USOPC's uniform athlete eligibility standards is buttressed by the limited carveout identified by Plaintiff.

Contrary to Plaintiff's contention otherwise, the Appellate Division's finding that 8 to 12-year-old girls had the right to play on a little league's boys team under NJLAD had nothing to do with the Sports Act. *See Nat'l Org. for Women, Essex Cnty. Chapter v. Little League Baseball, Inc.*, 127 N.J. Super. 522, 531 (App. Div.),

12

*aff'd*, 67 N.J. 320 (1974); (Pl.'s Opp'n 23).  Although Congress granted Little League Baseball a federal charter of incorporation, the court determined that the relevant statutory history did not show that "a limitation exclusively to boys was an avowed congressional objective in granting the charter" and that the charter did not embody a "particular substantive congressional policy." *Little League Baseball*, 127 N.J. Super. at 534–35, 537.  For that reason, the court rejected the argument that the charter preempted state law.  *Id.* at 537–38.

In contrast, the Sports Act reflects a clear Congressional policy delegating to the USOPC the promulgation of athlete eligibility criteria in women's sporting events within its purview.

In addition, it is impossible for the USOPC to comply with both NYSHRL and Executive Order (EO) 14201.  Plaintiff concedes that Executive Orders can have "the effect of a law when the Executive (President) has a 'delegation of authority or mandate from congress," or when authorized by the Constitution.  (Pl.'s Opp'n 31–32 (quoting *Indep. Meat Packers Ass'n v. Butz*, 526 F.2d 228, 235 (8th Cir. 1975).)  EO 14201 sets forth a policy that opposes the participation of transgender women in women's sports to ensure "women and girls [have] the equal opportunity to participate and excel in competitive sports."  Exec. Order No. 14201, 90 Fed. Reg. 9279, 9279 (Feb. 5, 2025).  The President directed the Secretary of State to "rescind support for and participation in people-to-people sports exchanges or other sports

13

programs within which the relevant female sports category is based on identity and not sex." *Id.* at 9280. The part of EO 14201 that addresses women's sports competitions in the Olympic and Paralympic movement is an expression of the President's Article II foreign affairs powers. Plaintiff's claims therefore must be dismissed on preemption grounds.

### III. Plaintiff fails to state any viable claims.

The Complaint lacks any allegations linking the USOPC and Brown to the decision of Premier to hold a USAF-sanctioned event in New York. Indeed, Plaintiff concedes that her "Complaint does not allege Defendants USOPC and Brown were directly involved in the planning" of the event, (Pl.'s Opp'n 35), and that Premier had "full and final responsibility to control who would participate." (Compl. ¶ 55.)

Plaintiff pleads tort claims under New York law based on her exclusion from the New York fencing event. In her Complaint, Plaintiff alleges an IIED claim arising under New York law (Compl. ¶ 120(a)), but in her brief she argues New Jersey precedent in support of this claim. (Pl.'s Opp'n 37–39.) Plaintiff offers no explanation for this inconsistency. She also does not reconcile her application of New Jersey's civil conspiracy law. Plaintiff cannot pick and choose which state's law governs her tort claims. *Yocham v. Novartis Pharms. Corp.*, 736 F. Supp. 2d 875, 880 (D.N.J. 2010) (stating "[i]n tort cases, New Jersey follows the most significant relationship test" to determine choice of law).

Plaintiff's IIED claim cannot be sustained under both New York and New Jersey law, which requires an allegation of conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Buckley v. Trenton Saving Fund Soc'y*, 111 N.J. 355, 366 (1988).  USOPC's promulgation of athlete fairness and safety requirements for women's sports events is consistent with the laws of most states, NCAA policy, and EO 14201.  (Defs.' Br. 36–39.)

Plaintiff's claim that Defendants admitted their conduct would cause Plaintiff "great emotional distress" is a gross misstatement.  (Pl.'s Opp'n 39.)  Brown—a psychologist—merely offered a sympathetic ear and an empathetic statement to Plaintiff, and for his kindness he was rewarded with a lawsuit.  (Compl. ¶ 47.)

Because Plaintiff has not stated viable NYSHRL and IIED claims—the only underlying "unlawful conduct" claims—she cannot state a civil conspiracy claim.

## CONCLUSION

The Court should dismiss all claims against the USOPC and Brown.

Respectfully submitted,

Dated:  March 12, 2026

*s/ Barry T. Albin*
Barry T. Albin
Christopher Porrino
Jarrett R. Schindler
**LOWENSTEIN SANDLER LLP**
*Attorneys for United States Olympic and Paralympic Committee and Mac Brown*

15