**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **DINAH YUKICH,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| **v.** | **NO. 2:25-cv-18011-KSH-AME** |
| **PREMIER FENCING CLUB,** *et al.*, | |
| **Defendants.** | |

**BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO
<u>DEFENDANT PREMIER FENCING CLUB'S MOTION TO DISMISS</u>**

**SPECTOR GADON ROSEN VINCI P.C.**

Susan M. Cirilli, Esquire
Attorney I.D. No.: 017972012
One Logan Square, 18th Floor
130 N. 18th Street
Philadelphia, PA 19103
(215) 241-8887
scirilli@sgrvlaw.com
*Attorney for Plaintiff Dinah Yukich*

**Dated:  March 23, 2026**

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................1

II.    FACTUAL BACKGROUND ........................................................................1

III.    LEGAL STANDARD...................................................................................3

IV.    LEGAL ARGUMEMT ................................................................................4

    A.  PREMIER FENCING IS A PRIVATE ENTITY AND WAS NOT
        OBLIGATED BY ANY LAW TO HAVE THE FENCING EVENT BE
        SANCTIONED BY USA FENCING ...............................................4

    B.  THE TED STEVENS ACT DOES NOT APPLY TO DEFENDANT
        PREMIER FENCING ...................................................................6

    C.  THE ARBITRATION CLAUSE IS UNENFORCEABLE .........................7

    D.  IN THE ALTERNATIVE, THE ARBITRATION CLAUSE DOES NOT APPLY
        TO DINAH'S EXCLUSION FROM THE PREMIER CHALLENGE ROC .............13

    E.  PLAINTIF WAS BLOCKED BY USAF FROM ARBITRATING THE
        ELIGIBILITY ISSUE ...................................................................13

    F.  PREMIER FENCING CANNOT USE USA FENCING AS A SHIELD,
        BECAUSE USA FENCING IS ALSO REQUIRED TO ABIDE BY STATE
        LAW .......................................................................................14

    G.  DEFENDANT RELIES ON INAPPLICABLE CASE LAW ....................16

    H.  THE TED STEVENS ACT NGB CERTIFICATION REQUIREMENT
        FOR BINDING ARBITRATION RELATING TO ATHLETE ELIGIBILITY
        DOES NOT PREEMPT STATE DISCRIMINATION LAWS OR TORT
        CLAIMS ..................................................................................17

    I.  PLAINTIFF PROPERLY PLEAD A CAUSE OF ACTION FOR
        INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ..............18

    J.  PLAINTIFF HAS ALLEGED SUFFICIENT FACTS TO STATE A CLAIM
        FOR CIVIL CONSPIRACY ..........................................................20

V.    CONCLUSION...........................................................................................21

i

## TABLE OF AUTHORITIES

*Allen v. Pacheco,* 71 P.3d 375, 378 (Colo.2003)................................................................. 8

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ................................................................. 3, 4

*Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*,
    459 U.S. 519, 526 (1983)............................................................................................ 4

*Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1055 (Colo. 2011) ................................. 8, 9, 12

*Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 178, 876 A.2d 253, 263 (2005) .......................... 21

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)............................................... 4

*Bishop v. Okidata, Inc.,* 864 F.Supp. 416, 427 (D.N.J.1994) .......................................... 18

*Buckley v. Trenton Saving Fund Society,* 111 *N.J.* 355, 544 *A.*2d 857 (1988) .............................. 18

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011)................................... 3

*Calkins v. Dollarland, Inc.,* 117 F.Supp.2d 421, 432 (D.N.J.2000) ............................... 18

*Chen v. D.C.*, 256 F.R.D. 267, 273 n.5 (D.D.C. 2009) ................................................ 21

*City & County of Denver v. Dist. Court,* 939 P.2d 1353, 1361 (Colo.1997)................................. 8

*Dames v. United States Center for Safe Sport*, No. 25-3505,
    2026 U.S. Dist. Lexis 657 at *3-4 (N.D. Ill. Jan 5, 2026) ....................................... 17

*Davis v. M.L.G. Corp.,* 712 P.2d 985 (Colo.1986)........................................... 8, 9, 10, 12

*Estate of Grimm v. Evans*, 251 P.3d 574, 576 (Colo. App. 2010) ................................... 8

*Farina v. Nokia, Inc.*, 625 F.3d 97, 115 (3d. Cir. 2010) ............................................. 17

*Gonzalez v. City of Newark*, No. A-4524-17T3, 2020 WL 4811568, at *14
    (N.J. Super. Ct. App. Div. Aug. 19, 2020) ...................................................... 20, 21

*Gross-Quatrone v. Mizdol*, 811 Fed.Appx. 95, 100 (3d Cir. 2020)............................... 20

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997) ...................... 4

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs.,
    & Prods. Liab. Litig.*, 553 F. Supp. 3d 211, 233 (D.N.J. 2021) ............................... 21

*Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994)...................... 4

*Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294, n.15 (3d Cir. 2018) ...................................... 21

*Juzwiak v. Doe*, 415 N.J. Super. 442, 451, 2 A.3d 428, 433 (App. Div. 2010) ............................. 18

*K.J. v. J.P.D.*, 659 F. Supp. 3d 471, 482 (D.N.J. 2023) .................................................... 21

*Kwiatkowski v. Merrill Lynch,* No. A-2270-06T1, 2008 WL 3875417,
  at *18 (N.J. Super. Ct. App. Div. Aug. 13, 2008)........................................................... 19

*Lakeview Renovations, Inc. v. City & Cnty. of Denver*, No. 16CA2102,
  2017 WL 11932533, at *2 (Colo. App. Nov. 16, 2017) ......................................................... 9, 10

*Lambdin v. Dist. Ct. In & For 18th Jud. Dist. of Cnty. of Arapahoe*,
  903 P.2d 1126 (Colo. 1995) ..................................................................................11, 12

*Lane v. Urgitus*, 145 P.3d 672, 677 (Colo. 2006) .......................................................... 8

*Lankford v. City of Clifton Police Dep't*, 546 F. Supp. 3d 296, 325 (D.N.J. 2021)....................... 20

*Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 588, 969 A.2d 1097, 1115 (2009) .................... 19

*Morganroth & Morganroth v. Norris, McLaughlin & Marcus P.C.*,
  331 F.3d 406, 414 (3d Cir. 2003) ........................................................................... 21

*Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)....................................... 4

*National Organization for Women, Essex County Chapter v. Little League Baseball*,
  127 N.J. Super. 127 N.J. Super 522 (1974)............................................................. 14, 15, 16, 17

*Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) ............................................... 4

*Rivera v. Cracker Barrel Old Country Store Inc.*, No. 02-4160(JBS),
  2003 WL 21077965, at *6 (D.N.J. Mar. 3, 2003) ......................................................... 18, 20

*Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) ................................. 4

*Sikkelee v. Precision Airmotive Corp.*, 822 at 687–88 (3d Cir. 2016) .................................. 17

*Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580 (7th Cir. 2001) ................................. 16

*Taylor v. Metzger*, 152 N.J. 490, 513, 706 A.2d 685, 696 (1998)........................................ 19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)................................. 3

*Tillman v. Commercial Credit Loans, Inc.,* 362 N.C. 93, 655 S.E.2d 362, 370 (2008) ................... 8

*Wigginton v. Servidio*, 324 N.J. Super. 114, 131, 734 A.2d 798, 807 (App. Div. 1999) ............... 19

## STATUTES AND OTHER AUTHORITIES

26 U.S.C.A. 220524(b) ........................................................................................... 14, 15

36 U.S.C. §220522 ................................................................................................ 6, 7, 17

36 U.S.C.A. §220501(b)(9) .......................................................................................... 13

36 U.S.C.A. §220501(10) .............................................................................................. 7

36 USCA §220505(b)(3) .............................................................................................. 16

36 USCA §220522(4)(B) ......................................................................................... 13, 14

42 USC §1983 ............................................................................................................. 21

Colo. Rev. Stat. Ann. § 13-22-206 (West) ..................................................................... 8

## I.    INTRODUCTION

Plaintiff Dinah Yukich submits this Opposition to Defendant Premier Fencing Club's Motion to Dismiss.  Defendant brings several erroneous arguments as to why it believes Plaintiff's claims against it should be dismissed.  Most significantly, Defendant wrongfully argues that it was required by USA Fencing to implement the USAF's Trans Ban and therefore bar Plaintiff from the Premier ROC Challenge.  Defendant is wrong because Premier Fencing is a private business and National Governing Body; therefore, it was under **no** obligation under any law to host an event that *had to be sanctioned* by Defendant USA Fencing.  Also significant to the glaring faultiness of Defendant's arguments is the fact that Premier Fencing was *on notice* that the USAF Trans Ban conflicted with state laws, as the Trans Ban itself explicitly says so.  Thus, Premier Fencing was well aware that the Trans Ban could violate state law.  As such, Plaintiff respectfully requests that this Court deny Defendant Premier Fencing Club's Motion to Dismiss in full.

## II.    FACTUAL BACKGROUND

Dinah Yukich is a transgender woman who loves to fence.  *See* Plaintiff's Complaint, attached to Defendant Premier Fencing's Motion to Dismiss as Exhibit "A," at ¶¶ 1-2.  In July of 2023, Dinah re-activated her USA Fencing ("USAF") membership as she was ready to get back into fencing after her physical transition into womanhood. Compl. at ¶ 5.  At her request, changed her gender marker from "M" to "F" and marked eligible to compete in women's events.  *Id*. at ¶ 6.  Dinah who is an "Unclassified Fencer" based upon her skill level. *Id*. at ¶ 9.  Her participation as a USAF fencer however, came to halt when, USAF implemented a policy banning transgender women from competing in women's events ("Trans Ban"). *Id*. at ¶¶ 10, 44.

The USAF Trans Ban prohibits transgender women from participating in women's events.  However, the Trans Ban explicitly admits that there may be state laws that are contrary to this policy:

1

> *It is important to note that there may be existent laws per state, and an evolving federal legal landscape that have implications on the adherence to the proposed policy. In such cases, it is the responsibility of that event host(s) or individual(s) to make USA Fencing aware.*

*Id*. at ¶ 45.  Most competitions are USAF Sanctioned events, and such events require a USA Fencing Membership.  *Id*. at ¶ 7

On or about August 1st, 2025, USAF unilaterally changed Dinah's gender marker from "F" to "M" and blocked her from registering for any women's competitions. *Id*. at ¶ 11.  Moreover the USAF bigoted trans ban explicitly states that there may be state laws that "have implications on the adherence" to the policy. As a result tournament organizers were beware that implementing the transgender policy may violate state law where an event is taking place.  *Id*. at ¶ 12.  In August of 2025, Dinah attempted to register for the Premier Challenge ROC to take place in September 25-28 in Suffern, New York, which was organized and hosted by Premier Fencing Club of Metuchen, New Jersey.  Premier Fencing is a private business.  Compl. at ¶19.  Defendant Premier Fencing is not a National Governing Body.  *Id.*

The Premier Challenge Regional Open Circuit ("ROC") is organized and run by Premier Fencing Club. It is a USA Fencing Sanctioned Event. The event is managed, supervised and run by the Premier Fencing Club. The event took place from September 26, 2025 through September 28, 2025.  *Id*. at ¶ 55.  The Premier Challenge ROC is open to members of the public. In order to register for the events, individuals of the public must create an account with USA Fencing and become a member. The individuals then must register for the event through USA Fencing website. *Id*. at ¶ 56.  Dinah was denied registration as a woman competitor and was only allowed to register for the men's events.  *Id*. at ¶ 13.

2

When she attempted to rectify the issue, she was met with overt discrimination from Premier Fencing, its agent Abdel Azziz, USAF, its employee Shannon Daughtery, USAF CEO Phil Andrews and the USOPC through Mac Brown. *Id*. at ¶ 14. Abdel Azziz represented that he was also blocked from registering Dinah for women's events and directed Dinah to discuss the issue with Shannon Daughtery of USAF. Shannon Daughtery said the Premier Challenge ROC was required the implement the trans ban because it was a USAF sanctioned event. *Id*. at ¶ 15. Adbel later explained that Premier Fencing Club, as the organizing Club, is required to comply with USA Fencing policies:

> *Although the organization club is Premier Fencing Club, based in New jersey, and the event location is Suffern, NY, this remains a USA Fencing- sanctioned event. Accordingly, we are required to comply fully with USA Fencing policies.*

*Id*. at ¶ 64.

### III.   <u>LEGAL STANDARD FOR A MOTION TO DISMISS</u>

To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions that are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011).  In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The plaintiff must provide some

factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' ..." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

IV.    **LEGAL ARGUMENT**

    A. **Premier Fencing Is A Private Entity And Was Not Obligated By Any Law to Have The Fencing Event Be Sanctioned by USA Fencing**

Premier Fencing is a private business. Compl. at ¶19. Defendant Premier Fencing is not a National Governing Body. *Id.* Defendant Premier Fencing had no obligation under any law to host an event that *had to be sanctioned* by Defendant USA Fencing. Defendant Premier Fencing had a choice to either follow the state law or break the law. *See* Compl. Premier Fencing chose to break the law. *See* Compl. Defendant Premier Fencing broke the state law and now attempts to hide behind the Ted Stevens Act, Defendant USA Fencing, and Defendant USOPC to shield itself from liability at the state level.

Premier Fencing claims that since it decided on its own to have the Premier Challenge ROC be sanctioned by USA Fencing, that it therefore must be protected by the Ted Stevens Act, USA Fencing and the USOPC. As explained in more detail below, Premier Fencing is liable under state law. Premier Fencing is a private company, operating in New Jersey and hosting an event in New York. It cannot be shielded from liability under state law.

Even more, Premier Fencing was on notice that the USAF Trans Ban conflicted with state law. The USAF Trans Ban explicitly stated:

> *It is important to note that there may be existent laws per state, and an evolving federal legal landscape that have implications on the adherence to the proposed policy. In such cases, it is the responsibility of that event host(s) or individual(s) to make USA Fencing aware.*

Compl. ¶45. Premier Fencing was well aware that the Trans Ban could violate state law. Premier Fencing was on notice that by having its event be sanctioned by USA Fencing, that it would be violating state laws.

Dinah has every right to bring a cause of action in state where Premier Fencing resides for breaking the law. Premier Fencing chose to adhere to USA Fencing and USOPC's unlawful policy

5

and break the law.  It cannot hide behind the shield of an NGB or the USOPC for protection from state law.

### B.  The Ted Stevens Act Does Not Apply to Defendant Premier Fencing

Defendant Premier Fencing argues that The Ted Stevens Act ("Sports Act") requires that all disputes be arbitrated.  Def. Mot. at p. 10.  Defendant's reliance on the Sports Act is misguided.  First, Section 220522 simply sets forth the eligibility requirements for an NGB to maintain its certification under the USOPC.  36 U.S.C. 220522.  That section clearly states that an NGB, in this case USA Fencing, must adhere to certain requirements in order to maintain it's NGB status.  *Id.*  One such requirement is that **the NGB submit** certain controversies to binding arbitration.  *Id.*  Section 220522 specifically states, "[a]n amateur sports organization, a high-performance management organization, or a paralympic sports organization is eligible to be certified, or to continue to be certified, as a national governing body only if it – [sections 1-3 omitted]:

> (4) agrees to submit to binding arbitration in any controversy involving—
>
> (A) its certification as a national governing body, as provided for in section 220529 of this title, upon demand of the corporation; and
>
> (B) the opportunity of any **amateur athlete**, coach, trainer, manager, administrator or official **to participate in amateur athletic competition, <u>upon demand of the corporation or any aggrieved amateur athlete, coach, trainer, manager, administrator or official,</u>** which arbitration under this paragraph shall be conducted in accordance with the standard commercial arbitration rules of an established major national provider of arbitration and mediation services based in the United States and designated by the corporation with the concurrence of the Athletes' Advisory Council and the National Governing Bodies' Council, as modified and provided for in the corporation's constitution and bylaws, except that if the Athletes' Advisory Council and National Governing Bodies' Council do not concur on any modifications to such Rules, and if the

corporation's executive committee is not able to facilitate such concurrence, the standard commercial rules of arbitration of such designated provider shall apply unless at least two-thirds of the corporation's board of directors approves modifications to such Rules;

36 U.S.C. 220522 (emphasis added).  This section applies to USA Fencing – not Premier Fencing (which is not an NGB).  *Id.* The above section does not mention that claims against clubs.  The section provides that such grievances "upon demand of the corporation or any *aggrieved amateur athlete, coach, trainer, manager, administrator or official*" should be submitted to arbitration.  *Id.* The Ted Stevens Act does not provide definitions for "coach", "trainer", "manager", "administrator" or "official" but defines a "protected individual" as any "amateur athlete, coach, trainer, manager, administrator, or official associated with the corporation or a national governing body."  36 U.S.C.A. §220501(10).  The statute does not mention hosts of events, independent clubs, or businesses.  Even if the arbitration clause were to be found enforceable, it does not apply to claims against Premier Fencing, as it is not a "coach, trainer, manager, administrator or official."  The Ted Stevens Act cannot apply to private discrimination claims based on public accommodation against private entities.

### C.  <u>The Arbitration Clause is Unenforceable</u>

Even if this court were to accept Premier Fencing's position that it can hide behind USA Fencing's arbitration waiver, that waiver is unenforceable.  For starters, it is a legal impossibility for an individual to assent to arbitrate something that was not contemplated at the time of execution.  Dinah executed the membership agreement on June1, 2025.  *See* Waiver, attached to Defendants' Motion as Exhibit "B".  (Dkt. No. 24).  USAF changed Dinah's gender marker from "F" to "M" in July of 2025 – after she executed the waiver.  Complaint ¶41.  Furthermore, on July 22, 2025, Phil Andrews, the CEO of USAF, communicated that the USOPC was forcing them to

7

implement the Transgender Women Ban—this was after June 1, 2025, when Dinah executed the waiver. **It is a legal impossibility for an individual to assent to a remedy for a wrong that did not exist at the time of execution.**

The Colorado Uniform Arbitration Act provides that:

> An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except on a ground that exists at law or in equity for the revocation of a contract.

Colo. Rev. Stat. Ann. § 13-22-206 (West). Colorado courts analyze arbitration clauses through contract principles. *Lane v. Urgitus*, 145 P.3d 672, 677 (Colo. 2006) (citing *Allen v. Pacheco,* 71 P.3d 375, 378 (Colo.2003); *City & County of Denver v. Dist. Court,* 939 P.2d 1353, 1361 (Colo.1997)). It is a court's responsibility to determine the validity of an arbitration agreement. *Estate of Grimm v. Evans*, 251 P.3d 574, 576 (Colo. App. 2010). When assessing the validity of an arbitration provision, the courts must evaluate the provision for unconscionability. The party asserting unconscionability "'must prove both procedural and substantive unconscionability.'" *Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1055 (Colo. 2011) (quoting *Tillman v. Commercial Credit Loans, Inc.,* 362 N.C. 93, 655 S.E.2d 362, 370 (2008)). Contract terms that unreasonably favor a party who has overreached support a finding of unconscionability. *Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1055 (Colo. 2011) (citing *Davis v. M.L.G. Corp.,* 712 P.2d 985 (Colo.1986)).

Courts analyze a contract for unconscionability using a seven-factor test, as set forth in *Davis v. M.L.G. Corp.,* 712 P.2d 985 (Colo.1986): (1) a standardized agreement executed by parties of unequal bargaining strength; (2) a lack of opportunity to read or become familiar with the document before signing it; (3) the use of fine print in the portion of the contract containing the

8

provision at issue; (4) an absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated; (5) substantive unfairness in the terms of the contract; (6) the relationship of the parties, including factors of assent, unfair surprise, and notice; and (7) all the factors surrounding the formation of the contract, including its commercial setting, purpose, and effect. *See Lakeview Renovations, Inc. v. City & Cnty. of Denver*, No. 16CA2102, 2017 WL 11932533, at *2 (Colo. App. Nov. 16, 2017)[1] (citing *Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986)).

As set forth below, at least five of the seven dispositive *Davis* factors favor Plaintiff's assertion that the present Arbitration Agreement is unconscionable.

### 1. *Procedural Unconscionability*

Procedural unconscionability focuses on defects in the bargaining process of a contract. Four of the *Davis* factors explore procedural unconscionability, including: (1) a standardized agreement executed by parties of unequal bargaining strength; (2) lack of opportunity to read or become familiar with the document before signing it; (3) use of fine print in the portion of the contract containing the provision; and (6) the relationship of the parties, including factors of assent, unfair surprise and notice. *Bailey v. Lincoln Gen. Ins. Co.*, *supra*, at 255 P.3d at 1039, n. 9 (citing *Davis v. M.L.G. Corp.*, *supra*, at 712 P.2d at 991).

### 2. *Factor One: Unequal Bargaining Strength*

In the instant matter, there is a clear inequality of bargaining strength between Plaintiff and Premier Fencing. Colorado courts have found procedural unconscionability where there is unequal bargaining strength between the contracting parties. The hallmark *Davis* case involved a car rental agreement between an individual and rental company, where the court found unequal bargaining

---

[1] A copy of this unreported case is attached hereto as Exhibit "B" for the court's convenience.

strength, as the individual was an "unsophisticated consumer". *See Davis*, 712 P.2d at 992; *Cf. Lakeview*, 2017 WL 11932533, at \*3 (finding the first *Davis* factor disfavored party arguing arbitration clause because it was "not an unsophisticated consumer … [but] has the resources and wherewithal of a large business…."). Here, the specific terms of the arbitration provision in the present case were clearly on a take-it-or-leave-it basis. *See Davis*, 712 P.2d at 992 (unconscionable provision offered on take-it-or-leave-it basis). Plaintiff, an individual athlete, was given **no** opportunity to negotiate the arbitration provision. For Plaintiff to participate in USAF sanctioned events, she was required to agree to the terms of the arbitration provision; there was simply no opportunity for her to opt-in or out of the arbitration provision, and she was forced to sign the waiver in order to participate in the event. This case is one of prototypical unconscionability.

3. *Factors Two & Three: Lack of Opportunity to Become Familiar with Document & Provision in Fine Print*

Plaintiff was not given an adequate opportunity to become familiar with the arbitration provision. This arbitration provision was presented during enrollment, with no opportunity to ask questions, seek counsel, or opt out of arbitration without forfeiting membership, Plaintiff was unable to become familiar with the full and complete implications of the arbitration agreement. Furthermore, the arbitration clause was shelved between voluminous waivers within one document. *Cf. Davis v. M.L.G. Corp.*, 712 P.2d 985, 992 (Colo. 1986) (agreeing with the trial court's finding that car rental company placing exceptions to insurance policy on the back of the form, in different font and color, and an a-typical pagination, showed company's "'concerted effort' to discourage persons from reading the back of the form."). Considering the present facts, Plaintiff could not have adequately familiarized herself with the waiver.

4. *Relationship of the Parties, Assent, Unfair Surprise, and Notice*

Plaintiff is a transgender woman athlete and Defendant Premier Fencing was the host of the event. Even if the arbitration term was deemed valid, surely it was not valid as it relates to Premier Fencing Club. Plaintiff is an individual, much like a consumer, and not a "sophisticated business" that has the wherewithal to piece apart USAF's voluminous waivers to understand that perhaps a private fencing club in New Jersey would be included. To include claims against a private club was an unfair surprise.

Even more, Plaintiff unwittingly signed a document that seeks to waive all monetary claims against Defendants for their unlawful discrimination. Hardly would a contracting party reasonably agree to such a waiver if it was evident and clear that such rights were being waived. Even more, the waiver is unlawful. *Cf. Lambdin v. Dist. Ct. In & For 18th Jud. Dist. of Cnty. of Arapahoe*, 903 P.2d 1126 (Colo. 1995) (holding a compensation plan's arbitration provision that waived an employee's substantive and procedural rights under the Wage Claim Act was void). Defendants safeguarded their actions through the arbitration waiver; they seek to use it to justify their unlawful discriminatory policies against Plaintiff. Put simply, Plaintiff has agreed to be a member of USAF, but is barred from participating in USAF events because she is transgender. Thus, this factor favors Plaintiff.

And lastly it must be reiterated that Plaintiff executed the membership agreement in June of 2025, prior to the transgender ban coming into effect. Compl. ¶44. **It is a legal impossibility for an individual to assent to a remedy for a wrong that did not exist at the time of execution.**

### 5. *Substantive Unconscionability*

Substantive unconscionability under Colorado law focuses on the fairness of contract terms themselves. Presently before this Court is the issue of an organization membership arbitration clause that completely disallows all monetary damages for civil rights claims; such a clause

11

is unconscionable and therefore unenforceable. This clause would deny Plaintiff access to monetary damages that are fundamental components of civil rights enforcement, effectively eviscerating the substantive rights afforded by controlling civil rights laws, rather than merely changing the forum for their resolution. Colorado courts would likely agree that such a provision is not only against public policy, but also unenforceable. *Cf. Lambdin v. Dist. Ct. In & For 18th Jud. Dist. of Cnty. of Arapahoe*, 903 P.2d 1126 (Colo. 1995) (holding a compensation plan's arbitration provision that waived an employee's substantive and procedural rights under the Wage Claim Act was void). As such, it was unfair on its face to disallow Plaintiff a right to pursue damages in the event that Defendants violated the law. Therefore, the arbitration agreement is substantively unconscionable.

### 6.  *Combined Unconscionability Factor*

Substantive and procedural considerations merge in the seventh and final *Davis* factor, which is "'all the circumstances surrounding the formation of the contract, including its commercial setting, purpose and effect.'" *Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1055 (Colo. 2011) (citing *Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986)). Once more, the arbitration provision here completely disallows monetary damages against USAF and/or its employees, even for civil rights violations. This effectively would bar Plaintiff's right to recover for Defendants' intentional and overt discrimination. Plaintiff is a transgender individual and athlete, who had no bargaining power against USAF, had no choice but to agree to its terms, or be denied membership in the organization. Completely barring her right to recover for civil rights violations on Defendants' parts openly invited Defendants the safeguard to discriminate against Plaintiff without repercussions. Such self-shielding is unlawful and against public policy. And while public policy may generally support alternative dispute resolution, it does not support using

12

ADR as means to bar Plaintiff from pursuing remedies in court where Defendants have unlawfully discriminated against her.

### D.  In The Alternative, The Arbitration Clause Does Not Apply to Dinah's Exclusion from the Premier Challenge ROC

Even if the arbitration clause were to be deemed valid, it does not apply to Dinah's lawsuit. The arbitration waiver applies to, "any controversy or claim arising from or relating to my membership or participation…including but not limited to claims arising from or relating to (i) *qualification or selection for, or competition in*, any fencing event…"  Def. Mot. Ex. B.  The Premier Challenge ROC did not require an individual to "qualify."  The event was open to the public.  Additionally, the Premier Challenge ROC did not "select" the participants.  Lastly, Dinah did not compete in the event, as she was precluded from doing so.  It follows that the arbitration does not apply to her.

### E.  Plaintiff Was Blocked By USAF from Arbitrating the Eligibility Issue

First, again the Ted Stevens Act does not apply to Defendant Premier Fencing.  However, even if it did, Plaintiff tried to arbitrate the issue of eligibility, but was blocked by Defendant USA Fencing.  The Ted Stevens Act does not itself mandate that all disputes be arbitrated, it simply sets forth that in order for an NGB to maintain its status as an official NGB, it must  eligibility adhere to certain requirements for National Governing Bodies of a sport.[2]  In order to maintain status as a National Governing Body, among other things, USAF must agree to submit to *binding arbitration* any controversy involving *inter alia*, "[T]he opportunity of any amateur athlete…to participate in amateur athletic competition…"  36 USCA §220522(4)(B).  The arbitration clause hidden in the Individual Membership Waiver, does not even mention binding arbitration as

---

[2] A "National Governing Body" is an "amateur sports organization, a high-performance management organization, or a paralympic sports organization that is certified by the corporation [United States Olympic and Paralympic Committee]…"  36 USCA §220501(b)(9).

required by the Ted Stevens Act.  Def. Mot. Ex. B.  Nowhere in the Arbitration paragraph is "binding" mentioned.  Even more, nowhere in the Athlete Manual does it notify the members of their obligation to binding arbitration.  ==A true and correct copy of the Athlete Manual is attached hereto as Exhibit "A".==

Even more, as explicitly stated Dinah's Complaint, USAF does not even adhere to the Ted Stevens Act that requires binding arbitration.  On July 26, 2025, Dinah submitted a formal complaint to USAF through the USAF portal.  Complaint ¶49.  On July 28, 2025, USAF, through Jessica Saxon notified Dinah that the complaint was closed and there was no finding.  Complaint ¶50.  Jessica Saxon explained that "[b]ecause the policy ha[d] been approved by the USOPC, your report does not allege a violation, and we must close it with no finding."  Id.  At no point in time did USAF communicate to Dinah that she had to submit to binding arbitration.[3]

**F. Premier Fencing Cannot Use USA Fencing as a Shield, Because USA Fencing is Also Required to Abide by State Law**

The Ted Stevens Act explicitly indicates that NGB's must abide by state law and that state law is not preempted by the Sports Act.  *See* 26 U.S.C.A. 220524(b)("Nothing in this section hall be construed to preempt or otherwise abrogate the duty of care of a national governing body under State law or the common law.").  Even if Defendant Premier Fencing was to be able to hide behind the shield of USA Fencing, which it cannot, USA Fencing is obligated to abide by state law.

New Jersey caselaw supports Plaintiff's position; a court addressed this precise argument in *National Organization for Women, Essex County Chapter v. Little League Baseball*, 318 A.2d 33 (N.J. Super 1974).  In that case, the Division of Civil Rights recommended an order to require

---

[3] Even more, the binding arbitration requirement applies to "any amateur athlete, coach, manager, administrator or official…" 36 USCA §220522(4)(B).  As explained above, Dinah was not found to be an "amateur athlete" by USAF. She was banned from participating from participating and had no status with USAF.

14

Little League Baseball, Inc. ("Little League") to admit girls ages 8-12 to participate in Little League baseball. *Id.* at 527. In response, Little League made the same arguments that Defendant USOPC makes here. Little League claimed that the Supremacy Clause, based on Little League's federal charter, preempted application of NJLAD. *Id.* The Appellate Division found that Little Leagues federal charter lacked the power to preempt state law:

> Since it is difficult to conceive of any express power underlying the congressional charter of incorporation for Little League Baseball, the charter is itself a tenuous exercise of federal power. Moreover, there being no underlying express power, the charter cannot be deemed intended to effectuate any substantive policy or purpose.

*Id.* at fn. 4. The Appellate Division further found that the Sports Act did not preempt the NJLAD's application:

> When the federal statute is seen as simply bestowing a national charter and not as embodying any substantive policy the asserted conflict becomes illusory. The New Jersey statute as applied does not vitiate the charter of incorporation; it merely regulates how Little League shall conduct its activities in the State of New Jersey in respect to exclusion of participants on the basis of sex. In this regard it may be noted that the charter's objects are required to be pursued **in lawful ways**.

*Id.* at 537 (emphasis added).

The *Little League* court found that the Order to include girls in Little League was not preempted by the Supremacy Clause. *Id.* at 537-38. Significantly, the court noted that "Neither Little League nor its chartered leagues in New Jersey **need** conduct baseball in this State. But if they do, **on an invitation to the general public to participate, girls in the mentioned age bracket must be invited and admitted as freely and as unreservedly as are boys**." *Id.* at 538 (emphasis added). The *Little League* case is directly on-point to the instant action. Just like the Little League Charter, the Sports Act requires NGB's to act within the bounds of state law. *See* 26 U.S.C.A. 220524(b)("Nothing in this section hall be construed to preempt or otherwise abrogate

15

the duty of care of a national governing body under State law or the common law.").  Nor can USOPC's federal charter preempt application of state human rights laws.  *See Little League, supra.*

Just like the Little League Baseball clubs, Premier Fencing club must abide by state law. The Ted Stevens Act itself **expressly** provides that state laws are not preempted (*see* 26 U.S.C.A. 220524(b);  36 USCA 220505(b)(3)), the *Little League* decision also **expressly** bars preemption. Defendant Premier Fencing is not above state law.

### G.  Defendant Relies on Inapplicable Case Law

Defendant erroneously relies on *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580 (7th Cir. 2001) to support their argument that Plaintiff's state law claims are preempted by the Sports Act.  However, the case is inapplicable because, not only is it a Seventh Circuit opinion and bears no binding authority on this court, substantively it dealt with USOPC's eligibility determination of plaintiff-athlete's doping violation. *Id*.  In fact, the Court of Appeals held that "There is no disagreement that state-law causes of action can be brought against the USOC." *Id*. at 595.  The court determined that the claims alleged must be examined to determine preemption. *Id*. Ultimately, the court determined that Plaintiff's state law claims were preempted based on the USOPC's ability to determine athletes' eligibility. *Id*. at 596.  However, none of the plaintiff's claims arose out of human rights law violations; there is a clear distinction in the present case.  Here, Defendants collectively discriminated against Dinah.  Her "ineligibility" was based on purely unlawful and discriminatory bases. The *Slaney* plaintiff's claims were based on her ineligibility based on her doping violations.  Thus, this case is clearly inapposite because the Premier ROC Challenge was completely unrelated to any Olympic or Paralympic Game or trial, the USOPC does not have exclusive jurisdiction and Plaintiff's state law discrimination claim is not preempted.

Defendant Premier Fencing continued its misguided reliance when they cited to *Dames v. United States Center for Safe Sport.* Def. Mot. at p. 11. This case involves a soccer coach who challenged the United States Center of Safe Sport's authority to investigation allegations of misconduct. *See Dames v. United States Center for Safe Sport*, No. 25-3505, 2026 U.S. Dist. Lexis 657 at *3-4 (N.D. Ill. Jan 5, 2026). That case involved the SafeSport Act of 2018. *Id.* at 11. That case had nothing to do with state discrimination laws and public accommodation. *Id.*

### H.    The Ted Stevens Act NGB Certification Requirement for Binding Arbitration Relating to Athlete Eligibility Does Not Preempt State Discrimination Laws or Tort Claims

Defendant claims that Dinah's case of exclusion based on a protected status under state law is preempted by "field preemption." Def. Mot. at 10. State law claims are preempted when there is a federal law that supersedes state law. *Sikkelee v. Precision Airmotive Corp.*, 822 F.3d 680, 688 (3d Cir. 2016). In order for a matter to be preempted by "field preemption" or that doctrine to apply the court must find that, "[f]ederal law leaves no room for state regulation and that Congress had a clear and manifest intent to supersede state law" in that field. *Sikkelee v. Precision Airmotive Corp.*, 822 at 687–88 (3d Cir. 2016).

First, it must be made clear that Section 220522 is merely a requirement for an NGB to maintain its certification under the USOPC. That section is a term that NGB's must follow in order to maintain their status. Even if it were to be deemed law, there is a strong presumption *against preemption*. *Farina v. Nokia, Inc.*, 625 F.3d 97, 115 (3d. Cir. 2010); *see also National Organization for Women, Essex County Chapter v. Little League Baseball*, 127 N.J. Super. 127 N.J. Super 522 (1974). This presumption is especially strong in fields of law that are the police power of the state. *Id.* at 116. This presumption against preemption does "not apply where regulation has traditionally been absent." *Id.* Discrimination in places of public accommodation is a police power of the state

17

of New York.  N.Y. Exec. §290(2)("It shall be deemed an exercise of the police power of the state for the protection of the public welfare, health and peace of the people of this state, and in fulfillment of the provisions of the constitution of this state concerning civil rights.").

## I.  Plaintiff Properly Plead a Cause of Action for Intentional Infliction of Emotional Distress

In New Jersey, the four required elements of a claim for intentional infliction of emotional distress as set forth in *Buckley v. Trenton Saving Fund Society,* 111 *N.J.* 355, 544 *A.*2d 857 (1988) are: (1) the defendant acted either intentionally or recklessly; (2) the defendant engaged in conduct that is so "extreme and outrageous ... as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community;" (3) the defendant's intentional or reckless conduct was the proximate cause of the plaintiff's emotional distress; and (4) the defendant's conduct resulted in distress that is "so severe that no reasonable man could be expected to endure it."  *Juzwiak v. Doe*, 415 N.J. Super. 442, 451, 2 A.3d 428, 433 (App. Div. 2010).  Plaintiff has sufficiently pled such extreme and outrageous conduct.

New Jersey courts will rarely dismiss an intentional infliction of emotional distress claim on a motion to dismiss.  *See Calkins v. Dollarland, Inc.,* 117 F.Supp.2d 421, 432 (D.N.J.2000) (citing *Bishop v. Okidata, Inc.,* 864 F.Supp. 416, 427 (D.N.J.1994)).  In fact, courts have upheld IIED claims for pleading sufficiently outrageous and extreme conduct in similar situations. Plaintiff's allegations are similar to those in *Rivera v. Cracker Barrel Old Country Store Inc.*, No. 02-4160(JBS), 2003 WL 21077965, at *6 (D.N.J. Mar. 3, 2003).[4]  In *Rivera*, the plaintiff alleged that the defendant knew of her disability and purposefully harassed her because of her disability, thereby causing her severe emotional distress.  The Court refused to dismiss the plaintiff's claim

---

[4] A copy of this unreported decision is attached as Exhibit "C" for the Court's convenience.

for intentional infliction of emotional distress finding that the facts alleged, if taken as true, and if rising to the aggravated level required by New Jersey law, may sustain a claim for intentional infliction of emotional distress.

New Jersey caselaw supports finding that Defendants' conduct was sufficiently outrageous and extreme. For instance: at the summary judgment stage, the court found that, given the power balance where a sheriff's used a racial slur regarding an African American employee, a jury could reasonably determine there was sufficiently extreme and outrageous conduct. *See Taylor v. Metzger*, 152 N.J. 490, 513, 706 A.2d 685, 696 (1998). *See also Lankford v. City of Clifton Police Dep't*, 546 F. Supp. 3d 296, 325 (D.N.J. 2021) (finding a police officer's use of racial slurs against a suspect in custody was outrageous and shocking, sufficient to support an IIED claim).

Moreover, in *Leang v. Jersey City Bd. of Educ.,* the court found at the summary judgment stage that a defendant's conduct was sufficiently outrageous, where defendant had made a false report that the plaintiff teacher, a practicing non-violent Buddhist, had threatened to kill students, and defendant had refused defendant's sexual advances. *See Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 588, 969 A.2d 1097, 1115 (2009). In *Wigginton v. Servidio,* the court reversed dismissal of plaintiff's IIED claim where he pled sufficiently outrageous conduct where a supervisor and two co-workers who made lewd comments and sexual gestures to plaintiff while the others watched, as well as threatening mafia intervention if the plaintiff sought an investigation. *Wigginton v. Servidio*, 324 N.J. Super. 114, 131, 734 A.2d 798, 807 (App. Div. 1999). *See Kwiatkowski v. Merrill Lynch,* No. A-2270-06T1, 2008 WL 3875417, at *18 (N.J. Super. Ct. App. Div. Aug. 13, 2008)[5] (reversing lower court's dismissal of plaintiff's IIED claim where plaintiff's

---

[5] A copy of this unreported decision is attached as Exhibit "D" for the Court's convenience.

supervisor's calling plaintiff a "fag" at work, "Although admittedly the comment was made under plaintiff's supervisor's breath, and not in the presence of anyone else, it was said in anger and was entirely offensive.").

Barring a transgender woman from participating in women's sports is sheerly outrageous and intolerable acts of erasure of Plaintiff's very identity and personhood.  It goes beyond mere passive discrimination of failing to recognize someone's protected characteristics; it is an overt act of forcibly negating one's identity.  Defendants' intentional conduct falls squarely within the New Jersey standard sufficient for a IIED claim.  As in *Rivera*, Plaintiff has alleged sufficient facts to overcome a motion to dismiss under Rule 12(b)(6).  It is, therefore, respectfully suggested, that Defendants' motion to dismiss Plaintiff's claim for intentional infliction of emotional distress must be denied.

### J.  Plaintiff Has Alleged Sufficient Facts To State A Claim For Civil Conspiracy

In New Jersey, the elements of a civil conspiracy are: (1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages.  *Gross-Quatrone v. Mizdol*, 811 Fed.Appx. 95, 100 (3d Cir. 2020) (citing *Morganroth & Morganroth v. Norris, McLaughlin & Marcus P.C.*, 331 F.3d 406, 414 (3d Cir. 2003).  New Jersey courts make it clear that any unlawful act is sufficient.  *Id*.  The "gist of the claim is not the unlawful agreement, 'but the underlying wrong which, absent the conspiracy, would give a right of action.'"  *Gonzalez v. City of Newark*, No. A-4524-17T3, 2020 WL 4811568, at *14 (N.J. Super. Ct. App.

Div. Aug. 19, 2020)[6] (quoting *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 178, 876 A.2d 253, 263 (2005)); *K.J. v. J.P.D.*, 659 F. Supp. 3d 471, 482 (D.N.J. 2023) (holding same).

Plaintiff has sufficiently pled that Defendants' violations of the NYSHRL are sufficient underlying unlawful acts for her civil conspiracy claim. New Jersey law does not strictly limit requisite unlawful acts for civil conspiracy to just intentional torts. *Cf. Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294, n.15 (3d Cir. 2018) (holding that the elements of a conspiracy claim under 42 U.S.C. § 1983 as well as New Jersey law to violate civil rights "are essentially the same."). Indeed, Courts have stressed that broad *intentional and unlawful* conduct is sufficient for a civil conspiracy; they have not restricted that requirement to just *intentional and tortious* conduct. *See In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs., & Prods. Liab. Litig.*, 553 F. Supp. 3d 211, 233 (D.N.J. 2021) (("negligence cannot serve as a predicate for a conspiracy claim because conspiracy requires the commission of an unlawful act or a lawful act committed for an unlawful purpose.") (citing *Chen v. D.C.*, 256 F.R.D. 267, 273 n.5 (D.D.C. 2009)).

In the present matter, Plaintiff has alleged that Defendant conspired with USAF, USOPC, Premier Fencing, and the individual defendants to implement and enforce a transgender ban that violates the NYSHRL. Therefore, she has sufficiently alleged that Defendants committed an "unlawful act" and it is respectfully suggested that Defendants' motion to dismiss her claim for civil conspiracy must be denied.

## V.     CONCLUSION

Defendant Premier Fencing was not required by any federal or state law to have the Premier ROC Challenge sanctioned by USAF. Premier Fencing therefore cannot shield itself from state

---

[6] A copy of this unreported decision is attached as Exhibit "E" for the Court's convenience.

21

law liability by hiding behind the other defendants.  Premier Fencing made the decision to have the event be sanctioned and therefore made the decision fully aware that the USAF's Trans Ban was in place and violated state law.  Premier Fencing was a participant in discriminating against Dinah and therefore must be held accountable for breaking state law.  It is therefore respectfully suggested that Premier Fencing's Motion to Dismiss be denied in full.

**SPECTOR GADON ROSEN VINCI P.C.**

Dated:  March 23, 2026                    By: /s/ Susan M. Cirilli
                                            Susan M. Cirilli, Esquire
                                            Attorney I.D. No.: 017972012
                                            One Logan Square, 18th Floor
                                            130 N. 18th Street
                                            Philadelphia, PA 19103
                                            (215) 241-8887
                                            scirilli@sgrvlaw.com
                                            *Attorney for Plaintiff Dinah Yukich*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DINAH YUKICH,**<br><br>          **Plaintiff,**<br><br>     **v.**<br><br>**PREMIER FENCING CLUB,** *et al.,*<br><br>          **Defendants.** | **CIVIL ACTION**<br><br><br>**NO. 2:25-cv-18011-KSH-AME** |

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on the 23rd day of March, 2026, I electronically filed this Response to Defendants Premier Fencing Club's Motion to Dismiss on behalf of Dinah Yukich, with the Clerk of the Court using CM/ECF filing system, which sent a notification filing to the following attorneys:

Christopher S. Porrino, Esq.
**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas
New York, NY 10020
212-419-5880
*Attorneys for United States Olympic &*
*Paralympic Committee and Mac Brown*

Aimee S. Lin, Esq.
Claudia A. Costa, Esq.
**GOLDBERG SEGALLA LLP**
<u>Mailing </u>address: PO Box 847, Buffalo, NY 14201
1037 Raymond Boulevard, Suite 1010
Newark, NJ 07102-5423
973-681-7000
alin@goldbergsegalla.com
ccosta@goldbergsegalla.com
*Attorneys for Defendants*
*Abdel Aziz, USA Fencing Association,*
*Shannon Daugherty, and Premier Fencing Club*

23

**SPECTOR GADON ROSEN VINCI P.C.**


By: /s/ Susan M. Cirilli
    Susan M. Cirilli, Esquire
    Attorney I.D. No.: 017972012
    One Logan Square, 18th Floor
    130 N. 18th Street
    Philadelphia, PA 19103
    (215) 241-8887
    scirilli@sgrvlaw.com
    *Attorney for Plaintiff Dinah Yukich*