# EXHIBIT C

25 NDLR P 238

2003 WL 21077965
United States District Court, D. New Jersey.

Mary RIVERA, Plaintiff,

v.

CRACKER BARREL OLD
COUNTRY STORE, INC., Defendant.

No. 02–4160(JBS).
|
March 3, 2003.

**Attorneys and Law Firms**

Roberta Bonnette Cooper, Law Office of Roberta Cooper, Bridgeton, NJ, for Plaintiff.

Mark Diana, Stanton, Hughes, Diana, Cerra, Mariani & Margello, PC, Morristown, NJ, John F. Kuenstler, Beau C. Sefton, Wildman, Harrold, Allen & Dixon, LLP, Chicago, Ill, for Defendant.

*OPINION*

SIMANDLE, J.

**\*1** In this diversity-based employment discrimination case, Plaintiff, Mary Rivera, has brought suit against her former employer, Cracker Barrel Old Country Store, Inc., alleging, *inter alia,* that she was wrongfully terminated on account of her disability in contravention of the New Jersey Law Against Discrimination, N.J.S.A. § 10:5–4.1, et seq. Presently before the court is the motion of Defendant to dismiss Counts I, IV, V, and VI of Plaintiff's Complaint for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Specifically, Defendant petitions this Court to dismiss Plaintiff's claims for wrongful termination, Count I of the Complaint; for negligent infliction of emotional distress, Count IV; for malicious conspiracy to cause wrongful termination, Count V;[1] and, for wrongful/bad faith termination, Count VI. For the reasons discussed herein, Defendant's motion to dismiss with prejudice will be granted in part and denied in part.

I. *BACKGROUND*

From approximately September 11, 2000, until May 15, 2001, Plaintiff was employed by Defendant as a food server. (Def.'s Br. at 1.) Plaintiff filed the underlying action against Defendant on May 19, 2002, alleging several causes of action based on her termination from the employ of Defendant's restaurant in Pennsville, New Jersey. Plaintiff argues that Defendant terminated her on the basis of her disability; Defendant argues that it decided to terminate Plaintiff for other legitimate reasons.

Plaintiff suffers from Type I insulin-depended diabetes, an ailment which, she alleges, required her to periodically take a break over the course of her 7am to 2pm regular work shift in order to maintain a normal blood sugar level. (Pl.'s Br. at 2.) According to Plaintiff, Defendant routinely denied her requests to take a break for such purpose until March 7, 2001, when Plaintiff experienced a diabetic emergency during her shift. (*Id.* at 1–2.) Following this incident, Plaintiff alleges she was subjected to ridicule for taking breaks to treat her diabetes, (*id.* at 2), was reprimanded for failing to "properly monitor her guest checks assuring prompt guest payment ..." during the break time, (*id.*), was re-assigned to a table section which was not as profitable as the others in the restaurant, (*id.*), and was unjustifiably "written up for being late" by a manager who informed her on one occasion that she would be fired if she were to either arrive to work late, leave work early for sickness, or call out from work within the next sixty days, (*id.* at 3). When Plaintiff arrived to work late on May 15, 2001, she was notified of her termination. (*Id.*)

Plaintiff filed this civil action on May 18, 2002, in the Superior Court of New Jersey, Salem County, Docket Number L–136–02. On August 27, 2002, it was removed to federal court, pursuant to 28 U.S.C. § 1441(a), on the basis of diversity jurisdiction, in accordance with 28 U.S.C. § 1332(a). Defendant filed the present motion to dismiss Counts I, IV, V and VI of the Complaint on September 18, 2002.

II. *DISCUSSION*

A. *Standard of Review for Motion to Dismiss Under 12(b)(6)*

**\*2** The Defendant has moved to dismiss Counts I, IV, V, and VI of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted does not attack the merits of the case, but merely tests the legal sufficiency of the Complaint. *See Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996). When considering

Rivera v. Cracker Barrel Old Country Store Inc., Not Reported in F.Supp.2d (2003)

25 NDLR P 238

a Rule 12(b)(6) motion, the reviewing court must accept as true all well-pleaded allegations in the Complaint and view them in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). A district court must also accept as true any and all reasonable inferences derived from those facts. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir.1994). A court may not dismiss the Complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

B. *Preemption of Common Law Wrongful Discharge Claim*
Defendant argues that Count I of Plaintiff's Complaint, which seeks a cause of action for common law wrongful discharge, must be dismissed because the claim is duplicative of the statutory remedy provided by the New Jersey Law Against Discrimination ("NJLAD"), N .J.S.A. § 5–1, et seq. Plaintiff, however, argues that a violation of the NJLAD can also give rise to a common law wrongful discharge claim, as set forth in *Pierce v. Ortho Pharmaceutical Corp.,* 84 N.J. 58, 417 A.2d 505 (N.J.1980), since "public policy is violated when the statute is violated." (Pl.'s Br. at 5.) In addition to alleging a violation of the NJLAD in this common law wrongful termination charge, Plaintiff includes a separate claim for the violation of the NJLAD in Count VII of her Complaint, seeking the statutory relief provided thereunder. (Compl.¶ ¶ 41–48.) The issue that this Court must decide is whether a claim for common law wrongful discharge is viable where the NJLAD affords identical relief for the discriminatory employment practice alleged in the common law claim. Because this Court finds that Plaintiff's common law wrongful discharge claim is preempted by the NJLAD, Defendant's motion to dismiss Count I of the Complaint is granted.

In support of her claim for common law wrongful discharge, Plaintiff argues that *Pierce v. Ortho Pharmaceutical Corp.,* 84 N.J. 58, 417 A.2d 505 (N.J.1980), recognizes "a cause of action for wrongful discharge as a separate tort claim where the reason for discharge violates public policy." (Pl.'s Br. at 5.) In *Pierce,* the Supreme Court of New Jersey declared that an action for wrongful termination will lie where the employer violates a "clear mandate of public policy" and directed courts to examine "legislation, administrative rules, regulations or decisions, and judicial decisions" as potential sources of public policy. *Pierce,* 417 A.2d at 512. Concerned that its

decision might signal an onslaught of frivolous claims filed by disgruntled former employees, the New Jersey Supreme Court cautioned that an at-will employee who brings forth a suit for wrongful discharge must "point to a clear expression of public policy" or risk dismissal or summary judgment for the defendant. *Id.* at 513.

**\*3** Plaintiff argues that the NJLAD provides the "clear expression of public policy" here. (Pl.'s Br. at 5.) She contends that a violation of the NJLAD may form the basis of a common law wrongful discharge claim, as was pronounced in *Pierce,* notwithstanding that she has alleged a separate unlawful employment practices claim under the NJLAD itself in Count VII of the Complaint. Defendant, however, argues that Count I of Plaintiff's Complaint is deficient because she fails "to explicitly identify a 'clear mandate of public policy' [Defendant] purportedly violated in terminating her employment." (Def.'s Br. at 2.) Surmising that Plaintiff intends to assert "a *Pierce* claim alleging that her discharge violated a public policy against retaliation for opposing unlawful employment practices," Defendant argues that the NJLAD, by providing a specific statutory remedy for violations thereof, effectively precludes a common law cause of action for wrongful discharge predicated upon the same actions that give rise to a NJLAD claim. (*Id.*) Hence, Defendant requests that this Court dismiss Count I of the Complaint on grounds that the wrongful discharge claim is preempted by the NJLAD, as it is wholly duplicative of the relief provided by the NJLAD.

This Court will grant Defendant's motion to dismiss Count I of the Complaint because it finds that Plaintiff does not have a cognizable common law claim for wrongful discharge where the New Jersey Law Against Discrimination affords statutory relief for the unlawful termination of employment specified therein. The law in New Jersey on this point is clear; common law claims seeking remedies identical to those which are provided for under the NJLAD are preempted by the statute. *See Santiago v. City of Vineland,* 107 F.Supp.2d 512, 567 (D.N.J.2000) (stating "New Jersey courts and courts interpreting New Jersey law have held that common law claims for wrongful discharge in violation of public policy are preempted when a statutory remedy under the NJLAD exists"); *Mardini v. Viking Freight, Inc.,* 92 F.Supp.2d 378, 384 (D.N.J.1999) (dismissing plaintiff's wrongful discharge claim for failure to allege facts that were distinct from her NJLAD claim, rendering the wrongful discharge claim duplicative of the NJLAD claim); *Lynch v. New Deal Delivery Service Inc.,* 974 F.Supp. 441, 459 (D.N.J.1997) (finding a sex

discrimination claim based upon public policy unnecessary since plaintiff "has a viable claim under the rubric of the NJLAD"); *Catalane v. Gilian Instr. Corp.,* 271 N.J.Super. 476, 638 A.2d 1341, 1349 (N.J.Super.Ct.App.Div.1994) (holding that "supplementary common law causes of action may not go to the jury when a statutory remedy under the LAD exists").

Plaintiff does not dispute that her wrongful discharge claim is entirely predicated upon the alleged actions of the Defendant which give rise to the NJLAD claim.[2] *See* Pl.'s Br. at 5. In examining the preclusive effect of the NJLAD, section 5–3 of Title 10 is helpful, providing in relevant part:

**\*4** The Legislature further finds that because of discrimination, people suffer personal hardships, and the State suffers a grievous harm. The personal hardships include: economic loss; time loss; physical and emotional stress; and in some cases severe emotional trauma, illness, homelessness or other irreparable harm resulting from the strain of employment controversies; relocation, search and moving difficulties; anxiety caused by lack of information, uncertainty, and resultant planning difficulty; career, education, family and social disruption; and adjustment problems, which particularly impact on those protected by this act. Such harms have, under the common law, given rise to legal remedies, including compensatory and punitive damages. *The Legislature intends that such damages be available to all persons protected by this act* and that this act shall be liberally construed in combination with other protections available under the laws of this State.

N.J.S.A. § 10:5–3 (West 2002) (emphasis added). Hence, the language of the statute plainly provides for the same remedies that are available under a common law wrongful discharge claim. *See also Schanzer v. Rutgers University,* 934 F.Supp. 669, 679 (D.N.J.1996) (stating "It is clear that the NLJAD provides the full panoply of rights and remedies that are available under the common law and that would be available in case[s] brought pursuant to *Pierce."* ) Here, Plaintiff's wrongful termination claim seeks redress for physical and emotional stress as well as economic loss, injuries which are clearly recoverable under the NJLAD. *See* Compl. ¶ 13. Because it is clear from the language of the statute that Plaintiff's wrongful termination claim under Count I of the Complaint can be adequately redressed by the remedies afforded by the NJLAD, the wrongful discharge claim is preempted by the statute and this Court must dismiss Count I of Plaintiff's Complaint.

C. *Count IV Claims of Negligent and Intentional Infliction of Emotional Distress*

Count IV of the Complaint is captioned "Claim for Negligent Infliction of Emotional Distress." At the outset, this Court notes that there appears to be some confusion with respect to the nature of this claim as it has been described in the Complaint. Although Plaintiff has alleged a cause of action sounding in negligence, Plaintiff supports this claim by averring that "Defendant intentionally, maliciously, without just cause or excuse, with willful intent to injure caused Plaintiff emotional distress due to the unlawful and discriminatory treatment by the Defendant...." (Compl.¶ 29.) Plaintiff proceeds to bolster the claim by alleging behavior which, if proven true, would satisfy the elements of the cause of action for *intentional* infliction of emotional distress. For example, Plaintiff claims that "[a]s a result of Defendant's conduct, Plaintiff suffered embarrassment, anxiety, economic loss, humiliation, extreme emotional distress and pain and suffering," which injury she alleges is attributed to co-worker and public awareness of her discharge; stress and anxiety that intensified her medical condition; "excessive medical bills due to lack of insurance and disability benefits;" and, the "traumatic, sudden, and unexpected result of termination without any prior warning of lack of job performance." (Compl.¶ 30.) Nowhere in the Complaint does Plaintiff attempt to establish a cause of action for negligent infliction of emotional distress; she never alleges that Defendant owed her a duty of care, that Defendant negligently carried out its duty, or that Defendant's negligence proximately caused foreseeable, emotional injury to her. *See Williamson v. Waldman,* 150 N.J. 232, 696 A.2d 14, 17–18 (N.J.1997) (setting forth plaintiff's burden in making out a claim for the tort of negligent infliction of emotional distress); *Lascurian v. City of Newark,* 349 N.J.Super. 251, 793 A.2d 731, 746–47 (N.J.Super.Ct.App.Div.2002) (explaining that "[a] claim of direct, negligent infliction of emotional distress requires a plaintiff to show that the defendant had a duty, the defendant owed the duty toward the plaintiff, and that the defendant breached that duty, proximately causing the plaintiff's injury of genuine and substantial emotional distress").

**\*5** Likewise, Plaintiff's brief in opposition to Defendant's motion to dismiss suggests that she intends to proceed on a theory of intentional, as opposed to negligent, infliction of emotional distress. Again Plaintiff identifies Count IV as a claim for negligent infliction of emotional distress, yet she begins her argument under this heading by setting out the elements of *intentional* infliction of emotional distress. *See*

25 NDLR P 238

Pl.'s Br. at 6. Plaintiff then proceeds to discuss the level of severity required to support a claim for intentional infliction of emotional distress, citing *Subbe–Hirt v. Baccigalupi,* 94 F.3d 111 (3rd Cir.1996), in support. (Pl.'s Br. at 7.) She concludes by claiming that she was "subjected to continuous abusive and extremely derogatory comments," "the abuse was purposeful," and "Defendant's conduct was the proximate cause of her emotional distress." (*Id.*)

The foregoing suggest that while Plaintiff entitled her claim "negligent infliction of emotional distress," she intends to demonstrate that Defendant's conduct was sufficiently intentional and outrageous to be actionable under a theory of intentional infliction of emotional distress. This Court will consider both causes of action.[3] To the extent that Count IV of the Complaint alleges *negligent* infliction of emotional distress, this Court dismisses for failure to state a claim as it is clear that New Jersey's Workers' Compensation Act, N.J.S.A. § 34:15–8, provides the exclusive remedy for workplace injuries that involve employer negligence. *See Mardini,* 92 F.Supp.2d at 386 ("An action in negligence by an employee against an employer in New Jersey is barred by the New Jersey Workers' Compensation Act"); *Ditzel v. Univ. of Med. & Dentistry;* 962 F.Supp. 595, 608 (D.N.J.1997) (barring an employee's claim for negligent infliction of emotional distress after finding that the Worker's Compensation Act provides the sole remedy).

However, to the extent Count IV alleges a claim for intentional infliction of emotional distress, this Court will deny Defendant's motion to dismiss. This Court finds that Plaintiff has adequately alleged facts which state a claim for intentional infliction of emotional distress. In order to state a viable claim for intentional infliction of emotional distress under New Jersey law, "the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Buckley v. Trenton Saving Fund Soc.,* 111 N.J. 355, 544 A.2d 857, 863 (N.J.1988). Plaintiff's Complaint alleges that "while an employee with [Defendant], Plaintiff was treated in a discriminatory manner," (Compl.¶ 8), that "Plaintiff was wrongly accused of excessive absences and poor job performance," (Compl.¶ 10), that Defendant's acts "were willful, wanton, malicious, and oppressive," (Compl.¶ 21), and, that "[a]s a result of Defendant's conduct, Plaintiff suffered embarrassment, anxiety, economic loss, humiliation, extreme emotional distress and pain and suffering," (Compl.¶ 30). Plaintiff contends in her brief in opposition to this motion that she "was subjected to continuous and extremely

derogatory comments...." (Pl.'s Br. at 6.) Read as a whole, this Court can imagine a set of facts that might demonstrate "extreme and outrageous" conduct on the part of the Defendant which caused Plaintiff to suffer severe distress.

**\*6** While Defendant maintains that Plaintiff has not alleged facts sufficient to constitute intentional infliction of emotional distress under *Buckley* in order to survive a 12(b)(6) motion, we cannot agree. Defendant is correct that establishing egregious conduct that is necessary for an intentional infliction of emotional distress claim is rare in the context of employment. *See* Def.'s Br. at 5, n2 (citing *King v. Port Authority of New York & New Jersey,* 909 F.Supp. 938, 943 (D.N.J.1995) and *Cox v. Keystone Carbon Co.,* 861 F.2d 390, 395 (3d Cir.1988); *see also Witherspoon v. Rent–A–Center, Inc.,* 173 F.Supp.2d 239, 242 (D.N.J.2001); *Fregara v. Jet Aviation Business Jets,* 764 F.Supp. 940, 956 (D.N.J.1991). However, also rare is the dismissal of an intentional infliction of emotional distress claim on a motion to dismiss. *See Calkins v. Dollarland, Inc.,* 117 F.Supp.2d 421, 432 (D.N.J.2000) (citing *Bishop v. Okidata, Inc.,* 864 F.Supp. 416, 427 (D.N.J.1994)). In support of its motion on this claim, Defendant cites *Behrens v. Rutgers Univ.,* No. 94–CV–358, 1996 WL 570989, at \*11–12 (D.N.J.1996), and *Griffin v. Tops Appliance City, Inc.,* 337 N.J.Super. 15, 766 A.2d 292 (N.J.Super.Ct.App.Div.2001). (Def.'s Br. at 5, n2.) In both cases, though, the claim was considered on a motion for summary judgment.[4] Defendant also cites *Mardini v. Viking Freight, Inc.,* 92 F.Supp.2d 378, 385 (D.N.J.1999), in which the court granted the defendant's 12(b)(6) motion to dismiss a claim for intentional infliction of emotional distress. However, *Mardini* is distinguishable from the facts as presented here. In making out her claim for intentional infliction of emotional distress, the plaintiff in *Mardini* failed to allege that "she had to seek medical assistance or that any specific ailments afflicted her." *Id.* at 385. In contrast, the Plaintiff in this case has claimed that she "was subjected to continuous abusive and extremely derogatory comments," (Pl.'s Br. at 7), and has alleged that such conduct caused her extreme emotional stress and anxiety, which "intensified" her medical condition, (Compl.¶ 30).

This Court will deny Defendant's motion to dismiss Plaintiff's claim for intentional infliction of emotional distress at this stage because Plaintiff has alleged that Defendant knew of her disability and purposefully harassed her because of her disability, thereby causing her severe emotional distress. These facts, if taken as true, and if rising to the aggravated level required by New Jersey law, may sustain a claim

Rivera v. Cracker Barrel Old Country Store Inc., Not Reported in F.Supp.2d (2003)

25 NDLR P 238

for intentional infliction of emotional distress. Because the Plaintiff has adequately plead a claim for intentional emotional distress and because this Court declines to analyze the factual merits of the claim on this 12(b)(6) motion to dismiss, this Court will deny Defendant's motion to dismiss to the extent that Count IV alleges a claim for intentional infliction of emotional distress.

D. *Bad Faith Claim in Count VI Is Subsumed in Count II*

**\*7** In Count VI of the Complaint, entitled "Claim for Wrongful/Bad Faith Termination," Plaintiff alleges that "Defendant intentionally, willfully, and maliciously terminated Plaintiff without just cause and in bad faith." (Compl.¶ 38.) In addition to claiming that Defendant terminated her employment in bad faith in this count, Plaintiff has claimed that Defendant breached the implied covenants of good faith and fair dealing in Count II of the Complaint. This Court finds that Plaintiff's claim in Count VI must be dismissed because it is subsumed in the claim for breach of good faith and fair dealing in Count II, a claim that Defendant has not sought to dismiss at this time.

"A cognizable cause of action for breach of the implied duty of good faith and fair dealing in the employment context exists where the employer attempts to deprive the employee of the benefits of the employment agreement without an honest belief that good cause for discharge is in fact present." *King v. Port Authority of New York & New Jersey,* 909 F.Supp. 938, 942 (D.N.J.1995). Absent an employment agreement, however, a claim for bad faith breach simply cannot stand. *See Wade v. Kessler Institute,* 172 N.J. 327, 798 A.2d 1251, 1262 (N.J.2002) (" 'an implied contract must be found before the jury could find that the implied covenant of good faith and fair dealing had been breached"). However, "[t]his does not mean that an implied obligation of good faith is inapplicable to those aspects of the employer-employee relationship which are governed by some contractual terms, regardless whether that relationship is characterized generally as being 'at will." ' *Nolan v. Control Data Corp.,* 243 N.J.Super. 420, 579 A.2d 1252, 1257 (N.J.Super.Ct.App.Div.1990) (explaining that aspects of the employment relationship which are governed by contractual terms are subject to the implied covenants of good faith and fair dealing).

Under New Jersey law, the employment relationship is presumed to be at-will and, therefore, terminable at the discretion of the employer or the employee for a good reason, a bad reason, or even no reason at all. *See Witkowski v. Thomas J. Lipton, Inc.,* 136 N.J. 385, 643 A.2d 546, 552

(N.J.1993). However, an exception to the at-will doctrine will operate in circumstances where the employer has violated a public policy mandate in terminating the employee or where the employer bases the decision to discharge the employee on one of the reasons that the legislature has specifically circumscribed as prohibited from consideration. *See Id.* at 552–53. As previously discussed, Plaintiff is proceeding under the NJLAD, claiming that her discharge from Defendant's restaurant violated the express provisions of the statute. Any additional claim that her discharge was wrongful because Defendant took into account Plaintiff's diabetes in deciding to terminate her employment would be duplicative of the remedies that she is afforded under the NJLAD. Hence, Plaintiff's "bad faith" claim is only viable insofar as it refers to a claim for breach of the covenants of good faith and fair dealing. Because Plaintiff has already set out to demonstrate, in Count II of the Complaint, that Defendant and Plaintiff had some sort of contractual relationship and that Defendant breached the covenant of good faith and fair dealing, an implicit term in every contract, Plaintiff's claim in Count VI is dismissed as redundant to Count II.

III. *CONCLUSION*

**\*8** For the foregoing reasons, this Court will grant Defendant's 12(b)(6) motion to dismiss Counts I, V, and VI of Plaintiff's Complaint, will grant in part Defendant's 12(b)(6) motion to dismiss Count IV to the extent that the Plaintiff alleges a claim for negligent infliction of emotional distress, but will deny Defendant's 12(b)(6) motion to dismiss Count IV to the extent that Plaintiff alleges a claim for intentional infliction of emotional distress. The accompanying Order is entered.

ORDER

This matter having come before the Court upon the motion of Defendant to dismiss Counts I, IV, V, and VI of Plaintiff's Complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), [Docket Item 13–1]; and this Court having considered the record and the submissions of the parties; and for the reasons stated in the Opinion of today's date; and for good cause shown;

IT IS on this 3rd day of March, 2003, hereby

**Rivera v. Cracker Barrel Old Country Store Inc., Not Reported in F.Supp.2d (2003)**

25 NDLR P 238

ORDERED that Defendant's motion to dismiss Counts I, V, and VI of Plaintiff's Complaint, be, and hereby is, *GRANTED;* and

IT IS FURTHER ORDERED that Defendant's motion to dismiss Count IV of Plaintiff's Complaint, be, and hereby is, *GRANTED IN PART* as to claims for negligent infliction of emotional distress and *DENIED IN PART* as to claims for intentional infliction of emotional distress.

**All Citations**

Not Reported in F.Supp.2d, 2003 WL 21077965, 25 NDLR P 238

Footnotes

1    Plaintiff stipulates as to the dismissal of the conspiracy claim in Count V since there are no co-defendants in this case and the claim was inadvertently included in the Complaint. *See* Pl.'s Br. at 7. Hence, this Court will dismiss Count V of the Complaint.

2    Although she alleges in paragraph 12, Count I of the Complaint that "Plaintiff opposed practices, which are made unlawful employment practices," Plaintiff provides no clarification of which, if any, unlawful employment practices were opposed. Plaintiff's brief in opposition to Defendant's instant motion makes clear to this Court that the unlawful employment practice which "Plaintiff opposed" was, in fact, the termination of her employment for reasons relating to her disability.

3    Rule 8(f) of the Federal Rules of Civil Procedure provides, "All pleadings shall be so construed as to do substantial justice." It is well-settled that the liberal pleading requirements set forth under Rule 8 are to be construed broadly. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ("all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."); *see also Advanced Power Sys., Inc. v. Hi–Tech Sys., Inc.,* 801 F.Supp. 1450, 1460 (E.D.Pa.1992) ("it is well settled that to survive a motion to dismiss, the pleading need not correctly categorize legal theories giving rise to the claims, and the court is under a duty to examine the pleadings to determine if the allegations provide for relief under any theory"). Furthermore, Defendant recognized that Plaintiff's Complaint could be interpreted as alleging a claim for intentional infliction of emotional distress, such that it cannot be said that Plaintiff's Complaint failed to place Defendant on "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *See Conley,* 355 U.S. at 47.

4    In *Behrens,* the plaintiff attempted to establish a claim for intentional infliction of emotional distress in the context of employment, alleging that his employer " 'deliberately and intentionally set out to fire him on the basis of race" ' and that he suffered " 'severe emotional trauma" ' as a result. *Behrens,* 1996 WL 570989, at \*12. In dismissing the claim on a motion for summary judgment, this Court acknowledged the "high standard for plaintiffs to bring a claim for intentional infliction of emotional distress," *Id.,* before ultimately concluding that the defendants' conduct was neither sufficiently "outrageous and extreme," nor could the conduct have produced "emotional distress so severe that no reasonable person could tolerate." *Id.* Similarly, in *Griffin,* the Superior Court of New Jersey, Appellate Division, concluded that the evidence could not support a claim for intentional infliction of emotional distress where an employee was terminated for selling merchandise to a customer at a price below the allowable cost. *Griffin,* 766 A.2d at 296–99. In both of these cases, the courts found that the plaintiff had failed to overcome the requisite degree of severity necessary to establish an intentional infliction of emotional distress claim; however, in neither case was the determination made on a 12(b)(6) motion to dismiss.

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.