**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DINAH YUKICH,<br><br>              Plaintiff,<br><br>v.<br><br>PREMIER FENCING CLUB,<br>ABDEL AZIZ, USA FENCING,<br>SHANNON DOUGHERTY, MAC BROWN,<br>and UNITED STATES OLYMPIC AND<br>PARALYMPIC COMMITTEE,<br><br>              Defendants. | Civil Case No. 2:25-cv-18011-KSH-AME |

**REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS BY
DEFENDANT PREMIER FENCING CLUB & SPORTS CORP.**

**GOLDBERG SEGALLA LLP**
Mailing address:  PO Box 847,
Buffalo, NY 14201
1037 Raymond Boulevard
Suite 1010
Newark, NJ 07102-5423
973-681-7000
Fax:  973-681-7101
ccosta@goldbergsegalla.com
alin@goldbergsegalla.com

*Attorneys for Defendants
Premier Fencing Club & Sports
Corp. (incorrectly pleaded as
Premier Fending Club), Abdelwahab
Abdelaziz (a/k/a Abdel Aziz), USA
Fencing Association (incorrectly
pleaded as USA Fencing), and
Shannon Daugherty (incorrectly
pleaded as Shannon Dougherty)*

*On the brief:*
    *Claudia A. Costa*
    *Aimée S. Lin*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT....................................................................................................1

I.     LEGAL ARGUMENT .................................................................................................3

     A.     The Arbitration Provision Applies to Plaintiff's Claims.........................................3

     B.     The Arbitration Provision is Not Unconscionable and
Is Therefore Enforceable.........................................................................................4

          1.     Whether the Agreement is Standardized.......................................................5

          2.     Lack of Opportunity to Read or Become
Familiar ........................................................................................................6

          3.     Use of Fine Print...........................................................................................6

          4.     Whether the Provision was Commercially
Reasonable ...................................................................................................7

          5.     Whether the Contract Contains Terms Sub-
stantively Unfair...........................................................................................7

          6.     Relationship of the Parties ............................................................................8

          7.     All Circumstances Relating to Formation......................................................9

     C.     The Ted Stevens Act Applies to Premier ................................................................10

     D.     The Act's "Duty of Care" Language Related to
*Negligence* Claims, Not Discrimination Claims......................................................11

     E.     All of Plaintiff's Claims against Premier are
Preempted by the Act ..............................................................................................13

     F.     Plaintiff Does Not Allege Conduct Sufficiently
Extreme or Outrageous; Therefore Her Claim
for IIED Must Be Dismissed....................................................................................15

     G.     A Civil Conspiracy Claim Cannot Survive
a Motion to Dismiss without an Underlying
Wrong......................................................................................................................17

II.     CONCLUSION..........................................................................................................15

i

## **TABLE OF AUTHORITIES**

**Cases**

*Banco Popular N. Am. v. Gandi*, 184 N.J. 161 (2005)................................................................ 17-18

*Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355 (1988) ...............................................................16

*Cole v. Laughrey Funeral Home*, 376 N.J. Super. 135 (App. Div. 2005) ......................................17

*Dames v. United States Ctr. For SafeSport*,
       No. 25-3503, 2026 U.S. Dist. LEXIS 657 (N.D. Ill. Jan. 5, 2026) ...................................14

*Davis v. M.L.G. Corp.*, 712 P.2d 985 (1986)........................................................................4, 5, 6, 7

*Farina v. Nokia, Inc.*, 625 F.3d 97 (3d Cir. 2010)...................................................................... 14-15

*Fregara v. Jet Aviation Bus. Jets*, 764 F. Supp. 940 (D.N.J. 1991).................................................17

*Harris v. Middlesex County College*, 353 N.J. Super. 31 (App. Div. 2002) ...................................17

*Ingraham v. Ortho-McNeil Pharmaceutical*, 422 N.J. Super. 12 (App. Div. 2011) ................ 16-17

*Jevremovic v. Courville*, No. 22-4969,
       2025 U.S. Dist. LEXIS 131994 (D.N.J. July 11, 2025),
       appeal filed, Aug. 13, 2025 ...............................................................................................17

*Jovanovic v. United States Olumpic & Paralympic Comm.*,
       No. 22-2098, 2025 U.S. Dist. LEXIS 79892 (D.N.J. Apr. 28, 2025) ................................12

*Lambdin v. District Court in the 18th Judicial District*, 903 P.2d 1126 (1995)........................... 8-9

*McKenzie v. United States Tennis Ass'n Inc.*, No. 22-615,
       2024 U.S. Dist. LEXIS 146453 (M.D. Fla. Aug. 16, 2024)...............................................12

*Michels v. United States Olympic Committee*, 741 F.2d 155 (7th Cir. 1984) ...............................11

*National Organization for Women v. Little League Baseball, Inc.*,
       127 N.J. Super. 522 (App. Div. 1974).......................................................................... 12-13

*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010) .......................................................4, 8, 10

*Ruprecht v. Ruprecht*, 252 N.J. Super. 230 (Ch. Div. 1991) .........................................................17

*Slaney v. Int'l Amateur Ath. Fed'n*, 244 F.3d 580 (7th Cir. 2001) .................................... 11, 13-14

*Taylor v. Metzger*, 152 N.J. 490 (1998)........................................................................................16

*Turner v. Wong*, 363 N.J. Super. 186 (App. Div. 2003) ...............................................................15

*Vernon v. Qwest Communs. Int'l, Inc.*, 925 F. Supp. 2d 1185 (D. Colo. 2013) ..........................6, 7

**Statutes**

9 U.S.C. §§ 1-16. ................................................................................................................8

36 U.S.C. §§ 220501, *et seq.*............................................................................................10

36 U.S.C. § 220524(b) .......................................................................................................11

N.Y. EXEC. LAW §§ 290, *et seq*. .......................................................................................9

NYSHRL...........................................................................................................................9, 11

Ted Stevens Olympic and Amateur Sports Act, Pub. L. No. 95-606, 92 Stat. 3045 (1978),
    https://www.congress.gov/bill/95th-Congress/senate-bill2727 .......................................12

Ted Stevens Act...................................................................................................10, 11, 12, 13, 14

**Other Authority**

www.dictionary.law.com/default.aspx?selected=599 ....................................................................11

## **PRELIMINARY STATEMENT**

This is a motion to dismiss. As such, a court accepts Plaintiff's allegations as true. The facts as alleged by Plaintiff support the application of the arbitration agreement which Plaintiff executed and the matter should be dismissed/stayed pending arbitration.

Plaintiff Dinah Yukich ("Plaintiff") alleges that she attempted to register for the Premier Challenge event in August 2025. *See* Certification of Aimée S. Lin, Esq. in Support of Motion to Dismiss by Defendant Premier Fencing Club and Sports Corp. ("Lin Cert."), previously submitted to the Court (Doc. 24-1) at Exhibit A at ¶ 13. The subject event was to be conducted in accordance with USA Fencing Rules of Competition and the related USA Fencing Operations Manual. *Id*. at ¶ 27. According to Plaintiff, this was an event sanctioned by defendant USA Fencing Association ("USA Fencing"). *Id*. at ¶ 55.

Plaintiff's own allegations state that, in order for her to compete in a USA Fencing-sanctioned event she had to become a member of USA Fencing. *Id*. at ¶ 41. In order to register for this event, individuals had to create an account with USA Fencing and become a member. Individuals then had to register for the event through the USA Fencing website.  According to Plaintiff's allegations, one cannot enter a USA Fencing-sanctioned event without creating an USA Fencing account, becoming a member, and using its website *Id*. at ¶ 56. To become a USA Fencing member, one is prompted to review and sign a Waiver, which includes an Arbitration Provision. *See* Lin Cert. at Exhibit B. The waiver also clearly states that Plaintiff agrees to abide by the Rules and Policies of USA Fencing. *Id.*

Plaintiff then alleges that she attempted to enter the event as a female and was prohibited from doing so and when she questioned same, she was advised that all sanctioned USA Fencing tournaments – local, regional and national – are required to abide by the policies of USA Fencing.

1

56405155

Plaintiff alleges that she was adhering to the rules of USA Fencing was a condition of being able to hold a USA Fencing sanctioned event. *Id.* at ¶ 62.

These very allegations require that the Arbitration Provision in the Waiver, which the Plaintiff executed, be enforced. The waiver agreement applies to disputes regarding USA Fencing-sanctioned events as well as the individuals and entities that run those events. The Arbitration Provision further provides that any disputes regarding a USA Fencing event will be resolved by way of arbitration in Colorado and pursuant to Colorado law.

In an effort to avoid her very own allegations, Plaintiff now argues that Premier Fencing should have or could have conducted a non-USA Fencing sanctioned event. This argument should respectfully be rejected. What Premier Fencing could have hypothetically done is not before this Court. What is before this Court is that Plaintiff wanted to compete in the USA Fencing-sanctioned event which she alleges is subject to USA Fencing rules. Hypotheticals will not save Plaintiff from her very own allegations and the Arbitration Provision to which she agreed.

The Court may take judicial notice that 27 states have now adopted the President's Executive Order regarding competition and transgender athletes. The International Olympic Committee has now adopted the same policies.

Also, there was thus no intent to discriminate or inflict emotional distress. Plaintiff sought to enter an event which was sanctioned by USA Fencing which by her own admissions had to follow the Rules of USA Fencing and she, in turn agreed to its policies and procedures. To the extent that raises a dispute, it should be resolved in Colorado, according to Colorado law and in an arbitration.

## I.    LEGAL ARGUMENT

### A.    The Arbitration Provision Applies to Plaintiff's Claims

As set forth in Premier's principal brief, when Plaintiff joined defendant USA Fencing as a member, Plaintiff signed the 2025 Individual Membership waiver (the "Waiver"), which contained an arbitration provision (the "Arbitration Provision"). *See* Lin Cert. at Exhibit B. The Arbitration Provision requires Plaintiff to bring her claims herein in arbitration, stating, in part: [A]ny controversy or claim arising from or relating to my membership or participation, … in USA Fencing, Including but not limited to any matter arising from or relating to … competition in any fencing event, … shall to the fullest extent permitted by law be settled by arbitration." *Id*. at 2.

Plaintiff argues that the Arbitration Provision does not apply to her claim relating to her "exclusion" from participating at the Premier Challenge ROC. Plaintiff is mistaken.[1] This is because the Arbitration Provision encompasses "***any*** controversy or claim arising from or relating to my membership … in USA Fencing, ***including but not limited to***, any matter arising from or relating to (i) qualification or selection for, or competition in, any fencing event…" *See* Lin Cert., at Exhibit B, at 2 (emphases added). Plaintiff  then proceeds to quarrel with "qualif[ication]" and select[ion], and how these circumstances were not at play in her situation. Even if this were true, the Arbitration Provision's language states "including but not limited to…" *Id*. Thus, the examples with which Plaintiff quarrels are precisely that: examples that were not meant to be an exclusive list as evidenced by the language "including but not limited to…"

There are also qualifications to competing in USA Fencing's sanctioned events. As alleged by Plaintiff, you must be a member of USA Fencing. And when joining USA Fencing, you agree

---

[1] Premier also notes that Plaintiff was not "excluded" from competing. Plaintiff was permitted to compete against men at the tournament. Thus, Plaintiff was not excluded.

to abide by the rules and policies of USA Fencing. If Plaintiff was not a member of USA Fencing, she could not enter a USA Fencing-sanctioned event. That the waiver Plaintiff signed clearly and in all capital letters stated that Plaintiff agreed to abide by the rules and policies of USA Fencing and also agreed to have her disputes decided by arbitration.

It is therefore clear that Plaintiff's Complaint herein must either be dismissed in favor of arbitration or be stayed pending arbitration. *See* Brief in Support of Motion to Dismiss by Defendant Premier Fencing Club & Sports Corp. ("Prin. Br."), previously submitted to the Court (Doc 24-7), at 6-9.

### B.    The Arbitration Provision is Not Unconscionable and is Therefore Enforceable

Arbitration agreements are treated like any other contract. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Thus, a party to an arbitration agreement, as they can with any other contract, can try to invalidate an arbitration agreement on the basis of it being unconscionable, among other defenses. *Id*. at 68. Under Colorado law (the state law designated by the Arbitration Provision), in order to determine unconscionability, a court should look to the following factors: (1) whether the agreement is standardized and between parties of unequal bargaining position; (2) lack of opportunity to read or become familiar with the document before signing it; (3) use of fine print in the portion of the contract containing the provision; (4) absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated; (5) whether the contract contains terms that are substantively unfair; (6) the relationship of the parties, including factors of assent, unfair surprise and notice; and (7) all the circumstances surrounding the formation of the contract, including its commercial setting, purpose and effect. *Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (1986). Premier will examine each factor in

4

turn, as well as Plaintiff's arguments with respect to the factors that she addressed in her opposition.

### 1.    Whether the Agreement is Standardized

Here, the Arbitration Provision is offered as a part of the process in joining USAF through its website. Plaintiff argues that this factor should weigh in her favor because there is unequal bargaining in the case of unsophisticated consumers and that the contract was offered on a take-it-or-leave-it basis. Both arguments should be rejected.

First, Plaintiff cites to *Davis*, where the court found that there was unequal bargaining strength between the parties because the plaintiffs were "unsophisticated consumers." 712 P.2d at 992. However, Plaintiff does not allege or otherwise argue that she herself is an "unsophisticated consumer." And she is not. She does not make this statement in her brief.

Plaintiff is far from unsophisticated when it comes to USA Fencing. Plaintiff alleges that she has been a member of USA Fencing since July 31, 2009. *See* Lin Cert. at Exhibit A at ¶ 39. Plaintiff let her membership lapse and then rejoined. Plaintiff also discusses in her Complaint the ranking system of USA Fencing. Plaintiff is thus very familiar with membership in USA Fencing and has continuously agreed to abide by its policies.

Second, Plaintiff again does not allege or offer competent evidence that the Arbitration Provision was offered on a take-it-or-leave-it basis: Plaintiff does not allege or argue that she tried to negotiate the terms of the Arbitration Provision and such request was denied. In contrast, in *Davis*, upon which Plaintiff heavily relies, there was testimony by an employee of the defendant at trial that the contract in question was offered on a take-it-or-leave-it basis to the plaintiffs. *Davis*, 712 P.2d at 992. Plaintiff does not allege it in her Complaint or otherwise offer some sort of factual basis that she tried to negotiate the Arbitration Provision and her attempts were rejected; or that it

5

was offered on a take-it-or-leave-it basis; Plaintiff only argues as much. Therefore, Plaintiff has not established unequal bargaining properly in her opposition to Premier's Motion to Dismiss.

### 2.    Lack of Opportunity to Read or Become Familiar

The next factor is whether the party did not have the opportunity to read or become familiar with the document before signing it. Again, Plaintiff fails in establishing this factor, as she only *argues* that there was "no opportunity to ask questions, seek counsel, … [etc.]," but does not cite to allegations in her Complaint or competent evidence that this is what indeed occurred. There is no reason why Plaintiff could not have printed out the agreement and took time to consider it or take it to counsel. Likely what happened here is Plaintiff could not be bothered; Plaintiff just wanted the *benefits* associated with joining USAF, but did not bother to understand what she was agreeing to in return for those benefits. *Vernon v. Qwest Communs. Int'l, Inc.*, 925 F. Supp. 2d 1185, 1194 (D. Colo. 2013) (noting that [plaintiffs] received the benefit of the Price for Life program, ostensibly protecting [them] against price increases during the life of the contract. It does not sit well that, having accepted the benefits, the subscriber wishes to avoid the consequences of having accepted the other terms and conditions that were part of the deal."). Thus, this factor cannot weigh in Plaintiff's favor to establish unconscionability.

It also bears repeating that Plaintiff also agreed to abide by the rules and policies of USA Fencing for years. Plaintiff cannot be heard now to claim that somehow she had not in all these years read the very agreement she signed.

### 3.    Use of Fine Print

For this factor, Plaintiff again ineffectively relies upon *Davis*. In *Davis*, the waiver provision at issue was in light grey type on the back of the car rental agreement, buried amid other provisions in fine print. *Davis*, 712 P.2d at 986, 992. The court found that the colors used for the

form and the color and size of the font of the waiver made it "almost … impossible" to read. *Id*. at 992. Further, the court found that defendant made a "'concerted effort' to discourage persons from reading the back of the form." *Id*. This is in sharp contrast to the circumstances we have here.

Here, Plaintiff repeatedly renewed her membership by her own admission and executed the Waiver containing the Arbitration Provision. The Arbitration Provision is prefaced by the word "ARBITRATION" in all caps. *See* Lin Cert. at Exhibit B at 2. The Arbitration Provision is therefore "reasonably conspicuous," and "plaintiff's assent was unambiguous," as evidenced by her electronic signature. *Vernon*, 925 F. Supp. 2d at 1191. Also, the arbitration provision is part of USA Fencing's Bylaws and other materials.

Plaintiff also makes the strange argument that "[i]t is a legal impossibility for an individual to assent to a remedy for a wrong that did not exist at the time of execution." Pl. Br. at 11. Premier respectfully submits that is the whole point of an arbitration agreement: for the parties to designate the procedure by which to have their future grievances heard, should any arise.

          4.       <u>Whether the Provision was Commercially Reasonable</u>

Plaintiff does not address this factor; therefore, the Court should not consider it.

          5.       <u>Whether the Contract Contains Terms Substantively Unfair</u>

Substantive unconscionability arises when a contract contains "terms which are unreasonably favorable" to one party. *Davis*, 712 P.2d at 991. In labelling the Arbitration Provision as "unfair," Plaintiff does not point to the language referring disputes to arbitration. Rather, Plaintiff takes issue with the language: "[t]he arbitrator(s) will have no authority or jurisdiction to award consequential, punitive, or exemplary damages, and any demand for such damages shall be a nullity."

7

Plaintiff argues that this language, all on its own, renders the Arbitration Provision unconscionable. However, Plaintiff does not argue the language referring her claims to arbitration is unconscionable. The difference is, the language relating to the damages is severable from the language in the Arbitration Provision that requires Plaintiff to arbitrate her claims. *Rent-A-Center*, 561 U.S. at 70-71 ("As a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract.")[2] (citation, quotation marks and brackets omitted). Therefore, the language in the Waiver to which Plaintiff specifically objects (*i.e.*, relating to the availability of damages), which is not the language that requires Plaintiff to arbitrate her claims, is a question for the arbitrator. *Id.*

### 6.    Relationship of the Parties

This factor relates to the relationship of the parties, including factors of assent, unfair surprise and notice. Plaintiff argues that the Waiver (of which "ARBITRATION" is a section) is "voluminous" and to include Plaintiff's claims against Premier was an "unfair surprise."

First, the entire Waiver is two pages long. *See* Lin Cert. at Exhibit B.

Second, the Arbitration Provision, which is preceded by the word "ARBITRATION," in all capital letters, is itself only about one-third page long. Therefore, Plaintiff's melodramatic description of the Waiver, and, more specifically the Arbitration Provision, should be rejected.

Third, Plaintiff's argument that the provision is "unlawful," based upon *Lambdin v. District Court in the 18th Judicial Dist.*, 903 P.2d 1126 (1995) is misleading. *Lambdin* sought to have the Colorado Supreme Court direct the Arapahoe County District Court to allow the *Lambdin* plaintiff to litigate, rather than arbitrate, his compensation claims arising under the Colorado Wage Claim

---

[2] Defendant argued in its principal brief that the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA") applies to the Arbitration Provision herein. Plaintiff did not argue otherwise.

Act against his former employer Sun Microsystems ("Sun"). Sun's compensation plan contained an arbitration provision. However, the Colorado Wage Claim Act has a nonwaiver provision: "[a]ny agreement, written or oral, by any employee purporting to waive or to modify his rights in violation of this article shall be void." *Lambdin*, 903 P.2d at 1129 (citation omitted). The *Lambdin* court observed, "This section, by its plain language, voids any agreement that constitutes a waiver or modification of an employee's rights under the Colorado Wage Claim Act."

The *Lambdin* court further explained that the effect of the Colorado Wage Claim Act's nonwaiver provision was that it "precludes waiver of [the] procedural right" of the explicitly-created "civil remedy to enable employees to pursue their claims for past due wages" in court. *Lambdin*, 903 P.2d at 1131. Thus, what made the arbitration provision at issue in *Lambdin* unlawful was that it barred employees from bringing their claims in court – as specifically established by the statute.

Here, Plaintiff brings her failure to accommodate claim pursuant to the New York State Human Rights Law, N.Y. EXEC. LAW §§ 290, *et seq* ("NYSHRL"). The NYSHRL ***does not*** contain a nonwaiver provision like the Colorado Wage Claim Act. This is a crucial distinction. Because the NYSHRL does not contain a nonwaiver provision, Plaintiff's ability to bring a lawsuit can be waived. Plaintiff waived her ability to bring a lawsuit when she signed the Waiver containing the Arbitration Provision. Therefore the Arbitration Provision at issue in this case is not unlawful and this factor weighs in favor of Defendant.

7.      All Circumstances Relating to Formation

This last factor essentially takes all of the factors relating to formation and considers them as a whole. As demonstrated above, none of the factors should weigh in Plaintiff's favor in her bid to declare the Arbitration Provision unconscionable.

Again, Plaintiff attacks the Arbitration Provision's language barring Plaintiff from being able to recover "consequential, punitive or exemplary damages," this issue is severable from the language in the Waiver that requires Plaintiff to arbitrate her claims. *Rent-A-Center*, 561 U.S. at 70-71 ("As a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract.") (citation, quotation marks and brackets omitted). Therefore, the language in the Waiver to which Plaintiff specifically objects, which is not the language that requires Plaintiff to arbitrate her claims, is a question for the arbitrator. *Id*.

The result of taking all the factors into consideration is that the Arbitration Provision overall is not unconscionable. Plaintiff's claims must therefore be submitted to arbitration. To the extent Plaintiff continues to have an issue with the provision relating to damages, Plaintiff must take it up with the arbitrator.

### C.     The Ted Stevens Act Applies to Premier

The Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. §§ 220501, *et seq*. (the "Ted Stevens Act") states that the "purposes of the [United States Olympic and Paralympic Committee ("USOPC")] are … (8) to provide swift resolution of conflicts and disputes involving amateur athletes, national governing bodies, and ***amateur sports organizations***, and protect the opportunity of any amateur athlete, coach, trainer, manager, administrator, or official to participate in amateur athletic competition…" 36 U.S.C. § 220503 (emphasis added).

The statute therefore is another enforceable source of compelled arbitration of Plaintiff's claims. Defendant Premier is an amateur sports organization. Therefore, because this is a "conflict[ ] [or] dispute[ ] involving [an] amateur athlete [(Plaintiff)]" against an "amateur sports organization" (Premier), the disputes herein come under the purview of the Ted Stevens Act. Therefore, Plaintiff must arbitrate her claims as explained more fully in Premier's principal brief. *See* Prin. Br. at 9-13.

10

**D.     The Act's "Duty of Care" Language Relates to**
**_Negligence_ Claims, Not Discrimination Claims**

Plaintiff next argues that Defendant is "hiding" behind USAF. This is not so. Defendant is merely trying to enforce the benefit of its bargain in the Arbitration Provision and to submit this matter to the USOPC's procedures, where those administering and deciding similar claims have the applicable expertise to adjudicate such matters. In _Slaney v. Int'l Amateur Ath. Fed'n_, 244 F.3d 580 (7th Cir. 2001), the court pointed to "the often quoted language from the concurrence in _Michels v. United States Olympic Committee_, … 'there can be few less suitable bodies than the federal courts for determining the eligibility, or procedures for determining the eligibility, of athletes to participate in the Olympic Games." 224 F.3d at 594 (quoting _Michels v. United States Olympic Committee_, 741 F.2d 155, 159 (7th Cir. 1984) (Posner, J., concurring)). While Plaintiff's claims do not relate to the Olympics, they do relate to Plaintiff's participation in an amateur fencing competition, which falls under the purview of the USOPC by way of the Ted Stevens Act, as explained above. _See supra_ at I(C).

Plaintiff then switches gears to rely on the following language in the Ted Stevens Act, arguing it allows Plaintiff to bring her NYSHRL public accommodation claim in court: "[n]othing in this section shall be construed to preempt or otherwise abrogate the **_duty of care_** of a national governing body under State law or the common law." 36 U.S.C. § 220524(b) (emphasis added). Plaintiff is mistaken. It is clear from the language "duty of care" that this provision applies to **_tort_** claims, not discrimination claims. The definition of "duty of care" is "a requirement that a person act toward others and the public with the watchfulness, attention, caution and prudence that a reasonable person in the circumstance would use. If a person's actions do not meet this standard of care, then the acts are considered negligent, and any damages resulting may be claimed in a **_lawsuit for negligence_**." www.dictionary.law.com/default.aspx?selected=599 (emphasis added).

11

Further, numerous cases construing this language relate to tort claims, not discrimination claims. For example, in *Jovanovic v. United States Olympic & Paralympic Comm.*, No. 22-2098, 2025 U.S. Dist. LEXIS 79892, 4 n.7 (D.N.J. Apr. 28, 2025),[3] the court noted that plaintiff's amended complaint "allege[d] three counts against [defendants] for: (1) negligence; (2) negligent misrepresentation; and (3) wrongful death…Plaintiff allege[d] that the [defendants] breach their duty of care to [plaintiff] by failing to research, study, and examine the dangers and risks of head injuries and in failing to inform athletes about their findings…Plaintiff also allege[d] that [d]efendants were careless and acted with intentional disregard for the safety of their athletes by failing to educate and warn athletes about the risks of bobsledding." *Id*. at 2025 U.S. Dist. LEXIS 79892 at *4 n.7. *See also McKenzie v. United States Tennis Ass'n Inc.*, 2024 U.S. Dist. LEXIS 146453, *4, *19 (M.D. Fla. Aug. 16, 2024) (finding that defendant breached its duty of care of plaintiff in connection with plaintiff's claims of negligent supervision and retention, among other torts).[4]

Next, Plaintiff tries to bolster her argument by citing to the case *National Organization for Women v. Little League Baseball, Inc.*, 127 N.J. Super. 522 (App. Div. 1974). Plaintiff argues that *Little League* supports her position that there is no preemption by the Ted Stevens Act and therefore she cannot be compelled to arbitrate her claims. This argument is completely untenable because *Little League* was decided on March 25, 1974, about four and one-half years before the Ted Stevens Act was enacted on November 8, 1978. Ted Stevens Olympic and Amateur Sports Act, Pub. L. No. 95-606, 92 Stat. 3045 (1978), https://www.congress.gov/bill/95th-congress/senate-bill/2727.

---

[3] A true and correct copy of this unpublished decision is attached as <u>Exhibit A</u> to the Reply Certification of Claudia A. Costa, Esq. in Further Support of the Motion to Dismiss of Defendant Premier Fencing Club and Sports Corp. ("<u>Costa Cert.</u>"), submitted herewith.

[4] A true and correct copy of this unpublished decision is attached as <u>Exhibit B</u> to the Costa Cert.

Therefore, when the *Little League* court stated that "the four federal charters mentioned by Little League cannot, for the reasons already stated, be said to be evidence of any particular substantive congressional policy (except, perhaps, encouraging patriotism and good citizenship), it is of no consequence here, because the *Little League* court did not have the pervasive federal scheme requiring national uniformity and the channeling of disputes into a specific remedial process (including arbitration) as established by the Ted Stevens Act. Therefore, this case has absolutely no value here.

### E.    All of Plaintiff's Claims against Premier are Preempted by the Act

As explained in Premier's principal brief, in enacting the Ted Stevens Act, the Legislature established a comprehensive, uniform federal regime for amateur sport eligibility and dispute resolution that preempts conflicting state law causes of action. *See* Prin. Br. at 9-10 (Doc 24-7). As part of demonstrating how other courts have handled the preemption issue with respect to athlete eligibility, Defendant cited to *Slaney*. Plaintiff refers to this case as being "inapplicable." Defendant respectfully submits that it is instructive for our purposes here.

Plaintiff attempts to impugn *Slaney* as not being supportive of Defendant's argument by pointing to the following language: "There is no disagreement that state-law causes of action can be brought against the USOC." *Id*. at 595. However, if Plaintiff were forthright, she would have included the sentence that follows: "However, when it comes to challenging the eligibility determination of the USOC, only a very specific claim will avoid the impediment to subject matter jurisdiction that § 220503(3) poses." *Id*. The *Slaney* court goes on to say that "there is no dispute that the USOC has exclusive jurisdiction when it comes to eligibility determinations…" *Id*.

The *Slaney* court recognized that the plaintiff in that case, like Plaintiff here, was trying to re-invent her claims as something other than an eligibility determination: the USOC has exclusive jurisdiction, under the [Ted Stevens Act], to determine all matters pertaining to eligibility of

13

athletes. Yet, Slaney cannot escape the fact that her state-law claims, whether framed as breach of contract, negligence, breach of fiduciary duty, fraud, constructive fraud, or negligent misrepresentation, are actually challenges to the methods by which the USOC determines eligibility of athletes." *Id*. at 598. Similarly, Plaintiff here was not permitted to compete the way Plaintiff preferred: Plaintiff wanted to compete against women, but she was not permitted to do so. This is an eligibility determination; Plaintiff was eligible to fence against men. Like Slaney, Plaintiff here is trying to cloak her eligibility dispute as something else: a public accommodation claim.

Plaintiff is also carelessly dismissive of *Dames v. United States Ctr. For SafeSport*, 2026 U.S. Dist. LEXIS 657 (N.D. Ill. Jan. 5, 2026).[5] Just like *Slaney* and Plaintiff here, Dames tried to skirt preemption by fashioning his eligibility dispute as claims of: (1) violation of his "fundamental rights"; (2) tortious interference with his rights under the [U.S. Soccer Federation] bylaws; and (3) tortious interference with prospective business opportunities. *Id*. at *8. In dismissing *Dames'* claims as being preempted by the Ted Stevens Act, the court said, in part: "[c]laims involving eligibility determinations … fall within the [Ted Stevens Act's] exclusive jurisdiction grant…" *Id*. at *13. The *Dames* court found that Dames' tort claims were tort claims in name only and were actually poorly-disguised eligibility disputes. The court therefore dismissed the claims, as Dames was required to arbitrate them. *Id*. at *18-19.

Plaintiff then goes on to cite *Farina v. Nokia*, 625 F.3d 97 (3d Cir. 2010). From *Farina*, Plaintiff extracts, without context, the phrases "presumption against preemption" (the "strong" in Plaintiff's brief is her addition and not present in *Farina*) and "this presumption is especially strong in fields of law that are the police power of the state." Pl. Br. at 17. While the *Farina* court

---

[5] A true and correct copy of this unreported decision is attached to the Lin Cert. as <u>Exhibit D</u>.

14

acknowledged that the health and safety of its citizens is something regularly regulated by the states, the court still concluded that Farina's claims were preempted by the "FCC's [radio frequency] regulations. The inexorable effect of allowing suits like Farina's to continue is to permit juries to second-guess the FCC's balance of its competing objectives. The FCC is in a better position to monitor and assess the science behind [radio frequency] radiation than juries in individual cases." 625 F.3d at 133-134. Because preemption was found in *Farina*, it is unclear how Plaintiff views this case as supportive of her position.

In any event, like the FCC with respect to radio frequency radiation, the USOPC is in a much better position to evaluate and adjudicate issues relating to the eligibility of amateur athletes in competition. Therefore, preemption must be found here and Plaintiff compelled to arbitrate her claims.

**F.    Plaintiff Does Not Allege Conduct Sufficiently Extreme or Outrageous; Therefore Her Claim for IIED Must Be Dismissed**

Plaintiff alleges a claim of intentional infliction of emotional distress ("IIED") claim under New Jersey law. Plaintiff maintains that not being able to compete as a woman, but rather as a man, intentionally caused her emotional distress. These allegations are insufficient to support a claim for IIED.

There are four elements to a claim of intentional infliction of emotional distress in New Jersey. For starters, the defendant must have acted intentionally or recklessly. For an intentional act to result in liability, the Defendant must intend both to do the act and to produce emotional distress. For a reckless act to result in liability, a defendant must act in deliberate disregard of a high degree of probability that emotional distress will follow. *Turner v. Wong*, 363 N.J. Super. 186, 199 (App. Div. 2003).

15

Second, the Defendant's conduct must be extreme and outrageous. The conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Taylor v. Metzger*, 152 N.J. 490, 509 (1998) (citations and quotation marks omitted).

Third, the defendant's actions must have been the proximate cause of Plaintiff's emotional distress. *Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355, 365-368 (1988).

Fourth, the emotional distress suffered by plaintiff must be so severe that no reasonable person could be expected to endure such distress. *Clark v. Nenna*, 465 N.J. Super. 505, 511-12 (App. Div. 2020).

In the case at bar, Plaintiff has failed to allege that Premier engaged in conduct "extreme and outrageous as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Ingraham v. Ortho-McNeil Pharmaceutical*, 422 N.J. Super. 12, 21 (App. Div. 2011). This "element [is] an elevated threshold that is satisfied only in extreme cases." *Ingraham*, 422 N.J. Super. 21 (citation and internal quotation marks omitted). Plaintiff alleged that Premier followed a policy set by a governing body which was set by a Presidential Executive Order. This hardly speaks of intentional conduct to cause harm to Plaintiff. 27 states have now adopted a similar rule and recently the International Olympic Committee adopted the same rule with respect to transgender athletes. The acts complained of hardly rise to the level of outrageous conduct.

New Jersey plaintiffs with far more egregious allegations as compared to Yukich's have failed to withstand dismissal of their IIED claims. For example, in *Ingraham*, the plaintiff was told by a human resources manager not to speak of her deceased teenaged and only child in the workplace because it made her coworkers uncomfortable. *Id*. at 17. The Appellate Division in

16

*Ingraham*  did a survey of cases where New Jersey State courts "declined to find sufficiently extreme and outrageous conduct where: (1) the decedent's children from an earlier marriage were not informed about and thus excluded from a viewing at the funeral home after the decedent was murdered, *Cole v. Laughrey Funeral Home*, 376 N.J. Super. 135, 147-48 … (App. Div. 2005); (2) a supervisor expressed doubt that the plaintiff had been diagnosed with breast cancer, and then came near her "on the verge of physically bumping into [the plaintiff's] breast area as if to see" if she truly had a mastectomy, *Harris v. Middlesex County College*, 353 N.J. Super. 31, 36 46-47 … (App. Div. 2002); … and (4) the defendant in a divorce case had a long-term adulterous affair with her boss, *Ruprecht v. Ruprecht*, 252 N.J. Super. 230, 236-38 … (Ch. Div. 1991)." *Id*. at 22.

Even taking Plaintiff's allegations as true and in the aggregate, Plaintiff alleges that defendants acted, at most, in a manner that was "unjust, unfair and unkind." This has specifically been found not to be sufficient to plead a claim for IIED. *Jevremovic v. Courville*, No. 22-4969, 2025 U.S. Dist. LEXIS 131994, *18 (D.N.J. July 11, 2025), appeal filed, Aug. 13, 2025[6] (quoting *Fregara v. Jet Aviation Bus. Jets*, 764 F. Supp. 940, 956 (D.N.J. 1991)) (quotation marks omitted).

Plaintiff's allegations in her Complaint simply do not rise to the level required to state a claim of intentional infliction of emotional distress. For this reason, Plaintiff's claim of IIED does not have "facial plausibility" and must be dismissed with prejudice as to Premier.

### G.    A Civil Conspiracy Claim Cannot Survive
### a Motion to Dismiss without an Underlying Wrong

The elements of civil conspiracy under New Jersey law are: "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or

---

[6] A true and correct copy of this unpublished decision is attached to the Lin Cert., previously submitted to the Court, as Exhibit E.

17

injury upon another, and an overt act that results in damage." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177 (2005) (citations and quotation marks omitted). "Most importantly, the gist of the claim is not the unlawful agreement, but the underlying wrong which, absent the conspiracy, would give a right of action." *Id*. at 177-78 (citations and quotation marks omitted). There is no right of action with respect to the alleged underlying wrongs and Plaintiff's civil conspiracy claim must be dismissed as to Premier.

## II.   CONCLUSION

For the foregoing reasons, and those set forth in Premier's principal brief, Plaintiff's Complaint should be dismissed as to Premier in its entirety and with prejudice. In the alternative, this matter should be stayed as to Premier pending arbitration.

Respectfully submitted,

*/s/ Claudia A. Costa*
Claudi A, Costa, Esq.

Dated: April 13, 2026